**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUBMIA**

| | |
|---|---|
| ELLIPSO, INC.<br>4410 Massachusetts Ave., Suite 385<br>Washington, DC 20016, | )<br>)<br>)<br>) |
|    Plaintiff, | )<br>) |
| v. | )<br>)    Case No.: _____ |
| JOHN B. MANN<br>9330 Harts Mill Road<br>Warrenton, VA 20186 | )<br>)<br>)<br>) |
| MANN TECHNOLOGIES, LLC<br>9330 Harts Mill Road<br>Warrenton, VA 20186 | )<br>)<br>)<br>) |
| ROBERT B. PATTERSON<br>PO Box 2051<br>Middleburg, VA 20118 | )<br>)<br>)<br>) |
| CONSULTING MANAGEMENT, LTD.<br>PO Box 2051<br>Middleburg, VA 20118 | )<br>)<br>)<br>) |
| and | )<br>) |
| THE REGISTRY SOLUTIONS CO.<br>9330 Harts Mill Road<br>Warrenton, VA 20186 | )<br>)<br>)<br>) |
|    Defendants. | )<br>) |

## COMPLAINT

Comes now Plaintiff, Ellipso, Inc. by and through its undersigned counsel, and

states in support of its Complaint as follows:

## PARTIES

1.      Ellipso, Inc. is a Delaware corporation doing business in the District of Columbia and having a principal place of business at 1133 21st Street, N.W., 8th Floor, Washington, D.C. Ellipso is a telecommunications company that, among other endeavors, markets satellite telecomm products to third-parties for their use in routing telephone calls.

2.      John B. Mann is an individual residing at 9330 Harts Mill Road, Warrenton, VA. Mann is a member of Defendant Mann Technologies, LLC and a director for Defendant The Registry Solutions Co.

3.      Mann Technologies, LLC ("Mann Tech") is an inactive Nevada corporation having a principal place of business at 9330 Harts Mill Road, Warrenton, VA. and Mann Tech has never been authorized to do business in the District of Columbia as a foreign corporation or otherwise.

4.      Robert B. Patterson is an individual residing in Virginia with no known fixed address. Patterson is a member of Mann Tech, a principal of The Registry Solutions Co. and ISP.NET, LLC and purportedly a director of Consulting Management Ltd.

5.      Consulting Management Ltd. ("Consulting Management") is purportedly a Virginia corporation with no known address. Consulting Management has never been authorized to do business in Virginia, has never been authorized to do business in the District of Columbia as a foreign corporation or otherwise and there are no corporate formation records for Consulting Management in any United States jurisdiction.

6. The Registry Solutions Co. ("Registry") is purportedly a Virginia corporation having a principal place of business at 9330 Harts Mill Road, Warrenton, VA. Registry has never been authorized to do business in Virginia, has never been authorized to do business in the District of Columbia as a foreign corporation or otherwise and there are no corporate formation records for Registry in any United States jurisdiction.

## JURISDICTION AND VENUE

7. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1331 and 1332(a). The amount in controversy exceeds $75,000.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## NATURE OF THE CASE

9. This is an action for rescission, breach of contract, fraud, fraud in the inducement, unauthorized practice of law, conversion, breach of fiduciary duty, civil conspiracy, and lender liability. Defendant Patterson convinced Ellipso to retain him as a consultant to provide strategic advice for the purpose of protecting Ellipso's assets, to establish a beneficial financial or lending relationship for Ellipso at favorable rates and terms and to provide legal advice to Ellipso respecting potential claims by and against Ellipso. At no time prior to the execution of the Agreement for Services did Patterson disclose to Ellipso that he had been incarcerated in a federal prison and disbarred in Virginia and the District of Columbia and, thus, could not lawfully provide Ellipso legal advice. Patterson also failed to disclose to Ellipso that he served time in a federal prison prior to offering financial and other advisory services to Ellipso and executing the consulting agreement. Furthermore, Patterson failed to disclose to Ellipso that the sole

lending relationship he "identified," was with Mann Technologies, LLC, a company which, upon information and belief, Patterson founded and owns with John Mann, his business associate.

Moreover, such nondisclosure extended to and included Patterson's negotiation on behalf of Ellipso of a Memorandum of Agreement between Ellipso and The Registry Solutions Co. , another business which ,upon information and belief Patterson and John Mann founded and jointly own. While a consultant to Ellipso and an owner of Mann Tech, Patterson negotiated a collateralized loan agreement on behalf of Ellipso with Mann Tech, on terms and conditions which were one-sided, heavily favoring Mann Tech and onerous to Ellipso and included the collateralization of 492,611 shares of stock to be pledged by Ellipso to secure a $90,000.00 loan. As of this date, the shares have a fair market value exceeding $1,000,000. Although Ellipso has never received any notice of default, as provided for under the loan, Defendants, upon information and belief, have exercised the power of sale provisions under the pledge agreement by selling ,at minimum, one- half of the pledged shares and converting the proceeds for their own use and benefit notwithstanding the fact that the pledged shares had a value substantially in excess of the amount of the loan and that the shares sold were more than sufficient to repay any outstanding debt.

During the same timeframe Ellipso began the implementation of its global telecomm services business. While representing Ellipso, Patterson negotiated a services agreement for the purpose of developing, implementing and maintaining a registry of telephone numbers on behalf of Ellipso (the "Registry Business") with The Registry Solutions Company, a business owned and controlled by Patterson and John Mann.

4

Still further, in early 2004, Patterson, consistent with his pattern of unethical conduct, negotiated an Asset Purchase Agreement between Ineva, Inc., a wholly-owned subsidiary of Ellipso, Inc., and ISP.NET, LLC ("ISP.NET"), purportedly a Nevada corporation. Again, Patterson did not disclose prior to the execution of the Ineva agreement that he was a principal and co-owner of ISP.NET. To date, ISP.NET has failed to perform all of its payment obligations pursuant to the Asset Purchase Agreement.

### A. Patterson and Ellipso Execute a Consulting Agreement In October 2002

10. David Castiel, President and CEO of Ellipso, was introduced to Patterson in 2002 by a mutual acquaintance.

11. Patterson, who purportedly worked as a lawyer for a law firm at that time, represented that he, Patterson, had considerable experience in the telecommunications industry and had numerous investor and financing contacts in the industry capable of providing equity or debt financing to Ellipso.

12. Accordingly, on or about October 1, 2002, Ellipso and Consulting Management, Ltd., an entity owned and controlled by Patterson, executed a Consulting Agreement pursuant to which Patterson agreed to, *inter alia*, introduce Ellipso to individuals and entities that could invest and/or loan cash to Ellipso. *See* Consulting Agreement, a true and correct copy of which is attached hereto at Exhibit 1.

13. Although Patterson claimed Consulting Management was a Virginia corporation, there is no record of such an entity and, upon information and belief, no such entity ever was formed and if such an entity ever did exist it is a sham entity designed solely to avoid personal liability for any unlawful conduct committed by Patterson.

14.     As Ellipso's trusted and principal business consultant, Patterson had
access to significant confidential and proprietary information regarding Ellipso and knew
that Ellipso, in 2002, 2003 and 2004, was experiencing severe cash flow problems and
desperately needed a cash infusion. Moreover, Patterson knew that Ellipso faced various
potential legal claims and possessed legal claims against several individuals.

15.     In total and utter disregard of his suspension from the practice of law by
the Virginia State Disciplinary Board on or about January 25, 2002 for theft of
government property and his subsequent disbarment in the District of Columbia,
Patterson intentionally entered into an agreement with Ellipso to provide legal services,
to wit, to "establish a strategy to defend and protect [Ellipso] in all business matters
including litigation of pending and future actions. . . . [Patterson] will have primary
responsibility to effectuate the litigation of actions against former employees who have
breached their contracts with [Ellipso], former directors and officers who have breached
their fiduciary duty to [Ellipso], and any other person(s) similarly situated." *See* Exhibit
1 at § 2.4.

16.     In consideration of Patterson's purported services, Patterson structured for
himself compensation provisions in which he would immediately receive stock options to
Ellipso Private Holdings, LLC together with a contingent monthly payment of $ 5000.00
through December 2002.

**B.     Patterson Introduces Ellipso to John Mann and Mann Tech**

17.     In late 2003, Patterson introduced Ellipso to Mann Tech and John Mann
for the purported purpose of securing financing for Ellipso. Neither Patterson,
Management Consulting, John Mann nor Mann Tech disclosed to Ellipso that Patterson

was a business associate of John Mann and that Patterson was a member of Mann Tech and Registry, both of which Patterson and John Mann formed solely for the purpose of defrauding Ellipso. John Mann actively participated with Robert Patterson in the scheme in which they jointly benefited. Specifically, the defendants hoped to obtain via their fraud the 492,611 shares of common stock for ICO Global Communications (Holdings) Ltd. (the "ICOHA Shares") owned by Ellipso and to acquire certain rights to maintain and develop the Registry Business.

18.     At the time of the introduction, Patterson in his fiduciary capacity, was well aware of Ellipso's severe cash flow problems and the attendant need for an immediate cash infusion until such time as the Registry Business would develop a stable income stream for Ellipso, estimated to begin in or about the summer of 2004.

19.     In December 2003 and January 2004, John Mann on behalf of Mann Tech, and Patterson, ostensibly on behalf of Ellipso and its Chief Executive Officer, David Castiel, via telephone, facsimile and e-mail exchanges, negotiated the terms and conditions of the financing arrangement pursuant to which Mann Tech would loan Ellipso funds which would be secured by the pledge of certain ICOHA Shares. At no point during these negotiations did Patterson, John Mann, Mann Tech or Management Consulting disclose that Patterson was a business associate of John Mann and a member of Mann Tech. In fact Ellipso paid Patterson a 5% "commission" (or $4,500) based on the principal loan commitment.

20.     Thereafter, on or about January 30, 2004, Ellipso and Mann Tech executed a Collateralized Loan Agreement, Promissory Note and Pledge Agreement (the "Loan Documents"). Each of the terms and conditions of the Collateralized Loan Agreement,

the Promissory Note and the Pledge Agreement were prepared by Patterson who advised, counseled and urged Ellipso and David Castiel of the necessity of executing the documents as written. *See* Loan Documents, a true and correct copy of which is attached hereto at Exhibit 2.

21. Pursuant to the Loan Documents, Mann Tech agreed to loan Ellipso $90,000. As security for this loan, Ellipso was to pledge the ICOHA Shares. The language of the pledge agreement which was drafted and prepared by Patterson was unconscionable and one-sided and was intended to put Ellipso's assets (the ICOHA Shares) at substantial risk of loss. For instance, in the event Ellipso defaulted under the terms of the loan agreement Mann Tech had the right to accelerate the loan and exercise its onerous and one-sided rights and remedies with respect to the Collateral.

22. In an effort to give Mann Tech, John Mann and Patterson the unconscionable ability to take any action , in its sole discretion with respect to the ICOHA Shares, Patterson, utilizing his position of trust granted by Ellipso, willfully misrepresented to Ellipso that the terms of the Pledge Agreement required that the ICOHA Shares be retitled and transferred to and in the name of Mann Tech and that all ICOHA Shares be transferred into an account with USB Financial Services of Washington, DC, owned and controlled by Mann Tech.

23. The terms of the Loan Documents also unconscionably permitted, among other things, that upon default by Ellipso and after the cure period, Mann Tech was not obligated to forward to Ellipso any proceeds from its sale of the ICOHA Shares which exceeded Ellipso's indebtedness. Rather, Patterson inserted language allowing Mann Tech to utilize all cash proceeds from the sale of ICOHA Shares in its sole discretion.

24.     Thereafter, on or about August 2, 2004, at Patterson's urging, Ellipso executed an Amendment to Collateralized Loan Agreement (the "Amendment") with Mann Tech which provided, *inter alia*, for a payment of $10,000 to Ellipso, as satisfaction of some of the arrears due by Registry, see *infra* Section C, from Mann Tech and required that the proceeds from any sale of ICOHA Shares by Mann Tech be divided evenly between Ellipso and Mann Tech.  *See* Amendment, a true and correct copy of which is attached hereto at Exhibit 3.

25.     Although 25,000 shares were sold pursuant to the Amendment, and the proceeds therefrom were divided equally, upon information and belief, Mann Tech has sold approximately 200,000 additional ICOHA Shares without any notice to Ellipso the proceeds of which it has not shared with Ellipso. Mann Tech continues to this day to possess and control the remaining ICOHA Shares despite that it has received far more than the principal and any accrued interest on the $90,000 loan made pursuant to the Loan Documents.

**C.     Patterson Convinces Ellipso to Execute a Contract with
        The Registry Solutions Company of Which Patterson
        Secretly is Owner**

26.     On or about December 15, 2003, Ellipso executed a Memorandum of Agreement ("Memorandum") with Registry which provided that Registry would pay Ellipso certain sums for the exclusive right to establish and market the Business Registry. *See* Memorandum, a true and correct copy of which is attached hereto at Exhibit 4.

27.     The Memorandum was amended three times, on or about January 30, 2004, March 31, 2004 and August 2, 2004 (collectively and individually, as the case may

be, the "Amended Memorandum"). *See*, Amended Memorandum, a true and correct of which is attached hereto at Exhibit 5.

28.     Pursuant to the August 2, 2004 Amended Memorandum, Registry agreed to pay Ellipso a one-time royalty fee of $15,000 in addition to other monies pursuant to surviving provisions of the Memorandum.

29.     Until the Amendment of August 2004, and thereafter, Registry failed to meet several of the scheduled payments, further exacerbating Ellipso's cash flow problems and thereby causing Ellipso to be far more vulnerable to the demands of the Lender, Mann Tech, and further inducing Ellipso to enter into subsequent amendments designed solely to enhance the interests of John Mann and Patterson.

30.     Registry has not provided the support toward the development of the Registry Business that Registry committed to provide in the Agreement. Indeed, Patterson and John Mann never intended for Registry to provide the promised services pursuant to the Memorandum and Amended Memorandum.

**D.     Patterson Convinces Ellipso to Execute a Contract with ISP.NET/LookNet to Cede Ineva's Customer Base to ISP.NET/LookNet**

31.     On or about March 4th, 2004, Ellipso executed an Asset Purchase Agreement ("Purchase Agreement") with ISP.NET to sell to ISP.NET the customer base of Ellipso's wholly-owned subsidiary Ineva and certain other assets for a specific cash consideration and other royalties to be paid over time. Unknown to Ellipso, at all times during the course of negotiation and execution of the Asset Purchase Agreement, and upon information and belief, Patterson was a principal and/or member of ISP.NET.

32.     Pursuant to the Purchase Agreement, ISP.NET was to pay Ellipso $3,000 on March 15, 2004 and $2.00 each month for each customer purchased by ISP.NET for a period of twenty-four months.

33.     In addition, ISP.NET was to pay Ellipso $2.00 each month for each new customer in excess of 2,500 obtained by ISP.NET until February 2006.

34.     In November 2004, ISP.NET provided Ellipso with an "accounting" related to the Purchase Agreement in which it advised that, regardless of the terms of the Purchase Agreement, Ellipso owed ISP.NET money pursuant to the Purchase Agreement.

35.     Patterson, in contravention of his duties to Ellipso, induced Ellipso to execute the Purchase Agreement without disclosing Patterson's financial interest in ISP.NET and knowing that Ellipso not only would not benefit from the deal but that the deal would be detrimental to Ellipso.

### COUNT I – RESCISSION AGAINST MANN TECHNOLOGIES, LLC

36.     Ellipso restates as if realleged herein the allegations contained at paragraphs 1-35.

37.     As described above, Mann Tech failed to disclose that Patterson was a member of Mann Tech despite that Patterson purported to represent Ellipso's best interests in the negotiation of the Loan Documents.

38.     As described above, the terms of the Loan Documents are so one-sided in Mann Tech's favor as to render the Loan Documents unconscionable.

39.     As described above, Ellipso, at the time of its execution of the Loan Documents and as Mann Tech knew through Patterson, was in a distressed financial

condition and desperately needed an infusion of cash; thus, Ellipso agreed to pledge over 492,000 ICOHA Shares for a loan of only $90,000.

40.     As a result of Mann Tech's failure to disclose a material fact, the unconscionable language of the Loan Documents and that Ellipso executed the Loan Documents under economic duress, the Loan Documents are voidable and must be rescinded.

41.     Based on the above, the Loan Documents, including the Amendment, must be rescinded and all ICOHA Shares, and proceeds from the sale of thereof, minus the principal loan amount, should be returned to Ellipso.

### COUNT II – LENDER LIABILITY/BREACH OF FIDUCIARY DUTY AGAINST JOHN MANN, MANN TECH, ROBERT PATTERSON AND CONSULTING MANAGEMENT

42.     Ellipso restates as if realleged herein the allegations contained in paragraphs 1-41.

43.     At all times mentioned herein Defendant Mann Tech conducted a lending business.

44.     At all times material herein each defendant, John Mann, individually and Robert Patterson, individually acted as lenders within the purpose and scope of the lending relationship with Ellipso while acting through Mann Tech but ignoring the corporate formalities.

45.     At all times material herein, a fiduciary relationship existed between Ellipso on the one hand and Mann Tech, John Mann and Robert Patterson and Consulting Management (collectively "Lender") by virtue of the following:

(b)     Mann Tech, John Mann, and Robert Patterson and Consulting Management's role as Lender in the loan transaction;

(c.)     The financial and other advice that the Lender gave to Ellipso concerning the Loan Documents and Memoranda;

(d.)     The Lender's role as trustee over the protection and preservation of the ICOHA Shares;

(e.)     The control and dominion which the Lender exercised over Ellipso's business and Collateral;

(f.)     The confidence reposed by Ellipso in Robert Patterson and John Mann;

(g.)     Robert Patterson's acting on behalf of Ellipso;

(h.)     Robert Patterson's exercise of influence over Ellipso;

(i.)     Ellipso's dependency on Mann Tech, John Mann and Robert Patterson;

(j.)     Lender's advantage over Ellipso because of legal intelligence and knowledge of the overall facts involved; and

(k.)     The relationships in the transactions involved between and among Robert Patterson, John Mann and Ellipso warrant the confidential relationship.

46.     The Lender breached its fiduciary duty to Ellipso by and through its acts, including, *inter alia*:

(a.)     By failing to make full and accurate disclosure of all material facts of which the Lender had superior knowledge and which Lender knew was not known to Ellipso;

(b.)     By providing financial and other advice to Ellipso which was contrary to its interests but which furthered the Lender's own interest;

(c.)     By acting contrary to and assuming positions inconsistent with Ellipso's interest by self-dealing;

(d.)     By taking unfair advantage over Ellipso and by taking substantial gains, benefits and profits from Ellipso at its expense;

(e.)     By exploiting the necessitous circumstances in which the Lender placed Ellipso;

(f.)     By the joint participation of John Mann with Robert Patterson, the disloyal fiduciary, in the common plan to defraud Ellipso; and

(g.)     By failing to act in the utmost good faith towards plaintiffs.

47.     At the time the Lender failed to disclose the facts and breached the fiduciary duties alleged herein, the Lender knew the facts it failed to disclose were unknown to Ellipso and that Ellipso relied upon, trusted, confided in and expected the Lender to act in good faith regarding Ellipso's interests.

48.     The Lender breached its fiduciary duties to Ellipso with the intent to defraud and deceive Ellipso with the intent to further the Lender's own self-interests and with the intent to induce Ellipso to act in the manner herein alleged.

49.     As a proximate result of the breaches alleged herein, Ellipso has sustained substantial compensatory damages estimated at several millions dollars.

50.     As described above, in breaching its fiduciary duties to Ellipso, the Lender acted fraudulently, willfully, maliciously, oppressively, and with callous and intentional disregard of Ellipso's interests and subjected Ellipso to undue hardship, knowing that the Lender's conduct was substantially likely to vex, annoy, and injure Ellipso. Accordingly, Ellipso is entitled to punitive damages.

## COUNT III- LENDER LIABILITY-IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST JOHN MANN, MANN TECH, ROBERT PATTERSON AND CONSULTING MANAGEMENT

51.     Ellipso restates as if realleged herein the allegations contained in paragraphs 1-50.

52.     There were implied in all oral and written agreements between Ellipso and Lender a covenant of good faith and fair dealing whereby the Lender impliedly covenanted that it would in good faith and in exercise of fair dealing deal with Ellipso fairly and honestly and to do nothing to impair, interfere with, hinder or potentially injure Ellipso's rights.

53.     As herein alleged, Lender breached the covenant by their acts and omissions, including, *inter alia*,:

(a.)     Taking advantage of the necessitous circumstances the Lender created by causing language of the loan documents to be drafted solely in Lender's interest and structuring a mechanism which allowed Lender to obtain all of the ICOHA Shares while Lender manipulated the cash flow which was to be made by Ellipso through the Registry Business and Purchase Agreement which were to be utilized to make payments on the loan;

(b.)     Taking control of the ICOHA Shares for its own use and purpose absent any declaration of default.

(c.)     Preventing Ellipso from performing under the loan documents;

(d.)     Evading the spirit of the bargain Ellipso had entered into with Lender;

(e.)    Creating subterfuges and pretenses in creating the Loan Documents in order to obtain the ICOHA Shares and earn fees and charges to which the Lender was not otherwise entitled.

54.    As a proximate result of the acts of the Lender as herein alleged, Ellipso has sustained substantial damages estimated at several millions dollars.

## COUNT IV- LENDER LIABILITY-FRAUDULENT NONDISCLOSURE AGAINST JOHN MANN, MANN TECH, ROBERT PATTERSON AND CONSULTING MANAGEMENT

55.    Ellipso restates as if realleged herein the allegations in paragraphs 1-54.

56.    As herein alleged, by virtue of Lender's superior knowledge of material facts which it knew was unknown to Ellipso, by virtue of the fiduciary relationship between Ellipso and the Lender, and by virtue of the representations made to Ellipso by John Mann and Robert Patterson, the Lender owed Ellipso the duty to disclose the facts that:

(a.)    The Robert Patterson was in fact also the Lender; and

(b.)    The Lender intended to take control of the ICOHA Shares.

57.    The Lender breached its duty to disclose with the intent to defraud and deceive Ellipso and with the intent to induce Ellipso to act in the manner herein alleged.

58.    Plaintiffs were at all times ignorant of the facts the Lender failed to disclose and of the Lender's secret intent to not fully and truthfully disclose all facts regarding its transactions with plaintiffs.

59.    In reasonable reliance on Lenders representations and failures to disclose, plaintiffs took the actions herein alleged. Had plaintiffs known the true facts regarding the Lender's intentions, plaintiffs would not have taken such action.

60.     Ellipso's reliance was justified because of Ellipso's belief that the Lender was dealing fairly, honestly and in good faith; because of the multiple fiduciary relationships with the Lender and because there was nothing that led Ellipso to believe that the Lender would defraud and exploit it.

61.     As a proximate result of the Lender's fraud and deceit and the facts alleged herein, Ellipso has sustained substantial damages estimated at several millions dollars.

62.     In doing the acts herein allege, the Lender acted fraudulently, willfully, maliciously, oppressively, and with callous and intentional disregard of Ellipso's interest, and subjected Ellipso to unjust hardship, knowing that its conduct was substantially likely to vex, annoy, and injure Ellipso. As a result of this conduct, plaintiffs are entitled to punitive damages.

### COUNT V-BREACH OF CONTRACT AGAINST CONSULTING MANAGEMENT, LTD. AND ROBERT PATTERSON

63.     Ellipso restates as if realleged herein the allegations contained at paragraphs 1-62.

64.     As described above, Patterson, on behalf of Consulting Management, Ltd., could not, at time of executing the Agreement with Ellipso, provide the promised legal services to Ellipso because he was disbarred in Virginia and the District of Columbia. Patterson did not provide any of the promised legal services.

65.     Patterson made no efforts to locate funding sources for Ellipso outside of introducing Ellipso to Mann Tech, of which Patterson was a member – a material fact not disclosed to Ellipso.

66. Patterson did not negotiate the Loan Documents in Ellipso's best interests and did not protect and preserve Ellipso's assets due to his conflicting loyalties and fiduciary duties and, as a result, Ellipso has transferred ownership and control of the ICOHA Shares to Mann Tech.

67. Patterson's material violations of the Agreement constitute a breach of contract.

68. Patterson and Consulting Management's breach of contract, as described above, has resulted in the loss to Ellipso of other investments and funding sources, the loss of the ICOHA Shares and additional consequential damages to be proven at trial.

## COUNT VI – FRAUDULENT INDUCEMENT AGAINST ROBERT PATTERSON AND CONSULTING MANAGEMENT, LTD.

69. Ellipso restates as if realleged herein the allegations contained at paragraphs 1-68.

70. At the time of execution of the Consulting Agreement, as described above and as Patterson knew, Patterson could not provide the legal services so promised and did not possess the contacts or experience in the telecommunications and finance fields as promised. Patterson and Consulting Management made these false promises to Ellipso with malice and reckless disregard for Ellipso's rights.

71. Patterson's false description of his experience, industry contacts and legal services induced Ellipso to execute the Consulting Agreement as Ellipso required the telecommunications experience and legal services Patterson promised he could provide.

72. Patterson was aware of Ellipso's business and legal needs and knew that his deceptions would induce Ellipso to execute the Consulting Agreement.

73.     As a result of Patterson and Consulting Management's false representations, Ellipso has, *inter alia*, executed further contracts detrimental to Ellipso's business, irrevocably pledged valuable assets and forewent significant business opportunities.

74.     Patterson and Consulting Management are liable to Ellipso for all compensatory damages flowing from their fraudulent inducement of Ellipso and for punitive damages for their malicious and/or reckless conduct.

## COUNT VII – BREACH OF FIDUCIARY DUTIES AGAINST CONSULTING MANAGEMENT, LTD. AND ROBERT PATTERSON

75.     Ellipso restates as if realleged herein the allegations contained at paragraphs 1-74.

76.     As an agent of Ellipso, Patterson and Consulting Management owed Ellipso a fiduciary duty to act in Ellipso's best interests, to be loyal to Ellipso throughout their business relationship and to not personally benefit to Ellipso's detriment and at its expense.

77.     Patterson and Consulting Management breached their fiduciary duties by, *inter alia,* (1) representing Ellipso in negotiations in connection with the Loan Documents despite that Patterson was a member of Mann Tech and did not disclose to Ellipso his business association with John Mann nor his membership interest in Mann Tech to Ellipso; (2) knowingly negotiating Loan Documents which substantially benefited Mann Tech to the detriment of Ellipso; and (3) advising Ellipso to execute the disadvantageous Purchase Agreement without also advising that Patterson was a principal of ISP.NET.

78.     In addition, Patterson knew Ellipso's full financial condition at the time he negotiated the Loan Documents and used this knowledge to his and Mann Tech's advantage to extract the most favorable loan terms for Mann Tech.

79.     Patterson and Consulting Management breached their fiduciary duties intentionally, with malice and/or reckless indifference for Ellipso's rights.

80.     Patterson and Consulting Management are liable to Ellipso for all compensatory damages flowing from their breach of fiduciary duties and for punitive damages for their malicious and/or reckless conduct.

## COUNT VIII – FRAUD AGAINST MANN TECHNOLOGIES, LLC, JOHN MANN, ROBERT PATTERSON AND CONSULTING MANAGEMENT, LTD.

81.     Ellipso restates as if realleged herein the allegations contained at paragraphs 1-80.

82.     Mann Tech, John Mann, Patterson and Consulting Management intentionally failed to disclose to Ellipso during and after the negotiations in connection with the Loan Documents material facts including that Patterson was a member of Mann Tech in order to induce Ellipso to execute the Loan Documents and that Mann Tech intended to secure for itself ownership and control of the ICOHA Shares.

83.     Had Ellipso known that Patterson was a member of Mann Tech, Ellipso would not have executed the Loan Documents which were drafted heavily in favor of Mann Tech. However, based on what Ellipso believed to be the independent advice of Patterson, Ellipso agreed to execute the Loan Documents.

84.     It was reasonable for Ellipso not to discover Patterson's membership interest in Mann Tech as Ellipso had no reason to know that Patterson and John Mann were business associates and Patterson represented, purportedly in his independent

judgment, that the loan transaction with Mann Tech was the best deal on the best terms Ellipso could obtain given its financial condition.

85.     As a result of the above Defendants' fraud, Ellipso was intentionally deceived into transferring ownership and control of the ICOHA Shares to Mann Tech, thereby depriving Ellipso of an asset presently valued in excess of $1,000,000.

## COUNT IX – CONVERSION AGAINST MANN TECH

86.     Ellipso restates as if realleged herein the allegations contained at paragraphs 1-85.

87.     Mann Tech, through fraud and trick as described above, accelerated the note and wrongfully triggered Mann Tech's right to repossess the ICOHA Shares pledged by Ellipso and thus obtained ownership and possession of the ICOHA Shares from Ellipso.

88.     Mann Tech's exercise and control of the ICOHA Shares seriously interfered with Ellipso's use of the shares and deprived Ellipso from obtaining any benefit therefrom and, indeed, upon information and belief, Mann Tech has sold a portion of the ICOHA Shares for its exclusive use and benefit to the detriment of Ellipso.

89.     Mann Tech intentionally, maliciously and with reckless disregard for Ellipso's rights has possessed and used the ICOHA Shares for its own use and benefit to the detriment of Ellipso, the rightful owner of the ICOHA Shares.

90.     Mann Tech is liable to Ellipso for all compensatory damages flowing from its unlawful conversion of the ICOHA Shares, including payment to Ellipso for the losses it has suffered as a result of its inability to access and use its ICOHA Shares, and for punitive damages for its malicious and/or reckless conduct.

## COUNT X – TROVER/REPLEVIN AGAINST MANN TECH

91.     Ellipso restates as if realleged herein the allegations contained at paragraphs 1-90.

92.     Mann Tech presently possesses ICOHA Shares which it obtained from Ellipso through fraud and trick as described above.

93.     The ICOHA Shares rightfully belong to Ellipso and only came into Mann Tech's possession through the above-described fraud and trick.

94.     The ICOHA Shares should be returned to Ellipso in the same condition as when Mann Tech obtained possession of them.

## COUNT XI – CIVIL CONSPIRACY AGAINST JOHN MANN, MANN TECHNOLOGIES, LLC, ROBERT PATTERSON, AND CONSULTING MANAGEMENT, LTD.

95.     Ellipso restates as if realleged herein the allegations contained at paragraphs 1-94.

96.     Defendants Mann Tech, John Mann, Robert Patterson and Consultant Management, pursuant to an actual or tacit agreement and/or understanding, conspired to fraudulently obtain the ICOHA Shares, Ellipso's most valuable asset.

97.     Defendants deceived Ellipso into executing the Loan Documents on terms extremely favorable to Mann Tech by *inter alia* intentionally failing to disclose Patterson's business affiliation with John Mann and membership interest in Mann Tech as described above.

98.     Defendants' conspiracy injured Ellipso as Ellipso, as described above, no longer possesses or controls the ICOHA Shares.

99.     Defendants are liable to Ellipso for all compensatory damages flowing from their conspiracy to fraudulently obtain the ICOHA Shares.

## COUNT XII – BREACH OF CONTRACT AGAINST REGISTRY

100.    Ellipso restates as if realleged herein the allegations contained at paragraphs 1-99.

101.    Pursuant to the Memorandum and Amended Memorandum, Registry was obligated to pay certain fees to Ellipso for the exclusive right to create and market the Registry Business

102.    The Registry has continually failed to make several required payments and never provided the additional funding to develop registry products as it had contractually promised.

103.    Patterson and Mann failed to disclose that Patterson is an affiliate of the Registry. Withholding of material information and the Registry's failure to make all the required payments in the Memorandum and/or Amended Memorandum are material breaches thereof.

104.    As a result of Registry's breaches, Ellipso is relieved of fulfilling any of its obligations under the Memorandum and Amended Memorandum and the same are, and should be declared to be, void and of no further force and effect.

## COUNT XIII – VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT AGAINST MANN TECH, MANAGEMENT CONSULTING, ROBERT PATTERSON AND JOHN MANN

105.    Ellipso restates as if realleged herein the allegations contained at paragraphs 1-104.

106.     It is unlawful under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, to engage in a pattern of transmitting fraudulent representations over the interstate wires for the purpose of deriving income.

107.     As more specifically alleged herein, John Mann and Patterson formed Mann Tech for the purpose of their scheme to fraudulently deprive Ellipso of its ICOHA Shares.

108.     As described above, in or about December 2003 and January 2004, and thereafter, in a continuity of activity, John Mann, Patterson, Mann Tech and Management Consulting (the "RICO Defendants") transmitted false statements via telephone, facsimile and electronic mail ("e-mail") to Ellipso in violation of 18 U.S.C. §§ 1341 and 1343. In none of these wire transmissions did the RICO Defendants ever advise that Patterson was a business affiliate of John Mann or that Patterson was a member of Mann Tech or the Registry.

109.     As described above, the RICO Defendants knowingly and intentionally composed the above-described scheme to defraud Ellipso, did so with an intent to defraud Ellipso and Ellipso reasonably relied on the presumed veracity of the RICO Defendants' representations, including its omission that Patterson was a member of Mann Tech and business associate of John Mann, in its decision to enter into the various transactions with the RICO Defendants.

110.     Ellipso's business has been harmed in that it has not had the benefit of use of its ICOHA Shares, thus foregoing the ability to, *inter alia*, sell the ICOHA Shares at its market high or use the ICOHA Shares as security for legitimate financing deals.

111.    The RICO Defendants are liable to Ellipso for three times the damages sustained by Ellipso as a result of the RICO Defendants' violation of RICO.


**WHEREFORE**, Ellipso respectfully requests this Court enter a judgment against John Mann, Patterson , Mann Tech and Consulting Management , Ltd.

A.    Awarding Ellipso compensatory and punitive damages in amounts to be determined at trial on Counts I – XIII;

B.    Rescinding and/or declaring null and void the Consulting Agreement, Loan Documents, Amendment, Memorandum and Amended Memorandum; and

C.    Awarding Ellipso all such further relief this Court deems fair and just.

## DEMAND FOR JURY

Ellipso demands a trial by jury on all claims so triable.



Respectfully submitted,

**LEFTWICH & LUDAWAY, LLC**

Mark S. Guberman (#442683)
Suite 1000
Washington, DC  20005
(202) 434-9109 (voic
(202) 783-3420 (facsimile)

*Counsel for Ellipso, Inc.*