IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC. )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>JOHN B. MANN, et al. )<br>)<br>)<br>    Defendants. )<br>_____) | Civil Action No.: 05-01186 (RCL) |

### PLAINTIFF'S MOTION FOR PRELIMINARY
### INJUNCTION AND MEMORANDUM IN SUPPORT THEREOF

Pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65.1, Plaintiff Ellipso, Inc. ("Ellipso") hereby requests that this Court preliminarily enjoin Defendants John Mann, Robert Patterson and Mann Technologies, Inc. (the "Mann Defendants") from trading, transferring or removing from the jurisdiction securities and cash wrongfully in the Mann Defendants' possession, custody and/or control. In support of the instant Motion, Ellipso states as follows:

### Statement of Facts

1.  In or about December 2003, Ellipso entered into negotiations with Mann Technologies, LLC ("Mann Tech"), then purportedly a Nevada corporation, and having a principal place of business in Virginia, and John B. Mann ('Mann"), one of the founding members of Mann Tech, with respect to a loan Mann Tech proposed to make to Ellipso. Castiel Affidavit at ¶ 3.

2.  Robert B. Patterson ("Patterson"), a business consultant for Ellipso since October 2002, was hired to identify debt and/or investor financing on favorable rates and

terms and to protect Ellipso's intellectual property and assets. In this role, Patterson introduced Ellipso to Mann Tech and John Mann and conducted much of the negotiations with Mann Tech and Mann on behalf of Ellipso. Id. at ¶ 4.

3. Although Patterson owed Ellipso, as its business consultant, fiduciary duties of loyalty and to act in Ellipso's best interests and not engage in self-dealing, Patterson failed to disclose to Ellipso that Patterson was himself a member of Mann Tech. At no time prior to, during, or after the negotiations did Patterson, Mann or Mann Tech disclose to Ellipso the material fact that Patterson was a member of Mann Tech and, thus, had conflicting fiduciary duties. Id. at ¶ 5.

4. In fact, both Mann and Patterson were incorporators of Mann Tech and ignored the separate corporate existence of Mann Tech by commencing business without completing the organization of Mann Tech or any of the corporate formalities. Indeed, Mann and Patterson did not incorporate Mann Tech until February 25, 2004, nearly a month after they had entered the collateralized loan agreement with Ellipso on January 30, 2004. Moreover, Mann Tech never registered in Virginia, or the District of Columbia as a foreign corporation, jurisdictions where it conducted business. Id. at ¶ 6.

5. Having gained full knowledge of proprietary and confidential information regarding Ellipso and its then precarious financial condition in and about the last quarter of 2003 and of Ellipso's desperate and urgent need for financing, Patterson "negotiated" a loan agreement with Mann Tech, Patterson's own company, which provided Ellipso a loan of $90,000 and which was secured by over 492,000 shares of publicly traded ICO Global Communications (Holding) Ltd. ("ICOHA Shares") stock. See "Loan Documents," true and correct copies of which are attached to the Castiel Affidavit at

Exhibit 1. As of December 2003, the ICOHA Shares were Ellipso's sole asset of any significant value. Id. at ¶ 7.

6. The Loan Documents contained terms and conditions extremely favorable to Mann Tech, and onerous and unconscionable to Ellipso. Patterson presented the loan as Ellipso's only realistic financing option. Relying on the advice and counsel of Patterson, Ellipso's financial consultant, and under severe financial duress, Ellipso executed the Loan Documents in January 2004. Id. at ¶ 8.

7. The Loan Documents required Ellipso to pledge all its ICOHA Shares as collateral for the loan. Although the Loan Documents only required Ellipso to pledge its ICOHA Shares as collateral, Patterson later falsely advised Ellipso that the Loan Documents required that title and possession to the ICOHA Shares had to be transferred to and in the sole name of Mann Tech. Thus, on or about August 12, 2004, UBS Financial Services in Washington, DC deposited the ICOHA Shares into Mann Tech's account pursuant to Patterson's instructions. As a result, Ellipso lost all ownership and control of its major asset and Mann Tech wrongfully obtained full title and control of the ICOHA Shares. Id. at ¶ 9.

8. Despite the fact that Mann Tech never has provided Ellipso notice of a default as required under the Loan Documents,, and despite that the entire loan transaction was fraudulent and is unenforceable, Mann Tech wrongfully exercised the power of sale provision in the Loan Documents without notice to Ellipso and, within the past seven months, has sold approximately 200,000 of the ICOHA Shares. Id. at ¶ 10.

9. The increasing value of the ICOHA Shares within the past seven months underscores the urgency of protecting the remaining unsold ICOHA Shares. The ICOHA

Shares recently have traded at or above $5.00. Thus, even assuming the loan transaction was not riddled with fraud, the principal and any accrued interest of the $90,000.00 Mann Tech loan has been fully repaid. Furthermore, Mann Tech, Mann and Patterson, in exercising the power of sale, already have illegally converted at least $1,000,000.00 of Ellipso's assets and has the immediate power to sell and convert the remaining ICOHA Shares. Id. at ¶ 11.

10. The market value of the ICOHA Shares pledged to Mann Tech as of August 10, 2005 exceeds $2,500,00.00. Id. at ¶ 12.

11. A preliminary injunction is vital and essential to ensure that the remaining collateral is protected while Ellipso's claims are adjudicated and so that Ellipso can recover the ICOHA Shares from Mann Tech, a foreign corporation, no longer authorized to conduct business, John Mann, a Virginia resident, and Robert Patterson, a disbarred Virginia and District of Columbia attorney and a Virginia resident. Id. at ¶ 13.

12. Mann Tech presently conducts no business and, aside from the ICOHA Shares and cash proceeds from the sale of a portion of the ICOHA Shares, has no other assets of substantial value which could be used to satisfy a judgment in Ellipso's favor on its claim for rescission. Id. at ¶ 14.

### Argument

A preliminary injunction is available to Ellipso in this case which seeks, *inter alia*, equitable rescission of the Loan Documents and a return of the ICOHA Shares of which the TRO Defendants wrongfully took possession, title and control  Deckert v. Independence Shares Corp., 311 U.S. 282, 290 (1940) (upholding preliminary injunction to freeze defendant's assets to ensure availability of remedy on rescission claim). In

4

addressing Ellipso's request for a preliminary injunction, the Court should consider following factors:

1. Absent injunctive relief, Ellipso will be irreparably harmed;

2. Ellipso is likely to prevail on the merits of its claims;

3. The harm to Ellipso if a preliminary injunction is not granted is greater than any possible harm to the Mann Defendants if an injunction is entered; and

4. An injunction is in the public interest.

National Wildlife Fed. v. Burford, 835 F.2d 305, 333 (D.C. Cir. 1987). No one factor is determinative and the Court should balance Ellipso's showings among the four factors on a sliding scale. Mova Pharmaceutical Corp. v. Shalala, 140 F.3d 1060, 1066 (D.C. Cir. 1998).

### A. Ellipso Will Suffer Irreparable Harm Absent Injunctive Relief

The Mann Defendants presently have title to and possess over 200,000 ICOHA Shares which rightfully belong to Ellipso as well as the cash proceeds from the unlawful sale of approximately 200,000 shares of the original collateralized ICOHA Shares. Ellipso's ability to ever recover the ICOHA Shares and cash proceeds from the Mann Defendants pursuant to the rescission count is doubtful absent injunctive relief.

Mann Tech was a Nevada corporation which no longer is in good standing and never has been authorized to conduct business in Virginia, the location of its principal office, or the District of Columbia. Indeed, although Mann Tech executed the Loan Documents in January 2004, Mann and Patterson did not formally form Mann Tech until February 2004. Mann Tech has no business operations and was founded solely for

5

purposes of defrauding Ellipso out of its valuable ICOHA Shares. Moreover, Mann Tech's only significant assets are Ellipso's ICOHA Shares and the cash proceeds from its sale of approximately 200,000 ICOHA Shares.

Mann and Patterson, who jointly own Mann Tech, both are Virginia residents. In addition, Patterson has been disbarred in the District of Columbia and Virginia and has served time in prison for, among other crimes, theft of Federal Government property. *See* Castiel Affidavit at ¶ 13. Patterson thus has demonstrated that he has a predisposition for theft.

Given the above, Mann and Patterson, through Mann Tech, are sure to transfer the ICOHA Shares and cash proceeds to themselves. Additionally, there is a serious question as to whether the stock can be held in an account by a corporation whose charter is repealed or forfeited. Generally, once a corporate charter has been repealed or forfeited the corporation becomes non-existent, all powers granted to the corporation are inoperative, null and void and the corporation loses all power to act in its own name. Absent injunctive relief, therefore, Ellipso will have little likelihood of recovering its assets from either individual. Thus, Ellipso will be irreparably harmed in the absence of the injunctive relief it requests herein.

Under these circumstances, it is well established that preliminary relief is warranted. Deckert, 311 at 290 (upholding preliminary injunction to preserve assets subject to claim for rescission); Foltz v. U.S. News & World Report, 760 F.2d 1300, 1309 (D.C. Cir. 1985) (acknowledging that injunctive relief is appropriate to freeze *status quo* on a claim for equitable relief); Elliott v. Kiesewetter, 98 F.3d 47, 58 (3d Cir. 1996) (upholding preliminary injunction to freeze assets which were subject of equitable

claims); e.g. Federal Sav. & Loan Ins. Corp. v. Dixon, 835 F.2d 554 (5th Cir. 1987); FTC v. H. N. Singer, Inc., 668 F.2d 1107 (9th Cir. 1982); Fairview Machine & Tool Co. v. Oakbrook Int'l, Inc., 77 F. Supp. 2d 199 (D. Mass. 1999); Reebok Int'l Ltd. v. Marnatech Enterprises, Inc., 737 F. Supp. 1521 (S.D. Cal. 1990).

### B.    Ellipso Is Likely to Prevail on the Merits

Ellipso likely will prevail on its claim for rescission of the Loan Documents. Not only did the Mann Defendants, with intent, fraudulently induce Ellipso to execute the Loan Documents by knowingly failing to disclose to Ellipso the material fact that Patterson had a conflict of interest, but also the Mann Defendants knew that Ellipso was justifiably and actually relying on Patterson to advise and counsel with respect to financing options,. The Mann Defendants took advantage of Ellipso's position and directly caused substantial monetary damages to Ellipso.

Had Ellipso been aware of Patterson's duplicity, or received competent advice not tainted by Patterson's conflicting duties, Ellipso would not have executed the Loan Documents and still would be in possession of all its ICOHA Shares. The Mann Defendants actively concealed Patterson's dual-role from Ellipso for they knew that Ellipso would have been more vigilant, sought independent counsel and not agreed to the terms and conditions of the deal . Rescission, therefore, is warranted for the Mann Defendant's fraudulent inducement. Giotis v. Lampkin, 145 A.2d 779 (D.C. 1958) (holding that rescission is available remedy for fraudulent inducement of contract).

In addition, the terms of the Loan Documents and the manner in which it was negotiated demonstrate that the Loan Documents constitute an unconscionable contract. See Urban Investments, Inc. v. Branham, 464 A.2d 93 (D.C. 1983) (holding that a

7

contract is unconscionable when its terms are decidedly favorable to one party and that party had a superior negotiating position). To secure a $90,000 loan the Loan Documents required Ellipso to pledge 492,000 ICOHA Shares whose then present market value exceeded $250,000 and now exceeds $2.5 million. Worse, Patterson, on the false premise that the Loan Documents so required, prevailed upon Ellipso to formally transfer ownership and control of the ICOHA Shares to Mann Tech. Moreover, Patterson, and *a fortiori* Mann Tech, knew of Ellipso's precarious financial condition and that Mann Tech had within its power to and, in fact, did disregard its duty as lender, and its duty of good faith and fair dealing. Under these facts, rescission is an appropriate remedy and thus Ellipso is likely to prevail on the merits. Id.

### C. The Harm to Ellipso If Injunctive Relief is Denied Is Greater Than the Potential Harm to the Mann Defendants if Injunctive Relief is Granted

As discussed above, absent the preliminary relief requested herein, Ellipso will be denied a source to recover its lost property. On the other hand, the Mann Defendants will not be harmed by the entry of a preliminary injunction as the ICOHA Shares will remain in their exclusive, albeit wrongful, possession and their value over the past seven months has increased steadily.

### D. Injunctive Relief Is In the Public Interest

It is in the public interest to prevent a foreign corporation and its foreign owners from defrauding a company lawfully operating in the District of Columbia.

### Conclusion

Based upon the foregoing, Ellipso, Inc. respectfully requests that this Court grant the preliminary relief requested herein and preclude the Mann Defendants from selling,

transferring or removing from the jurisdiction the remaining ICOHA Shares and the cash proceeds from their previous sale of ICOHA Shares.

Respectfully submitted,

**LEFTWICH & LUDAWAY, LLC**

_____/s/_____
Mark S. Guberman (#442683)
1400 K Street, NW
Suite 1000
Washington, DC 20005
(202) 434-9109 (voice)
(202) 783-3420 (facsimile)

*Counsel for Ellipso, Inc.*

## CERTIFICATE OF SERVICE

I certify that the foregoing Motion for Preliminary Injunction and Memorandum in Support thereof was served via hand delivery on the following parties and/or counsel of record on this 16th day of August, 2005:

JOHN B. MANN
9330 Harts Mill Road
Warrenton, VA 20186

MANN TECHNOLOGIES, LLC
9330 Harts Mill Road
Warrenton, VA 20186

ROBERT B. PATTERSON
PO Box 2051
Middleburg, VA 20118

CONSULTING MANAGEMENT, LTD.
PO Box 2051
Middleburg, VA 20118

THE REGISTRY SOLUTIONS CO.
9330 Harts Mill Road
Warrenton, VA 20186

/s/
Mark S. Guberman

Counsel for Ellipso, Inc.