IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC. | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Case No.: 05-01186 |
| JOHN B. MANN, et al. | ) ) ) |
| Defendants. | ) ) |

### AFFIDAVIT OF DAVID CASTIEL

1. I am over the age of eighteen and otherwise competent to testify on all matters contained herein.

2. At all relevant times I have been the Chief Executive Officer of Ellipso, Inc. and, as such, have personal knowledge of all facts contained herein.

3. In or about December 2003, Ellipso entered into negotiations with Mann Technologies, LLC ("Mann Tech"), then purportedly a Nevada corporation, and having a principal place of business in Virginia, and John B. Mann ("Mann"), one of the founding members of Mann Tech, with respect to a loan Mann Tech proposed to make to Ellipso.

4. Robert B. Patterson ("Patterson"), a business consultant for Ellipso since October 2002, initially was hired to identify debt and/or investor financing on favorable rates and terms and to protect Ellipso's intellectual property and assets. In this role, Patterson introduced Ellipso to Mann Tech and John Mann and conducted much of the negotiations with Mann Tech and Mann on behalf of Ellipso.

5. Although Patterson owed Ellipso, as its business consultant, fiduciary duties of loyalty and to act in Ellipso's best interests and not engage in self-dealing,

Patterson failed to disclose to Ellipso that Patterson was himself a member of Mann Tech. At no time prior to, during, or after the negotiations did Patterson, Mann or Mann Tech disclose to Ellipso the material fact that Patterson was a member of Mann Tech and, thus, had conflicting fiduciary duties.

6. In fact, both Mann and Patterson were incorporators of Mann Tech and ignored the separate corporate existence of Mann Tech by commencing business without completing the organization of Mann Tech or any of the corporate formalities. Indeed, Mann and Patterson did not incorporate Mann Tech until February 25, 2004, nearly a month after they had entered the collateralized loan agreement with Ellipso on January 30, 2004. Moreover, Mann Tech never registered in Virginia, or the District of Columbia as a foreign corporation, jurisdictions where it conducted business.

7. Having gained full knowledge of proprietary and confidential information regarding Ellipso and its then precarious financial condition in and about the last quarter of 2003 and of Ellipso's desperate and urgent need for financing, Patterson "negotiated" a loan agreement with Mann Tech, Patterson's own company, which provided Ellipso a loan of $90,000 and which was secured by over 492,000 shares of publicly traded ICO Global Communications (Holding) Ltd. ("ICOHA Shares") stock. *See* "Loan Documents," true and correct copies of which are attached hereto at Exhibit 1. As of December 2003, and as Patterson knew, the ICOHA Shares were Ellipso's sole asset of any significant value.

8. The Loan Documents contained terms and conditions extremely favorable to Mann Tech, and onerous and unconscionable to Ellipso. Patterson presented the loan as Ellipso's only realistic financing option. Relying on the advice and counsel of

Patterson, Ellipso's financial consultant, and under severe financial duress, Ellipso executed the Loan Documents in January 2004.

9. The Loan Documents required Ellipso to pledge all its ICOHA Shares as collateral for the loan. Although the Loan Documents only required Ellipso to <u>pledge</u> its ICOHA Shares as collateral, Patterson later falsely advised Ellipso that the Loan Documents required that title and possession to the ICOHA Shares had to be transferred to and in the sole name of Mann Tech. Thus, on or about August 12, 2004, UBS Financial Services in Washington, DC deposited the ICOHA Shares into Mann Tech's account pursuant to Patterson's instructions. As a result, Ellipso lost all ownership and control of its major asset and Mann Tech wrongfully obtained full title and control of the ICOHA Shares.

10. Despite the fact that Mann Tech never has provided Ellipso notice of a default as required under the Loan Documents,, and despite that the entire loan transaction was riddled with fraud, Mann Tech wrongfully exercised the power of sale provision in the Loan Documents without notice to Ellipso and, within the past seven months, has sold approximately 200,000 of the ICOHA Shares.

11. The increasing value of the ICOHA Shares within the past seven months underscores the urgency of protecting the remaining unsold ICOHA Shares. The ICOHA Shares recently have traded at or above $5.00. Thus, even assuming the loan transaction was not a fraudulent scheme, the principal and any accrued interest of the $90,000.00 Mann Tech loan has been fully repaid and then some. Indeed, Mann Tech, Mann and Patterson, in exercising the power of sale, already have illegally converted at least

3

$1,000,000.00 of Ellipso's assets and have the immediate power to sell and convert the remaining ICOHA Shares.

12.  The market value of the ICOHA Shares pledged to Mann Tech as of August 10, 2005 exceeds $2,500,00.00.

13.  A preliminary injunction is vital and essential to ensure that the remaining collateral is protected while Ellipso's claims are adjudicated and so that Ellipso can recover the ICOHA Shares from Mann Tech, a foreign corporation which no longer is authorized to conduct business; John Mann, a Virginia resident; and Robert Patterson, a disbarred Virginia and District of Columbia attorney and a Virginia resident. In fact, Patterson has served time in federal prison for, among other crimes, theft of government property. *See* Virginia State Bar Docket No.02-000-1882

14.  Mann Tech presently conducts no business and, aside from the ICOHA Shares and cash proceeds from the sale of a portion of the ICOHA Shares, has no other assets of substantial value which could be used to satisfy a judgment in Ellipso's favor on its claim for rescission.

I declare, pursuant to 28 U.S.C. § 1746 and under the penalty of perjury, that the foregoing is true and correct.

August 12, 2005
_____
Date

_____
David Castiel
CEO
Ellipso, Inc.

4