**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELLIPSO, INC.** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 05-01186 (RCL) |
| ) | |
| **JOHN B. MANN, et al.** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT**
**OF ITS MOTION FOR PRELIMINARY INJUNCTION**

Ellipso, Inc. ("Ellipso") respectfully submits the instant reply to Defendant John Mann and Mann Technologies, LLC's (the "Defendants")[1] opposition to Ellipso's motion for preliminary injunction and in further support thereof states as follows:

**Preliminary Statement**

Rather than address the issues relevant to Ellipso's motion for preliminary relief respecting the Defendants' fraudulent and unconscionable loan agreement with Ellipso, Defendants dedicate an inordinate amount of ink to a completely separate agreement between Ellipso and their co-defendant The Registry Solutions Co. ("Registry Solutions").[2] The alleged ownership arrangement of Registry Solutions and the contractual arrangement between Registry Solutions and Ellipso – which itself is

---

[1] Although Ellipso, in its motion, requested that Defendant Robert Patterson also be enjoined, Patterson, to date, has successfully avoided personal service and has not otherwise agreed to service via mail delivery. Accordingly, while Ellipso continues to effectuate service on Patterson, it must withdraw its motion for preliminary injunction with respect to Patterson. Ellipso, therefore, seeks preliminary relief only against Defendants John Mann and Mann Technologies, LLC.

[2] Defendants' focus on Registry Solutions is doubly perplexing given that, in a separate motion, Defendants have requested that the claims against Registry Solutions be dismissed because those claims are subject to a contractual arbitration clause.

voidable – simply is not relevant to the matter at hand. Rather, all that is relevant is the loan agreement between Mann Technologies and Ellipso. Upon review of this agreement, the circumstances surrounding its execution and the applicable case law, the Court should grant Ellipso the requested preliminary relief and preclude the Defendants from selling, transferring or otherwise removing from the jurisdiction the loan collateral.

## Argument

### 1. Ellipso Is Likely to Succeed on the Merits of Its Rescission Claim

Defendants contend that Ellipso is not likely to succeed on the merits because: (1) the loam terms negotiated by Ellipso with Mann Technologies are the same terms Ellipso previously negotiated with a different party and (2) Ellipso knew of co-defendant Robert Patterson's ownership interest in Mann Technologies. Neither claim is correct or supported in the record.

First, Patterson, on behalf of Ellipso, negotiated the terms of the loan agreement with Mann Technologies, not Ellipso's owner, David Castiel. Patterson also negotiated the prior, unconsummated loan agreement between Ellispo and Argyll Equities ("Argyll"). The differences between the two agreements, on their face, are striking.

For instance, the proposed deal with Argyll only required Ellipso to pledge 250,000 of its ICO Global Communications (Holdings) Ltd ("ICOHA Shares") stock as collateral whereas the loan agreement with Mann Technologies required Ellipso to pledge its <u>entire</u> holdings in ICOHA Shares. *Compare* Exhibit 1 to Motion for Preliminary Injunction *to* Exhibit A attached hereto. In addition, unlike the loan agreement involving Patterson's company Mann Technologies, the proposed agreement with Argyll did not include a broker's fee payable to Patterson. *Id*. These two differences alone demonstrate

how Patterson, despite his fiduciary and contractual obligations to Ellipso, crafted the loan documents to benefit himself and his and John Mann's company, Mann Technologies.[3] [4] Moreover, the terms of default, without notice or opportunity to cure, smack of an environment for creating a contract of adhesion and an unequal bargaining position.

Second, although Defendants make much of Ellipso's alleged knowledge of Patterson's dual and conflicting loyalties as of September 2004 (pursuant to a jointly executed stock transfer), Defendants are unable to rebut the fact that, at the time of the negotiation and execution of the loan agreement and thereafter while Patterson continued to provide advice and counsel to Ellipso, Ellipso was unaware that Patterson was an owner of Mann Technologies and owed both Ellipso and Mann Technologies conflicting fiduciary duties. All Defendants state is that Patterson's ownership interest was common knowledge.

The Court may ask why there is no affidavit from Patterson if his conflicting roles were as commonly known to all parties as Defendants so claim. Moreover, given that Patterson once was a practicing attorney with several major firms, and John Mann

---

[3]   Defendants' claim that because David Castiel, Ellipso's CEO, is a well-educated businessman, he could not have been duped into executing an unconscionable agreement by Defendants and Patterson is, unfortunately, incorrect. Ellipso, through Castiel, relied on Patterson's advise and counsel to identify funding sources, negotiate the terms of financing arrangements and protect Ellipso's few substantial assets specifically because Ellipso, at the time, was in dire financial straits and such tasks were not Ellipso's strengths or expertise. Given that Patterson, a Harvard-trained attorney, supposedly was operating in Ellipso's best interests and had no disclosed conflicts, it was inherently reasonable for Ellipso to rely on Patterson's representation respecting the alleged fairness of the loan agreement.

[4]   Defendants' claim that because David Castiel, Ellipso's CEO, is a well-educated businessman, he could not have been duped into executing an unconscionable agreement by Defendants and Patterson is, unfortunately, incorrect. Ellipso, through Castiel, relied on Patterson's advice and counsel to identify funding sources and negotiate the terms of financing arrangements and protect Ellipso's precious few assets, specifically because Ellipso, at the time, was in dire financial straits and such tasks were not Ellipso's strengths or expertise. Given that Patterson, a Harvard-trained attorney, supposedly was operating in Ellipso's best interests and had no disclosed conflicts, it was inherently reasonable for Ellipso to rely on Patterson's representation respecting the alleged requirements of and fairness of the loan agreement.

obviously is a sophisticated business man, the Court would expect some memorialization of Patterson's conflicting roles and Ellipso's acknowledgement thereof.  There is no such written document because, as Defendants well know, no disclosure of Patterson's dual role was made to Ellipso.  Accordingly, for the reasons expressed in Ellipso's motion for preliminary injunction, it is likely to succeed on the merits of its claim for rescission and injunctive relief is warranted.

### B. Ellipso Will Suffer Irreparable Harm Absent Injunctive Relief

Although Defendants argue that Ellipso can be "adequately compensated in money damages" and thus no injunction should issue, *see* Defendants' Opposition at 4, Defendants' argument misses the mark.  The great weight of authority, which Defendants completely ignore, holds that preliminary relief always is available on an equitable claim to preserve a defendant's assets.  Deckert v. Independence Shares Corp., 311 U.S. 282, 290 (1940) (upholding preliminary injunction to freeze defendant's assets to ensure availability of remedy on rescission claim); Foltz v. U.S. News & World Report, 760 F.2d 1300, 1309 (D.C. Cir. 1985) (acknowledging that injunctive relief is appropriate to freeze *status quo* on a claim for equitable relief); Elliott v. Kiesewetter, 98 F.3d 47, 58 (3d Cir. 1996) (upholding preliminary injunction to freeze assets which were subject of equitable claims); e.g. Federal Sav. & Loan Ins. Corp. v. Dixon, 835 F.2d 554 (5th Cir. 1987); FTC v. H. N. Singer, Inc., 668 F.2d 1107 (9th Cir. 1982); Fairview Machine & Tool Co. v. Oakbrook Int'l, Inc., 77 F. Supp. 2d 199 (D. Mass. 1999); Reebok Int'l Ltd. v. Marnatech Enterprises, Inc., 737 F. Supp. 1521 (S.D. Cal. 1990).

Here, given the circumstances, especially considering Patterson's extensive legal training and experience and that he is a disbarred attorney once convicted of theft of

Government property and that Mann Technologies, despite John Mann's insincere assurances, has been operating without authorization in <u>any</u> jurisdiction, preservation of Mann Technologies only known assets – the ICOHA Shares and proceeds therefrom which Defendants fraudulently obtained from Ellipso – is warranted.  Accordingly, injunctive relief should be granted.

        C.        **<u>The Balance of Hardships Favors Ellipso</u>**

Defendants argue that the balance of hardships favors them because Ellipso has breached a separate agreement with Registry Solutions.  That transaction, however, is not at issue.

Nor are Mann Technologies alleged efforts to implement 881 telephony service which it claims will be harmed if the ICOHA Shares are frozen.  Of course, Mann Technologies is not a party to the Registry Solutions transaction with Ellipso and Mann Technologies has <u>no</u> authority under the loan agreement to implement 881 telephony services or otherwise participate in Ellipso's 881 business which is exclusively the purview of Ellipso.

Thus, it remains undisputed that the only party which will suffer any hardship is Ellipso if it is not granted preliminary relief.  Mann Technologies' alleged hardship is illusory for it has no authority to conduct 881 telephony business and, given that it only now seeks access to the ICOHA Shares and proceeds therefrom after having been placed on notice of the instant litigation, fully demonstrates the need for preservation of the *status quo*.

**Conclusion**

Based upon the foregoing, Ellipso, Inc. respectfully requests that this Court grant the preliminary relief requested herein and preclude Defendants from selling, transferring or removing from the jurisdiction the remaining ICOHA Shares and the cash proceeds from their previous sale of ICOHA Shares.

                                              Respectfully submitted,

                                              **LEFTWICH & LUDAWAY, LLC**

                                              _____/s/_____
Mark S. Guberman (#442683)
1400 K Street, NW
Suite 1000
Washington, DC  20005
(202) 434-9109 (voice)
(202) 783-3420 (facsimile)

*Counsel for Ellipso, Inc.*