IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC.,<br><br>                Plaintiff,<br><br>        v.<br><br>JOHN B. MANN et al.,<br>                Defendants. | Case No. 05cv001186   (RCL) |

**REPLY
OF DEFENDANT THE REGISTRY SOLUTIONS COMPANY
TO THE RESPONSE OF THE PLAINTIFF TO REGISTRY'S MOTION TO DISMISS**

Comes now Defendant The Registry Solutions Co. ("TRSC"), through its undersigned counsel, and hereby files this Reply to the Opposition of the Plaintiff.

Plaintiff Ellipso, Inc., in their objection to the motion to dismiss, does not challenge the validity of the proposition (supported by extensive case law) that all claims against TRSC, and counterclaims, must be arbitrated.

The basic thrust of Plaintiff's Opposition to Defendants' Motion to Dismiss (erroneously captioned "Plaintiff's Response") is Ellipso's incorrect assertion that corporate formalities were not followed by Defendants and that TRSC, specifically, is a non-entity not entitled to the benefit of arbitration. There is no case law to support this proposition. TRSC is validly incorporated in the Federation of St. Kitts and Nevis and has been a valid corporation at all times pertinent to this case.[1] Even if this were not the case, the issue is one which belongs in arbitration.

Instead of legal argument, therefore, Plaintiff falls back on its argument grounded in

---

[1] Similarly, Mann Technologies, L.L.C. was validly incorporated in the State of Nevada at all times pertinent to this case. Its corporate charter inadvertently expired on March 1, 2005. But it has been retroactively reinstated in Nevada and is current at this time.

1

equity that corporate formalities were not followed. However, Ellipso has allowed its own qualification to do business in the District of Columbia to lapse.[2] Given this fact, it appears then that the Plaintiff itself comes with unclean hands to ask this Honorable Court for equitable relief.

Ellipso argues that the corporate Defendants (Mann Technologies and TRSC) commingled funds and resources thereby rendering all counts of its Complaint against them "inextricably intertwined". Once again, no law is cited to support this proposition. What this argument ignores is that Count XII of the Complaint (naming TRSC as a defendant) has nothing to do with the subject of the requested injunction against Mann Technologies, L.L.C., namely, the shares of stock which provided collateral for the loan to Ellipso. Count XII is a separate issue which should be dismissed and dealt with through arbitration as previously agreed upon by the parties because this Court has no jurisdiction over the claims against TRSC. Plaintiff quotes, without attribution, Rule 20 which involves permissive joinder of parties in a lawsuit. But here we have a jurisdictional question of law which cannot be superceded by Rule even if properly invoked. Any subsequent litigation before this Court will be simplified by the resolution of some issues through private arbitration.

Ellipso raises again the issue of Defendant Patterson's "conflicting fiduciary duties" as a reason to ignore the contract between Ellipso and TRSC. In support of this Ellipso contends: "Mann Tech…argues that Ellipso knew of Robert Patterson's conflicting fiduciary duties…"(Plaintiff's Response, at 2.) This is not Defendant's argument or his terminology and is a mischaracterization of Defendant's Declaration. Read correctly, the Declaration of John Mann (¶ 14) simply provides

---

[2] Ellipso alleges that it "is a Delaware corporation doing business in the District of Columbia [with its principal place of business in the District of Columbia]. Complaint ¶ 1. The files of the District of Columbia Department of Consumer and Regulatory Affairs, however, show that Ellipso's qualification in Washington, D.C. is REVOKED. *See* Attachment.

background showing that Ellipso (through Dr. Castiel) <u>knew</u> about Patterson's involvement with Mann Technologies and TRSC. At any rate, even assuming arguendo that fiduciary duty or dual representation is an issue in this case, there is no reason an arbitrator cannot hear these along with any other arguments. Plaintiff also states (Response, at 2) that Mann Technologies and TRSC commingled funds. Nowhere does the record reflect this. Instead, it is clear that Mann Technologies and TRSC each had separate contractual arrangements with Ellipso.

Ellipso's claims that it did not know of Patterson's involvement in Mann Technologies, even it did matter, ring hollow. As seen in the joint sale agreement between Ellipso and Mann Technologies (Attachment, Declaration of John B. Mann), <u>Patterson signed on behalf of Mann Technologies, Inc</u>. in September 2004. At this point, and no later, Patterson's involvement in Mann Technologies became known to Elipso. When Dr. Castiel signed the joint sale agreement in September 2004 Ellipso had the opportunity to protest Patterson's involvement but did not.

Ellipso's transfer of collateral to Mann Technologies in September 2004, in addition, operated as a ratification of the original agreement <u>and</u> a release of Ellipso from its default of the loan agreement. The money Ellipso received had been spent and Ellipso was in obvious default, having made <u>no</u> payments whatsoever under the loan agreement. Ellipso clearly wished to induce Mann Technologies to take the collateral that had been pledged and thereby be released from its default. When the stock later declined to what would soon be a $0.02 per share (or $10,000.00 total) value, as opposed to the received loan value of $90,000.00, Dr. Castiel, speaking for Ellipso, said, "a deal is a deal." (Declaration of John B. Mann, ¶19)

Ellipso waited nine months before it filed this action to announce its view that the transfer of the collateral to Mann Technologies was allegedly not valid, after all. Only when the stock became

more valuable did Ellipso make allegations in an attempt to void the transactions it previously defended.[3]

Plaintiff asserts that TRSC and Mann Technologies, L.L.C. jointly participated in defrauding Ellipso and invokes "judicial economy" as justification for combining TRSC with Mann Technologies and ignoring the mandatory arbitration clause of its contract with TRSC. But Plaintiff's own Response admits that Mann Technologies' only involvement with Ellipso was the loan transaction.[4] Plaintiff also ignores the fact that many of the issues and underlying facts of these two contracts with Ellipso are very different, as are the remedies sought. Plaintiff seeks release from all of its obligations under its contract with TRSC because of TRSC's alleged breaches under its contracts with Ellipso. These issues belong in arbitration. Plaintiff seeks <u>rescission</u> of its contract with Mann Technologies alleging fraud in the inducement by the non-corporate defendants. But Ellipso failed to meet any of its contractual obligations with either Mann Technologies or TRSC, and ratified them, long before it made these allegations. Ellipso has failed, moreover, to provide the 881 service it was obligated to provide, or to pay TRSC for the other service it has apparently initiated. Likewise, Ellipso has failed to meet any of its obligations under its Loan Agreement with Mann

---

[3] Notwithstanding these belated assertions, the loan was a valid business arrangement <u>that was initiated by Ellipso</u> through its prior negotiations with Argyll, which had no relation to any of the named Defendants. <u>Ellipso proposed to Mann Technologies the concept of a loan secured by its existing ICO stock, not the other way around</u>. Indeed, the loan negotiated by Ellipso with Argyll contains terms that are significantly worse for Ellipso than the loan documents Ellipso executed with Mann Technologies. The Argyll loan (which was apparently to be signed in mid January 2004) provided for a loan of 35% of the bid value of 250,000 shares. The bid on that date was, according to Morningstar's records, $0.41, which would have made the value of 250,000 shares $102,500. So the maximum loan amount was 35% of that, or $35,875. Under the Mann Technologies loan, however, the maximum loan amount would have been $45,000 secured by 250,000 shares. Mann Technologies lent $90,000.00 to Ellipso at a fair rate of interest on a no recourse basis (other than to look to the collateral for repayment), secured by 492,000 shares.

[4] *See* Plaintiff's Response to the Registry Solutions Co.'s Motion to Dismiss, at ¶ 2.

Technologies. *See* Declaration of John B. Mann.

## CONCLUSION

For the foregoing reasons, Defendant TRSC respectfully requests that its Motion to Dismiss be granted and that this matter be allowed to proceed to Arbitration as previously agreed upon by the parties.

Respectfully submitted,

_____
Thomas A. Mauro, Bar No. 184515
1020 Nineteenth Street, N.W.
Suite 400
Washington, D.C. 20036
(202) 452 9865
Facsimile: (202) 452 0092
*Attorney for The Registry Solutions Co.*