THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC.<br>4410 Massachusetts Ave., Suite 385<br>Washington, D.C. 20016,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN B. MANN<br>9330 Harts Mill Road<br>Warrenton, VA. 20186<br><br>MANN TECHNOLOGIES, L.L.C.<br>9330 Harts Mill Road<br>Warrenton, VA. 20186<br><br>ROBERT B. PATTERSON<br>P.O.Box 2051<br>Middleburg, VA. 20118<br><br>CONSULTING MANAGEMENT, LTD.<br>P.O.Box 2051<br>Middleburg, VA. 20118<br><br>and<br><br>THE REGISTRY SOLUTIONS, CO.<br>9330 Harts Mill Road<br>Warrenton, VA. 20186<br><br>    Defendants. | CASE NUMBER: 1:05CV01186<br><br>JUDGE: Royce C. Lamberth<br><br>DECK TYPE: General Civil<br><br>DATE STAMP: ~~06/14/2005~~ |

**HEARING MEMORANDUM OF DEFENDANT, ROBERT B. PATTERSON
IN RESPONSE TO
MOTION FOR PRELIMENARY INJUNCTION OF PLAINTIFF, ELLIPSO, INC.**

COMES NOW, DEFENDANT, ROBERT B. PATTERSON, ("PATTERSON"), *pro se*, who files this Hearing Memorandum to inform the Court and the Parties of his

RECEIVED
OCT 28 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

position and the proof that will be offered at the Preliminary Injunction hearing on Friday, October 28, 2005, at 2:30 pm. Thomas Moro, Esq., counsel for the other defendants, is out of town until Thursday evening of this week; so Patterson has been unable to coordinate with him. For that reason, the proof that Patterson submits here may overlap somewhat with that of the other defendants.

**HOUSEKEEPING MATTERS**

Patterson accepted service by mail in this matter and his responsive pleading is due November 21, 2005. Consulting Management, Ltd. was never incorporated as a separate legal entity and is not a proper party here. While Patterson has not as yet retained counsel, he is prepared to meet the Preliminary Injunction Motion *pro se* on Friday, and does not seek a continuance.

Patterson formed Mann Technologies, LLC, ("MannTech") in the state of Nevada on February 25, 2004. A copy of the Certificate of Incorporation, together with the IRS registration is attached as Exhibit 1. The state registration lapsed in March of 2005, but has been submitted for retroactive re-activation. [Patterson has not yet received the documents from Nevada, but all the credit card charges have been negotiated, indicating that the matter has been processed.]

Patterson formed The Registry Solutions Company ("TRSC") in St. Kitts and Nevis on February 13, 2004. A copy of the Articles of Incorporation is attached as Exhibit 2.

**THE STIPULATION**

Attached as Exhibit 3 is a Stipulation by Patterson that a) he pled guilty to a single criminal count on November 30, 2000; that b) as a consequence of that plea Patterson surrendered his license to practice law in Virginia and the District of Columbia; that c)

Patterson took a financial interest in MannTech when it was formed; and that d) Patterson took a financial interest in TRSC when it was formed. Patterson reserves the right to object to the introduction of each of these stipulations as not relevant to the issues before the Court for the reasons set forth *infra*. The stipulation is submitted to obviate unnecessary proof at the hearing.

**THE MANN-TECH/ELLIPSO, INC. COLLATERALIZED LOAN**

On January 30, 2004, MannTech and Ellipso, Inc. ("Ellipso") executed a Collateralized Loan Agreement (Exhibit 2 to the Complaint and attached here as Exhibit 4 for the Court's convenience.) MannTech loaned Ellipso ninety thousand dollars ($90,000.00) secured by 492,611 shares of ICO common stock. It was a standard margin stock loan. The MannTech's loan represented forty percent (40%) of the value of the shares at that time. The loan was non recourse and bore an interest rate of one percent (1%) above prime; payable interest only quarterly. The term was three (3) years. These terms are neither obscure nor unconscionable. [If they are unconscionable, there is a whole industry that needs to be informed that what they have been doing for decades is in jeopardy.]

The transaction was a win/win proposition. The agreement provides that if the value of the stock increases, each party will share in the gains. If the value of the stock decreases, Ellipso can simply walk away and not repay the loan, keeping the $90,000.00. In these type transactions, the lender (MannTech) protects itself by immediately liquidating sufficient shares to recoup its $90,000.00, thus eliminating any down side. Here MannTech was not able to protect itself by recouping the $90,000.00, because

Ellipso did not provide the requisite documentation for transfer of the shares until September 2004, eight months late.

The loan Agreement provides (Section 7.1(a)) that failure to make the quarterly interest payments is an event of default, resulting in forfeiture of the collateral, the 492,611 shares of stock. **ELLIPSO NEVER MADE A SINGLE PAYMENT ON THE LOAN AS REQUIRED BY THE AGREEMENT.**

Attached as Exhibit 5 is a chart showing the value of the ICO shares during the course of the loan. It charts the following:

Jan. 30, 2004    Collateralized Loan Agreement executed. MannTech and Ellipso agreed that the starting price for the transaction was forty-five cents per share ($0.45).

March 2004    Stock price spikes to over one dollar, but on very thin volume.

April 1, 2004    Amendment to loan agreement provides for sale of 92,611 shares with the proceeds to be divided between the parties. [Inconsistent with a scheme to defraud.] Sale not consummated as Ellipso fails to provide requisite transfer documentation.

April 15, 2994    Ellipso fails to make first payment on loan of approximately $500.00.

July 15, 2004    Ellipso fails to make second loan payment.

August 2, 2004    Loan agreement amended to provide for sale of 442,911 shares at fifty-five cents ($0.55) or better with proceeds to be divided between the parties. [Inconsistent with a scheme to defraud.]   This amendment is attached as Exhibit 6.

August 11, 2004 MannTech and Ellipso execute a joint stock sale authorization pursuant to the August 2, 2004 amendment. Dr. David Castiel ("Castiel") signs for Ellipso and Patterson signs for MannTech. This authorization is attached as Exhibit 7.

September 2004    Ellipso provides requisite documentation for sale of securities. Twenty-five thousand shares are sold for approximately $12,000.00 and the proceeds are divided between Ellipso and MannTech.

September 2004  ICO stock price falls below fifty cents ($0.50) per share.

October 1, 2004    August 2, 2004 joint stock sale amendment expires by its own terms.

October 15, 2004  Ellipso fails to make third requisite loan payment.

October 25, 2004   ICO stock price falls to two cents ($0.02) closing that day at four cents ($0.04) per share.  [This constituted an independent breach of the Collateralized Loan Agreement pursuant to Section 7.1(j)].

November 2004   ELLIPSO WALKS AWAY FROM THE LOAN AGREEMENT.  Due to low price and thin trading volume, stock has essentially no value.  MannTech has lost its $90,000.00.

December 2004 – February 2005   ICO stock price gradually increases to two dollars and fifty cents ($2.50) per share.  MannTech liquidates approximately 450,000 shares for approximately $500,000.00, an amount which is insufficient to cover its investments in Ellipso, as set forth *infra*.

January 15, 2005  Fourth loan payment from Ellipso would have been due.

April 15, 2005   Fifth loan payment from Ellipso would have been due.

June 14, 2005   Ellipso files instant action asserting, for the first time, fraud.

June 15, 2005   Sixth loan payment from Ellipso would have been due.

August 10, 2005   ICO stock price reaches five dollars and twenty cents ($5.20) per share and Ellipso serves its law suit on MannTech.

October 15, 2005   Seventh loan payment from Ellipso would have been due.

October 25, 2005    ICO stock is trading at just over four dollars ($4.00) pre share.

## THE TRSC-ELLIPSO 881 VANITY SERVICE REGISTRY AGREEMENT

The International Telecommunications Union in Geneva, Switzerland, has granted Ellipso permission to utilize two country codes, 881-2 and 881-3, to launch a precursor telephone service to develop a customer base to support launch of Ellipso's satellite telephone services.  As these country codes have never been used, the business concept was to market them as vanity numbers, e.g. 881-2-LAMBERTH, 881-2-HERTZ, 881-2-FRANCE.  The charge would be three dollars ($3.00) per month, with a premium for certain unique numbers.  Ellipso predicted the sale of tens of millions of these numbers.

On December 15, 2003, TRSC and Ellipso executed an agreement whereby TRSC would provide a "registry service" to Ellipso pursuant to Ellipso 881 vanity number telephone service. Ellioso's filings in this Court omit several salient facts pertinent to the Court's considerations. These are:

TRSC has paid Ellipso ninety thousand dollars ($90,000.00) [this is not the $90,000.00 paid on the Collateralized Loan Agreement], for the rights to provide the registry services for the 881 vanity numbers.

ELLIPSO HAS NEVER PROVIDED THE VANITY TELEPHONE SERVICE UPON WHICH THE TRSC AGREEMENT IS BASED.

ELLIPSO HAS NEVER SUBMITTED A SINGLE NUMBER OR CUSTOMER TO TRSC FOR REGISTRATION.

The only service which Ellipso has provided is a limited audio-text service, telephone sex talk, which is available in Holland and a few other locations in Western Europe. On information and belief, Ellipso has been receiving approximately twenty thousand dollars ($20,000.00) a month from this service since January 2005.

On August 2, 2004, the TRSC-Ellipso Agreement was amended to provide for compensation to TRSC from the audio text service, approximating fifteen percent (15%) of the gross revenues. Attached as Exhibit 8.

ELLIPSO HAS NEVER MADE A SINGLE PAYMENT TO TRSC FROM THIS SERVICE AS REQUIRED BY SECTION 2.B OF THE AUGUST 2, 2005 AMENDMENT. See, Exhibit 8 attached.

It appears that the relief that Ellipso seeks from this Court is to be relieved of all its obligations to TRSC for service and payment, and TO KEEP TRSC'S $90,000.00 royalty payment for services that Ellipso has never provided. This is not "rescission," it's robbery.

A motion has been made to refer these matters to arbitration and Patterson joins in that motion, suggesting that the Court do so pursuant to its authority under the Federal Arbitration Act.

**PATTERSON'S CONSULTING CONTRACTS WITH ELLIPSO**

Patterson will testify that when Castiel executed the Agreement for Services (Exhibit 1 to the Complaint and Exhibit 9 attached) on October 1, 2002, Castiel was aware of both Patterson's plea and bar status. There is no doubt that Castiel knew of both prior to execution of the TRSC-Ellipso Registry Agreement on December 15, 2003, and likewise prior to execution of the Collateralized Loan Agreement on January 30, 2004. Curiously, Ellipso's filings never state when or how Castiel learned of these facts; merely insinuating that "Patterson concealed." Moreover, Ellipos's pleadings fail to set forth any causal connection between these "hidden facts" and any subsequent losses. The reason is that none exists. Until such a causal connection is established, the plea and bar status are irrelevant to any issues presented here.

Patterson will testify that Castiel knew that Patterson intended to take a financial interest in both MannTech and TRSC prior to execution of the Ellipso agreements with each. Again Ellipso's filings never state when or how Castiel learned of Patterson's alleged "hidden interests." Again Ellipso's pleadings fail to allege any causal connection between Patterson's interests and Ellipso's asserted losses. However, the Court does not have to resolve any "conflicting testimony" to resolve the issue.

Ellipso continued to solicit, accept, and at least partially pay for, Patterson's services until October 2004. This is evidenced by an April 27, 2004 letter attached as Exhibit 10; a payment dated October 8, 2004, attached as Exhibit 11; and an October 20, 2004, e-mail in which Castiel discussed Patterson's financial interests in both MannTech and TRSC, attached as Exhibit 12. In that e-mail Castiel admits that he knew of Patterson's financial interests at least as early as June 2004. Significantly, Castiel never asserts that

he is "defrauded," but rather uses Patterson's financial interests in these companies as an excuse to reduce Patterson's consulting fees to Ellipso. BY HIS OWN ACTIONS CASTIEL RATIFIED BOTH THE COLLATERALIZED LOAN AGREEMENT WITH MANN-TECH, AND THE TRSC REGISTRY AGREEMENT, WITH KNOWLEDGE OF PATTERSON'S FINANCIAL INTERESTS IN EACH.

If this is insufficient, the August 11, 2004 Joint Sale Authorization (Exhibit 7 hereto), signed by Castiel, is signed by Patterson on behalf of MannTech. Thereafter Castiel executed other documentation pursuant to the sale of the 25,000 shares and accepted the proceeds therefrom. The amendment to the TRSC Registry Agreement pertaining to the audio-text service was executed by Castiel on August 2, 2004; after he admits he knew of Patterson's interests in TRSC.

Having reaffirmed both contracts, and accepted the benefits of both with knowledge of Patterson's interests; Ellipso/Castiel cannot be heard to now complain of "fraud in the inducement." [Patterson remains uncompensated for the services provided to Ellipso.]

**ELLIPSO'S CREDIBILITY**

There are several factors which it is submitted reflect unfavorably on Ellipso's credibility. These include:

While asserting irreparable harm Ellipso, fails to inform the Court that,
  a) Ellipso holds in excess of 3,700,000 shares of ICO stock (@$4.00).
  b) Ellipso has only on employee – Castiel.
  c) Ellipso's office is a post office box (The address on the cover of the Complaint is fraudulent.)
  d) Ellipso's District of Columbia business license has been revoked.
  e) Ellipso has no business other than the audio-text service.
  f) Elliipso has been involved in at least thirty-five (35) law suits in the past five years. These actions have one common thread, each respondent accuses Castiel and/or Ellipso, or both, of breach of contractual obligations, primarily failure to pay for services delivered.

g) Castiel/Ellipso are, or have been, represented by at least a dozen law firms, including –Baker Botts; Akin, Gump; Lobel, Novins & Lamont; Morris, Nichols, Arsht & Tunnell; Kreiger & Zaid; Sonnenschien, Nate & Rosenthal; Thomas Mitchell; Bryan, Cave; Fish & Richardson; Leventhal, Senter & Lerman. On information and belief, none of these firms has ever been fully paid for their services to Ellipso/Castiel.

h) At all times relevant to this matter Ellipso had it own Acting General Counsel, James Bailey, Esq.

i) Neither Mr. Bailey, nor the following Ellipso employees have been paid for their services – Ambassador Gerald Helman, Laury Blakley, Jack Anderson, Doug Crow, Capt. John Draim, USNRet.; Richard Inciardi; John Naughton; Neel Howard; Lori Lincoln; James Merino; Juan Tomassoni.

j) In excess of one hundred million dollars has been invested in Ellipso, with no return whatsoever to the investors.

k) Of the one hundred eighty thousand dollars ($180,000.00) paid to Ellipso by defendants in 2004, the majority of the funds were used by Castiel to pay himself salary and benefits.

**CONCLUSION REQUEST FOR RELIEF AND REQUEST FOR SANCTIONS**

Patterson moves this Court to deny Ellipso's Motion of Preliminary Injunction; to dismiss all claims against Patterson and the other defendants; to require that the TRSC-Ellipso matter be arbitrated; and to award sanctions against Ellipso sufficient to deter its abuse of the courts.

Respectfully submitted,

Robert B. Patterson, *pro se*
1643 Hunting Creek Dr.
Alexandria, VA 22314
(571) 278-7076

CERTIFICATION OF SERVICE:

I certify that a true and correct copy of the foregoing, together with attached exhibits, were delivered by hand to Mark S. Gubberman, Esq., 1400 K Street, NW, Suite 1000, Washington, D.C. 20005, this 28th day of October, 2005.

Robert B. Patterson

# EXHIBITS

1. Mann Technologies, LLC, Charter, February 25, 2004.

2. The Registry Solutions Company, Certificate of Incorporation, February 13, 2004.

3. Stipulation of Robert B. Patterson.

4. Collateralized Loan Agreement, January 30, 2004.

5. ICO Stock Chart.

6. Amendment to Collateralized Loan Agreement, August 2, 2004.

7. Joint Stock Sale Order, August 11, 2004.

8. Amendment to Registry Solutions Company Agreement, August 2, 2004.

9. Agreement for Consulting Services, October 1, 2002.

10. Letter from David Castiel to Robert Patterson, April 27, 2004.

11. Check to Robert Patterson from Ellipso, Inc., October 8, 2004.

12. E-mail from David Castiel to Robert Patterson, October 20, 2004.