## AGREEMENT FOR SERVICES

THIS CONSULTING AGREEMENT ("Agreement") is entered into and effective as of the 1st day of October 2002, by and among Consulting Management, Ltd., P.O. Box 2051, Middleburg, Virginia 20118 (referred to as "Consultant"), Ellipso, Inc., and Ellipso Private Holdings, LLC, with offices at 1133 21st Street, N.W., Eighth Floor, Washington, DC 20036 USA (together with their subsidiaries and affiliates the "Company").

WHEREAS, Company has conceived and is implementing two innovative mobile satellite systems known as the Ellipso® System and the Virtual Geo® System, designed to provide communications services worldwide, including voice and data, to and between mobile and fixed users (the "Services" or the "Systems"); and

WHEREAS, Consultant has significant expertise and contacts to assist the Company in establishing beneficial business relationships with certain third parties, who may be interested investing in or in any other way financing all or a portion of the Ellipso System or the Virtual Geo System, as well as significant expertise and experience to assist the Company in developing its business strategy to protect Company's intellectual property, trade marks, and other assets (the "Strategy"); and

WHEREAS, the parties desire to enter an agreement whereby Consultant would be encouraged to introduce Company to certain third parties who may be interested in lending for, investing in, or in any other way financing all or a portion of the Ellipso System or the Virtual Geo System, and to assist Company in protecting Company's assets ("Consultant's Services").

WHEREAS, Consultant has established contacts, sources, and procedures for securing for the Company, at favorable rates and terms, assistance and representation for protecting the Company's intellectual property and other assets, and for pursuing the Company's general businesses objectives;

NOW THEREFORE, in consideration of the mutual promises and undertakings contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Company and Consultant agree as follows:

1. **TERM**

    Commencing on the date hereof, and continuing until September 30, 2003 (or such later date as may be mutually agreed pursuant to Clause 17.1 of this Agreement), Consultant shall use its best efforts to introduce Company to the parties listed in Exhibit "A" hereto ("Financiers") for the purpose of facilitating arrangements through which those Financiers finance and/or invest in the Systems or their associated Services and/or other aspects of the Company's business. Consultant will further establish a practical business strategy aimed at protecting and preserving the Company's assets and shall assist in the implementation of that Strategy. The foregoing period of time is hereinafter referred to as the "Term".

2.  **COMPENSATION**

    2.1  Upon execution of this Agreement, Consultant shall receive an option to purchase 30,000 shares of Ellipso Private Holdings LLC ("EPHLLC") stock. These options shall vest on the first day of each calendar month of this Agreement at the rate of 2,500 shares per month. At the election of Consultant, these shares may take the form of Options at par value ($.01 per share) and will carry a maturity of a number of years sufficient to allow Consultant to optimize the tax impact of such award. A separate stock allocation and/or option agreement will be executed by the parties concurrently with this Agreement. Consultant shall also receive a payment of $5,000 per month for the months of October, November, and December 2002, payable $2,500 on the 1st and 15th of each month. Thereafter monthly cash compensation will be renegotiated each calendar quarter during the Term of this Agreement.

    2.2  If Company enters into an agreement with a Financier to invest in, lend for, or finance all or a portion of the Ellipso System or the Virtual Geo System, or other Company business, with one or more of the Financiers to whom Consultant introduced the Company during the Term of this Agreement, then Consultant shall receive a success bonus ("Success Bonus") calculated as follows (Lehman plan):

    2.2.1  5% for the first million dollars, or fraction thereof, received as by the Company, plus
    2.2.2  4% of the second million dollars, of fraction thereof, received by the Company, plus
    2.2.3  3% of the third million dollars, or fraction thereof, received by the Company, plus
    2.2.4  2% of the fourth million dollars, or fraction thereof, received by the Company, plus
    2.2.5  1% (one percent) of any received investment amount exceeding five millions dollars (US$ 5,000,000).

    The Success Bonus shall be based upon the cumulative and aggregate amount of funds actually paid by Financiers to Company and received by Company pursuant to each individual Investment Agreement.

    Consultant shall be compensated only for Amounts obtained by Advisor's efforts. However, Consultant shall be compensated for Amounts obtained as a result of subsequent introductions by a Financier or intermediate third party, who was first introduced to Company by Consultant, and which resulted in a financing agreement within one year of the Term of this Agreement. Consultant shall receive the Success Bonus if and when Company actually receives and has the unrestricted right to use the

Amounts. Intermediate third parties may be compensated by Company at its discretion.

If Consultant is independently compensated by Financier, Advisor will promptly notify the Company of such compensation. In this case, Consultant shall be entitled to a Success Bonus per this Section 2.2 reduced by any amounts Consultant receives from other parties to the transactions. It is the intention of the Parties to avoid "double dipping" but ensure that the total compensation received by Consultant from all sources for any specific investment is at least equal to that contemplated by this Section 2.2.

2.3   Company will reimburse Consultant for the reasonable costs and expenses incurred by Consultant in the performance of this Agreement, provided that Consultant first obtained Company's prior written approval for such costs and expenses.

2.4   Consultant will help establish a Strategy to defend and protect the Company in all business matters including litigation of pending and future actions. This Strategy will have as its primary aim to preserve the Company's assets. Consultant will have primary responsibility to effectuate the initiation of actions against former employees who have breached their contracts with the Company, former directors and officers who have breached their fiduciary duty to the Company, and any other person(s) similarly situated. The primary thrust of this Strategy shall be for the purpose of recovering damages and ensuring the Company is not exposed to litigation as a form of extortion. Consultant will also use its best efforts to secure personnel to assist and effectuate these efforts at the best possible terms and rates. [handwritten margin note: "Practice of law?"]

2.5   In the event Company requests, and Consultant accepts, to provide other services to Company, such additional services will be billed to Company at an agreed rate and invoiced monthly. Any amounts owed by Company to Consultant pursuant to this Agreement, which remain unpaid for more than thirty days shall be assessed one percent (1%) interest per calendar month on the entire outstanding balance, commencing the first full month following invoicing.

3.   **COORDINATION**

In order to coordinate and maximize all contacts with Financiers, Consultant will provide Company with prior notification of Consultant's strategies and efforts to contact and meet with Financiers. The Chief Executive Officer, or his designee, shall serve as Consultant's point of contact at Company for coordination purposes.

With respect to additional potential investors, Consultant agrees not to contact any potential investors, other than the Financiers specified in Exhibit "A," on

Company's behalf without prior written authorization from Company's Chief Executive Officer, which authorization shall not be unreasonably withheld.

Consultant will take steps to ensure an orderly conduct of all litigation in coordination with the CEO, law firms, experts, witnesses, investigators, financial sources, and others involved in various legal actions against individuals associated, or formerly associated with the Company.

4. **COMPANY'S OBLIGATIONS**

Consultant is hereby acknowledged as the procuring cause of Investment Agreements that result from Consultant's introduction of the Company to the Financiers specified in Exhibit "A" hereto.

5. **NO OBLIGATION**

Nothing in this Agreement obligates Consultant to obtain an Investment Agreement and/or Beneficial Agreement, nor shall anything in this Agreement obligate Company to enter into an agreement with a Financier.

6. **NO SALE OF SECURITIES**

Consultant acknowledges that it is acting solely in the capacity of a "finder" and shall not sell or offer to sell securities related to the development and/or implementation of the Ellipso System or the Virtual Geo System. Consultant represents and warrants that its activities will relate solely to accredited investors as defined in Section 230.501 of the Securities Act of 1933, if applicable. Consultant agrees to comply with all applicable state and federal securities laws. Consultant agrees to indemnify and hold Company harmless from any and all claims, losses, expenses, and damages (including reasonable attorneys' fees) in connection with a breach of this provision.

7. **NO ADDITIONAL BROKERS OR FEES**

Consultant hereby expressly acknowledges and agrees that Consultant has not employed, engaged, or utilized the services of any brokers, agents, finders, or similar third parties and that except for the Success Bonus expressly provided for by this Agreement, Company has no obligation to pay any commissions, fees, or other amounts to any brokers, agents, or finders in connection with Consultant's efforts to pursue Financiers or investors on behalf of Company.

In the event a third party claims to be the procuring cause of an Investment Agreement or a Beneficial Agreement with a Financier, Company shall have the right, exercisable in its sole discretion, to determine which party will receive the applicable Success Bonus and Consultant shall have no further rights or recourse against Company for such disputes.

Consultant agrees to indemnify and hold Company, and its affiliates, officers, directors, employees, agents, successors and assigns, harmless from any and all claims, losses, expenses and damages (including reasonable attorneys' fees), whether finally awarded or agreed to in settlement, arising from or in connection with this Agreement.

*[handwritten margin note: What ? Indemnificates Clause ?]*

8. **RELATIONSHIP OF PARTIES**

Consultant is an independent contractor. Nothing herein contained shall be construed to place Consultant and Company in the relationship of principal and agent, master and servant, partners, joint ventures or employer and employee, and neither party shall have, whether expressly or by implication, nor shall represent itself as having, any authority to make contracts in the name of or binding upon the other, or to obligate or bind the other in any manner whatsoever.

Consultant shall not be deemed to be employed by Company for purposes of any tax by the U.S. federal government or any state or local government with respect to employment or compensation for employment, including but not limited to income tax withholding, social security, and unemployment taxes. Consultant has or will file all tax forms required of an independent contractor. Consultant, its directors, officers, employees and/or agents shall not be entitled to participate in any retirement plan, medical plan and/or any other benefit plan or program of the Company.

9. **CONFIDENTIALITY**

Subject only to legally compelled disclosure, Consultant shall maintain the terms and conditions of this Agreement and any information, reports, or other data furnished hereunder in strict confidence.

10. **COMPLIANCE WITH LAWS AND REGULATIONS**

In the performance of this Agreement, Consultant and any individuals or entities acting on behalf of Consultant will comply in all respects with all applicable laws and regulations, including but not limited to those identified in this Agreement. Consultant represents that neither Consultant nor any individuals or entities acting on behalf of Consultant will, directly or indirectly, make, offer, or agree to make or offer any loan, gift, donation, payment, or any other form of value, whether in cash or in kind, for the benefit of or at the direction of any candidate, committee, political party, government or a subdivision thereof, or any individual elected, appointed, or otherwise designated as an employee or officer thereof, for the purpose of influencing any act, omission, or decision of such entity or individual or inducing such entity or individual to do or omit to do anything, in order to obtain or retain business or other benefits in violation of the United States Foreign Corrupt Practices Act.

11. **NOTICES**

All notices, reports, accountings, or other communications which either party may be required to or desires to send to the other party, shall be sufficiently given if in writing, delivered personally (by courier with a reliable system for tracking delivery) or by confirmed facsimile or upon receipt of next business day air express, addressed as follows:

If to Consultant:    Robert B. Patterson, Director
Consulting Management, Ltd.
Box 2051
Middleburg, VA 20118
Telephone: (703) 338-0944
Facsimile:

If to Company:    Ellipso, Inc.
Ellipso Private Holdings, LLC
1133 21st Street, N.W.
Suite 800
Washington, D.C. 20036
Telephone: (202) 466-4488
Facsimile: (202) 466-4493
Attn: David Castiel, President and
Chief Executive Officer

or to such other person or persons or to such other address as may be designated in writing by the applicable party from time to time. Notices shall be deemed received when personally delivered, or five days after mailing if sent by mail, or upon actual receipt by the designated receiving party of a telex or facsimile transmission from the other party.

12. **ENTIRE AGREEMENT/AMENDMENT**

This Agreement constitutes the entire agreement between the parties with reference to this matter, and supersedes all prior agreements or communications, written or oral, relating to the subject matter. This Agreement cannot be amended except by a written instrument signed by both parties.

13. **GOVERNING LAW AND JURISDICTION**

This Agreement is made, and is to be construed under the laws of the District of Columbia except for its conflict of laws provisions. Both parties agree to accept service of process to appear in any legal proceeding pertaining to this agreement in the District of Columbia.

14. **ASSIGNMENT**

Consultant may not assign its rights or obligations hereunder. This Agreement is binding upon and shall inure to the benefit of the respective successors and assigns of the parties, except where rights of assignment are prohibited or limited.

15. **SEVERABILITY**

If any provision of this Agreement shall be found invalid or unenforceable, then such provision shall not invalidate or in any way affect the enforceability of the remainder of this Agreement.

16. **TERMINATION**

Either party may terminate this Agreement upon ten (10) days written notice. Although cause is not required to terminate this Agreement, either party may terminate this Agreement immediately upon a material breach of its terms or conditions by the other party. The Term of this Agreement shall expire at 5:00 p.m. (D.C. Time) on September 30, 2003, at which time this Agreement shall automatically terminate.

　　**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date set forth above.

**ELLIPSO, INC.**　　　　　　　　　　　　　　**CONSULTING MANAGEMENT, LTD**
**ELLIPSO PRIVATE HOLDINGS, LLC**

By: _____　　　　By: _____

Its: _____C.E.O._____　　　　Its: _____

Bob Patterson　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　7
Compensation Agreement
1 October 2002

ADDENDUM TO AGREEMENT OF OCTOBER 1, 2002.

WHEREAS, the undersigned wish to amend their agreement dated October 1, 2002, it is agreed as follows:

1. Section 2.1, is replaced in its entirety with the new Section 2.1.   *Compensation amended*

   2.1 Upon execution of this Addendum, Consultant shall receive retroactively options to purchase 10,000 shares of Ellipso Private Holdings LLC ("EPHLLC") stock per month at par value, up to a maximum of 120,000 shares or share options, commencing with the month of October 2002, and continuing for twelve months thereafter, unless modified upward by both parties. For the purpose of this Amendment the first 60,000 shares shall immediately vest, and the remaining 60,000 options shall vest on the first day of each calendar month of this Amendment at the monthly rate at which they are acquired. At the election of Consultant, these share options may take the form of Options at par value of ($0.01 per share) and will carry a maturity of a number of years sufficient to allow Consultant to optimize the tax impact of such award. A separate stock allocation and/or option agreement will be executed by the parties concurrently with this Addendum. Consultant shall also receive payment of $10,000 per month, payable $2,500 on the first, $2,500 on the fifteenth of each month, and $5,000 deferred pending the availability of corporate funds commencing February 1, 2003. The aforementioned cash payment may also be adjusted upward by both parties subject to the same conditions. In addition, Consultant shall receive a one time amount of $20,000 of incentive deferred compensation subject to the conditions below. For the purpose of this Amendment, in the event that EPHLLC or any affiliated business entity is placed into receivership, Consultant's unpaid cash compensation, if any, including the incentive deferred cash compensation, and one half of all shares or share options vested as to the date of receivership shall be treated as salary and wages at the rate of $1.00 per share ~~or share~~ option.

ELLIPSO, INC.
ELLIPSO PRIVATE HOLDINGS, LLC

BY: _____

ITS: President & CEO

2/9/03

CONSULTING MANAGEMENT, LTD.

BY: _____

ITS: Director