LEXSEE 261 U.S. APP. D.C. 284

**National Foundation for Cancer Research v. A. G. Edwards & Sons, Inc., Appellant, Harold T. Hedges**

No. 86-7006

UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

*261 U.S. App. D.C. 284; 821 F.2d 772; 1987 U.S. App. LEXIS 8082*

April 30, 1987, Argued
June 26, 1987, Decided

**PRIOR HISTORY:** [**1] Appeal from the United States District Court for the District of Columbia, Civil Action No. 83-00084.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant brokerage firm sought interlocutory review of a decision of the United States District Court for the District of Columbia, which denied the brokerage firm's motion to compel arbitration of plaintiff foundation's non-federal securities law claims against the brokerage firm and for a stay of proceedings pending arbitration.

**OVERVIEW:** The foundation filed an action against the brokerage firm alleging federal securities, racketeering, and pendent common law claims from the brokerage firm's unlawful handling of its securities margin account. After three years of pre-trial proceedings, the brokerage firm filed a motion for arbitration of the non-federal securities law claims pursuant to its brokerage agreement with the foundation. The court affirmed the district court's denial of the motion and found that the brokerage firm had waived its right to arbitration because it had participated extensively in the litigation, behavior inconsistent with the right to arbitrate. In particular, the court noted that the brokerage firm had participated extensively in pretrial discovery on the claims it sought to arbitrate and had submitted all claims for summary judgment. The court also found that the brokerage firm could not excuse its delay in asking for arbitration on the grounds that the recently overruled "intertwining doctrine" would have barred arbitration because the District of Columbia Circuit never adopted that doctrine. Finally, the court found that the granting arbitration would have prejudiced the foundation.

**OUTCOME:** The court affirmed the district court's denial of the brokerage firm's motion to compel arbitration of plaintiff foundation's non-federal securities law claims.

**LexisNexis(R) Headnotes**

*Civil Procedure > Appeals > Standards of Review > De Novo Review*
*Governments > Legislation > Statutes of Limitations > Waivers*
[HN1] The question of waiver is one of law, which an appellate court reviews de novo.

*Civil Procedure > Alternative Dispute Resolution*
*Governments > Legislation > Statutes of Limitations > Waivers*
[HN2] The right to arbitration, like any contract right, can be waived. The Supreme Court has made clear that the strong federal policy in favor of enforcing arbitration agreements is based upon the enforcement of contract, rather than a preference for arbitration as an alternative dispute resolution mechanism. Thus, the question of whether there has been waiver in the arbitration agreement context should be analyzed in much the same way as in any other contractual context. The essential question is whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right.

*Civil Procedure > Alternative Dispute Resolution*
[HN3] One example of conduct inconsistent with the right to arbitrate is active participation in a lawsuit.

**COUNSEL:**

Terry L. Claassen, for Appellant. Arthur L. Smith was on the brief for Appellant.

Wyatt B. Durrette, Jr., of the Bar of the Commonwealth of Virginia, pro hac vice by special leave of Court, with whom Charles R. McCarthy, Jr., was on the brief for Appellee.

**JUDGES:**

Mikva and Williams, Circuit Judges, and Weigel, * Senior District Judge. Opinion for the Court filed by Circuit Judge Mikva.

---

* Of the United States District Court for the Northern District of California, sitting by designation pursuant to 28 U.S.C. § 294(d).

**OPINIONBY:**

MIKVA

**OPINION:**

[*773] MIKVA, Circuit Judge:

Claiming unlawful handling of its securities margin account, National Foundation for Cancer Research (NFCR) brought suit against appellant, A.G. Edwards & Sons, Inc. (Edwards), alleging federal securities, RICO, and pendent common law claims. Over three years later, Edwards moved to compel arbitration of NFCR's non-federal securities law claims and for a stay of proceedings pending arbitration. When the district court denied the motion, holding that Edwards had waived its right to arbitrate by actively participating in the lawsuit, this interlocutory [**2] appeal followed. We affirm.

I. BACKGROUND

In June of 1980, NFCR established a securities margin account with Edwards, a stock brokerage firm. Upon opening the account, NFCR signed a customer agreement one provision of which stated that any controversy between NFCR and Edwards or any of its officers, directors, agents, or employees arising out of the brokerage relationship shall be settled by arbitration. The arbitration provision specifically excluded "any controversy involving a non-spurious claim under federal securities laws."

On January 14, 1983, NFCR commenced its lawsuit, filing a ten-count complaint against Edwards and one of its employee brokers; the suit alleged violations of both federal securities laws and common law arising from trading activity in NFCR's account. After almost two years, during which the parties conducted extensive discovery, the district court granted NFCR leave to amend its complaint to add a count alleging violations of the Racketeer Influenced and Corrupt Organizations Act, *18 U.S.C. § 1961 et seq.* (1982) (RICO). Shortly thereafter, on October 26, 1984, Edwards moved for summary judgment on all but one of the eleven counts of NFCR's amended complaint. [**3] The parties argued the motion on February 1, 1985, and the district court took the matter under advisement. No further discovery was conducted.

On March 4, 1985, the Supreme Court issued its decision in *Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 84 L. Ed. 2d 158, 105 S. Ct. 1238 (1985),* rejecting the so-called "intertwining doctrine." Several federal courts had adopted this doctrine, which held that when arbitrable contract claims and non-arbitrable federal securities laws claims arise out of the same transaction and are sufficiently intertwined factually and legally, the court should deny arbitration of the contract claims in order to preserve its exclusive jurisdiction over the federal securities claims.

Almost a year after the Supreme Court's decision in *Byrd,* on February 27, 1986, the district court denied Edwards' summary judgment motion. Following the court's ruling, counsel for the parties met in the trial judge's chambers to discuss settlement and further scheduling. After settlement discussions proved fruitless, counsel for the parties agreed at the meeting to docket the action for jury trial. Specifically, counsel agreed to hold a final pretrial conference on July 21, 1986 and to commence trial [**4] on September 16, 1986.

Eleven days after the status/settlement conference, on April 15, 1986, Edwards wrote to NFCR to request for the first time that all claims and controversies other than those involving "non-spurious claims under the federal securities laws" be submitted to arbitration. NFCR refused. On April 29, 1986, Edwards filed a motion to [*774] compel arbitration and to stay or sever the remaining non-arbitrable counts of the complaint.

In an unpublished memorandum order, the district court denied Edwards' motion. *See National Foundation for Cancer Research v. A. G. Edwards & Sons, Inc.,* Civ. Action No. 83-00084 (D.D.C. July 9, 1986) (*NFCR* Order). Relying on *Cornell & Co. v. Barber & Ross Co., 123 U.S. App. D.C. 378, 360 F.2d 512 (D.C. Cir. 1966),* the court held that Edwards had waived its right to arbitrate. The court recounted the extensive pretrial procedures in which Edwards had taken part and concluded that "one could not imagine a clearer example of 'active participation in a lawsuit.'" *NFCR* Order at 2 (quoting *Cornell*). The court added that "Edwards' three-year silence on the question of arbitration provides a deafening response to the question of whether it acted 'inconsistently' [**5] with an intent to arbitrate." *Id.* at 3. In ad-

dition, the court found that permitting arbitration at this stage of the proceedings would prejudice NFCR. The court reasoned that the extensive discovery already afforded Edwards had placed the parties "in a radically different posture from what they would have been [in] had arbitration been requested at the outset," and, moreover, that sending the proceedings to arbitration would cause further delay in resolving NFCR's suit. Id. Finally, the court rejected Edwards' contention that its tardiness in seeking arbitration was due to and excused by its uncertainty regarding the outcome of Byrd. The court observed that Edwards' argument did not explain why Edwards had waited for 13 months *after* the Byrd decision to file its motion, or why Edwards had not moved to compel arbitration prior to Byrd and relied on the applicable controlling pre-Byrd precedent in this circuit.

After the court denied Edwards' motion for reconsideration, Edwards sought review of the court's orders in this court. The district court has stayed the proceedings, at Edwards' request, pending our resolution of Edwards' interlocutory appeal.

II. [**6] DISCUSSION

The issue in this case is whether the undisputed facts of appellant's pretrial participation in the litigation served to waive its right to arbitration. [HN1] The question of waiver is one of law, which we review *de novo*. *See Miller Brewing Co. v. Fort Worth Distributing Co.*, 781 F.2d 494, 496 (5th Cir. 1986); *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 693 (9th Cir. 1986).

In urging reversal of the district court, appellant argues that it did not waive its right to compel arbitration of those claims that fall within the scope of its arbitration agreement with NFCR by participating in the litigation. More specifically, Edwards contends that it did not have a clear right to compel arbitration of those claims at the time NFCR filed its complaint; that its right to arbitrate became clear only after the Supreme Court's decision in *Byrd* and its conduct thereafter was not inconsistent with that right; and that, in any event, NFCR has suffered no prejudice from the delay in demanding arbitration.

We cannot agree that any of these points justify a reversal of the district court's decision. [HN2] The right to arbitration, like any contract right, can be waived. *See Cornell*, [**7] 360 F.2d at 513. The Supreme Court has made clear that the "strong federal policy in favor of enforcing arbitration agreements" is based upon the enforcement of contract, rather than a preference for arbitration as an alternative dispute resolution mechanism. *Byrd*, 470 U.S. at 218-24. Thus, the question of whether there has been waiver in the arbitration agreement context should be analyzed in much the same way as in any other contractual context. The essential question is whether, under the totality of the circumstances, the de-faulting party has acted inconsistently with the arbitration right. *See Cornell*, 360 F.2d at 513. Supreme Court pronouncements suggest that if there were any ambiguity as to the scope of the waiver, we would be obliged to resolve the issue in favor of arbitration. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 103 S. Ct. 927 [*775] (1983). However, no such issue arises here; the only issue is whether there has been waiver. We find that Edwards' conduct in this case was clearly inconsistent with any intent to assert its right to arbitrate. Edwards' actions thus compel the conclusion that appellant has waived that right.

In *Cornell*, [**8] this court held that [HN3] one example of conduct inconsistent with the right to arbitrate is active participation in a lawsuit. *See 360 F.2d at 513*. The defendant in *Cornell* had moved for transfer of venue, filed an answer to the complaint and a counterclaim, take a deposition of an official of the plaintiff company, and procured the production of numerous documents before communicating an intention to arbitrate to the plaintiff. We inferred from this conduct that the defendant had waived its right to arbitrate. Because the defendant could have sought arbitration rather than opposing the complaint on the merits, its decision to litigate was seen as an affirmative choice of the judicial forum and an abandonment of the right to seek arbitration.

In this case, Edwards had invoked the litigation machinery to an even greater extent before demanding that NFCR arbitrate its non-federal securities law claims. After filing an answer to NFCR's original complaint in which it asserted fifteen affirmative defenses (with no mention of arbitration), Edwards instigated extensive discovery. Edwards obtained the production of numerous NFCR documents and deposed six of NFCR's officers, directors, [**9] and employees as well as one of NFCR's outside auditors. During the same period, Edwards produced certain of its officers and employees for deposition by NFCR. Edwards thereafter opposed NFCR's motion to amend its complaint to add a RICO claim and, once the court granted NFCR's motion, answered the amended complaint (again, with no mention of arbitration). Edwards proceeded to move for summary judgment on eight of the eleven counts contained in NFCR's amended complaint and for partial summary judgment on two of the three remaining counts. Only the count charging Edwards with common law breach of fiduciary duty went unchallenged by appellant's motion. After briefing and oral argument by both parties on Edwards' motion, the district court ruled against Edwards (except for two matters, one of which was conceded by counsel for NFCR at oral argument). Edwards then engaged in settlement negotiations and when these failed,

agreed to set the case for trial. Only then, five months before the scheduled trial date, did Edwards communicate to NFCR a demand that NFCR's RICO and common law claims be referred to arbitration for decision. As the district court observed, "one could not imagine a [**10] clearer example of 'active participation in a lawsuit.'" NFCR Order at 3 (quoting *Cornell*, 360 F.2d at 513).

Edwards contends that *Cornell* does not apply in this case. It argues that its conduct does not have the same import as that of the defendant in *Cornell* because, unlike *Cornell*, this case involves non-arbitrable claims and severable arbitrable claims. Edwards concludes that the court cannot infer waiver from its participation in the lawsuit because, unlike *Cornell*, its invocation of the litigation machinery would not have been abandoned by sending the arbitrable claims to arbitration. The federal securities law claims would in any event remain in federal court.

The presence of both arbitrable and non-arbitrable claims does not render Edwards' conduct immune from a finding of waiver. At most, the distinction counsels caution in inferring waiver from Edwards' discovery efforts. Given that the claims arose out of the same transaction, any discovery that Edwards conducted may be relevant to the non-arbitrable claims, which must be tried in court. It is obviously Edwards' right to conduct discovery on any non-arbitrable claims. Thus, a court might hesitate to [**11] infer from Edwards' pursuit of discovery that appellant had waived its right to arbitrate the other claims. But we are not faced here merely with Edwards' involvement in the discovery process. Edwards moved for summary judgment. By filing its summary judgment motion, Edwards submitted NFCR's claims, both the arbitrable [*776] and non-arbitrable counts, to the court for resolution on the merits. We conclude that by this point in the pretrial litigation process, at the latest, Edwards had made a conscious decision to exploit the benefits of pretrial discovery and motion practice, with relation to the arbitrable claims, that were fully available to it only in the judicial forum; indeed, Edwards chose to have the substance of NFCR's arbitrable claims decided by a court. This election was wholly inconsistent with an intent to arbitrate and constituted an abandonment of the right to seek arbitration. *Cf. Sweater Bee by Banff, Ltd. v. Manhattan Industries, Inc.*, 754 F.2d 457, 461 (2d Cir. 1985) (litigation of substantial issues going to the merits may constitute waiver of right to arbitrate); *Jones Motor Co. v. Chauffeurs, Local Union No. 633*, 671 F.2d 38, 44 (1st Cir.) (same), *cert. denied*, [**12] 459 U.S. 943, 74 L. Ed. 2d 200, 103 S. Ct. 257 (1982). To give Edwards a second bite at the very questions presented to the court for disposition squarely confronts the policy that arbitration may not be used as a strategy to manipulate the legal process.

Edwards' primary contention on appeal is that it could not have waived its right to arbitration because it had no clearly enforceable right to arbitration of NFCR's non-federal securities law claims until the Supreme Court's decision in *Byrd*. Appellant asserts that this circuit had embraced the "intertwining doctrine" in our decision in *Jackson v. Beech*, 205 U.S. App. D.C. 84, 636 F.2d 831 (D.C. Cir. 1980). Based on this assertion, Edwards contends that prior to the Court's rejection of the doctrine in *Byrd*, the company reasonably believed that the district court would deny its motion to compel arbitration because of the presence of NFCR's inextricably interrelated nonarbitrable claims. Edwards argues that its failure to file a motion to compel arbitration before the Court decided *Byrd* was not inconsistent with the agreement to arbitrate disputes arising out of its contract with NFCR, because such a motion would have been futile. Edwards further notes that the parties [**13] did not engage in any substantial litigation activities after the *Byrd* decision. Accordingly, appellant concludes that it engaged in no conduct that can properly be viewed as inconsistent with its right to arbitration.

We are unpersuaded by appellant's argument. Edwards cites several cases accepting its "futility" argument. All these cases, however, were decided by circuits that had adopted (or clearly signalled their approval of) the "intertwining doctrine." *See, e.g., Fisher*, 791 F.2d at 695-97; *Benoay v. Prudential-Bache Securities, Inc.*, 805 F.2d 1437, 1440 (11th Cir. 1986). In those circuits, the defendants had no enforceable arbitration right prior to *Byrd*; they could not have obtained an order compelling arbitration. Thus, the courts could reasonably have found that the defendants' pre-*Byrd* involvement in litigation was not inconsistent with a right to arbitrate and did not constitute a waiver. By contrast, this circuit has never adopted the "intertwining doctrine," either explicitly or by implication. In arguing that we had "embraced" the doctrine, Edwards points to a footnote in *Jackson v. Beech*, in which we cited to a Fifth Circuit case that had expressed [**14] approval of the doctrine. *See Jackson*, 636 F.2d at 833 n.4 (citing *Sibley v. Tandy Corp.*, 543 F.2d 540 (5th Cir. 1976), *cert. denied*, 434 U.S. 824, 54 L. Ed. 2d 82, 98 S. Ct. 71 (1977)). As an initial point, we note that Edwards first mentioned *Jackson* on appeal; appellant never mentioned the case before the district court. This fact casts doubt on Edwards' present claim that it relied on the case in pursuing the lawsuit. More important, however, our single citation in a footnote in *Jackson* simply cannot be understood as Edwards strains to read it. *Jackson* does not adopt the intertwining doctrine for this circuit; it does not even indicate our predilection for the doctrine. The case is not only silent on the issue but has absolutely nothing to do with the doctrine; our citation to *Sibley* addressed the principle of pendent jurisdiction. Contrary to Edwards' eleventh hour argu-

ment, this circuit had taken no position as to the "intertwining doctrine." *But see Fisher, 791 F.2d at 696 n.2* (suggesting that this circuit had rejected the doctrine). Thus, Edwards had no reason to believe that its right to arbitration [*777] was unenforceable; no precedent in this circuit precluded Edwards from moving [**15] to compel arbitration. Further, only three circuits had followed the intertwining doctrine, while three other circuits had expressly rejected it. *See Byrd, 470 U.S. at 216-17.* In this legal climate, we fail to see how Edwards' assertion of its right to arbitrate the claims covered by its agreement with NFCR would have been futile.

More importantly, we agree with the district court that Edwards' argument fails to explain why the company waited for over thirteen months *after* the *Byrd* decision to move to compel arbitration. Appellant offers the explanation that its summary judgment motion was pending before the court at the time *Byrd* was issued and that had the court granted its motion, the arbitrable common law claims would have been dismissed and the court would have lacked subject matter jurisdiction to entertain a motion to compel arbitration. We fail to see appellant's point. After *Byrd*, Edwards' right to compel arbitration was plain. The district court had not decided the summary judgment motion, and the court obviously retained jurisdiction to entertain appellant's motion. If Edwards wanted to enforce its right to arbitration, the company could have, and should [**16] have, acted upon its alleged preference much earlier. *Compare Fisher, supra* (defendant filed motion less than one month after *Byrd*); *Benoay, 805 F.2d at 1440* (ten weeks). Further, Edwards had not moved for summary judgment on all of the arbitrable claims; yet the company made no attempt to send the remaining common law claim to arbitration. We conclude that appellant's extended silence and much delayed demand for arbitration indicate that Edwards made a conscious decision to continue to seek judicial judgment on the merits of NFCR's arbitrable claims. This choice was inconsistent with the agreement to arbitrate those claims.

Finally, Edwards argues that prejudice to the objecting party is a prerequisite of a finding of waiver and argues further that NFCR has failed to demonstrate any discernable harm to its rights or interests in an arbitration of its non-federal securities law claims. According to appellant, mere delay does not constitute prejudice. No prejudice arose from the discovery conducted, Edwards claims, because all the information gleaned was relevant to the non-arbitrable claims and would have been discovered in any event. Finally, Edwards asserts that no prejudice [**17] resulted from the briefing and argument of Edwards' motion for summary judgment because the court ruled in favor of NFCR.

This circuit has never included prejudice as a separate and independent element of the showing necessary to demonstrate waiver of the right to arbitration. *See Cornell, supra.* We decline to adopt such a rule today. Of course, a court may consider prejudice to the objecting party as a relevant factor among the circumstances that the court examines in deciding whether the moving party has taken action inconsistent with the agreement to arbitrate. *See, e.g., Dickinson v. Heinold Securities, Inc., 661 F.2d 638, 641 & n. 5 (7th Cir. 1981); Reid Burton Construction, Inc. v. Carpenters District Council of Southern Colorado, 614 F.2d 698, 702 (10th Cir.), cert. denied, 449 U.S. 824, 101 S. Ct. 85, 66 L. Ed. 2d 27 (1980).* But waiver may be found absent a showing of prejudice.

In any event, we cannot accept appellant's claim that its conduct did not prejudice NFCR. We agree that mere delay will rarely constitute prejudice. Substantial invocation of the litigation process, however, may cause prejudice and detriment to the opposing party. *See Miller Brewing Co., 781 F.2d at 497; Midwest* [**18] *Window Systems, Inc. v. Amcor Industries, Inc., 630 F.2d 535, 537 (7th Cir. 1980).* The district court specifically found that "to permit arbitration at this point in the proceedings would clearly prejudice the plaintiff." *NFCR Order at 3.* We cannot gainsay this conclusion. By moving for summary judgment, appellant forced NFCR to litigate the substantive issues in the case, including its arbitrable claims. Being compelled to bear the expense of this proceeding constitutes prejudice. *See Reid* [*778] *Burton Construction, 614 F.2d at 703; E.G. Ernst, Inc. v. Manhattan Construction Co. of Texas, 559 F.2d 268, 269 (5th Cir. 1977).* Further, like the district court, we are not persuaded that NFCR would not suffer a tactical disadvantage if its RICO and common law claims were shunted over to arbitration procedures now that Edwards has enjoyed exhaustive discovery of NFCR's evidence and legal theories on those issues. In our view, the prejudice to NFCR is another factor supporting the district court's conclusion that Edwards waived its right to compel arbitration.

In sum, we hold that in light of appellant's delay in seeking arbitration, its extensive involvement in pretrial discovery, [**19] its invocation of summary judgment procedures, and the resulting prejudice to appellee, Edwards cannot now rely on its customer agreement with NFCR to compel arbitration.

CONCLUSION

For the reasons stated above, we hold that appellant waived its right to arbitration by acting inconsistently with its agreement to arbitrate disputes arising out of its contract with appellee. Accordingly, the district court's denial of appellant's motion to compel arbitration and to stay proceedings pending arbitration is

261 U.S. App. D.C. 284; 821 F.2d 772, *;
1987 U.S. App. LEXIS 8082, **

*AFFIRMED.*