# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELLIPSO, INC.             )
4410 Massachusetts Ave., Suite 385  )
Washington, D.C. 20016,       )
                             )
     **Plaintiff,**            )
                             )
v.                           )
                             )
JOHN B. MANN, et al.        )      **CASE NUMBER: 1:O5CV01186**
9330 Harts Mill Road        )
Warrenton, VA. 20186      )      **JUDGE: Royce C. Lamberth**
                             )
     **Defendants.**        )
                             )

## ANSWER AND COUNTER-CLAIMS OF DEFENDANT
## ROBERT B. PATTERSON

COMES NOW DEFENDANT, Robert B. Patterson, ("Patterson"), *pro se,* who in response to the numbered paragraphs of the Complaint states as follows:

1. Ellipso's assertion that it has offices at 1133 21st St., 8th floor, Washington D.C. is false. The balance of the allegations are denied.

2. Admitted.

3. Denied.

4. Patterson admits he resides in Virginia; is a member of Mann Technologies, LLC, ("MannTech"); and is a principal of The Registry Solutions Company, (TRSC"). The other allegations are denied.

5. Admitted.

6. It has been stipulated that TRSC is a properly organized foreign corporation.

7. Denied.



RECEIVED

FEB 2 4 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

8.  Denied.

9.  Denied.

10. Denied.

11. Denied.

12. Admitted.

13. Denied.

14. Admitted.

15. Denied.

16. Denied.

17. Denied.

18. Denied.

19. Denied.

20. Denied.

21. Denied.

22. Denied.

23. Denied.

24. Denied.

25. Admitted.

26. Admitted.

27. Admitted.

28. The document speaks for itself.

29. Denied.

30. Denied.

31. Denied.

32. The document speaks for itself.

33. The document speaks for itself.

34. Denied.

35. Denied.

36. Patterson incorporates his answers to paragraphs 1-35.

37. Denied.

38. Denied.

39. Admitted.

40. Denied.

41. Denied.

42. Patterson incorporates his answers to paragraphs 1-41.

43. Denied.

44. Denied.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

49. Denied.

50. Denied.

51. Patterson incorporates his answers to paragraphs 1-50.

52. Denied.

53. Denied.

54. Denied.

55. Patterson incorporates his answers to paragraph 1-54.

56. Denied.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Patterson incorporates his answers to paragraphs 1-62.

64. Denied.

65. Denied.

66. Denied.

67. Denied.

68. Denied.

69. Patterson incorporates his answers to paragraphs 1-68.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

75. Patterson incorporates his answers to paragraphs 1-74.

76. Denied.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

81. Patterson incorporates his answers to paragraphs 1-80.

82. Denied.

83. Denied.

84. Denied.

85. Denied.

86. Patterson incorporates his answers to paragraphs 1-85.

87. Denied.

88. Denied.

89. Denied.

90. Denied.

91. Patterson incorporates his answers to paragraphs 1-90.

92. Denied.

93. Denied.

94. Denied.

95. Patterson incorporates his answers to paragraphs 1-94.

96. Denied.

97. Denied.

98. Denied.

99. Denied

100.    Dismissed.

101.    Dismissed.

102.    Dismissed.

103.    Dismissed.

104.    Dismissed.

105.    Patterson incorporates his answers to paragraphs 1-104.

106.    Denied.

107.    Denied.

108.    Denied.

109.    Denied.

110.    Denied.

111.    Denied.

FIRST AFFIRMATIVE DEFENSE:  The Complaint fails to state a claim upon which relief can be granted.

SECOND AFFIRMATIVE DEFENSE:  The relief sought by the Complaint is barred by the doctrine of unclean hands.

THIRD AFFIRMATIVE DEFENSE:  The relief sought by the Complaint is barred by the doctrine of laches.

FOURTH AFFIRMATIVE DEFENSE:  The relief sought by the Complaint is barred by the applicable statute of limitations.

FIFTH AFFIRMATIVE DEFENSE:  The relief sought by the Complaint is barred by the statute of frauds.

SIXTH AFFIRMATIVE DEFENSE:  The relief sought by the Complaint is barred by the doctrine of estoppel.

SEVENTH AFFIRMATIVE DEFENSE:  The Complaint is filed in bad faith, without substantial basis or foundation in either facts or law, in violation of Rule 11, Federal Rules of Civil Procedure.

EIGHTH AFFIRMATIVE DEFENSE:  Plaintiffs had failed to satisfy and fulfill all conditions precedent to the assertion of its claims.

NINTH AFFIRMATIVE DEFENSE:  Plaintiff's claims are barred by the doctrine of accord and satisfaction.

TENTH AFFIRMATIVE DEFENSE:  Plaintiff's claims are barred by the doctrine of waiver.


## COUNTER-CLAIMS


I. BREACH OF CONTRACT.

1.  Plaintiff, Ellipso, Inc. ("Ellipso") entered into a personal service contract with Patterson to provide specified consulting services to Ellipso.   This contract is memorialized in: a) a contract dated October 1, 2002; b) an amendment to that contract dated February 9, 2003; c) a letter agreement dated April 27, 2004; and d) an e-mail dated October 20, 2004.  [These documents are attached as exhibits 1, 2, 3, and 4 hereto.]

2.  Patterson provided services to Ellipso pursuant to this agreement from and after October 1, 2002.  Ellipso requested and accepted these services from Patterson.  Ellipso made partial payments to Patterson for these services up to and including October 2004.

3. Pursuant to this agreement, Ellipso owes Patterson in excess of one million dollars ($1,000,000.00) for services provided to Ellipso by Patterson, the exact amount of which will be proved at trial.

## II. *QUANTUM MERUIT*

4. Patterson restates paragraphs 1 through 3 above.

5. Ellipso holds assets worth in excess of five hundred million dollars ($500,000,000.00). During the time period that Patterson provided services to Ellipso, Ellipso was experiencing severe cash flow difficulties, which threatened to force Ellipso into bankruptcy. Patterson's services were instrumental in enabling Ellipso to avoid bankruptcy and remain a viable business entity, thus preserving its assets.

6. Patterson should be compensated by Ellipso commensurate with the value of the services Patterson provided to Ellipso in the amount of fifty million dollars ($50,000,000.00), or such other amount as may be proved at trial.

## III.     UNJUST ENRICHMENT.

7. Patterson restates paragraphs 1 through 6 above.

8. Ellipso solicited and accepted the benefits of Patterson's services without compensating Patterson for these services.

9. As a consequence of receiving the benefits of Patterson's services without paying Patterson for such services, Ellipso has been unjustly enriched in the amount of

fifty million dollars ($50,000,000.00), or such other amount as may be proved at trial.

IV.    FRAUD.

10. Patterson restates paragraphs 1 through 9 above.

11. From and after October 1, 2002, Ellipso, and its owner and Chairman, David Castiel, ("Castiel"), repeatedly and continually induced Patterson to provide services to Ellipso by making representations that Ellipso would compensate Patterson for his services.

12. These representations by Elliso and Castiel were false as Ellipso and Castiel had no intention of compensating Patterson for his services.

13. These false representations that Patterson would be paid for his services, were made by Ellipso and Castiel knowingly and intentionally; and with the purpose of defrauding Patterson by inducing Patterson to provide services to Ellipso without compensation.

14. Patterson reasonable relied on these false representations by Ellipso and Castiel and provided services to Ellipso.

15. As a consequence of Ellipso's and Castiel's false representations; and Patterson's reliance on these false representations, Patterson has been damaged in the amount of one million dollars, ($1,000,000.00) or such other amount as may be proved at trial.

## V.     CONSPIRACY.

16. Ellipso and Castiel conspired each with the other, and with others including Virtual Geosatellite Holdings, Inc.; Ellipso Private Holdings, LLC; Mrs. David Castiel; Mobile Communications Holdings, Inc.; the officers, directors and managers of these entities; and others as yet unknown, to defraud Patterson (and others) of payment for services rendered to Ellipso.

17. As a consequence of this conspiracy, Patterson has been damaged in the amount of one million dollars ($1,000,000.00), or such other amount as may be proved at trial.

## VI.     PUNITIVE DAMAGES.

18. Patterson re-states paragraphs 1-17 above.

19. The actions of Ellipso, and its co-conspirators were knowing, deliberate, and venal; and were taken for the purpose of harming Patterson.  The actions of Ellipso and the co-conspirators were in utter disregard for the rights of Patterson, and the other victims.

20. Patterson is entitled to the trebling of damages and the imposition of sanctions on Ellipso.

## VII.     JURY DEMAND.

21. Patterson demands a trial by jury of all issues.

VIII.  REQUESTED RELIEF.

22. Patterson demands that he be awarded compensatory and/or punitive damages in

the amount of fifty million dollars ($50,000,000.00), or such other amount as may

be proved at trial.

23. Patterson demands that he be awarded pre and post judgment interest, costs,

attorney's fees, and such other relied as may be just and proper.


Respectfully submitted,


Robert B. Patterson, *pro se*
1643 Hunting Creek Drive
Alexandria, Virginia 22314
(571) 278-7976


Certificate of Service

I certify that a copy of the foregoing was mailed first class, postage paid, this 24th
day of February, 2006, to – Thomas A. Mauro, Esq., 1020 Nineteenth St., N.W., Suite
400, Washington, D.C. 20036; and to – Mark S. Guberman, Esq., 1400 K St., N.W.,
Suite 1000, Washington, D.C. 20005.

Robert B. Patterson

11

**EXHIBIT 1**

## AGREEMENT FOR SERVICES

**THIS CONSULTING AGREEMENT** ("Agreement") is entered into and effective as of the 1st day of October 2002, by and among Consulting Management, Ltd,, P.O. Box 2051, Middleburg, Virginia 20118 (referred to as "Consultant"), Ellipso, Inc., and Ellipso Private Holdings, LLC, with offices at 1133 21st Street, N.W., Eighth Floor, Washington, DC 20036 USA (together with their subsidiaries and affiliates the "Company").

**WHEREAS,** Company has conceived and is implementing two innovative mobile satellite systems known as the Ellipso® System and the Virtual Geo® System, designed to provide communications services worldwide, including voice and data, to and between mobile and fixed users (the "Services" or the "Systems"); and

**WHEREAS,** Consultant has significant expertise and contacts to assist the Company in establishing beneficial business relationships with certain third parties, who may be interested investing in or in any other way financing all or a portion of the Ellipso System or the Virtual Geo System, as well as significant expertise and experience to assist the Company in developing its business strategy to protect Company's intellectual property, trade marks, and other assets (the "Strategy"); and

**WHEREAS,** the parties desire to enter an agreement whereby Consultant would be encouraged to introduce Company to certain third parties who may be interested in lending for, investing in, or in any other way financing all or a portion of the Ellipso System or the Virtual Geo System, and to assist Company in protecting Company's assets ("Consultant's Services").

**WHEREAS,** Consultant has established contacts, sources, and procedures for securing for the Company, at favorable rates and terms, assistance and representation for protecting the Company's intellectual property and other assets, and for pursuing the Company's general businesses objectives;

**NOW THEREFORE,** in consideration of the mutual promises and undertakings contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Company and Consultant agree as follows:

## 1. TERM

Commencing on the date hereof, and continuing until September 30, 2003 (or such later date as may be mutually agreed pursuant to Clause 17.1 of this Agreement), Consultant shall use its best efforts to introduce Company to the parties listed in Exhibit "A" hereto ("Financiers") for the purpose of facilitating arrangements through which those Financiers finance and/or invest in the Systems or their associated Services and/or other aspects of the Company's business. Consultant will further establish a practical business strategy aimed at protecting and preserving the Company's assets and shall assist in the implementation of that Strategy. The foregoing period of time is hereinafter referred to as the "Term".

## 2.    COMPENSATION

2.1    Upon execution of this Agreement, Consultant shall receive an option to purchase 30,000 shares of Ellipso Private Holdings LLC ("EPHLLC") stock. These options shall vest on the first day of each calendar month of this Agreement at the rate of 2,500 shares per month. At the election of Consultant, these shares may take the form of Options at par value ($.01 per share) and will carry a maturity of a number of years sufficient to allow Consultant to optimize the tax impact of such award. A separate stock allocation and/or option agreement will be executed by the parties concurrently with this Agreement.    Consultant shall also receive a payment of $5,000 per month for the months of October, November, and December 2002, payable $2,500 on the 1st and 15th of each month. Thereafter monthly cash compensation will be renegotiated each calendar quarter during the Term of this Agreement.

2.2    If Company enters into an agreement with a Financier to invest in, lend for, or finance all or a portion of the Ellipso System or the Virtual Geo System, or other Company business, with one or more of the Financiers to whom Consultant introduced the Company during the Term of this Agreement, then Consultant shall receive a success bonus ("Success Bonus") calculated as follows (Lehman plan):

2.2.1    5% for the first million dollars, or fraction thereof, received as by the Company, plus

2.2.2    4% of the second million dollars, of fraction thereof, received by the Company, plus

2.2.3    3% of the third million dollars, or fraction thereof, received by the Company, plus

2.2.4    2% of the fourth million dollars, or fraction thereof, received by the Company, plus

2.2.5    1% (one percent) of any received investment amount exceeding five millions dollars (US$ 5,000,000).

The Success Bonus shall be based upon the cumulative and aggregate amount of funds actually paid by Financiers to Company and received by Company pursuant to each individual Investment Agreement.

Consultant shall be compensated only for Amounts obtained by Advisor's efforts. However, Consultant shall be compensated for Amounts obtained as a result of subsequent introductions by a Financier or intermediate third party, who was first introduced to Company by Consultant, and which resulted in a financing agreement within one year of the Term of this Agreement. Consultant shall receive the Success Bonus if and when Company actually receives and has the unrestricted right to use the

Amounts. Intermediate third parties may be compensated by Company at its discretion.

If Consultant is independently compensated by Financier, Advisor will promptly notify the Company of such compensation. In this case, Consultant shall be entitled to a Success Bonus per this Section 2.2 reduced by any amounts Consultant receives from other parties to the transactions. It is the intention of the Parties to avoid "double dipping" but ensure that the total compensation received by Consultant from all sources for any specific investment is at least equal to that contemplated by this Section 2.2.

2.3    Company will reimburse Consultant for the reasonable costs and expenses incurred by Consultant in the performance of this Agreement, provided that Consultant first obtained Company's prior written approval for such costs and expenses.

2.4    Consultant will help establish a Strategy to defend and protect the Company in all business matters including litigation of pending and future actions. This Strategy will have as its primary aim to preserve the Company's assets. Consultant will have primary responsibility to effectuate the initiation of actions against former employees who have breached their contracts with the Company, former directors and officers who have breached their fiduciary duty to the Company, and any other person(s) similarly situated. The primary thrust of this Strategy shall be for the purpose of recovering damages and ensuring the Company is not exposed to litigation as a form of extortion. Consultant will also use its best efforts to secure personnel to assist and effectuate these efforts at the best possible terms and rates.

*practice of law?*

2.5    In the event Company requests, and Consultant accepts, to provide other services to Company, such additional services will be billed to Company at an agreed rate and invoiced monthly. Any amounts owed by Company to Consultant pursuant to this Agreement, which remain unpaid for more than thirty days shall be assessed one percent (1%) interest per calendar month on the entire outstanding balance, commencing the first full month following invoicing.

## 3.    COORDINATION

In order to coordinate and maximize all contacts with Financiers, Consultant will provide Company with prior notification of Consultant's strategies and efforts to contact and meet with Financiers. The Chief Executive Officer, or his designee, shall serve as Consultant's point of contact at Company for coordination purposes.

With respect to additional potential investors, Consultant agrees not to contact any potential investors, other than the Financiers specified in Exhibit "A," on

Company's behalf without prior written authorization from Company's Chief Executive Officer, which authorization shall not be unreasonably withheld.

Consultant will take steps to ensure an orderly conduct of all litigation in coordination with the CEO, law firms, experts, witnesses, investigators, financial sources, and others involved in various legal actions against individuals associated, or formerly associated with the Company.

## 4.    COMPANY'S OBLIGATIONS

Consultant is hereby acknowledged as the procuring cause of Investment Agreements that result from Consultant's introduction of the Company to the Financiers specified in Exhibit "A" hereto.

## 5.    NO OBLIGATION

Nothing in this Agreement obligates Consultant to obtain an Investment Agreement and/or Beneficial Agreement, nor shall anything in this Agreement obligate Company to enter into an agreement with a Financier.

## 6.    NO SALE OF SECURITIES

Consultant acknowledges that it is acting solely in the capacity of a "finder" and shall not sell or offer to sell securities related to the development and/or implementation of the Ellipso System or the Virtual Geo System. Consultant represents and warrants that its activities will relate solely to accredited investors as defined in Section 230.501 of the Securities Act of 1933, if applicable. Consultant agrees to comply with all applicable state and federal securities laws. Consultant agrees to indemnify and hold Company harmless from any and all claims, losses, expenses, and damages (including reasonable attorneys' fees) in connection with a breach of this provision.

## 7.    NO ADDITIONAL BROKERS OR FEES

Consultant hereby expressly acknowledges and agrees that Consultant has not employed, engaged, or utilized the services of any brokers, agents, finders, or similar third parties and that except for the Success Bonus expressly provided for by this Agreement, Company has no obligation to pay any commissions, fees, or other amounts to any brokers, agents, or finders in connection with Consultant's efforts to pursue Financiers or investors on behalf of Company.

In the event a third party claims to be the procuring cause of an Investment Agreement or a Beneficial Agreement with a Financier, Company shall have the right, exercisable in its sole discretion, to determine which party will receive the applicable Success Bonus and Consultant shall have no further rights or recourse against Company for such disputes.

Bob Patterson
Compensation Agreement
1 October 2002

4

Consultant agrees to indemnify and hold Company, and its affiliates, officers, directors, employees, agents, successors and assigns, harmless from any and all claims, losses, expenses and damages (including reasonable attorneys' fees), whether finally awarded or agreed to in settlement, arising from or in connection with this Agreement.

*[handwritten margin note: What's indemnity Clause?]*

## 8.    RELATIONSHIP OF PARTIES

Consultant is an independent contractor. Nothing herein contained shall be construed to place Consultant and Company in the relationship of principal and agent, master and servant, partners, joint ventures or employer and employee, and neither party shall have, whether expressly or by implication, nor shall represent itself as having, any authority to make contracts in the name of or binding upon the other, or to obligate or bind the other in any manner whatsoever.

Consultant shall not be deemed to be employed by Company for purposes of any tax by the U.S. federal government or any state or local government with respect to employment or compensation for employment, including but not limited to income tax withholding, social security, and unemployment taxes. Consultant has or will file all tax forms required of an independent contractor. Consultant, its directors, officers, employees and/or agents shall not be entitled to participate in any retirement plan, medical plan and/or any other benefit plan or program of the Company.

## 9.    CONFIDENTIALITY

Subject only to legally compelled disclosure, Consultant shall maintain the terms and conditions of this Agreement and any information, reports, or other data furnished hereunder in strict confidence.

## 10.    COMPLIANCE WITH LAWS AND REGULATIONS

In the performance of this Agreement, Consultant and any individuals or entities acting on behalf of Consultant will comply in all respects with all applicable laws and regulations, including but not limited to those identified in this Agreement. Consultant represents that neither Consultant nor any individuals or entities acting on behalf of Consultant will, directly or indirectly, make, offer, or agree to make or offer any loan, gift, donation, payment, or any other form of value, whether in cash or in kind, for the benefit of or at the direction of any candidate, committee, political party, government or a subdivision thereof, or any individual elected, appointed, or otherwise designated as an employee or officer thereof, for the purpose of influencing any act, omission, or decision of such entity or individual or inducing such entity or individual to do or omit to do anything, in order to obtain or retain business or other benefits in violation of the United States Foreign Corrupt Practices Act.

## 11.    NOTICES

All notices, reports, accountings, or other communications which either party may be required to or desires to send to the other party, shall be sufficiently given if in writing, delivered personally (by courier with a reliable system for tracking delivery) or by confirmed facsimile or upon receipt of next business day air express, addressed as follows:

<table>
<tr><td>If to Consultant:</td><td>Robert B. Patterson, Director<br>Consulting Management, Ltd.<br>Box 2051<br>Middleburg, VA 20118<br>Telephone: (703) 338-0944<br>Facsimile:</td></tr>
<tr><td>If to Company:</td><td>Ellipso, Inc.<br>Ellipso Private Holdings, LLC<br>1133 21st Street, N.W.<br>Suite 800<br>Washington, D.C. 20036<br>Telephone: (202) 466-4488<br>Facsimile: (202) 466-4493<br>Attn: David Castiel, President and<br>Chief Executive Officer</td></tr>
</table>

or to such other person or persons or to such other address as may be designated in writing by the applicable party from time to time. Notices shall be deemed received when personally delivered, or five days after mailing if sent by mail, or upon actual receipt by the designated receiving party of a telex or facsimile transmission from the other party.

## 12.    ENTIRE AGREEMENT/AMENDMENT

This Agreement constitutes the entire agreement between the parties with reference to this matter, and supersedes all prior agreements or communications, written or oral, relating to the subject matter. This Agreement cannot be amended except by a written instrument signed by both parties.

## 13.    GOVERNING LAW AND JURISDICTION

This Agreement is made, and is to be construed under the laws of the District of Columbia except for its conflict of laws provisions. Both parties agree to accept service of process to appear in any legal proceeding pertaining to this agreement in the District of Columbia.

Bob Patterson
Compensation Agreement
1 October 2002

6

### 14.    ASSIGNMENT

Consultant may not assign its rights or obligations hereunder. This Agreement is binding upon and shall inure to the benefit of the respective successors and assigns of the parties, except where rights of assignment are prohibited or limited.

### 15.    SEVERABILITY

If any provision of this Agreement shall be found invalid or unenforceable, then such provision shall not invalidate or in any way affect the enforceability of the remainder of this Agreement.

### 16.    TERMINATION

Either party may terminate this Agreement upon ten (10) days written notice. Although cause is not required to terminate this Agreement, either party may terminate this Agreement immediately upon a material breach of its terms or conditions by the other party. The Term of this Agreement shall expire at 5:00 p.m. (D.C. Time) on September 30, 2003, at which time this Agreement shall automatically terminate.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date set forth above.

**ELLIPSO, INC.**
**ELLIPSO PRIVATE HOLDINGS, LLC**

By: _____

Its: _____C . E . O ._____

**CONSULTING MANAGEMENT, LTD**

By: _____

Its: _____

**EXHIBIT 2**

**ADDENDUM TO AGREEMENT OF OCTOBER 1, 2002.**

**WHEREAS,** the undersigned wish to amend their agreement dated October 1, 2002, it is agreed as follows:

1. Section 2.1, is replaced in its entirety with the new Section 2.1.     *Compensation amended*

    2.1   Upon execution of this Addendum, Consultant shall receive retroactively options to purchase 10,000 shares of Ellipso Private Holdings LLC ("EPHLLC") stock per month at par value, up to a maximum of 120,000 shares or share options, commencing with the month of October 2002, and continuing for twelve months thereafter, unless modified upward by both parties. For the purpose of this Amendment the first 60,000 shares shall immediately vest, and the remaining 60,000 options shall vest on the first day of each calendar month of this Amendment at the monthly rate at which they are acquired. At the election of Consultant, these share options may take the form of Options at par value of ($0.01 per share) and will carry a maturity of a number of years sufficient to allow Consultant to optimize the tax impact of such award. A separate stock allocation and/or option agreement will be executed by the parties concurrently with this Addendum. Consultant shall also receive payment of $10,000 per month, payable $2,500 on the first, $2,500 on the fifteenth of each month, and $5,000 deferred pending the availability of corporate funds commencing February 1, 2003. The aforementioned cash payment may also be adjusted upward by both parties subject to the same conditions. In addition, Consultant shall receive a one time amount of $20,000 of incentive deferred compensation subject to the conditions below. For the purpose of this Amendment, in the event that EPHLLC or any affiliated business entity is placed into receivership, Consultant's unpaid cash compensation, if any, including the incentive deferred cash compensation, and one half of all shares or share options vested as to the date of receivership shall be treated as salary and wages at the rate of $1.00 per share or share option.

**ELLIPSO, INC.**
**ELLIPSO PRIVATE HOLDINGS, LLC**

BY: _____

ITS: *President & CEO*
2/9/03

**CONSULTING MANAGEMENT, LTD.**

BY: _____

ITS: *Director*

**EXHIBIT 3**



April 27, 2004

Mr. Robert Patterson
Consulting Management Ltd.
Middleburg, Virginia

Dear Mr. Patterson,

This is to confirm the terms and status of our arrangement memorialized on 1 October, 2002 and amended on 9 February, 2003.

From 1 October, 2002 to 1 February, 2003 Consulting Management Ltd accrued $5,000 per month, of which certain amounts were paid and the balance deferred. The amount deferred as of 1 February, 2003 is thus $40,000 minus amounts actually disbursed (AAD1). In February Ellipso agreed to accrue a bonus equal to all amounts deferred in this period plus $20,000, i.e. ($40,000 – AAD1 + $20,000). All such bonuses remain deferred.

From 1 February, 2003 up until September 30, the Company agreed to accrue $10,000 per month, of which certain amounts would be deferred. That arrangement was interrupted on 1 May, 2003. Thus from 1 February, 2003 to 30 April, 2003, you accrued $30,000 minus disbursed amounts, AAD2. Ellipso agreed to accrue a bonus equal to all deferred amounts, i.e. $30,000 – AAD2. This bonus is deferred as well.

The Company agreed to resume the prior arrangement on November 1, 2004 at $10,000 per month and to date you have accrued $60,000 of which certain amounts were deferred have been deferred. The Company will again accrued a bonus equal to the deferred amounts, i.e. $60,000- AAD3. This bonus is also deferred.

Ellipso agrees to maintain this current arrangement until May 31, 2004 at which time it expects to repay all deferred compensation, and pay the bonuses for deferred compensation in accordance with the guidelines of payment of bonuses for deferred compensation established by the Company at that time, i.e. all bonus compensation amounts will be paid pro-rata to beneficiaries out of the deferred compensation bonus pool.

If the above reflects your understanding, please concur below. Feel free to call if you have any questions.

Sincerely,

David Castiel
CEO

Concur
Consulting Management

**EXHIBIT 4**

 **MAIL**

Print - Close Window

**From:** "David Castiel" <dcastiel@ellipso.com>

**To:** "Robert Patterson-Yahoo" <legalmanagement@yahoo.com>

**Subject:** as discussed

**Date:** Wed, 20 Oct 2004 09:59:32 -0400

Bob,

Per your request I am reiterating the terms of our agreement, including a going-forward proposal.

1) In April 2004 you requested a written affirmation of your agreement together with a detailed accounting of deferred compensation. This was memorialized in a letter date April 27, which, in addition to specifying the amounts owed, paid and deferred, stated that:
*"Ellipso agrees to maintain this current arrangement until May 31, 2004 at which time it expects to repay all deferred compensation, and pay the bonuses for deferred compensation in accordance with the guidelines of payment of bonuses for deferred compensation established by the Company at that time, i.e. all bonus compensation amounts will be paid pro-rata to beneficiaries out of the deferred compensation bonus pool."*

2) My understanding was that you were "covered" as you indicated to me starting in June through a variety of sources, including the Ineva customer base sold to LookNet, of which you are a substantial holder and TRSC/Mann Tech (of which you are a substantial holder as well) who had agreed to fund certain "registry" related development activities. In fact, in addition to assisting Ellipso, you have been actively involved with TRSC/Mann Tech for businesses unrelated to Ellipso or 881.

3) Based on the above, although we never defined any arrangement after May 31, 2004, Ellipso is prepared to compensate you for your efforts in the intervening period. I believe it is only fair that the burden be shared with your other employers/businesses as anticipated earlier. Conversely it would not be fair that Ellipso accrues a liability of $20,000 per month as you suggest, while the benefit of your activities flows to Ellipso perhaps, but at least as well to Mann/Tech and to your own ownership of these various entities.

Based on the above we are prepared to 1) disburse to you 10% (as you requested) of all proceeds to Ellipso except for loans and 2) come up, with your assistance, with a specific amount to value your contribution to Ellipso in the past four months and forward. Such amount will accrue to your credit and be paid as soon as funds are generated and the 10% in point 1) above clears the balance due. I expect this to happen in the next several months, based on the emerging 881 business.

Let me know your thoughts.

David