IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC.,<br><br>     Plaintiff and Counterclaim<br>     Defendant,<br><br>     v.<br><br>JOHN B. MANN, ET AL.,<br><br>     Defendants and Counterclaim<br>     Plaintiffs. | Case No. 05cv001186   (RCL) |

**OPPOSITION OF JOHN B. MANN AND MANN TECHNOLOGIES, L.L.C.
TO ELLIPSO'S MOTION TO DISMISS COUNTERCLAIM**

Counterclaim Plaintiffs John B. Mann and Mann Technologies, L.L.C., by and through their undersigned counsel and pursuant to the Rules of this Honorable Court, hereby submit this Opposition to the motion to dismiss their Counterclaim filed by Ellipso, Inc. on April 25, 2006.

**Applicable Legal Standard**

"When a federal court reviews the sufficiency of a complaint [t]he issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 467, 477 (1974). The Court should accept as true all factual allegations in the complaint, *Doe v. United States Dept. Of Justice*, 753 F. 2d 1092, 1102 (D.C. Cir. 1985), should draw all reasonable inferences in the plaintiff's favor, *Croixland Properties, Ltd. Partnership v.*

*Corcoran*, 174 F.3d 213, 215 (D.C. Cir. 1999), and should dismiss only if "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957).

## ARGUMENT

The Counterclaim Defendant's Motion to Dismiss fails to meet the above standard because it relies on assertions of fact that controvert the allegations of the Counterclaim, thus removing it from the realm of Rule 12(b) and converting it to a Rule 56 motion. But the Court cannot consider it under Rule 56 because the motion does not comply with the requirements of Rule 56.

The two central legal arguments Ellipso makes – failure of pleading for fraud and lack of standing by John Mann – have no merit. The elements of the fraud claims of Mann Technologies and John Mann are expressly set out by specific allegations of fact, which the motion does not examine. Moreover, the Counterclaim Plaintiffs have amended their Counterclaim to make the fraud committed by Ellipso and Dr. Castiel, although well known and understood by each, even clearer. As to John Mann's standing, Ellipso made John Mann a personal defendant in this case because Mr. Mann had a personal business relationship with Ellipso and its President, David Castiel. Ellipso claims that the relationship created substantial losses for Ellipso. Mann, on the other hand, contends that the relationship caused him to suffer substantial personal losses. To suggest that Ellipso has standing to sue Mann based on that relationship but that Mann has no standing to sue Ellipso fails of its own weight. Indeed, Ellipso makes the point in Footnotes 3 and 4 at page 6 of the motion when it argues that nothing in the Loan Agreement could reasonably be construed to require Mann to spend so

much of his personal time and money, or Mann Tech to expend efforts outside of the loan documents. Ellipso is correct. It is precisely Ellipso's and Castiel's continuing fraud which Ellipso and Castiel committed <u>outside and apart from</u> the loan documents that caused Mann "to spend so much of his personal time and money" and Mann Tech to expend efforts outside of the documents. Both now seek recovery for that expenditure of time and money.

      Ellipso's further argument that the Counterclaim belongs in arbitration is wrong because it ignores the facts asserted. Mann Tech's Counterclaim arises out of the loan documents and deceptions made to Mann Tech and John Mann in his capacity as a member of Mann Tech. These, of course, remain in the case. John Mann's personal counterclaims arise out of fundamental deceptions about a phantom telephone service, the "881 Vanity Service" set out in the Counterclaim and Amended Counterclaim, upon which the Registry was to be built. These deceptions about a vanity telephone service that did not exist, not about the Registry service or the promise of an exclusive Registry service, caused John Mann personally to invest hundreds of thousands of his own money and thousands of hours of his time. And as Ellipso concedes in its motion, the facts will demonstrate that Mann did so quite apart from his obligations to Mann Tech under the loan agreement and his obligations to TRSC under the Registry Agreement. The motion treats as non-existent the factual distinction between the 881 Vanity Telephone Service – the absence of which being the corner stone of Ellipso's and Castiel's deception – and the Registry function and business, which is not a telephone service and which could only be created when, and if, Ellipso provided the underlying telephone service (so that the telephone numbers could be created and registered). The motion concedes that the TRSC contract deals only with the Registry function. In fact, in the last paragraph of

page two of the TRSC Agreement, the Agreement expressly excludes from its coverage any other relationship between the parties. The Counterclaim is directed to these other relationships.

## DISCUSSION

Although the motion states at page 4 it is premised on two grounds, it also makes other assertions, mostly factual, to support its arguments. This Opposition will address the assertions in the order they appear.

First, Ellipso contends that the counterclaim is predicated on actions taken pursuant to the TRSC contract or, alternatively, arising under the contract. This factual contention is plainly controverted by the original and amended Counterclaim, which discusses the initial and subsequent deceptions of Ellipso made to John Mann and later to Mann Tech. The First Amended Counterclaim is attached to this Opposition as Exhibit One.[1] Those deceptions do not involve the Registry function or the contract to create and market it. They involve the false representations by Ellipso and Castiel as to the existence and value of the vanity telephone service which Ellipso and Castiel falsely said were in place in November 2003. Those false representations were directed by Ellipso and its President, David Castiel, to John Mann individually, and later to Mann Tech, in order to obtain money and services from both under false pretenses. See ¶¶ 9A - 9D, 10 - 12, 15 - 21, 24, 27, 28, and 34 - 43 of the Counterclaim and Amended Counterclaim. The Counterclaim asserts fraud in connection with the phantom

---

[1] The First Amended Counterclaim, upon which the Counterclaim Plaintiffs also rely, is filed without leave of Court under Rule 15(a) because no responsive pleading has been filed by Ellipso.

telephone service to obtain money and services from Mann and Mann Tech having nothing to do with the registry function; it does not assert fraud to obtain the registry contract. The motion controverts these factual assertions, variously, by ignoring them or attempting to restate them. Thus, this ground for dismissal under Rule 12 is incorrect.

Second, Ellipso contends that Mann and Mann Tech suffered no damages. Again this is a factual assertion controverted by the Counterclaim which expressly alleges damages suffered by the Counterclaim Plaintiffs. See ¶¶ 9A - 9D, 17, 25, 26, 29, 31, 34, 37, 39, 40, 43, 44, 47, 48, 51, 52, 55, 58, 61, 62, 65, 66 of the Counterclaim and Amended Counterclaim. These factual assertions are not properly the subject of a Rule 12 motion. If Ellipso is entitled to any off-sets as to the damages asserted, the off-sets can only be determined after the factual disputes as to damages are resolved.

At page 6 Ellipso argues that the Court should ignore the Counterclaim Plaintiffs' express assertions that they spent time and money relating to the 881 Vanity Telephone Service and conclude that the time and money were spent on the implementation, marketing and maintenance of the "881 Registry." But as the allegations cited by Ellipso itself show, this is not what the Counterclaim asserts. There is no basis in the Counterclaim for the Court to make this factual conclusion urged on the Court by Ellipso in its motion, even if such a conclusion would somehow be proper under Rule 12. The losses and fraud asserted in the counterclaim relate to the 881 Vanity <u>Telephone</u> Service, not to the Registry function, which function could not exist until the telephone service existed. Ellipso and Castiel falsely represented that this telephone service did exist and it was only a question of progressively more time and money from the Counterclaim Plaintiffs that would perfect the telephone service. The factual

contentions of the Counterclaim plainly do not arise out of the TRSC contract, but rather, out of Ellipso's and Castiel's continuing fraud and conduct apart from the TRSC contract and relating to a wholly different matter. Ellipso may not controvert those assertions in a Rule 12 motion or argue that the factual assertions actually made are factually wrong or present a remote possibility of success. That is not the test of the validity of a Rule 12 motion. *Scheuer v. Rhodes, supra*.

     Ellipso argues that the fraud claims fail under Rule 9(b). As the Court has noted in another context in this case, there is a heightened standard of pleading for fraud. The plaintiff must state the "time, place, and content of the misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *Firestone v. Firestone*, 76 F.3d 1205, 1211 (D.C. Cir. 1996). Ellipso appears to rely only on the concluding paragraphs of the Counterclaim while ignoring the specific factual allegations of ¶¶ 1- 44 of the Counterclaim. Its motion does not examine these specific allegations. The factual allegations of the initial and amended counterclaim state the specific time and place of the alleged fraudulent conduct, who engaged in the conduct, who made the misrepresentations and to whom they were made, the content of the misrepresentations, and the manner in which they were made. It shows that the conduct occurred, among other places and times, at John Mann's home in late 2003, on January 12, 2004, in the spring of 2004, at the Silver Diner in September and October of 2004, at the times of the execution of the Mann Tech loan documents and amendment thereto, and in written and dated communications from Dr. Castiel which are spelled out in the counterclaim. The communications were between Dr. Castiel and John Mann. The allegations concern the stated existence, then non-existence, of a phantom vanity telephone service and the

obstacles present such as the Ellipso contract with Sunburst Communications, Ellipso's lack of technical capacity to establish the telephone service, and Ellipso's extremely desperate financial condition, which were not disclosed to the counterclaim plaintiffs and which made it impossible for Ellipso to provide the vanity telephone service it stated falsely existed. The allegations set out the money, time and effort obtained from and given up in stages to Castiel and Ellipso by the counterclaim plaintiffs as a result of a continuing fraud over a long period of time. The counterclaim plaintiffs respectfully submit that these allegations are not conclusions but that the conduct alleged as fraudulent is spelled out in detail and satisfy Rule 9(b). Discovery will undoubtedly reveal many further deceptions and withholding of material information by Ellipso and its President.

    At page 10 of its motion, Ellipso again controverts the direct allegations of the Counterclaim by arguing that only Patterson approached Mann and that only Patterson negotiated with Mann. The Counterclaim alleges that Castiel and Patterson approached Mann and that Castiel and Ellipso, not Patterson, obtained substantial amounts from Mann. A Rule 12 motion may not controvert these allegations. Further, Ellipso argues that any fraud was caused "part and parcel" (sic) by Patterson because he was a "fiduciary" to Mann and Mann Tech. Whatever this means, Ellipso provides no legal support for the proposition. Indeed, Ellipso has been arguing that Patterson was Ellipso's fiduciary, not Mann Tech's. If Patterson was Ellipso's fiduciary, then Ellipso is responsible for his actions, at least until Patterson took an equity position in Mann Tech. Patterson did not obtain his position in Mann Tech until the end of February 2004 by which time John Mann and Mann Tech expended at least $110,000.00 in reliance on Castiel's misrepresentations. The Court is well aware that the

question of Ellipso's alleged lack of knowledge of Patterson's role in Mann Tech is very much in dispute[2] and thus cannot be relied upon in a Rule 12 motion.

Finally, Ellipso's contention that the quantum meruit and unjust enrichment claims should be dismissed because of the loan agreement is misplaced. Ellipso argues that there is no contract, yet it received the benefit of Mann's services and substantial amounts of money from Mann and Mann Tech. Both counterclaim plaintiffs are plainly entitled to assert such claims for losses incurred outside of the contract, as they have done here.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that Ellipso's motion to dismiss the Counterclaim be denied and that this case proceed in due course. An Order is attached for the consideration of the Court.

Respectfully submitted,

_____/s/_____
Thomas A. Mauro, Bar No. 184515
1020 Nineteenth Street, N.W.
Suite 400
Washington, D.C. 20036
Tel.: (202) 452-9865
Fax: (202) 452-0092
Attorney for the Counterclaim Plaintiffs, John B. Mann and Mann Technologies, L.L.C.

---

[2] Paragraph 6 of the Amended Counterclaim states that Mann provided Patterson with an equity interest in Counterclaim Plaintiff Mann Tech with Castiel's and Ellipso's full knowledge and advance approval.

# EXHIBIT ONE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC., <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> JOHN B. MANN, ET AL., <br><br> Defendants and Counterclaim Plaintiffs. | Case No. 05cv001186   (RCL) <br><br> **DEMAND FOR JURY TRIAL** |

### FIRST AMENDED COUNTERCLAIM OF JOHN B. MANN AND MANN TECHNOLOGIES, L.L.C.[3]

Counterclaim Plaintiffs John B. Mann and Mann Technologies, L.L.C., by and through their undersigned counsel and pursuant to the Rule 15(a) of the Federal Rules of Civil Procedure, hereby amend Paragraphs 6 and 9 of their Counterclaim.

Paragraph 6 is deleted and substituted by the following:

6. Mann and Defendant, Robert Patterson ("Patterson"), have known each other socially since 1985, and communicated on a yearly basis afterwards. Mann and Patterson did not associate in business until February 2004 when Mann, with Dr. David Castiel's ("Castiel") and Ellipso's full knowledge and advance approval, provided Patterson with an equity interest in Counterclaim Plaintiff Mann Tech and in The Registry Solutions Company ("TRSC").

---

[3] This Amendment is filed without leave of Court under Rule 15(a) because no responsive pleading has been filed by Ellipso.

1

Paragraph 9 is deleted and substituted by the following paragraphs 9A - 9D:

9A. Between Thanksgiving and Christmas, 2003, Castiel and Patterson again contacted Mann and the three met at Mann's home in Warrenton, Virginia to discuss what Castiel described as significant, new business opportunities involving Ellipso's satellite and communications business. At this time, Mann had no business or professional relationship whatsoever with Patterson, and no new social contacts with Patterson. This was the occasion of the initial deception by Castiel, to obtain money from Mann, as follows. Castiel represented to Mann that Ellipso had the exclusive authority from the International Telephony Union ("ITU") to use so-called "881" country codes to create a "precursor service", which would provide telephone subscribers with custom vanity telephone numbers. This is referred to hereafter as "The 881 Vanity Service". Castiel stated that the 881 Vanity Service was exclusive to Ellipso by virtue of the grant of 881 country code authority Ellipso had received from the ITU and would be enormously profitable, according to Castiel. Castiel represented that, by using Ellipso's satellite and communications technology Ellipso had the present and actual capability to quickly and easily arrange for the provisioning of the 881 Vanity Service.

9B. More specifically, during the above-noted meeting, Castiel stated that Ellipso had the right to its own country code – the number being for a "virtual country" so to speak – which was the number 881. Castiel explained that, in making international telephone calls, a country code is required. Castiel also explained that merely having the 881 country code did not render actual service possible, inasmuch as each country must also "load" that country code into its telephone system. Castiel at the above-noted meeting

then stated that "all the codes have been loaded in 23 countries, and all they need is to be switched on." Castiel stated that the 881 Vanity Service requires this, i.e. that it requires the codes to have been loaded and switched on. Castiel also stated during this meeting that the 881 Vanity Service "could be implemented immediately," requiring only a Registry service. The Registry service was required in order to assign particular, individual telephone numbers under the Vanity Service to persons or businesses wishing to have such numbers. Castiel proposed an agreement to Mann, that if Mann gives money to Castiel and Elipso, Mann would receive the exclusive rights to be the Registrar of the 881 telephone numbers, plus Mann would have non-exclusive rights to market this telephone service. Thus, under this agreement, Mann would have the non-exclusive rights to sell telephone numbers under the 881 Vanity Service. To enter into this agreement, Castiel required that Mann pay money up front, plus more money later. Shortly after this meeting, after Mann met with Castiel and Patterson in other locations, Mann did indeed make an initial payment of $10,000.00 to "Ellipso-881". Mann paid by personal check on or about January 12, 2004, in order to secure for Mann the exclusive rights to the Registry and the non-exclusive right to market the telephone service. In addition, Mann was later induced by Ellipso's continuing campaign of false representations about the 881 Vanity Service to invest substantial amounts of money in Ellipso, well in excess of $75,000, unrelated to the Registry, in order to keep Ellipso in business and going forward, in reliance upon the false and deceitful assertions and statements by Castiel and at the request and urging of Castiel.

9C. Castiel deceived Mann in several material, important, and significant ways: (a) Ellipso did not have the ability to provide the 881 Vanity Service as Castiel had

3

represented; (b) the telephone numbers under the 881 country code had not been loaded in 23 countries and indeed could not be loaded until and unless Ellipso entered into contracts with providers of international telephone services able to load such numbers, and no such contract was - even to this date - ever entered into by Ellipso; (c) Ellipso could not simply "switch on" the 881 Vanity Service as represented by Castiel; and (d) on information and belief, Ellipso had already sold significant rights to the 881 Vanity Service to Sunburst, a fact never disclosed by Castiel to Mann but only discovered much later by Mann. Thus, Mann was deceived by Castiel, and this affected all subsequent dealings between Mann and Castiel, whereby Mann and Mann Technologies, L.L.C. invested money, time, and effort in Ellipso and also made loans to Ellipso, all based upon these aforementioned deceptions, which concerned the stated existence of a service Ellipso did not provide and could not provide. Moreover, Mann was not aware of any business relationship whatsoever between Sunburst and Ellipso, nor had Castiel provided such information to Mann at any time prior to accepting money or loans from Mann and Mann Technologies.

9D. Further meetings between Mann and Castiel took place, where Castiel continued his deception in order to obtain money from Mann, including, as follows: (a) a false promise by Castiel in the spring of 2004 that Mann's continuing investment in Ellipso would be offset by revenue Ellipso would receive from the so-called "Entel-Chile" traffic, revenue the unknown business relationship between Ellipso and Sunburst made problematic; (b) a meeting took place at the Silver Diner at Tyson's Corner Center at 10:30 am. on September 15, 2004, with Mann, Castiel, Patterson, wherein Castiel asked

4

for more money from Mann, having previously asserted that the loan from Mann Tech was a "short term loan to bridge the gap created by [Ellipso's] inability to liquidate enough of the stock at UBS."; and (c) a meeting took place on October 1, 2004 between Mann, Patterson, and Castiel at 10:00 am. at the Silver Diner at Tyson's Corner Center, wherein Castiel asks for more money based on his new assertion that he had "conversations with KPN and it appears that vanity may become a much earlier option than anticipated", in effect admitting that during the entire time after the initial deception, there had been no possibility whatsoever of Ellipso providing the 881 Vanity Service.

No further amendments are made to the Counterclaim at this time.

**THE COUNTERCLAIM PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES IN THIS COUNTERCLAIM AND IN THIS CASE**.

_____/s/_____
Thomas A. Mauro, Bar No. 184515
1020 Nineteenth Street, N.W.
Suite 400
Washington, D.C. 20036
Tel.: (202) 452-9865
Fax: (202) 452-0092
Attorney for the Counterclaim Plaintiffs, John B. Mann and Mann Technologies, L.L.C.

## CERTIFICATE OF SERVICE

      I hereby certify that a true copy of the foregoing Opposition of John B. Mann and Mann Technologies, L.L.C. to Ellipso's Motion to Dismiss Counterclaim has been mailed first class, postage prepaid, this 10th day of May, 2006 to :

Robert B. Patterson, *pro se*
1643 Hunting Creek Drive
Alexandria, Virginia 22314

                                                            _____
                                                            Thomas A Mauro

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC.,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>    v.<br><br>JOHN B. MANN, ET AL.,<br><br>    Defendants and Counterclaim Plaintiffs. | Case No. 05cv001186 (RCL) |

## ORDER

This matter is before the Court on the Motion of the Counterclaim Defendant, Ellipso, Inc., to dismiss the Counterclaim of John B. Mann and Mann Technologies. L.L.C. pursuant to F. R. Civ. P. 12(b)(6). The Court has considered the Motion, the Memoranda submitted in support of and in opposition to the Motion and the entire record in this case.

ACCORDINGLY, it is this ___ day of _____ 2006,

ORDERED, that the Motion of the Counterclaim Defendant, Ellipso, Inc., to dismiss the Counterclaim of John B. Mann and Mann Technologies. L.L.C. is DENIED.

                                              _____
                                              Royce C. Lamberth
                                              United States District Judge

Copies to:

| | |
|---|---|
| Thomas A. Mauro, Esq.<br>1020 Nineteenth Street, N.W.<br>Suite 400<br>Washington, D.C. 20036 | Natalie O. Ludaway, Esq.<br>1400 K Street, N.W.<br>Suite 1000<br>Washington, D.C. 20005 |