IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC., <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> JOHN B. MANN, ET AL., <br><br> Defendants and Counterclaim Plaintiffs. | Case No. 05cv001186 (RCL) <br><br> **DEMAND FOR JURY TRIAL** |

**FIRST AMENDED COUNTERCLAIM OF JOHN B. MANN
AND
<u>MANN TECHNOLOGIES, L.L.C.</u>**[1]

Counterclaim Plaintiffs John B. Mann and Mann Technologies, L.L.C., by and through their undersigned counsel and pursuant to the Rule 15(a) of the Federal Rules of Civil Procedure, hereby amend Paragraphs 6 and 9 of their Counterclaim.

Paragraph 6 is deleted and substituted by the following:

6. Mann and Defendant, Robert Patterson ("Patterson"), have known each other socially since 1985, and communicated on a yearly basis afterwards. Mann and Patterson did not associate in business until February 2004 when Mann, with Dr. David Castiel's ("Castiel") and Ellipso's full knowledge and advance approval, provided Patterson with an equity interest in Counterclaim Plaintiff Mann Tech and in The Registry Solutions Company ("TRSC").

---

[1] This Amendment is filed without leave of Court under Rule 15(a) because no responsive pleading has been filed by Ellipso.

1

Paragraph 9 is deleted and substituted by the following paragraphs 9A - 9D:

9A. Between Thanksgiving and Christmas, 2003, Castiel and Patterson again contacted Mann and the three met at Mann's home in Warrenton, Virginia to discuss what Castiel described as significant, new business opportunities involving Ellipso's satellite and communications business. At this time, Mann had no business or professional relationship whatsoever with Patterson, and no new social contacts with Patterson. This was the occasion of the initial deception by Castiel, to obtain money from Mann, as follows. Castiel represented to Mann that Ellipso had the exclusive authority from the International Telephony Union ("ITU") to use so-called "881" country codes to create a "precursor service", which would provide telephone subscribers with custom vanity telephone numbers. This is referred to hereafter as "The 881 Vanity Service". Castiel stated that the 881 Vanity Service was exclusive to Ellipso by virtue of the grant of 881 country code authority Ellipso had received from the ITU and would be enormously profitable, according to Castiel. Castiel represented that, by using Ellipso's satellite and communications technology Ellipso had the present and actual capability to quickly and easily arrange for the provisioning of the 881 Vanity Service.

9B. More specifically, during the above-noted meeting, Castiel stated that Ellipso had the right to its own country code – the number being for a "virtual country" so to speak – which was the number 881. Castiel explained that, in making international telephone calls, a country code is required. Castiel also explained that merely having the 881 country code did not render actual service possible, inasmuch as each country must also "load" that country code into its telephone system. Castiel at the above-noted meeting

then stated that "all the codes have been loaded in 23 countries, and all they need is to be switched on." Castiel stated that the 881 Vanity Service requires this, i.e. that it requires the codes to have been loaded and switched on. Castiel also stated during this meeting that the 881 Vanity Service "could be implemented immediately," requiring only a Registry service. The Registry service was required in order to assign particular, individual telephone numbers under the Vanity Service to persons or businesses wishing to have such numbers. Castiel proposed an agreement to Mann, that if Mann gives money to Castiel and Elipso, Mann would receive the exclusive rights to be the Registrar of the 881 telephone numbers, plus Mann would have non-exclusive rights to market this telephone service. Thus, under this agreement, Mann would have the non-exclusive rights to sell telephone numbers under the 881 Vanity Service.  To enter into this agreement, Castiel required that Mann pay money up front, plus more money later. Shortly after this meeting, after Mann met with Castiel and Patterson in other locations, Mann did indeed make an initial payment of $10,000.00 to "Ellipso-881". Mann paid by personal check on or about January 12, 2004, in order to secure for Mann the exclusive rights to the Registry and the non-exclusive right to market the telephone service. In addition, Mann was later induced by Ellipso's continuing campaign of false representations about the 881 Vanity Service to invest substantial amounts of money in Ellipso, well in excess of $75,000, unrelated to the Registry, in order to keep Ellipso in business and going forward, in reliance upon the false and deceitful assertions and statements by Castiel and at the request and urging of Castiel.

      9C. Castiel deceived Mann in several material, important, and significant ways: (a) Ellipso did not have the ability to provide the 881 Vanity Service as Castiel had

represented; (b) the telephone numbers under the 881 country code had not been loaded in 23 countries and indeed could not be loaded until and unless Ellipso entered into contracts with providers of international telephone services able to load such numbers, and no such contract was - even to this date - ever entered into by Ellipso; (c) Ellipso could not simply "switch on" the 881 Vanity Service as represented by Castiel; and (d) on information and belief, Ellipso had already sold significant rights to the 881 Vanity Service to Sunburst, a fact never disclosed by Castiel to Mann but only discovered much later by Mann. Thus, Mann was deceived by Castiel, and this affected all subsequent dealings between Mann and Castiel, whereby Mann and Mann Technologies, L.L.C. invested money, time, and effort in Ellipso and also made loans to Ellipso, all based upon these aforementioned deceptions, which concerned the stated existence of a service Ellipso did not provide and could not provide. Moreover, Mann was not aware of any business relationship whatsoever between Sunburst and Ellipso, nor had Castiel provided such information to Mann at any time prior to accepting money or loans from Mann and Mann Technologies.

9D. Further meetings between Mann and Castiel took place, where Castiel continued his deception in order to obtain money from Mann, including, as follows: (a) a false promise by Castiel in the spring of 2004 that Mann's continuing investment in Ellipso would be offset by revenue Ellipso would receive from the so-called "Entel-Chile" traffic, revenue the unknown business relationship between Ellipso and Sunburst made problematic; (b) a meeting took place at the Silver Diner at Tyson's Corner Center at 10:30 am. on September 15, 2004, with Mann, Castiel, Patterson, wherein Castiel asked

for more money from Mann, having previously asserted that the loan from Mann Tech was a "short term loan to bridge the gap created by [Ellipso's] inability to liquidate enough of the stock at UBS."; and (c) a meeting took place on October 1, 2004 between Mann, Patterson, and Castiel at 10:00 am. at the Silver Diner at Tyson's Corner Center, wherein Castiel asks for more money based on his new assertion that he had "conversations with KPN and it appears that vanity may become a much earlier option than anticipated", in effect admitting that during the entire time after the initial deception, there had been no possibility whatsoever of Ellipso providing the 881 Vanity Service.

No further amendments are made to the Counterclaim at this time.

**THE COUNTERCLAIM PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES IN THIS CONTERCLAIM AND IN THIS CASE**.


           /s/  
Thomas A. Mauro, Bar No. 184515  
1020 Nineteenth Street, N.W.  
Suite 400  
Washington, D.C. 20036  
Tel.: (202) 452-9865  
Fax: (202) 452-0092  
Attorney for the Counterclaim Plaintiffs, John B. Mann and Mann Technologies, L.L.C.

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the foregoing First Amended Counterclaim of John B. Mann and Mann Technologies, L.L.C. has been mailed first class, postage prepaid, this 10th day of May, 2006 to :

Robert B. Patterson, *pro se*
1643 Hunting Creek Drive
Alexandria, Virginia 22314

and

Natalie O. Ludaway, Esq.
1400 K Street, N.W.
Suite 1000
Washington, D.C. 20005

                                                _____
                                                Thomas A Mauro