**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELLIPSO, INC.** ) | |
| ) | |
| **Plaintiff/Counter-Defendant** ) | |
| ) | |
| **v.** ) | **Civil Action No.: 05-01186** |
| ) | |
| **JOHN B. MANN, et al.** ) | |
| ) | |
| **Defendants/Counter-Plaintiffs** ) | |
| _____ ) | |

**PLAINTIFF/COUNTER-DEFENDANT'S REPLY TO OPPOSITION**
**TO MOTION TO DISMISS COUNTERCLAIMS OF DEFENDANTS/COUNTER-**
**PLAINTIFFS JOHN B. MANN AND MANN TECHNOLOGIES, LLC**

Plaintiff/Counter-Defendant Ellipso, Inc. ("Plaintiff or Ellipso") hereby submits

the instant Reply to Defendant John B. Mann and Mann Technology's ("Mann

Defendants" or "Defendants") Opposition to Motion to Dismiss, and in support thereof

states as follows:

**1.    LEGAL ARGUMENT**

Defendants' Opposition seeks to create both the appearance of factual disputes

where none exist and to construct a factual dispute by relying on allegations contained in

subsequently filed amended counterclaim.[1]  When a party amends a pleading, the

amended pleading "supercedes the original complaint and renders it of no legal effect

unless the amended complaint specifically refers to and adopts or incorporates by

reference the earlier pleading."  King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).  To the

extent that Defendants' Amended Complaint fails to specifically refer to and adopt or

incorporate by reference the original counterclaim, the amended counterclaim is fatally

---

[1] Defendants' amended counterclaim was not filed until May 17, 2006, the date the instant reply was due.

defective and fails to state a cause of action for which relief can be granted on each count.[2]

As for the substance of Defendants' amended counterclaim ("counterclaim"), despite their creative efforts to avoid applicability of the binding arbitration clause in the TRSC Agreement to their counterclaim, there is no escaping the obvious fact that Defendants' counterclaim is predicated on payments made by Defendants under the TRSC Agreement.   Moreover, any counterclaims relating to the Loan Agreement are subject to dismissal since Defendants have exercised their exclusive remedy under that contract (albeit illegally) thereby receiving a windfall of profit.  Defendants' Opposition fails to state any legal authority by which John B. Mann can individually assert claims that would otherwise be held by the corporations he created.   The fraud counts remain defective and cannot be cured through Defendants' reliance on extraneous allegations, all of which is outlined below.

> A.     The counterclaim arises from the TRSC Agreement and is
>        <u>subject to binding arbitration</u>.

The Mann Defendants have filed a several count counterclaim against Ellipso in connection with what is at bottom a dispute over Ellipso's performance under the TRSC Agreement. Defendants would have this Court ignore the clear applicability of the TRSC Agreement to their counterclaim in hopes of avoiding having to resolve their grievance through binding arbitration.   To this end, Defendants disingenuously attempt to distinguish between Ellipso's establishment of the 881 telephone service and the Mann Defendants' payments to Ellipso under the TRSC Agreement when, in fact, these issues

---

[2] Defendants' Amended Complaint greatly blurs the line between a pleading and testimonial evidence. Rule 8 provides that a complaint shall contain "a short and plain statement of the claim showing the pleader is entitled to relief".  The new paragraph 9(a)-(d) contains more than 25 self-serving sentences.

are one in the same.   Upon closer inspection of the allegations set forth in the

counterclaim, other sworn testimony proffered by Defendant John Mann in this case, and

a plain review of the TRSC Agreement, it becomes glaringly clear that Defendants'

counterclaims arise from the TRSC Agreement and thus are subject to binding

arbitration.

Defendants' counterclaim is replete with allegation upon allegation of

Defendants' alleged payments to Ellipso pursuant to either the Loan Agreement or TRSC

Agreement.  For instance, paragraph 11 alleges, "Castiel proposed that Mann, with

Patterson's assistance, set up a new company [The Registry Solutions Company] to

establish and own the registry service he was proposing and a new investment company

[Mann Technology] to purchase a total of $250,000 worth of shares…".[3]   Shortly

thereafter, Mann signs a written agreement concerning the registry and immediately upon

execution of the agreement, Mann begins making royalty payments.  Counterclaim at

¶16.   Similarly, paragraphs 17 through 20 all fall under the subheading "Mann Pays

Ellipso for the Registry and Forms the Registry Solutions Company" and repeatedly takes

issue with the manner by which Ellipso was performing its obligations under the TRSC

contract.[4]   Ultimately, however, Defendants cannot escape the reality that their alleged

payments to Ellipso arose from either the Loan Agreement or TRSC Agreement.  This

conclusion is most evident in paragraph 38 which provides: "To the best of Mann and

Mann Tech's knowledge and belief, Ellipso has still not provided the 881 service

**contemplated by the agreements**." (emphasis added).

---

[3] While Mann ultimately rejected this proposal due to the difficulty of selling the type of stock proposed, both of these companies were nonetheless created just weeks following this meeting.
[4] The counterclaim is replete with these allegations.  In addition to the instances specified above, Mann alleges he was misled when he signed the TRSC agreement (¶17); Mann spent over $100,000 in connection with the TRSC and Mann Tech proposals accepted by Mann (¶17);

Perhaps most damaging to the Mann Defendants' efforts to dissect its counterclaim from the TRSC Agreement are the statements by John Mann in a signed affidavit ("Affidavit") attached to Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction.[5]  In the Affidavit, John Mann acknowledges that he and John Patterson were to fund the establishment of TRSC and Ellipso was to implement the telephone service necessary for it to provide vanity numbers.   In connection with the 881 telephone service, John Mann and Dr. Castiel "discussed ways in which to develop Ellipso's 881 business opportunity.  We agreed with Dr. Castiel that Mr. Patterson and I would establish [TRSC] to act as a clearing house…"  Affidavit at ¶12.  Defendant John Mann further states, "We [Patterson and Mann] were to fund the establishment of the company and Ellipso was to implement the telephone service necessary for Ellipso to provide "vanity numbers" to customers…"  Id. When Ellipso was allegedly unsuccessful in implementing the service, "my [John Mann's] company, The Registry Solutions Company, has invested over $200,000 and many man-years in an effort to carry out Ellipso's responsibilities.  That work is on-going."  See Affidavit at ¶12.  Later in the Affidavit, John Mann states "[t]hese payment to Ellipso from TRSC were faithfully made in accordance with all of the **written agreement** between us.  The payments approximate $100,000."[6]  Affidavit at ¶15.   The "written agreements" refer to both the Collateralized Loan Agreement and TRSC Agreements.

---

[5]The court may consider exhibits attached to a complaint, matters of public record and other materials subject to judicial notice without converting a motion to dismiss to that of summary judgment.  *See* Southern Cross Overseas Agencies v. Wah Kwong Shipping Group, 181 F.3d 410 (3rd Cir. 1999)(holding court can look at public records, including judicial proceedings); *see also,* Henson v. CSC Credit, 29 F.3rd 280 (7th Cir. 1994).  Even consideration of "undisputably authentic documents" not attached to a complaint can support a Motion to Dismiss.  *See* Duferco Steel Inc. v. M/V Kalisti, 121 F. 3d 321, footnote 3 (7th Cir. 1997)

[6]Once again, in ¶16 of the Affidavit, Defendant Mann acknowledges that in the summer of 2004 it became clear that Ellipso was not able to provide the 881 service **contemplated** by the agreement with TRSC.

Since Plaintiff is challenging the court's subject matter jurisdiction to entertain Defendants' counterclaim, federal rule 12(b)(1) permits the court to consider documents outside the pleadings to assure itself that it has jurisdiction. "It is well established that, in deciding a motion to dismiss for lack of subject matter jurisdiction, the court is not limited to the allegations set forth in the complaint, 'but may also consider material outside the pleading in its effort to determine whether the court has jurisdiction in the case.'" National Treasury Employees v. Chertoff, 385 F. Supp. 2d. 1, 29 (D.D.C. 1998 ) quoting Alliance for Democracy v. Federal Election Commission, 362 F. Supp. 2nd 138, 142 (D.D.C. 2005); see also, Artis v. Greenspan, 223 F. Supp. 2nd 149, 152 (D.D.C. 2002)("court may consider material outside of the pleadings in ruling on a motion to dismiss for … lack of subject matter jurisdiction"). The party asserting the claim has the burden to establish that the Court has jurisdiction. *See* Grand Lodge of the Fraternal Police v. Ashcroft, 185 F. Supp. 2nd 9, 13 (D.D.C. 2001).

In support of Defendants' argument that the 881 vanity service is distinct from the Registry, Defendants' Opposition alleges that "John Mann's personal counterclaims arise out of fundamental deceptions about a phantom telephone service, the "881 Vanity Service … upon which the Registry was to be built." Yet, this is simply not the case. A plain reading of the actual TRSC Agreement convincingly demonstrates that 881 vanity service is included in the agreement. Pursuant to the TRSC Agreement, TRSC agreed to assist Ellipso "in marketing of products associated with THE REGISTRY service, **such as vanity number allocation**, call forwarding, one number worldwide access and others." Exhibit 1 at p. 2. TRSC was to perform "all functions necessary to assure the successful implementation of The Registry." Exhibit 1, p. 1. "Ellipso and TRSC shall

coordinate their efforts to successfully implement the 881 universal numbers **and** The Registry." <u>Id</u> at p. 3 (emphasis added).

Defendants' amendment to the counterclaim does nothing to further their argument. The new paragraphs of the amended complaint continue to link the 881 vanity service with the Registry and, again, are inconsistent with and refuted by the TRSC Agreement itself. For instance, paragraph 2 of the March 31, 2004 Amendment to the TRSC Agreement provides, "Whereas, Ellipso has been unable to deliver the 'operational service' required to support the business of TRSC <u>as contemplated by the December 15, 2003 agreement</u>." Exhibit 2. The following paragraph states that "Ellipso requires additional time and resources to achieve the 'operational service' **contemplated by the December 15, 2004 Agreement.**" Exhibit 2 (emphasis added)**.** Even more, the fourth paragraph states, "TRSC desires to cooperate and assist Ellipso in implementing the 'operational service' **contemplated by the December 15, 2004 Agreement**." Exhibit 2 (emphasis added). Hardly coincidental is the fact that Defendant John Mann's first alleged payment to Ellipso of $10,000, as recited in ¶9B of the amended complaint, occurred nearly four weeks after execution of the TRSC Agreement.

These paragraphs, combined with the various allegations made by the Mann Defendants in the counterclaim, amended counterclaim and sworn affidavits, destroy any genuine dispute that TRSC was financially committed to the establishment and implementation of the 881 vanity service, and any monies expended by Defendants to this end arise from and are subject to the binding arbitration clause set forth in the agreement.

B.    <u>Mann lacks standing to assert claims in his own capacity</u>

Under the well-established alter ego theory, Defendant John Mann can be subjected to personal liability by piercing the corporate veil of his own companies. John Mann, however, cannot dissect himself from the corporation in order to recover a personal gain for damages presumably belonging to the company, which is exactly what his counterclaim disingenuously seeks to accomplish. Moreover, as noted above, John Mann has repeatedly stated under oath that any alleged payments made to Ellipso were made by Mann Technologies and/or TRSC. Simply because Plaintiff has personally named John Mann a defendant to its action based on his piercing of the corporate veil does not open the door for John Mann to seek a personal recovery on behalf of any claims that might be held by his corporations -- he still must have standing to assert his claims personally.

C.    <u>Defendants' have not sustained any damages</u>

An obvious requirement of any counterclaim is that the aggrieved party sustain damages. There are three problems with Defendants' alleged damages in this matter:

First, any alleged damages apart from the Collateralized Loan Agreement necessarily arise from the TRSC Agreement and must be resolved through binding arbitration.

Second, John Mann, in his signed Affidavit under the penalty of perjury, readily admits that "my companies [TRSC and Mann Technology] expended approximately $250,000 and many man-years of time, with no recourse except perhaps to pursue a defaulting and defunct Ellipso." Affidavit at ¶23. It was TRSC and Mann Technologies

– not John Mann – that allegedly invested the time and money that John Mann now seeks to personally recoup.

Third, there is no genuine dispute that Mann Technology received well over five times the amount of its $90,000 loan to Ellipso under the Loan Agreement. Even assuming Ellipso breached the Loan Agreement, Mann Technology received a windfall profit that more than adequately compensated Defendants.[7] Defendants' Opposition would have the court believe that the mere act of alleging damages is sufficient to overcome Ellipso's motion to dismiss. The court, however, should not accept as true bald allegations, unwarranted factual deductions and inferences "masquerading as facts". Taylor v. Books A Million, 296 F.3d 376, 378 (5th Cir. 2002). If one looks past Defendants' bald allegations, unwarranted factual deductions and inferences, one would plainly see that Defendant John B. Mann has failed to incur any damages in his personal capacity and that Defendant Mann Technology has not sustained any damages.

D.    The Fraud Counts contain numerous deficiencies

1. Failure to plead with specificity:

Defendants' Opposition directs Ellipso and the court to look to the "specific" allegations pled in ¶¶1-44 of the counterclaim as the basis for its fraud claim. This proposition in and of itself is proof that the particular fraud allegations were not pled with specificity.

Even if one does look to those allegations, they hardly meet the standard of specificity required by Rule 9(b). In fact, most of the allegations in ¶¶1-44 do not address the fraud claims; most of the paragraphs provide background information about

---

[7] The Nov. 29th, 2005 Report of the Mann Defendants confirmed their receipt of over $519,000 in stock proceeds of the IOCHA shares secured by the loan.

the parties, suggest violations of good faith and fair dealing, and concern allegations relating to the failure to disclose facts.  With respect to actual fraud, only two paragraphs (39 and 40) attempt to specify a *prima facie* case.  Paragraph 39 alleges, "Counterclaim Plaintiffs were fraudulently induced…to enter into various obligations…which were written, oral, implied and implied at law, to set up TRSC and Mann Tech…".  Paragraph 40 alleges that the counterclaim Plaintiffs "were fraudulently induced … to spend $350,000 on various Ellipso ventures."   These vague and conclusory allegations plainly fail to meet the standard of pleading required by Rule 9(b).  To the extent that the court considers Defendants' new allegations set forth in the amended counterclaim, Ellipso recognizes that these allegations contain more specificity than those previously alleged by Defendants.  However, the amended counterclaim makes clear the fact that John Mann's alleged first payment to Ellipso took place on January 12, 2004 – four weeks after execution of the TRSC Agreement – and that any alleged fraud that induced this payment (and any alleged subsequent payments) must be resolved through binding arbitration under the TRSC Agreement, as explained below.

2.    The Fraud counts arise from the TRSC Agreement

As Defendants correctly pointed out in their motion to dismiss Plaintiff's claims against TRSC, whether an allegation of fraud negates an underlying arbitration clause comes down in favor of allowing the case to go to arbitration unless the actual arbitration clause itself was claimed to be fraudulently induced.  Hercules & Co. v. Shama Restaurant, 613 A.2d 916 (D.C. 1992).  In the case at bar, Defendants' allegations of fraud relate only to the establishment and TRSC Agreement and do not question the

applicability of the arbitration clause itself.  As such, counts II, V and VI are covered by the binding arbitration clause of the TRSC Agreement.

> 3.     Any alleged fraud was perpetrated by the Mann Defendants' own agent, Defendant Patterson.

A second ground for dismissal of the Fraud counts is the undisputed fact that Patterson, a member and agent of both TRSC and Mann Technologies, was present at the discussions leading up to the formation of the two companies and that he personally helped with the preparation of the contracts.   *See* Patterson's Statement of Undisputed Facts.[8]  In connection with the 881 telephone service in particular, Patterson, Mann and Castiel discussed ways in which to develop Ellipso's 881 business opportunity. *See* Mann Affidavit at ¶12.  Patterson and Mann had weekly meeting with Dr. Castiel regarding TRSC. Affidavit at ¶14.  Any fraud during these meetings was made or condoned by Mann's own agent, Patterson.

III.    CONCLUSION

Based on the foregoing, Ellipso respectfully requests that this Court grant its Motion to Dismiss.

---

[8] As a member and disclosed agent of both TRSC and Mann Technology, Patterson's statements are binding on the companies.

Respectfully submitted,

**LEFTWICH & LUDAWAY, LLC**

_____/s/_____
 Natalie Ludaway, #405149
Matthew H. Goodman, #445404
1400 K Street, NW
Suite 1000
Washington, DC  20005
(202) 434-9109 (voice)
(202) 783-3420 (facsimile)
*Counsel for Ellipso, Inc.*

## CERTIFICATE OF SERVICE

I certify that the foregoing Reply to Opposition to Motion to Dismiss and attached Memorandum in Support thereof was served via regular, first-class mail on the following parties and/or counsel of record on this ____ day of May, 2006:

ROBERT B. PATTERSON, pro se
PO Box 2051
Middleburg, VA 20118

_____/s/_____
Matthew H. Goodman

Counsel for Ellipso, Inc.

# Exhibit # 1

## MEMORANDUM OF AGREEMENT

This Agreement is entered into this 15th day of December 2003 by and between Ellipso, Inc. a Delaware corporation and The Registry Solutions Company, a Virginia company.

WHEREAS, ELLIPSO, INC is in the process of implementing telephony services utilizing its unique 881 universal number series;

WHEREAS, ELLIPSO, INC wishes to establish a unified registration process for the marketing and implementation of its 881 Universal Number Series (the "Ellipso 881 Registry", or "THE REGISTRY");

WHEREAS, THE REGISTRY SOULTIONS COMPANY (TRSC) possesses expertise and experience in initiating, implementing, marketing and maintaining universal registration programs;

WHEREAS, ELLIPSO, INC. wishes to outsource the development, implementation and maintenance of the Ellipso 881 Registry;

WHEREAS, TRSC is willing to devote its resources and expertise to assisting ELLIPSO, INC. in developing the Ellipso 881 Registry;

IT IS AGREED THAT:

   ELLIPSO, INC. hereby grants to TRSC the exclusive right to establish and maintain THE REGISTRY of the Ellipso 881 series universal numbers placed into service ("THE REGISTRY").

TRSC will use its best efforts to establish THE REGISTRY as soon as practicable, but in any event, within (60) days of the date of this agreement. TRSC will bear all costs for establishment of THE REGISTRY.

ELLIPSO, INC. will cooperate and assist TRSC in establishing THE REGISTRY by promptly providing all necessary information and support requested by TRSC pursuant to establishment of THE REGISTRY. To the extent ELLIPSO, INC provides services or other support to TRSC, ELLIPSO, INC. shall be reimbursed for the reasonable costs incurred.

ELLIPSO, INC. and TRSC shall, within 60 days of the date of this agreement, establish a fee per transaction for the services provided by TRSC to ELLIPSO, INC, or its affiliates.

TRSC shall initiate an aggressive marketing campaign to expeditiously and extensively populate THE REGISTRY, and shall perform all functions necessary to assure the successful implementation of THE REGISTRY.

*ELLIPSO/TRSC, p. 3.*

ELLIPSO, INC. and TRSC shall assist each other in the marketing of products associated with THE REGISTRY service, such as vanity number allocation, call forwarding, one number worldwide access and others. TRSC shall provide THE REGISTRY services for these activities, including validation of numbers using the unified database and associated support services of TRSC, for which TRSC shall receive the agreed upon charges.

In consideration for the exclusive right to establish and operate THE REGISTRY, TRSC shall compensate ELLIPSO, INC. as follows:

    A.  Upon execution of this agreement, TRSC shall pay to ELLIPSO, INC. twenty-five thousand dollars ($25,000.00), payable as follows:
        a.  $10,000 at execution, which is non-refundable;
        b.  $15,000 on or before January 31, 2004 following a due diligence process undertaken by both parties.
    B.  On February 15, 2004, TRSC shall pay to ELLIPSO, INC. twelve thousand five hundred dollars ($12,500.00);
    C.  On the fifteenth day of each successive month, commencing March 15, 2004, TRSC shall pay to ELLIPSO, INC. the greater of twelve thousand five hundred dollars ($12,500,00), or sixty percent (60%) of the net profits from the prior preceding months operations, [e.g. Profits from April 2004 shall to payable on May 15 1, 2004]. Net profits shall be determined by generally accepted accounting practices.

In the event that during the first twelve (12) months of this agreement, TRSC determines to cease providing THE REGISTRY services, ELLIPSO, INC., shall have the right to acquire THE REGISTRY by tendering to TRSC reimbursement equal to the net expenditures of TRSC associated with THE REGISTRY.

The term of this agreement shall be five (5) years, and shall thereafter automatically renew for additional terms of five (5) years, unless ELLIPSO, INC. exercises its option to acquire THE REGISTRY as set forth herein.

On the fourth anniversary of this agreement, ELLIPSO, INC. shall have the right to acquire THE REGISTRY by tendering to TRSC a cash payment equal to the value of THE REGISTRY determined as follows: book value + three times annual revenues. In the event ELLIPSO, INC. wishes to exercise this option, it must so notify TRSC one hundred eighty days (180) prior to exercise of the option. This is a one-time purchase option.

This agreement does not create any joint relationship between the parties other than as mutual contractors and each party hereto shall be responsible for any liabilities arising from its performance of this agreement.

*ELLIPSO/TRSC, p. 3.*

ELLIPSO, INC. and TRSC shall coordinate their efforts to successfully implement the 881 universal numbers and THE REGISTRY.

It is recognized that the use of the 881-Universal Number Series has been granted by the International Telecommunications Union (ITU), and that continued use of the numbers requires compliance with ITU regulations. The parties agree to use their best efforts to comply with such requirements, but recognize that for reasons unrelated to the use of the numbers, and beyond the control of the parties hereto, the ITU could modify or restrict the uses of the numbers.

In the event that during the first twenty-four months of this agreement, ELLIPSO, INC. or its successors or assigns cease to provide 881- Universal Number Series services for any reason, TRSC shall have the right to convert any investments in TRSC to ELLIPSO, INC. common stock at one half the price of the most recent sale of such stock. It is agreed that the stock price per share for these purposes shall be no less than $5.00 and no more than $8.00.

Any disputes concerning this agreement shall be submitted to binding arbitration pursuant to the rules of the American Arbitration Association, or such other arbitration procedures as the parties may agree.

This agreement contains the entire agreement and representations of the parties hereto and any representations not set forth herein are specifically disclaimed.

AGREED THIS 15th DAY OF DECEMBER 2003:

ELLIPSO, INC.                                    THE REGISTRY SOLUTIONS COMPANY
By: David Castiel, Chairman                      By: John Mann, Director


_____                          _____
David Castiel                                    John Mann

*ELLIPSO/TRSC, p. 3.*

ELLIPSO, INC. and TRSC shall coordinate their efforts to successfully implement the 881 universal numbers and THE REGISTRY.

It is recognized that the use of the 881-Universal Number Series has been granted by the International Telecommunications Union (ITU), and that continued use of the numbers requires compliance with ITU regulations. The parties agree to use their best efforts to comply with such requirements, but recognize that for reasons unrelated to the use of the numbers, and beyond the control of the parties hereto, the ITU could modify or restrict the uses of the numbers.

In the event that during the first twenty-four months of this agreement, ELLIPSO, INC. or its successors or assigns cease to provide 881- Universal Number Series services for any reason, TRSC shall have the right to convert any investments in TRSC to ELLIPSO, INC. common stock at one half the price of the most recent sale of such stock. It is agreed that the stock price per share for these purposes shall be no less than $5.00 and no more than $8.00.

Any disputes concerning this agreement shall be submitted to binding arbitration pursuant to the rules of the American Arbitration Association, or such other arbitration procedures as the parties may agree.

This agreement contains the entire agreement and representations of the parties hereto and any representations not set forth herein are specifically disclaimed.

AGREED THIS 15th DAY OF DECEMBER 2003:

ELLIPSO, INC.                              THE REGISTRY SOLUTIONS COMPANY
By: David Castiel, Chairman               By: John Mann, Director

David Castiel                             John Mann

ADENDUM TO MEMEORANDUM OF AGREEMENT
DATED DECEMBER 15, 2003 BETWEEN
ELLIPSO, INC AND THE REGISTRY SOLUTIONS COMPANY

The Agreement between Ellipso, Inc., and The Registry Solutions Company
("TRSC") dated December 15, 2003 is modified in the following respects:

1. The payment of fifteen thousand dollars ($15,000), which is due January 31, 2004,
   pursuant to paragraph A, page 2, is to be paid on or before February 15, 2004.
2. The subsequent monthly payment of twelve thousand five hundred dollars
   ($12,5000) which is due on January 31, 2004, pursuant to paragraph B, page 2,
   shall be payable on March 1, 2004.
3. The subsequent monthly payments pursuant to paragraph C, page 2, shall be
   payable on the first day of each month commencing April 1, 2004.
4. The time for establishing the "fee per transaction" charge between Ellipso, Inc.
   and TRSC is extended for an additional sixty (60) days to and including April 15,
   2004.
5. In all other respects the Agreement remains in full force and effect.

AGREED this 30th day of January 2004.

ELLIPSO, INC.                        THE REGISTRY SOLUTIONS COMPANY
By:  David Castiel, Chairman             By:  John Mann, Director

# AMENDMENT
## TO
## AGREEMENT

This Amendment is entered into by The Registry Solutions Company ("TRSC") and Ellipso, Inc. (Ellipso) on this 2nd day of August, 2004. TRSC and Ellipso are hereby referred to individually as a Party or jointly as the Parties.

Whereas the Ellipso and TRSC entered into Agreement on December 15, 2003, as amended on January 30, 2004 and on March 30, 2004, all of which confer to TRSC certain rights in the exploitation of the Ellipso Universal Number Series project (also known as "881") by agreeing, *inter alia* to:

a) Award to TRSC the rights to develop and exploit the registry function for 881 services

b) Have TRSC fund the development of such activities

c) Have TRSC pay a royalty fee to Ellipso of the higher of $12,500 or 60% of the net profits generated by TRSC out of registry service for the 881 services provided by Ellipso

d) Award TRSC a transaction fee equal to one half (1/2) of the revenue generated by Ellipso from the first minute of each call.

Whereas the Parties amended the January agreement by executing a document on April 2, 2004 whereby the agreed, *inter alia* to:

a) Increase the royalty fee to Ellipso to $25,000 per month for a period of three months to fund a development plan aimed at establishing various product lines

b) Update the transaction fee paid by Ellipso to TRSC to account for the anticipated increased funding and the expected revenues from the first operational customer.

Whereas the Parties desire to amend their current agreements in order to expedite 881 services.

Now Therefore, the Parties agree as follows:

1. The March 30, 2004 Amendment is hereby abrogated and annulled by all Parties

2. The TRSC-Ellipso January 30, 2004 Agreement is hereby amended as follows:

A. The royalty fee of $12,500 shall be permanently waived upon the execution of this Amendment and the payment of $15,000 at execution of the Amendment.

B. The transaction fee received by TRSC shall be of one-half (1/2) of the revenue generated by Ellipso from the first minute of each call of its 881 service, and said calls shall be no less than three minutes and no more than six minutes. By way of example for a 12-minute call, TRSC's transaction fee shall be as if the one 12-minute call consisted of two 6-minute calls.

C. All other terms remain in force.

Executed on this 2nd day of August 2004 by

The Registry Solutions Company

_____
John B. Mann
Managing Member

Ellipso, Inc.

_____
David Castiel
CEO

# EXHIBIT # 2

**ELLIPSO/TRSC AGREEMENT OF DECEMBER 15, 2003
AMENDMENT: MARCH 31, 2004**

WHEREAS, there has been an unanticipated delay in implementing the 881-3 and 881-2 universal number series codes so as to have one code operational in at lease one country as expected by the parties when entering into the December 15, 2003, Agreement;

WHEREAS, ELLIPSO has been unable to deliver the "operational service" required to support the business of TRSC as contemplated by the December 15, 2003, agreement;

WHEREAS, ELLIPSO requires additional time and resources to achieve the "operational service" contemplated by the December 15, 2003 Agreement;

WHEREAS, TRSC desires to cooperate and assist ELLIPSO in implementing the "operational service" contemplated by the December 15, 2003, Agreement;

IT IS AGREED AS FOLLOWS:

1. TRSC shall pay to ELLIPSO twenty-five thousand dollars ($25,000.00) on the first day of the months of April, May, and June 2004, which constitute the twelve thousand five dollar ($12,500.00) royalty payment pursuant to the December 15, 2003 Agreement; and an additional payment of twelve thousand five dollars ($12,500.00) per month, which shall be used to develop the "operational service" as more specifically set forth herein.

2. ELLIPSO shall place these additional twelve thousand five hundred dollar payments in a segregated account to be used for the implementation of the "operational service" contemplated by the December 15, 2003 Agreement.

3. ELLIPSO shall use its best efforts to expeditiously accomplish the following deliverables:

   I.    Development and implementation of wholesale operational services with recognized carriers including:

         A.   Entel-Chile;
         B.   Telefonica;
         C.   Telecom Argentina;
         D.   Telecom Italia;
         E.   Other carriers.

*ELLIPSO/TRSC AMENDMENT, MARCH 31, 2004, p. 2.*

    II.    Development and implementation of commercial/corporate operational services through:

        A. The carriers providing wholesale operations services pursuant to paragraph I. Above;
        B. Other carriers;
        C. Non traditional carriers/services providers.

    III.    Development and implementation of vanity/one-number/follow-me operational services through:

        A. The carriers providing wholesale operations services;
        B. Other carriers;
        C. Non traditional carriers/service providers.

    IV.    Development and preparation of presentation materials for the GTM meeting in May 2004, in Washington, D.C. Attendance at the meeting and presentation of the prepared materials. Follow-up of leads developed at the meeting.

    IV.    Development and implementation of vanity and other services using VoIP.

    V.    Assistance in developing an interactive web-site for marketing and sale of vanity number and other 881 related services.

    VI.    Marketing and other 881 related tasks as agreed by the parties.

4.    At lease thirty (30) days prior to initiations of operations, ELLIPSO shall notify TRSC of the anticipated start date. To facilitate establishment of THE REGISTRY, TRSC and ELLIPSO shall jointly procure a switch facility through which the traffic can initially be routed.

5.    Customers/services developed by ELLIPSO during the term of this Amendment shall be considered customers of both ELLIPSO and TRSC for purposes of revenue allocation; however, this provision shall not apply to Entel-Chile revenues. *) excludes Chile*

6.    If on July 1, 2004, the 881-2 and/or 881-3 codes are not in "operational service" in at least one country; and generating commercially viable revenues; then TRSC's obligation to make further payments to ELLIPSO pursuant to the December 15, 2003 Agreement shall be suspended until such time as ELLIPSO shall provide "operational service" as contemplated by the December 15, 2003 Agreement. *Was service operational ?*