UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 05-1186 (RCL) |
| | ) |
| JOHN B. MANN, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM OPINION**

This matter comes before the Court on plaintiff Ellipso's Motion [73] to Compel Discovery Against Defendant Robert Patterson, Ellipso's Emergency Motion [74] for Protective Order and to Compel Discovery, defendants Mann and Mann Tech's Motion [79] to Compel Discovery Responses to the Second Request for Production of Documents Against Plaintiff Ellipso, and plaintiff Ellipso's Motion [55] to Dismiss Counterclaims. Upon consideration of the motions, the oppositions thereto, the briefs in reply, the applicable law, and the entire record herein, the Court concludes that the motions to compel and the motion for protective order will be denied, and the motion to dismiss will be granted in part and denied in part.

**I.   DISCOVERY MOTIONS**

As an initial matter, the Court has before it several outstanding discovery motions: Ellipso's Motion [73] to Compel Discovery Against Defendant Robert Patterson, Ellipso's Emergency Motion [74] for Protective Order and to Compel Discovery, and Mann and Mann Tech's Motion [79] to Compel Discovery Responses to the Second Request for Production of Documents Against Plaintiff Ellipso. Each motion contains a short "Certificate of Good Faith," which in each case amounts to a statement by the filing party that "I attempted to secure the

discovery responses." *See* Motion [73] to Compel Discovery ("I attempted to secure the discovery responses from Defendant Patterson"); Emergency Motion [74] for Protective Order and to Compel Discovery ("I attempted to secure the discovery responses from Defendants, who do not consent"); Motion [79] to Compel Discovery ("I attempted to secure the discovery Responses").

      This appears to be an attempt to comply with Local Civil Rule 7(m), which requires that "[b]efore filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone, in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement." LCvR 7(m). The purpose of the Local Rule is to promote the resolution of as many litigation disputes as possible without court intervention, or at least to force the parties to narrow the issues that must be brought to the court. *United States ex rel. Pogue v. Diabetes Treatment Centers of America*, 235 F.R.D. 521, 529 (D.D.C. June 2, 2006). The Local Rule requires that the parties "try[] in good faith to achieve its objectives," which means they must take "real steps to confer." *United States ex rel. K&R Limited Partnership v. Massachusetts Housing Fin. Agency*, 2006 U.S. Dist. LEXIS 73536, 99-cv-1343 (RCL) (D.D.C. Oct. 11, 2006) at *13-14. If a party files a nondispositive motion without certifying its compliance with Rule 7(m), the motion will be denied. *Alexander v. FBI*, 186 F.R.D. 185, 187 (D.D.C. 1999).

      Each of the discovery motions in this case is denied for failure to comply with Local Rule 7(m). The "Certificate of Good Faith" executed by counsel on each side merely certifies that there is a discovery dispute and that both sides know about it. The Rule requires, however, at the

absolute minimum, that counsel "discuss the anticipated motion" and that they do so "in person or by telephone." While counsel in this case have shown themselves to be capable of generating an abundance of paper in corresponding about the underlying discovery disputes, there is no indication that opposing counsel notified each other that they were filing these discovery motions, nor is there any hint that they have discussed the motions in person or by phone, as required. Because the parties have not complied with Local Civil Rule 7(m), their discovery motions are denied.

## II.    MOTION TO DISMISS COUNTERCLAIM

### A.    Effect of Amended Counterclaim

After Ellipso moved to dismiss the counterclaim, Mann and Mann Tech filed an amendment to the counterclaim. They did so without seeking leave of court, since a party may amend its pleading one time as a matter of right "at any time before a responsive pleading is served," Fed. R. Civ. P. 15(a), and a motion to dismiss is not a responsive pleading. Fed. R. Civ. P. 7(a). Counterclaim-plaintiffs did not follow the normal and preferred method of amending their complaint by filing one single, new document. Instead they filed a document which purported to delete two paragraphs from the original counterclaim, replacing them with five new paragraphs. The clear intent of this was to incorporate the rest of the original counterclaim into the amended counterclaim by reference. The Court will give effect to this obvious intent and deems the document an effective amendment to the original counterclaim, which is adopted by reference.[1]

---

[1] Counterclaim-plaintiffs later filed a single, unified document representing their counterclaim as amended, making it easier for the Court and parties to read and understand the counterclaim. They did not, however, seek leave of the Court to file this second amended

3

Where a party amends its complaint, a pending motion to dismiss the original complaint is ordinarily denied without prejudice so that the movant can re-file the motion based on the amended pleading. *See, e.g., Anderson v. USAA Casualty Ins.*, 218 F.R.D. 307, 311 (D.D.C. 2003); *Baltierra v. West Virginia Bd. of Medicine*, 253 F.Supp. 2d 9, 14 (D.D.C. 2003). But where, as here, the amended pleading suffers from the same defects as the original and does not change the legal theories underlying the motion to dismiss, courts have the discretion to "consider the motion as being addressed to the amended pleading," because "[t]o hold otherwise would be to exalt form over substance." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (2d ed. 1990); *see also Rasul v. Bush*, 215 F.Supp. 2d 55, 58 n.3 (D.D.C. 2002); *Nix v. Hoke*, 62 F.Supp. 2d 110, 115 (D.D.C. 1999) (citing cases). Because the amendments to the counterclaim do not change the legal issues underlying the motion to dismiss and do not alter the outcome, the Court will consider the motion as one to dismiss the amended counterclaim.

**B.    Standard for Rule 12(b)(6) Motion**

A motion to dismiss pursuant to Rule 12(b)(6) will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). While the Court must construe the factual allegations in the

---

counterclaim.

complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of factual inferences that can be derived from the facts alleged, *Conley*, 355 U.S. at 45-46; *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), the Court will not accept conclusory allegations or draw inferences not supported by the facts alleged in the complaint. *Kowal*, 16 F.3d at 1276.

      C.      **Breach of Contract**

Mann Tech alleges that it was a party to a contract whereby it agreed to loan money to Ellipso, and that Ellipso breached this contract by failing to make interest payments and otherwise defaulting on the loan. *See, e.g.,* Counterclaim ¶¶ 21, 28, 31. Mann Tech has therefore stated a claim for breach of that contract.

It bears noting that many allegations in the counterclaim appear to involve payments made by Mann or one of his companies to Ellipso under a contract between Ellipso and The Registry Solutions Company (the "TRSC Contract"). *See, e.g.*, Counterclaim ¶¶ 16, 26, 38. Any claim under that contract would be dismissed because neither Mann nor Mann Tech was a party to it, and because the contract contains a binding arbitration clause which commits the actual parties to the contract to arbitrate their disputes. *See Ellipso, Inc. v. Mann*, 2006 U.S. Dist. LEXIS 6237, 05-cv-01186 (RCL) (D.D.C. Jan. 30, 2006).

      C.      **Quantum Meruit & Unjust Enrichment**

Both Mann and Mann Tech assert equitable claims for restitution in the form of quantum meruit and unjust enrichment. The allegations in the counterclaim fail to put Ellipso on notice as to what benefits Mann and Mann Tech provided – other than those called for under written contracts – to whom those benefits were provided, and what circumstances justify the

expectation that Ellipso pay Mann and Mann Tech. For those reasons Mann and Mann Tech fail to state claims for relief.[2]

An action in quantum meruit is an action on a contract implied in fact, and consists of four elements: "1) valuable services rendered by the plaintiff; 2) for the person from whom recovery is sought; 3) which services were accepted and enjoyed by that person; and 4) under circumstances which reasonably notified the person that the plaintiff, in performing such services, expected to be paid." *United States ex rel. Modern Electric, Inc. v. Ideal Electronic Security Co.*, 81 F.3d 240, 246-47 (D.C. Cir. 1996) (quoting *Providence Hospital v. Dorsey*, 634 A.2d 1216, 1219 n.8 (D.C. 1993).

An unjust enrichment action, on the other hand, involves a quasi-contract, a contract implied in law. "Unjust enrichment occurs when a person retains a benefit (usually money) which in justice and equity belongs to another." *4934, Inc. v. District of Columbia Dep't of Employment Servs.*, 605 A.2d 50, 55 (D.C. 1992). The elements are similar to those for quantum meruit, with the added element that the plaintiff must show "that it would be unjust for the recipient of a benefit to retain that benefit." *Modern Electric*, 81 F.3d 240, 247. If the plaintiff can establish that, he may recover in unjust enrichment "even though no intention of the parties

---

[2]The counterclaim fails to state where much of the conduct at issue occurred, except for noting a few meetings that took place in Virginia. This makes it difficult for the Court to determine whether to apply the laws of the Commonwealth of Virginia or the District of Columbia – or possibly of some other state – in its analysis of these claims. The choice of law, however, would not affect the outcome here, since Virginia requires substantially the same elements as the District of Columbia for restitution on implied contracts. *See, e.g., Christian Broadcasting Network, Inc. v. Busch*, 2006 U.S. Dist. LEXIS 74377, 05-cv-558 (RAJ) (E.D. Va. Oct. 3, 2006) (summarizing Virginia law on unjust enrichment); *Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 961 F.2d 489, 491 (4th Cir. 1992) (summarizing Virginia law on quantum meruit).

to bind themselves contractually can be discerned." *Bloomgarden v. Coyer*, 479 F.2d 201, 210 (D.C. Cir. 1973). A plaintiff may prevail on an unjust enrichment claim if he establishes that "(1) he had a reasonable expectation of payment, (2) the defendant should reasonably have expected to pay, or (3) society's reasonable expectations of person and property would be defeated by nonpayment." *Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487, 495 (D.C. Cir. 1998) (quotations omitted). Neither form of restitution is available when there is an actual contract between the parties. *See Modern Electric*, 81 F.3d at 247; *4934, Inc.*, 605 A.2d at 55; *Bloomgarden*, 479 F.2d at 210.

Mann and Mann Tech allege that they transferred $350,000 in money either to Ellipso or for the benefit of Ellipso – they are inconsistent as to which – and they allege that Mann expended approximately $200,000 worth of time on "Ellipso related activities." Counterclaim ¶ 44. But the only specific transfers of money that counterclaim-plaintiffs point to are the loan from Mann Tech and certain specific royalty payments under the TRSC Contract. Restitution for payments under these contracts must be sought by actions on those contracts. As to other payments, counterclaim-plaintiffs do not put Ellipso on adequate notice as to what those payments were. The same is abundantly true in regards to the services: counterclaim-plaintiffs do not allege what the services are, who received them, or why Ellipso should be expected to pay for them.

The counterclaim boils down to a complaint that Mann and Mann Tech spent time and money on business endeavors related to Ellipso and realized no return on these investments. But outside of the actual contracts involved in this case, Mann does not point to any circumstance which would have justified the belief that Ellipso would compensate Mann or Mann Tech for

services they provided or money they spent. Quite the contrary is the case, from the face of the counterclaim: Mann expected to get returns on his investment from *other* parties, in the form of business for his registry service. The only other allegations offered in support of the quantum meruit and unjust enrichment claims are wholly conclusory and need not be credited.

D.    **Fraud & Fraudulent Inducement**

Counts Two and Six allege fraudulent inducement as to Mann Tech and Mann, respectively, while Count Five asserts a fraud claim as to Mann. It appears that the alleged misrepresentations that form the basis of these claims, and the actions taken by counterclaim-plaintiffs in reliance thereon, occurred in Virginia, and thus Virginia law governs the fraud claims.[3] *See* Restatement (2d) Conflict of Laws § 148. In Virginia, "a plaintiff seeking to recover for fraud must allege: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) the resulting damage to the party misled." *Glaser v. Enzo Biochem, Inc.*, 126 Fed. Appx. 593, 599 (4th Cir. 2005) (applying Virginia law). The law of the District of Columbia is to much the same effect. *See, e.g.*, *Hercules & Co., Ltd. v. Shama Restaurant Corp.*, 613 A.2d 916, 923 (D.C. Ct. App. 1992) (setting forth elements of fraud under D.C. law).

When a plaintiff alleges fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud or mistake ... be stated with particularity." Fed. R. Civ. P. 9(b). Courts in this circuit have construed Rule 9(b) to require that "the pleader ... state the time, place and content of the false misrepresentations, the fact misrepresented and what was

---

[3] The counterclaim's failure to allege the location where many of the events took place not only complicates the Court's choice of law decisions, but is one of the reasons why so many of the allegations of fraud are not well pleaded.

retained or given up as a consequence of the fraud." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994) (quoting *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981)). This Rule "usually requires the claimant to allege at a minimum the identity of the person who made the fraudulent statement, the time, place, and content of the misrepresentation, the resulting injury, and the method by which the misrepresentation was communicated." 2-9 Moore's Federal Practice – Civil § 9.03(1)(b). As such, "allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient." *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 923 (D.C. 1992).

Most of the allegations in the counterclaim do not meet the pleading requirements of Rule 9(b), or simply fail to allege actionable fraud. Mann has not adequately alleged sufficient facts to survive a 12(b)(6) motion on his fraud and fraudulent inducement claims. Mann Tech has, by the thinnest of margins.

Mann Tech alleges that during the 2003 holiday season, Mann met with Castiel at Mann's Virginia home and other locations, and that Castiel "represented to Mann that the 881 codes had already been 'loaded' in 23 separate countries," that "arrangements for service with local telephone companies were simply a matter of being 'switched on,'" and that "the 881 Vanity Service 'could be implemented immediately.'" Counterclaim ¶¶ 15, 9B. These representations are alleged to have been false. *Id.* ¶ 9C. Mann Tech allegedly relied on these and other representations when it entered the loan agreement. *Id.* ¶¶9C, 21. In addition, the loan agreement between Mann Tech and Ellipso allegedly stated that Ellipso was not involved in any litigation at the time the agreement was executed. *Id.* ¶ 24. Mann Tech alleges that Ellipso was involved in multiple lawsuits at the time, rendering this provision of the agreement false. *Id.*

While Mann alleges that he relied on the same representations, he does not point to a specific action he took in reliance on them.  He does assert that he wrote a $10,000 check to Ellipso on or about January 12, 2004, *id.* ¶ 9B, but this is a clear reference to the payments due under the TRSC contract, which, as noted above, Mann was not a party to and which is the subject of an arbitration clause.  The rest of the counterclaim is filled with vague and often inconsistent references to transfers of money either to or for the benefit of Ellipso – it is never clear which – and expenditures of time and effort by Mann, doing what, it is not said.  The failure to identify specific acts in reliance, which can be traced to specific misrepresentations, is fatal to any claim of fraud.

The failure to plead fraud with particularity abounds.  Counterclaim-plaintiffs often refer to "representations" or "assurances," without providing the basics necessary to state a claim in fraud: what was said or written; who wrote it or said it; roughly when and where they did so; why that statement was false when made; and what the plaintiff did in reasonable reliance on that statement that caused it to suffer loss.

At other points counterclaim-plaintiffs point to representations that are simply not actionable as fraud.  To be fraudulent, an alleged misrepresentation must be material, and the plaintiff "must demonstrate that its reliance upon the [defendant's] representation was reasonable and justified." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999) (applying Virginia law).  It is well established that "commendatory statements, trade talk, or puffing, do not constitute fraud because statements of this nature are generally regarded as mere expressions of opinion." *Lambert v. Downtown Garage, Inc.*, 262 Va. 707, 553 S.E.2d 714, 717 (Va. 2001).  These kinds of "soft statements" are not actionable because they are immaterial to

reasonable people, and those who would rely on them do not act with reasonable justification. For the same reasons, just as sales talk is not actionable, neither are statements that "amount to unfulfilled promises or statements as to future events." *Enzo*, 126 Fed. Appx. at 600. That is, a statement must be false when made; a prediction or forecast, without more, does not become actionable simply because it does not turn out to be correct. "Mere allegations of 'fraud by hindsight' will not satisfy the requirements of Rule 9(b)." *Hillson Partners, L.P. v. Adage, Inc.*, 42 F.3d 204, 209 (4th Cir. 1994).

As stated above, most of the specifics in the counterclaim paint a picture that is something other than fraud: Castiel and Ellipso hyped a business opportunity to Mann that did not pan out. Mann and Mann Tech poured money and man-hours into making a go of things, and now they feel cheated. But without alleging some statement of fact that was false when made – not mere puffery or prediction – and some specific action taken in reliance on that statement, the counterclaim does not state a claim in fraud other than that described above.[4]

**III.    CONCLUSION**

For the foregoing reasons, the Court denies the discovery motions for failure to comply with Local Rule 7(m). The motion to dismiss is denied as it applies to Mann Tech's claims for breach of contract (Count One) and fraudulent inducement (Count Two). The motion to dismiss is granted as it applies to the claims by Mann and Mann Tech for quantum meruit (Count Three) and unjust enrichment (Count Four), and by Mann for fraud (Count Five) and Fraudulent Inducement (Count Six). An appropriate order shall issue this date.

---

[4] The counterclaim also points to various failures on the part of Castiel and Ellipso to disclose information to Mann, but does not identify any affirmative duty to do so, or any affirmative statements that were rendered false by the omissions.

Signed by United States District Judge Royce C. Lamberth, November 2, 2006.