IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC., <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> JOHN B. MANN, ET AL., <br><br> Defendants and Counterclaim Plaintiffs. | Case No. 05cv001186  (RCL) |

**OPPOSITION OF JOHN B. MANN AND MANN TECHNOLOGIES, L.L.C.
TO ELLIPSO'S MOTION FOR PROTECTIVE ORDER
AND TO QUASH SUBPOENA [TO UBS FINANCIAL SERVICES]**

Counterclaim Plaintiffs John B. Mann and Mann Technologies, L.L.C., ("Defendants") by and through their undersigned counsel and pursuant to the Rules of this Honorable Court, hereby submit this Opposition to the Motion of the Plaintiff (hereinafter "Ellipso") for Protective Order and to quash the March 2, 2007, subpoena Defendants served on UBS Financial Services ("UBS"). The return date for the subpoena was March 12, 2007.

UBS has not objected to the subpoena.

UBS is the banking and brokerage institution in which Ellipso and its affiliates bank and traded the ICO stock at times pertinent to this case. Defendants seek certain designated information in UBS files for the period January 1, 2002 to the present concerning David Castiel and the following entities, all owned and controlled by David Castiel: Ellipso, Inc., Ellipso Private Holdings, Inc., ESBH, which is a subsidiary of Ellipso, Inc., Mobile Communications Holdings, Inc. also known as MCHI, and INEVA, another Castiel affiliated company.

1

Ellipso does not state in its Motion why UBS should not provide documents concerning INEVA. As to Ellipso Private Holdings and ESBH and David Castiel personally, Ellipso asserts at pages 8 and 9 of its Memorandum in support of the Motion that UBS holds no account information concerning them. So the only issue before the Court is whether the Defendants are entitled to the information requested from UBS for Ellipso, Inc. and Mobile Communications Holdings, Inc also known as MCHI.

## I. The Motion for Protective Order Should Be Denied As Moot.

As to the remaining entities (Ellipso and MCHI) Ellipso asserts that it is entitled to a protective order. However, Ellipso does not offer the Court the terms of the protective order it wants other than to note that the parties have been discussing the terms of a suitable protective order. At no time have Defendants refused to have a protective order in place for the documents they seek in the subpoena to UBS. So this portion of Ellipso's Motion should be denied as moot.[1]

---

[1] The issue of whether a protective order should be issued "prohibiting Defendants from conducting any discovery into the financial affairs of these [Ellipso] entities," Motion at page 1, is not before the Court. The only issue before the Court is the validity of Rule 45 subpoena for documents issued to a third party, UBS.

II. **The Motion to Quash Has No Merit and Should Be Denied.**

A. **There is no valid or good faith ground either in the Motion or the Pleadings to quash the subpoena on grounds of relevancy.**

As to the remaining entities (Ellipso and MCHI) Ellipso argues that the subpoena should be quashed in its entirety because the information requested is not relevant to the Mann Defendants' Counterclaim. In light of Ellipso's Complaint and, indeed, in light of the Motion itself, this argument is so lacking in merit that, Defendants submit, it cannot be taken seriously.

First, the Motion concedes the relevancy of the information sought. In the preliminary pages of its supporting Memorandum, Ellipso asserts that Defendant Patterson used the secret information he had about Ellipso's "precarious financial condition" (Memorandum at 4) as a basis for the fraud it claims the Mann Defendants committed against Ellipso. As a result, Ellipso "lost all ownership and control of its major asset and Mann Tech wrongfully obtained full title and control of the ICOHA shares." (Memorandum, at 5, emphasis supplied.). It was on the strength of such allegations, in part, that this Court issued its preliminary injunction seizing the remaining ICO shares held by the Defendants. (Motion for Preliminary Injunction, ¶ 5: "As of December 2003, the ICOHA Shares were Ellipso's sole asset of any significant value;" Castiel Affidavit, August 16, 2005, ¶7: "As of December 2003, and as Patterson knew, the ICOHA Shares were Ellipso's sole asset of any significant value." (Emphasis supplied.)

Nevertheless, Ellipso asserts in its Motion that "Ellipso's financial information is not relevant to any issue raised by the parties in their respective pleadings;" (Memorandum, at 6) and "Ellipso's condition is not an issue in this case." (Memorandum, at 8). So the Court is left with

3

the irreconcilable propositions in this Motion that for purposes of its Complaint Ellipso's "precarious financial condition" and the loss of its "major asset" or its "sole asset" at the hands of the allegedly nefarious Defendants are to be accepted as trustworthy allegations, but for the purposes of this Motion the allegations are not relevant.

Similarly, the assertion in the Motion that MCHI's records at UBS are not relevant cannot be correct because Mr. Castiel's own affidavit, which is attached to the Motion, establish the relevancy. While his attorney argues no relevancy, Mr. Castiel swears that the ICO shares the Mann Defendants allegedly defrauded his company and him out of came from an unidentified MCHI account just months before the shares were pledged to Mann in January 2004. Defendants are entitled to determine if this MCHI account, which Castiel declares is relevant notwithstanding the argument of his counsel, comes from UBS.

This new allegation of Mr. Castiel, more significantly, is patently false and makes every other statement made by Mr. Castiel in this case untrustworthy and a continuing fraud on this Court. As he knows the certificate of ICO stock he transferred to the Mann Defendants was numbered A-2008, was issued by ICO Global Communications (Holdings) Limited <u>to Ellipso</u>, not to MCHI, and was dated December 14, 2001. Mr. Castiel instructed Mr. Piper at UBS to transfer Certificate A-2008 directly to Mann Technologies pursuant to the Joint Sale Order by letter which he signed on August 2, 2004, which was done. See Document Nos. Mann 00006, Mann 00007, and Mann 00012, **Exhibit A hereto**, which were produced to counsel for Ellipso in November 2006. It thus cannot be true, as Mr. Castiel now swears in ¶5 of his supporting affidavit, that "MCHI initially received 492,611 shares from ICOHA in 2001" and that "[t]hereafter, MCHI transferred the shares to Ellipso." These shares were received by Ellipso on

4

December 14, 2001 and these were the shares that were transferred. On the face of the stock certificate, and contrary to Mr. Castiel's sworn statement, MCHI never had the stock. Counsel should not have blindly adopted this false assertion by Mr. Castiel without checking the record to confirm what actually happened. For this reason Defendants are further entitled to obtain the documents from UBS as to MCHI and Ellipso, to demonstrate the utter falsity of Mr. Castiel's latest sworn statement to the Court and to allow them to determine for themselves – from the source and not from Mr. Castiel's untrue sworn statements – where the stock came from.

Second, the Pleadings, in fact, make Ellipso's financial condition expressly relevant. The Mann Defendants have expressly denied the allegations in the Complaint as to Ellipso's financial condition in their Answers and thus placed the financial condition of Ellipso and its wholly owned affiliates flatly into issue. Consider the following allegations of the Complaint and the Mann Answers:

> **Complaint, ¶14:** "Patterson had access to significant confidential and proprietary information regarding Ellipso and knew that Ellipso, in 2002, 2003 and 2004, was experiencing severe cash flow problems and desperately needed a cash infusion."
>
> **Answer, ¶14:** Mann is without sufficient information or knowledge to form a belief as to the truth of the allegations of Paragraph 14 and therefore denies each of them."
>
> **Complaint, ¶18:** "At the time of the introduction, Patterson in his fiduciary capacity, was well aware of Ellipso's severe cash flow problems and the attendant need for an immediate cash infusion…"
>
> **Answer, ¶18:** "Mann is without sufficient information or knowledge to form a belief as to the truth of the allegations of Paragraph 18 and therefore denies each of them."
>
> **Complaint, ¶39:** "As described above, Ellipso, at the time of its execution of the

Loan Documents and as Mann Tech knew through Patterson, was in a distressed financial condition and desperately needed an infusion of cash; thus, Ellipso agreed to pledge over 492,000 ICOHA Shares for a loan of only $90,000"

**Answer, ¶39:** Mann is without sufficient information or knowledge to form a belief as to the truth of the allegations of the first sentence of Paragraph 39 and therefore denies each of them. Defendant Mann denies each of the remaining allegations in the Paragraph."

**Complaint, ¶40:** "As a result of Mann Tech's failure to disclose a material fact, the unconscionable language of the Loan Documents and that Ellipso executed the Loan. Documents under economic duress, the Loan Documents are voidable and must be rescinded."

**Answer:, ¶40:** "Paragraph 40 contains conclusions of law and argument of counsel to which no response is necessary. Insofar as a response may be deemed necessary, it is denied as to each allegation."

**Complaint, ¶53** (a) [Mann Technologies breached its covenant as a Lender by, inter alia]: "Taking advantage of the necessitous circumstances the Lender created by causing language of the loan documents to be drafted solely in Lender's interest and structuring a mechanism which allowed Lender to obtain all of the ICOHA Shares while Lender manipulated the cash flow which was to be made by Ellipso through the Registry Business and Purchase Agreement which were to be utilized to make payments on the loan;" and (c) "Preventing Ellipso from performing under the loan documents."

**Answer, ¶53:** "Paragraph 40 contains conclusions of law and argument of counsel to which no response is necessary. Insofar as a response may be deemed necessary, it is denied as to each allegation."

**Complaint, ¶84:** "...Patterson represented, purportedly in his independent judgment, that the loan transaction with Mann Tech was the best deal on the best terms Ellipso could obtain given its financial condition."

**Answer, ¶84:** "Denied as to each allegation."

These factual contentions made by Ellipso itself go directly to its financial condition and were directly contradicted in the Mann answers. It is at the very least reckless, if not bad faith, to

argue as Ellipso does in the instant Motion that "Ellipso's financial information is not relevant to any issue raised by te parties in their respective pleadings." (Memorandum, at 6.) It violates every rule of procedure in this Court to assert a position merely for the purpose of obstructing the proceedings, hoping that in the confusion of the hour or the volume of paper such transparent violations will not be exposed.

B. **There Cannot Be Any Burden on Ellipso and Its Related Entity, MCHI, by This Subpoena.**

Ellipso argues at Page 7 of its supporting Memorandum that the subpoena is a burden and meant to "annoy Ellipso and its related but distinct entities." To the extent that this argument warrants a response, the Defendants note that the interrelationship between Ellipso and its wholly owned subsidiary MCHI justifies a subpoena relating to MCHI for several reasons. First, Ellipso's President, Mr. Castiel, cannot himself distinguish between the two entities when he swears that the ICO shares at issue came from MCHI, when they actually came from Ellipso. Second, by claiming they came from MCHI he puts MCHI's transactions at UBS into issue. Third, this Court itself has had trouble sorting out the Castiel entities. In another case brought by one of Castiel's prior employees and consultants for his consulting fees, Magistrate Judge Facciola was forced to refer to the Ellipso companies simply as the "Castiel entities" when he could not sort them out, even after a trial. *See, John E. Draim v. Virtual Geosatellite Holdings, Inc., et al.*, Civil Action Nos. 01-2690 and 02-0775 (consolidated), Findings of Fact, Conclusions of Law and Order, December 12, 2006, and Memorandum Opinion, March 14, 2007. (Judgment entered against the Castiel entities in the amount of $78,125.02.)

Finally, the subpoena cannot be a burden on Ellipso (Memorandum ,at 7) because UBS

7

has not challenged it. Moreover, the easy way for Ellipso to avoid litigation which it finds "annoying" or "vexatious" is to avoid engaging in frivolous motions practice.

C. **In Light of the Complaint the Subpoena Should Be Limited to November 2003 Through December 2004.**

Ellipso's final argument is that the subpoena should be limited in time to the period November 2003 through December 2004. But as is noted above, in ¶14 of its Complaint, Ellipso complains against the Mann Defendant that "Patterson ... knew that Ellipso, in 2002, 2003 and 2004, was experiencing severe cash flow problems and desperately needed a cash infusion." This is another irreconcilable proposition in the instant Motion: that the period of time Ellipso says is relevant in its Complaint is not the period of time it says the Court should apply to its Motion. The Motion asks for data covered by the period of time asserted in the Complaint as to Ellipso "precarious financial condition." The Mann Defendants plainly are entitled to such data for the period beginning January 1, 2002, and they have asked for it. As for the terminating point of the period, again Ellipso has put into issue its financial condition no earlier than November 2005 when its President, Mr. Castiel, successfully urged this Court to issue a preliminary injunction which seized Mann Technologies assets in November 2005.

Defendants submit, moreover, that it is reasonable to cover the entire time period included in the Complaint and to the present time so that an expert can make an informed decision as to Ellipso's financial viability, before, during and after this lawsuit was filed. It is unrebutted that Ellipso has received investments of over $100 million, over $11 million since 2000, and had, at the time of the Mann Technologies Loan, over 2.7 million shares of ICO stock. Ellipso has characterized its financial condition during 2002, 2003 and 2004 as "desperate" and

the pledged 492,611 ICO shares as "its sole asset of any value". If Ellipso was penniless and at the mercy of Defendants, as it now asserts was the basis of its vulnerability to the Mann Defendants' various "conspiracies", Defendants have a right to verify Ellipso's characterizations. The narrow time frame that Ellipso would have the subpoena limited to would prevent Defendants and their experts from access to the information needed to do so.

## CONCLUSION

Ellipso's Complaint (and its associated Motion for Preliminary Injunction) is replete with references to Ellipso's desperate financial condition, the Defendant's purported conspiracy to both maneuver Ellipso into a financially disadvantageous position, and the Defendant's alleged illegal acts in taking advantage of the unequal bargaining position it purportedly created. The Defendants need access to Ellipso's and its subsidiaries financial transactions, from the source, to defend against such claims, which include fraud, lender liability and RICO.

Their Motion for Protective Order is internally inconsistent and factually misleading and false. Their Motion should be denied and, pursuant to Rule 37, costs awarded, including attorneys fees for at least six hours at $350.00 per hour.

An Order is attached for the Court's consideration.

Respectfully submitted,

/s/ *(signature)*

Thomas A. Mauro, Bar No. 184515
1020 Nineteenth Street, N.W.
Suite 400
Washington, D.C. 20036
Tel.: (202) 452-9865
Fax: (202) 452-0092
Attorney for John B. Mann and Mann Technologies, L.L.C.

# EXHIBIT A

CLASS A COMMON STOCK

A-20008

ICO GLOBAL COMMUNICATIONS (HOLDINGS) LIMITED

INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE

SEE REVERSE SIDE FOR CERTAIN DEFINITIONS

CUSIP 44930K 10 8

CLASS A COMMON STOCK

THIS CERTIFIES THAT

A   002008   ELLIPSO INC
    1214   1133 21ST STREET NW
NC00163204   8TH FLOOR
ELLIPINC-   WASHINGTON DC 20036
----0000

is the record holder of ***FOUR HUNDRED NINETY TWO THOUSAND SIX HUNDRED ELEVEN***

****492611******
****492611******
****492611******
****492611******
****492611***

FULLY PAID AND NONASSESSABLE SHARES OF CLASS A COMMON STOCK $0.01 PAR VALUE PER SHARE OF

ICO GLOBAL COMMUNICATIONS (HOLDINGS) LIMITED

transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this certificate properly endorsed. This certificate is not valid until countersigned by the Transfer Agent and Registrar.

WITNESS the facsimile seal of the Corporation and the facsimile signatures of its duly authorized officers.

DATED 12/14/01



ICO GLOBAL COMMUNICATIONS LIMITED
SEAL
MARCH 17, 2000
DELAWARE



COUNTERSIGNED AND REGISTERED
MELLON INVESTOR SERVICES LLC
TRANSFER AGENT AND REGISTRAR

BY
AUTHORIZED SIGNATURE

MANN 00012

Aug 11 04 01:37p   ellipso           202-466-4493         p.5
08/11/2004   10:52   UBS WASH DC UNIT H              NO.026  P005



August 2, 2004

Mr. John Piper
UBS Financial Services
1501 K Street, NW
Washington, DC

Dear Mr. Piper,

This is an authorization to transfer 492,611 shares of ICO Common Stock represented by certificate A2008 to account UBS account #w9 47374. The consideration for such transfer consists of the sale order (attached) and the distribution of the proceeds from the sale of 442,611 shares equally between Ellipso (account WS 51391) and Mann Technologies, LLC (account #w9 97275).

Thank you for your cooperation.

Regards,

David Castiel
Chief Executive Officer

Ellipso, Inc. 4410 Massachusetts Ave, NW, #385 Washington, D.C. 20036 Tel: 202 466-4488 Fax: 202-466-4493

MANN 00006

# JOINT SALE ORDER

To: John Piper
UBS Financial Services
Washington, DC

This is a standing sale order for the sale of 442,611 shares of ICO Common Stock deposited in account #W17974 from account # WS31501. Please review, if necessary, any pre-sale terms with Messrs. Castiel (Ellipso) and Patterson (Mann Technologies). This sale order can only be amended by both parties.

Signed:

David Castiel
Ellipso

Robert B. Patterson
Mann Technologies

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC., <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> JOHN B. MANN, ET AL., <br><br> Defendants and Counterclaim Plaintiffs. | Case No. 05cv001186  (RCL) |

### ORDER

This matter is before the Court on the Motion of the Plaintiff for Protective Order and to Quash Subpoena [to UBS Financial Services] . The Court has considered the Motion, the Memoranda submitted in support of and in opposition to the Motion and the entire record in this case. ACCORDINGLY, it is this ___ day of _____ 2007,

ORDERED, that the Motion of Defendant, Ellipso, Inc., for Protective Order and to Quash is DENIED; and it is further

ORDERED, that the Plaintiff shall pay the costs of the Defendants in having to oppose the Motion; and it is further

ORDERED, that within ___ days of this Order counsel for the defendants shall submit their requests for attorneys fees and costs in having to oppose this Motion.

**SO ORDERED.**

/s/
ROYCE C. LAMBERTH
United States District Judge

cc: Counsel of Record
Robert B. Patterson, *pro se*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Opposition of John B. Mann and Mann Technologies, L.L.C. to Ellipso's Motion for Protective Order and to Quash Subpoena [To UBS Financial Services] has been mailed first class, postage prepaid, this 29th day of March, 2007 to:

Robert B. Patterson, *pro se*
11775 Stratford House Place
Unit 407
Reston, VA 20190

_____
Thomas A Mauro