IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC. ) | |
| ) | |
|    Plaintiff and Counterclaim ) | |
|    Defendant ) | |
| ) | |
| v. ) | Case No. 05cv01186 (RCL) |
| ) | |
| JOHN B. MANN, et al. ) | Judge: Royce C. Lamberth |
| ) | |
|    Defendants and Counterclaim ) | |
|    Plaintiffs ) | |
| ) | |

## PLAINTIFF'S MOTION FOR LEAVE TO FILE REPLY TO OPPOSITION TO MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENA ISSUED TO UBS FINANCIAL SERVICES

COMES NOW the Plaintiff, Ellipso, Inc., by and through counsel, and respectfully requests the this Court grant it leave to file the attached Reply to Opposition to Motion for Protective Order and to Quash Subpoena issued to UBS Financial Services, for the reasons more fully set forth below:

1.    The Plaintiff was electronically served a copy of the Mann Defendants' Opposition to Motion for Protective Order and to Quash Subpoena ("Opposition") on March 29, 2007 at 10:30 p.m. Under Local Rule 7, oppositions must be filed within 11 days of the date of service. When the period of time prescribed or allowed is 11 days or more, weekends and holidays are not included in the calculation under Federal Rule Civ. Pro. 6(a). Thus, the Opposition was due to be filed on March 26, 2007. The Mann Defendants did not seek leave to file their Opposition beyond the 11 days provided by the Rules.

2. The undersigned was out of the office on March 30, 2007 and for much of the following week.[1] The undersigned did not realize that the Mann Defendants filed their Opposition to Motion for Protective Order and to Quash Subpoena until the undersigned returned from a vacation on April 8, 2007.[2] Upon return, the undersigned was unable to open the document and gain access to the Court's website due to computer difficulties.[3]

3. The Opposition filed by the Mann Defendants warrants a response. The subpoena issued to UBS Financial Services exceeds all bounds of reasonableness and is clearly intended to harass and annoy Ellipso and its subsidiaries by pointlessly seeking access to their private financial transactions.

4. Mann Defendants would not suffer any prejudice should the Court permit the filing of the attached reply. As of the date of this filing, no action on the Motion has been taken by the Court. Additionally, the Mann Defendants' are without clean hands in objecting to Ellipso's request for leave to file its Reply as their Opposition was not timely filed.

WHEREFORE, Ellipso respectfully requests that the Court accept for filing the attached Reply to Opposition to Motion for Protective Order and to Quash Subpoena.

---

[1] The undersigned was in the office for two days during the week of April 2, but spent most of that time preparing a dispositive motion in another case. The undersigned did not realize that the Mann Defendants had filed their Opposition.

[3] The undersigned was later advised by the electronic filing liaison at the Clerk's office, that a full "cache" on the undersigned's computer hindered the undersigned's access to the Court's website.

Respectfully submitted,

**LEFTWICH & LUDAWAY, LLC**

_____//s//_____
Natalie Ludaway, #405149
Matthew H. Goodman, #445404
1400 K Street, NW
Suite 1000
Washington, DC  20005
(202) 434-9100 (voice)
*Counsel for Ellipso, Inc*

## CERTIFICATE OF GOOD FAITH

I hereby certify that prior to the filing of the instant Motion for Leave, I left two telephone message with counsel for the Mann Defendants to ascertain Defendants' position on the Motion.  No response to these messages was received prior to the filing of this motion.

_____//s//_____
Matthew Goodman

## CERTIFICATE OF SERVICE

I certify that on this 13th day of April, 2007, the foregoing Motion for Leave was served electronically upon:

THOMAS MAURO, ESQ.
1020 19th Street, N.W., Suite 400
Washington, D.C. 20036
Counsel for Defendant John B. Mann and Mann Technologies

And via regular, first-class mail upon:

ROBERT B. PATTERSON, pro se
11775 Stratford House Place
#407
Reston, VA 20190

_____//s//_____
Matthew H. Goodman

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC. )<br>)<br>  Plaintiff and Counterclaim )<br>  Defendant )<br>)<br>v. )<br>)<br>JOHN B. MANN, et al. )<br>)<br>  Defendants and Counterclaim )<br>  Plaintiffs )<br>_____ ) | Case No. 05cv01186 (RCL)<br><br>Judge: Royce C. Lamberth |

**ORDER**

UPON CONSIDERATION of Plaintiff's Motion for Leave to File Reply, any Opposition filed thereto, and upon review of the entire record, it is by the Court this _____ day of _____, 2007;

ORDERED, that Plaintiff's Motion be and the same is hereby granted; and it is further

ORDERED, that the Clerk of Court is hereby authorized and directed to accept Plaintiff's Reply to Opposition to Motion for Protective Order and to Quash Subpoena Issued to UBS Financial Services for filing.

_____
JUDGE LAMBERTH

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC. ) | |
| ) | |
|    Plaintiff and Counterclaim ) | |
|    Defendant ) | |
| ) | |
| v. ) | Case No. 05cv01186 (RCL) |
| ) | |
| JOHN B. MANN, et al. ) | Judge: Royce C. Lamberth |
| ) | |
|    Defendants and Counterclaim ) | |
|    Plaintiffs ) | |
| ) | |

**PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR PROTECTIVE ORDER
AND TO QUASH SUBPOENA ISSUED TO UBS FINANCIAL SERVICES**

Procedurally, the Mann Defendants' Opposition is untimely and should be stricken. Local Rule 7 provides that "within 11 days of the date of service…an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion." Under Rule 6, when the period of time allowed is 11 days or greater, intermediate Saturdays, Sundays and legal holidays are excluded in the computation. Ellipso's Motion for Protective Order and to Quash Subpoena was filed on March 14, 2007. The Mann Defendants' Opposition was due no later than March 26, 2007. The Opposition was filed on March 29, 2007, without the Mann Defendants first having sought leave of court.

Notwithstanding the procedural defects, the subpoena issued by the Mann Defendants to UBS Financial Services ("UBS") would have UBS produce every document relating to every financial transaction undertaken by Ellipso, Inc. and its non-party subsidiary, MCHI, from 2002 until 2004. The subpoena should be quashed because there is no genuine dispute as to Ellipso's financial condition at the time the Collateralized Loan Agreement was executed, the financial

1

condition of MCHI is not at issue in this litigation, and Ellipso's financial transactions from 2002 to 2004 are not relevant to this proceeding.

Through their Opposition, the Mann Defendants attempt to create a dispute over Ellipso's financial condition where none exists. Everyone, including John Mann and Mann Technologies, knew of Ellipso's precarious financial condition in early 2004 when the Collateralized Loan Agreement was executed. In the Affidavit of John Mann, attached to his Opposition to Motion for Preliminary Injunction, Mr. Mann acknowledges:

> [i]n January 2004, the only available asset which Ellipso possessed was ICO stock. I understand that Ellipso held about 2,200,000 shares, which were trading at $0.40. The problem was that these were mostly restricted (non-trading) shares that were held by Ellipso. They are "penny stocks", trading on the Pink Sheets, which a very thin trading volume. Any shares that could be sold would surely not sell in any volume for their listed value.

John Mann Affidavit ¶10. Thus, the general denials in the Mann Defendants' Answer to Ellipso's Complaint are unavailing and cannot be relied upon as evidencing a genuine dispute over Ellipso's financial condition in January 2004. This is not a case where Ellipso is alleged to have misrepresented its financial status in order to secure a loan from Mann Technologies. To the contrary, Ellipso concedes and the Mann Defendants do not genuinely dispute the fact that Ellipso was in a precarious financial position when the Loan Agreement was executed.[1] Mr. Castiel's confusion over exactly how Ellipso first obtained the ICO Global shares does not, as Mann Defendants suggest, create a dispute over Ellipso's financial condition that somehow makes their subpoena proper. As addressed in Ellipso's Reply to Defendants' Opposition to

---

[1] Most disturbing is the Mann Defendants' attempt to disassociate itself from the knowledge possessed by Patterson, Ellipso's presumed financial advisor and confidant. As a member of Mann Technologies, Patterson's knowledge of Ellipso's financial condition is imputed to Mann Technologies. The Mann Defendants should not be permitted to skirt this imputed knowledge by disingenuously claiming that it knows nothing about Ellipso's financial condition at the time of entering into the Loan Agreement.

2

Motion to Quash ICO Global Subpoena, Ellipso received most of the ICO Global shares though several transactions involving Ellipso's subsidiary, MCHI. However, the 492,611 shares that were pledged as collateral were transferred directly to Ellipso by ICO Global.[2]

Even if Ellipso's financial **condition** were in dispute, the Mann Defendants are not entitled to unbridled access to Ellipso's financial **transactions** from 2002 through 2004. First, there are far less burdensome ways to verify Ellipso's financial condition than gaining access to the company's financial transactions. Ellipso is producing relevant portions of its corporate tax returns for the years 2002 and 2003, along with year-end financial statements for 2003 and third-quarter of 2004.[3] These documents will confirm Ellipso's financial situation at the time the Loan Agreement was executed, without exposing Ellipso, MCHI, and those persons/entities with who they transact business to disclosure of confidential information. Defendants have no right (or need) for the documentation requested by their subpoena on such a collateral issue. Second, the Loan Agreement was executed in January 2004. As such, Ellipso's financial condition in 2002 and 2003 is not at issue. At most, Defendants would be entitled to discovery of Ellipso's financial condition in January 2004. Ellipso's allegation that Patterson knew of Ellipso's precarious financial condition as early as 2002 does not, in and of itself, make relevant its financial condition during this period. Under Defendants' theory, if Patterson were Ellipso's "consultant" for ten years, a subpoena seeking to disclose Ellipso's financial transactions over the entire ten year period would be appropriate. Ellipso's financial transactions for 2002, 2003

---

[2] In his Affidavit, Mr. Castiel mistakenly believed that the 492, 611 shares were part of the numerous transfers from MCHI. Since the manner by which Ellipso received the shares has absolutely nothing to do with any issue in this case, Mr. Castiel's error does not rise to the level of materiality giving the Mann Defendants access to Ellipso's financial transactions from 2002 to 2004.

[3] Ellipso will produce these records once the Mann Defendants submit a previously agreed-upon Consent Protective Order for this Court's approval.

and 2004 are simply not relevant to this dispute. Mann Defendants' further contention that the subpoena is necessary to allow their expert to "make an informed decision as to Ellipso's financial viability, before, during and after this lawsuit was filed" is baseless. Ellipso's financial condition during and after the lawsuit was filed is patently not relevant to this issue of whether Ellipso (or Mann Technologies for that matter) was defrauded at the time the Loan Agreement was executed.

Third, the subpoena would grant Mann Defendants access to information concerning the finances of non-parties. Information concerning wire transfers or checks issued to other entities or individuals who are not parties to this action is not reasonably calculated to lead to the discovery of admissible evidence, and the prejudice resulting from these disclosures far outweighs any probative value.

Lastly, MCHI is a subsidiary of Ellipso lacking any connection to this case. MCHI did not transfer the 492,611 ICO Global shares to Ellipso.[4] MCHI did not enter into any agreement with Defendants. MCHI's financial transactions are not germane to this case   Neither the Complaint filed by Ellipso nor the Amended Counterclaim filed by the Mann Defendants makes any mention of MCHI. The only plausible rationale for Defendants to have issued a subpoena to UBS Financial Services seeking information on all financial transactions involving David Castiel, INEVA, Ellipso Private Holdings, Inc., and MCHI is to harass and annoy these individuals/entities with discovery seeking to delve into their private financial and business affairs. An even closer scrutiny is warranted in the present case given Mann Defendants' prior representations that they, too, are actively involved in developing, if not expropriating, Ellipso's 881-vanity business.

---

[4] Even if MCHI transferred the ICO Global shares to Ellipso, MCHI's financial condition and banking information would still be irrelevant.

4

For these reasons, Ellipso's Motion for Protective Order and to Quash Subpoena should be granted.

Respectfully submitted,

**LEFTWICH & LUDAWAY, LLC**

_____//s//_____
Natalie Ludaway, #405149
Matthew H. Goodman, #445404
1400 K Street, NW
Suite 1000
Washington, DC 20005
(202) 434-9100 (voice)
*Counsel for Ellipso, Inc*

## CERTIFICATE OF SERVICE

I certify that on this 13th day of April, 2007, the foregoing Reply was served electronically upon:

THOMAS MAURO, ESQ.
1020 19th Street, N.W., Suite 400
Washington, D.C. 20036
Counsel for Defendant John B. Mann and Mann Technologies

And via regular, first-class mail upon:

ROBERT B. PATTERSON, pro se
11775 Stratford House Place
#407
Reston, VA 20190

_____//s//_____
Matthew H. Goodman

5