IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC. ) | |
| ) | |
|     Plaintiff/Counter-Defendant  ) | |
| ) | |
|                     v.             ) | Case #05cv01186 (RCL) |
| ) | |
| JOHN B. MANN, et al.           ) | Royce C. Lamberth, |
| ) | Judge |
|     Defendants/Counter-Plaintiffs.) | |

**OPPOSITION OF PLAINTIFF/COUNTER-DEFENDANT ELLIPSO, INC.
TO MOTION TO QUASH THE PRELIMINARY INJUNCTION ENTERED
NOVEMBER 2, 2005, AS TO DEFENDANT ROBERT PATTERSON**

Plaintiff/Counter-Defendant Ellipso, Inc. ("Plaintiff" or "Ellipso") hereby submits its opposition to Defendant/Counter-Plaintiff Robert Patterson's ("Patterson") motion to quash the Court's November 2, 2005 injunction which prohibits the Defendants, including Mann Technologies ("Mann Tech") and John Mann, from disposing of any assets obtained via its sale of ICOHA stock (or shares of the ICOHA stock itself).[1]

Upon consideration of the record in this case, and the arguments set forth herein, Ellipso requests that this Court deny Patterson's motion as wholly without merit.

---

[1] Aptly demonstrating the necessity of the injunction, Ellipso intends to shortly file a motion for contempt against the Defendants for failing to disclose assets subject to the injunction, attempting to hide such assets from this Court and Ellipso, and of disposing of these assets. As will be further addressed in its motion, Mann Tech, with funds obtained from its sale of ICOHA stock, loaned $30,000 to an unrelated entity and held, as collateral, shares in this entity. In February 2006, three months after this Court entered the preliminary injunction at issue, Defendants received a check for the loan principal, payable to Mann Tech, and, in an attempt to hide these proceeds from the Court and Ellipso, deposited the funds in a BB&T bank account, not its UBS account which Defendants previously had disclosed to be the only banking account used by Mann Tech.

## **Preliminary Statement**

Patterson's motion suffers from a fatal defect.[2] Patterson argues that the injunction should be quashed because facts obtained in discovery establish that Ellipso knew of Patterson's duplicitous conduct – that Patterson secretly owned fifty percent (50%) of Mann Tech while purporting to faithfully represent Ellipso's interests in loan negotiations with Mann Tech – well before Ellipso previously acknowledged. This Court has already considered and rejected this very same argument in denying Patterson's motion to reconsider its injunction. The Court reiterated that its decision to grant the injunction was based on the fact that there was no allegation, and no proof, that Ellipso knew of the dual roles of Patterson "at the time of the negotiation and execution of the loan agreement on January 30, 2004". See Memorandum and Opinion dated November 14, 2005.

Even if this latest "evidence" could justify termination of the injunction based on the opinion rendered by the Court of Appeals in affirming this Court's ruling, Patterson's own motion, which quotes liberally from the deposition transcript of David Castiel, Ellipso's

---

[2] Since the USB account is owned by Mann Tech it is questionable whether Patterson has standing to request the relief he seeks as to that account, which is the subject of the Preliminary Injunction.

President, demonstrates that Ellipso did not learn of Patterson's disloyalty and deception until **after** the August 2004 partial sale of ICOHA stock. Moreover, despite Patterson's contention that Ellipso did nothing once on notice of Patterson's disloyalty, Patterson readily admits that Ellipso refused to make any payments pursuant to the terms of the parties' unconscionable loan agreement. Accordingly, Patterson's request for relief is unwarranted and should be denied.

### Argument

**A. Patterson Has Not Articulated Any New Factual Basis To Support His Motion.**

Patterson makes much of a November 2004 e-mail from Castiel to Patterson which Patterson claims establishes that Ellipso knew of Patterson's ownership stake in Mann Tech in May or June 2004. *See* Exhibit 1 to Patterson's Motion to Quash. That e-mail, supposedly not available at the time the Court entered its November 2, 2005 injunction – despite that it was Patterson who produced it in discovery – proves, so Patterson claims, that Ellipso had knowledge of Patterson's disloyalty before the August 2, 2004 ICOHA sale, and that Castiel subsequently ratified

the agreement by his actions.³ This is simply not the case. At best, the "evidence" submitted by Patterson is equivocal.

Patterson helpfully provides Castiel's relevant deposition testimony in which Castiel credibly explains that by May/June 2004 Castiel only had become aware that Patterson was receiving some sort of "commission or a kickback from" Mann Tech. *See* Castiel Deposition Tr. at 189. Careful not to prematurely reveal his fraudulent scheme lest he and Mann not enjoy the fruits of 492,611 shares of ICOHA stock, Patterson assured Castiel that Patterson's loyalties continued to remain with Ellipso.⁴ Patterson successfully continued this ruse until Patterson himself disclosed his ownership interest in Mann Tech at a lunch meeting on August 12, 2004. *Id*. at 100. This is the first time that Castiel and, hence, Ellipso, learned of Patterson's true relationship with Mann Tech. *Id*. Thus, the premise of Patterson's motion, that a newly discovered

---

³ As Patterson sees it, the August 2, 2004 sale of ICOHA stock was the result of an amendment to the original loan agreement and thus, argues Patterson, if Ellipso had knowledge of Patterson's fraud prior to August 2, 2004, its claim of rescission should fail.

⁴ Patterson successfully garnered and maintained Castiel's trust by providing helpful guidance and service on other, unrelated matters. The cultivation of his relationship with Castiel led to Patterson being able to obtain, on behalf of Mann Tech, control over all 492,611 ICOHA shares pledged as collateral by Ellipso. *See* Castiel Deposition Tr. at 108.

e-mail vitiates Ellipso's rescission claim, is without merit.[6]

In granting the Preliminary Injunction, the Court indicated that the defendants had the right to request that the injunction be lifted, but that such a request should include "a listing of assets that would be sufficient to pay plaintiff in the event plaintiff is successful on the merits of" its case. See Order dated November 2, 2005. Patterson's motion goes beyond the Court's Order and once again attempts to re-litigate the grant of the injunction with "evidence" that he clearly had within his possession at the time that the original Preliminary Injunction was issued. He fails to offer any list of any assets sufficient to satisfy a judgment in favor of the plaintiff.

---

[5] Patterson took Castiel's deposition in May 2007 and certainly had the November 2004 e-mail well in advance of the deposition (if not at the time the Court entered the November 2, 2005 injunction). Nonetheless, despite having this material for months, Patterson intentionally chose to file the instant motion to quash on October 30, 2007, eight (8) days after the hearing on Ellipso's counsel's motion to withdraw and before Ellipso had retained new counsel. Patterson's argument, raised in his opposition to Ellipso's motion for extension of time to file the instant opposition, that he graciously waited to file his motion until after discovery simply does not comport with previous positions taken in this case. Mann Tech consistently argued in its attempt to defeat the Court's preliminary injunction that the injunction would and had caused it much harm. Despite these claims of harm, Patterson asks this Court to believe that he felt no urgency in filing his motion to quash.

Consequently, the Court has no proof of any adequate remedy available if plaintiff is successful in its claim.

### B. Patterson Has Not Proven Ratification Sufficient to Support His Motion to Quash.

Patterson also presses the argument that Ellipso did nothing, to include refusing to make any payment purportedly due to Mann Tech pursuant to the parties' unconscionable loan agreement, after learning of Patterson's fraudulent scheme. Thus, Patterson argues, even had Ellipso not learned of Patterson's duplicity until August 2, 2004 or later, Ellipso's failure to divest itself from the terms of the loan agreement should cause the rescission claim to fail.

Again, Patterson's argument refutes his claim. Once on notice that the loan agreement was the product of a scheme between John Mann and Patterson to defraud Ellipso, Ellipso refused to make any payments due under the agreement. *See* Patterson Motion at 10.  Ellipso's actions, contrary to Patterson's argument, preserved its rescission claim and, certainly, did not clearly evidence a ratification of the unconscionable loan agreement.[7]

---

[6] Despite Patterson's claim of harm, the fact is that the wrongful sale of the stock netted the defendants funds far in excess of the loan amount, including any accrued interest.

In the case of Avianca, Inc. v. Corriea, 1992 U.S. Dist. Lexis 4709 at *28 (D.D.C. 1992), the Court held that a contract is ratified only by a showing that the "intent to ratify [was] **crystal clear**". (emphasis added). Avianca, Inc. also states that: "Defendants bear a heavy burden to show that the intent to ratify was unequivocal." Id. at *28. Avianca, Inc. involved a claim against an attorney who wore two (2) hats in his dealings with the plaintiff – one as plaintiff's counsel, and one as a businessman who reaped profits based on his relationship with the plaintiff. In analyzing that situation, the court took the position that it was a critical factor that the attorney/defendants were alleged to have taken advantage of the plaintiffs based on their position as counsel.

In this case, although Patterson did not directly engage with Ellipso to provide services as a lawyer, he was known to be a Harvard trained attorney, his so-called company, Consulting Management, Ltd., was never formally incorporated, and the agreement specifically states at ¶2.4 that he will "help establish a [s]trategy to defend and protect [Ellipso]" in certain legal matters for the preservation of the corporate assets. See Exhibit 1 to

Plaintiff's Complaint. Therefore, the standard pursuant to which his relationship is judged should be a higher one than simply one of a consultant. In either case, Ellipso has claimed that Patterson breached his fiduciary duty; acted in bad faith; fraudulently induced a contract which provided for legal services; and, conversion, among other claims.

In Kuwait Airways Corp. v. Am. Sec. Bank, 890 F.2d 456, 465 (D.C. Cir. 1989) the Court likewise held that whether a party has ratified a contract is inherently a question of fact. If ratification is not explicit, then proof of ratification "must be conduct which is 'inconsistent with any other hypothesis'". Id. At 28 citing Lewis v. Washington Metro. Area Transit Authority, 463 A.2d 666, 671-672 (D.C. 1983). Patterson has offered no such incontrovertible proof in his motion. Rather, the deposition testimony he offered does not support his theory that Castiel was fully apprised of his relationship to Mann Tech prior to either the original loan, or the amended agreement.

**C. Ellipso's Complaint and the Facts Developed In This Case Sufficiently Establish A Legal and Factual Basis For Maintaining the Preliminary Injunction.**

In order to justify a preliminary injunction it has been held that a plaintiff need only show an equitable interest in assets in the hands of the defendant. <u>Fairview Machine & Tool Co., Inc. v. Oakbrook International, Inc. et al.</u>, 77 F. Supp. 2d 199 (US Dist Ct for Dist of Mass. 1999). In the <u>Fairview</u> case, the court allowed a preliminary injunction to stand in a case where the prime claim was for failure to pay for goods delivered. Fairview had alleged that the defendant was in the process of selling its assets and there would be no means of payment of a judgment if it was successful in its claim. Fairview had not sought rescission, but had included an equitable claim for quantum meruit. Consequently, the court in <u>Fairview</u> held that the controlling authority was <u>Deckert v. Independence Shares Corp.</u>, 311 U.S. 282, 85 L.Ed. 189, 61 S. Ct. 229 (1940).

In <u>Deckert</u>, the Supreme Court held that if equitable remedies are demanded, injunctions which freeze the assets of defendants are available as a reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed. This remedy is available, if in cases such as the instant case, the plaintiff has asserted a cognizable claim to specific assets or seeks a remedy involving those assets. It is perfectly within the authority of the court to "invoke equity to preserve the status quo pending judgment…". <u>United States ex rel. Rahman v. Oncology Associates, P.C.</u>, 198 F.3d 489, 1999 WL 1008974 at *6 (4th Cir. 1999).

In <u>Deckert</u> the Supreme Court allowed the issuance of an injunction in a case where the legal remedy would be inadequate because the defendant had virtually ceased business operations and its assets were in danger of dissipation. In the instant case, this Court has articulated a well reasoned basis for the injunction that was issued. The injunction was justified, and is supported not only by the facts, but by the applicable case law.

## Conclusion

As discussed above, there is no basis for Patterson's motion to quash the November 2, 2005 injunction. Given the lack of merit to his motion, and the continuing need for the injunction, Ellipso respectfully requests that Patterson's motion be denied.

Respectfully submitted,

_____/s/_____
Vanessa Carpenter Lourie, #250068
4400 MacArthur Blvd., N.W.
Suite #205
Washington, D.C. 20007-2521
(202) 342-8000 (Telephone)
(202) 342-9000 (Facsimile)
vlourie@carpenterlourie.com (e-mail)


_____/s/_____
Linda Awkard, #38748
4201 Cathedral Avenue, N.W.
Suite 1416 W
(202) 237-1535 (Telephone)
(202) 237-1204 (Facsimile)
lawkard@earthlink.net (e-mail)

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing Opposition was served by first class mail, postage prepaid, this November 26, 2007, on:

        Robert B. Patterson
        P.O. Box 3106
        Reston, Virginia 20190

        Christopher Hoge, Esquire
        Crowley, Hoge & Fein, P.C.
        1719 Rhode Island Avenue, N.W.
        Suite 700
        Washington, D.C. 20036-3125

            /s/
        Vanessa Carpenter Lourie, Esquire