THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED
NOV 29 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| ELLIPSO, INC. | ) |
|     Plaintiff, Counterclaim Defendant | ) ) ) ) |
| v. | ) ) |
| JOHN B. MANN, et al. | )   CASE NUMBER: 1:O5CV01186 )   JUDGE: ROYCE C. LAMBERTH |
|     Defendants, Counterclaim Plaintiff | ) ) |

**REPLY MEMORANDUM OF DEFENDANT ROBERT PATTERSON
TO
PLAINTIFF, ELLIPSO'S, OPPOSITION
TO
MOTION TO QUASH THE PRILIMINARY INJUNCTION
ENTERED NOVEMBER 2, 2005**

**COMES NOW, DEFENDANT, ROBERT PATTERSON,** ("Patterson"), and in response to the Opposition to Motion to Quash the Preliminary Injunction filed by Plaintiff and Counterclaim Defendant, Ellipso, Inc., ("Ellipso"), states as follows:

1. Patterson seeks the quashing of the November 2, 2005, Preliminary Injunction, pointing out that Ellipso obtained the Order by misleading representations to this Court concerning Ellipso's knowledge of Patterson's relationship with Mann Technologies, LLC, ("MannTech"). Specifically David Castiel, ("Castiel"), the owner and CEO of Ellipso, told this Court that he had no knowledge of Patterson's relationship with MannTech, "...before, during, or after ..." the transaction. [Castiel affidvt. Attached to the Motion for Preliminary Injunction,

RECEIVED
NOV 29 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

p. 2, l. 2-3]. In its Opposition, Ellipso again misleads this Court on this seminal fact.

2. In his deposition testimony, and in his emails, Castiel has admitted that he learned of Patterson's interest in MannTech in May/June of 2004. "In particular, I never knew until May/June that you were 50% owner of MannTech and that you had a stake in the upside of the ICO stock." [Castiel depo., Ex. 13, email from Castiel to Patterson dated Nov. 16, 2004]. "My understanding was that you were 'covered' as you indicated to me starting in June through a variety of sources, including the Ineva customer base sold to LookNet, of which you are a substantial holder and TRSC/Mann Tech (of which you are a substantial holder as well) .... In fact, in addition to assisting Ellipso you have been actively involved with TRSC/Mann Tech for businesses unrelated to Ellipso or 881." [Castiel depo., Ex. 14, email from Castiel to Patterson doted Oct. 20, 2004]. Elsewhere in his deposition, and in sworn Answers to Interrogatories, Castiel swears that he first learned of Patterson's interest in MannTech, on August 12, 2004. Which ever version of the "facts" as related by Castiel, one wishes to credit, Castiel and Ellipso knew of Patterson's financial interest in MannTech during the course of the loan transaction with MannTech. The chronology is dispositive.

    A.    After admittedly learning of Patterson's financial interest in the transaction in May/June 2004, Ellipso continued to negotiate with Patterson and MannTech to amend the loan agreement.
    B.    On August 2, 2004, with knowledge of Patterson's financial interest in the loan transaction, Ellipso executed the Amended Agreement.
    C.    On August 12, 2004, Ellipso (Castiel) met with Patterson and John Mann, President of MannTech, at UBS to consummate the August 2, 2004, Amended Agreement.

    D.    On August 12, 2004, after admittedly hearing Patterson's "confession" that he was a partial owner of MannTech, Ellipso negotiated the ten thousand dollar check it had received from MannTech as part of the proceeds of the August 2, 2004 Amended Agreement.

    E.    On August 24, 2004, Ellipso transferred the 492,611 shares of ICOG stock that constituted the collateral for the loan to MannTech.

    F.    On or about August 27, 2004, Ellipso accepted its share of the proceeds of the sale of 25,000 shares of the ICOG stock, which had been sold pursuant to the August 2. 2004, Amended Agreement.

    G.    Castiel testified in this deposition that between the time Patterson "confessed" his ownership interest in MannTech, and the receipt of the proceeds from the sale of the ICOG stock, Ellipso took no actions to stop the transactions.

    H.    Ellipso retained all the proceeds of the loan transaction with MannTech.

    I.    The first notice that Ellipso gave to MannTech of the asserted "fraud" was in August 2005, a year later, when the instant suit was served.

3. Significantly, Ellipso does not deny any of these facts. Instead, to avoid its obvious reaffirmation of the loan agreements, Ellipso resorts to another misleading statement to this Court. Ellipso states "...that Ellipso did not learn of Patterson's disloyalty and deception until **after** the August 2004 partial sale of the ICOHA stock." [Opposition p. 3] This representation to the Court is simply not true. Ellipso's own documents and Castiel's testimony admit that Ellipso knew of Patterson's interest in MannTech prior to the ICOHA stock sale. Ellipso's deliberate misstatement of this crucial fact is a tacit admission that Ellipso obtained the Preliminary Injunction here by deceit and deception on the Court. More disturbing is Ellipso's continued attempt to misrepresent the facts.

4. Next, Ellipso attempts to escape its reaffirmation of the loan agreement by arguing that its ratification of the loan agreements with MannTech were "equivocal." However, a) the August 12, 2004, negotiation of the ten thousand dollar check from the August 2, 2004, Amended Agreement; b) the August 24, 2004, transfer of the 49261 ICOG shares to MannTech; and c) the August 27,

3

2004, acceptance of the proceeds of the sale of the 25,000 ICOG shares pursuant to the August 2, Amended Agreement, are not equivocal. Ellipso, by its actions and inactions, re-affirmed the loan transaction with MannTech, **with full knowledge of Patterson's ownership interest in MannTech.** [Ellipso's argument, that its failure to pay the interest or principal on the loan is evidence that it did not re-affirm the loan agreement, is spurious. Ellipso's refusal to repay the loan is strong evidence of Ellipso's choice to affirm the non-recourse loan agreement, retain the $115,000.00+, and forfeit the then worthless ICOG stock. No prudent businessman would have done otherwise.]

5. Ellipso again advances a litany of other claims – bad faith, fiduciary duty, fraud, conversion – to support its defense of the Preliminary Injunction. However, as set forth herein, Ellipso/Castiel admit having full knowledge of Patterson's role in the transaction at least as of August 12, 2004. Thereafter, Ellipso/Castiel chose to continue with the loan transaction by accepting the benefits hereunder. Disclosure of Patterson's role obviates Ellipso's claims of bad faith, fiduciary duty, fraud, or conversion, as each is viable only if Patterson's relationship to MannTech remains unknown to Ellipso. Ellipso's continued performance of the contract with full knowledge of Patterson's role vitiates these claims. Again, Ellipso's position depends on misrepresentations of the facts.

6. Citing a Massachusetts District Court case, Ellipso urges this Court to ignore the United States Supreme Court precedent and the Decision of the United States Court of Appeals for the District of Columbia in this case, by imposing an injunction solely to aid collection of a potential judgment. The law is clear, an

4

    injunction will not issue solely to aid collection of a potential judgment. See, Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 332-33 (1999). As the Court of Appeals wrote here, "If Ellipso had in fact affirmed the loan agreement, Ellipso's sole remedy for fraud in the inducement of that contract would have been damages – a legal remedy, see, Dean v Garland, 779 A.2d 911, 915 (D.C. 2001) (holding that a party affirming a contract is precluded from later seeking rescission); it would have been unable to show the equitable interest in the shares held by Mann Tech necessary to support the equitable remedy of an injunction." Opinion @ 10.

7. Ellipso's Opposition does not address the other points raised by the Motion to Quash the Preliminary Injunction – a) rescission is not available here as 90% of the ICOG stock had been sold before this action was filed; b) Ellipso's breach of the loan agreement precludes its breach of contract claims; c) the loan agreement is not unconscionable [Neither in its voluminous pleadings, nor in Castiel's deposition has Ellipso articulated any basis for this assertion.]; and, d) there is no conspiracy to defraud Ellipso as only Ellipso could be the instrument for forfeiture of the ICOG stock through breach of the loan agreement.

CONCLUSION AND REQUESTED RELIEF

For the reasons set forth herein and in the initial Motion to Quash the Preliminary Injunction, Defendant Patterson respectfully requests that the Preliminary Injunction issued herein on November 2, 2005, be quashed, and that Plaintiff, Ellipso be required to pay all costs and damages occasioned thereby.

Respectfully submitted,

Robert Patterson, *pro se*
P.O. Box 3106
Reston, VA 20195
(571) 278-7076

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the forgoing was mailed, fist class postage paid, this 29th day of Nov., 2007, to:

Vanessa Carpenter Lourie, Esq.
4400 MacArthur Blvd., N.W.
Suite #205
Washington, D.C. 20007-2521

Christopher Hoge, Esq.
1717 Rhode Island Ave., N.W.
Seventh Floor
Washington, D.C. 20036

Robert Patterson