**Unknown**

---

From: Robert Patterson [rbplaw@hotmail.com]
Sent: Friday, December 05, 2003 3:16 PM
To: john.mann@starband.net
Subject: FW: Tomassoni Bio

  

Tomassoni Bio.doc   MEMORANDUM OF   CONTRACT FOR
(20 KB)             NDERSTANDING-TRALE OF SECURITIE.

```
JOHN, David is ready (anxious) to sign ASAP.  Call to discuss. - Bob
703-517-1983

>From: "David Castiel" <dcastiel@ellipso.com>
>Reply-To: <dcastiel@ellipso.com>
>To: "Robert Patterson (E-mail)" <rbplaw@hotmail.com>
>Subject: Tomassoni Bio
>Date: Tue, 2 Dec 2003 20:27:22 -0500
>
>
```

---

Browse styles for all ages, from the latest looks to cozy weekend wear at
MSN Shopping.  And check out the beauty products! http://shopping.msn.com

**EXHIBIT**

**A**

MANN 00026

## JUAN R. TOMASSONI

Juan Tomassoni is currently president of Tectel Incorporated, an international telecommunications services and consulting firm located in the Washington metropolitan area. Tectel has on-going activities in international services and is involved in various start up projects, primarily directed to Latin-American markets. Mr. Tomassoni brings to these projects more than 25 years experience in telecommunications

From 1993 to 1997, Juan Tomassoni was Director General of Telintar, the international telecommunications company for Argentina, a joint venture between the two national operators, with main stockholders including Telecom Italy, France Telecom, Telefonica of Spain, Citibank, Morgan Trust and other local investors. During his four years tenure with this company, he managed to position Telintar at the top of productivity among similar international carriers, introducing innovative services and advanced promotional programs as well as developing regional services in association with various Latin-American international operators. At Telintar Mr. Tomassoni managed 700 employees and $700 million dollars in revenues.

Before joining Telintar, Mr. Tomassoni spent nine years with Sprint International and was responsible for developing the regional business in the Americas. As Area Vice-president for Sprint, he developed a strong competitive presence with more than 30 major accounts, including PTTs as well as private companies, to whom Sprint introduced its advanced technology and services. This customer base was the foundation used to develop the current Global One services in the region.

Before joining Sprint Mr. Tomassoni worked for Plantronics, Computer Sciences Corporation and IBM.

Mr. Tomassoni holds a Master in Electronic Engineering and currently he lives with his family in Virginia, USA.

MANN 00027

## MEMORANDUM OF UNDERSTANDING

WHEREAS, ELLIPSO, INC. is in the process of implementing telephony services utilizing its unique 881 universal number series;

WHEREAS, ELLIPSO, INC. wishes to establish a unified registration process for the marketing and implementation of its 881 universal number series;

WHEREAS, THE REGISTRY SOLUTIONS COMPANY (TRSC) possesses expertise and experience in initiating, implementing, marketing, and maintaining universal registration programs which ELLIPSO, INC. does not possess;

WHEREAS, TRSC is willing to devote its resources and expertise to assisting ELLIPSO, INC. in developing the 881 universal number business;

IT IS AGREED:

ELLIPSO, INC. hereby grants to TRSC the exclusive right to establish and maintain the registry of all 881-3 series universal numbers placed into service (THE REGISTRY).

TRSC will use its best efforts to establish THE REGISTRY as soon as practicable, but in any event, within sixty (60) days of the date of this agreement. TRSC will bear all costs for establishment of THE REGISTRY.

ELLIPSO, INC. will cooperate and assist TRSC in establishing THE REGISTRY by promptly providing all necessary information and support requested by TRSC pursuant to establishment of THE REGISTRY. To the extent ELLIPSO, INC. provides services or other support to TRSC, it shall be reimbursed for the reasonable costs incurred.

TRSC will initiate an aggressive marketing campaign to expeditiously and extensively populate THE REGISTRY, and shall perform all functions necessary to assure the successful implementation of THE REGISTRY.

Within thirty (30) days of the close of each calendar month, TRSC shall remit to ELLIPSO, INC. fifty percent (50%) of the net profits received by TRSC from operation of THE REGISTRY. Net profits shall be determined by generally accepted accounting practices.

For 881-3 usage by customers/users, who are generated through the marketing efforts of TRSC, TRSC shall receive a portion of the usage revenues received by ELLIPO, INC. from such usage by said customers/users. Such compensation shall be consistent with the maximum compensation paid to other marketing companies/agents for similar services.

*ELLIPSO, INC./TRSC, p. 2.*

In the event ELLIPSO, INC. initiates telephony services using its 881-2 series universal numbers, TRSC and ELLIPSO, INC. shall use their best efforts to cooperate and coordinate their efforts to utilize THE REGISTRY in implementing and establishing such 881-2 series universal numbers.

The term of this agreement shall be five (5) years, and shall thereafter automatically renew for an additional terms of five (5) years, unless ELLIPSO, INC. exercises its option to acquire THE REGISTRY as set forth herein.

On the fifth anniversary of this agreement, ELLIPSO, INC shall have the right to acquire THE REGISTRY by tendering to TRSC a cash payment equilivant to the gross revenues received by TRSC during the immediately preceding _____ months. This is a one-time purchase option.

ELLIPSO, INC. and TRSC shall coordinate their efforts to successfully implement the 881 universal numbers and THE REGISTRY.

This agreement contains the entire agreement and representations of the parties hereto and any representations not set forth herein are specifically disclaimed.


AGREED THIS ____ DAY OF DECEMBER 2003:

David Castiel, Chairman         John Mann, Director
ELLIPSO, INC.                   THE REGISTRY SOLUTIONS COMPANY

_____         _____

## CONTRACT FOR SALE OF SECURITIES

ELLIPSO, INC., A Delaware Corporation, hereby conveys and transfers all right, title, and interest in and to five hundred thousand (500,000) shares of ICOHoldings common stock to MANN TECHNOLOGIES LIMITED, a Nevada Limited Liability Company, pursuant to the terms and conditions set forth herein.

ELLIPSO, INC. represents and warrants that is is the rightful owner on ICOHoldings stack certificate number ____ representing five hundred thousand (500,000) shares of ICOHoldings common stock; that the certificate is free and clear of any encumbrances; ant that ELLIPSO, INC. has full legal authority to transfer ownership of said certificate, including but not limited to, compliance with all securities regulatory requirements.

MANN TECHNOLOGIES LIMITED, represents and warrants that it is a qualified sophisticated purchaser pursuant to applicable securities regulations and that MANN TECHNOLOGIES LIMITED has full legal authority to consummate this transaction.

Commensurate with execution of this agreement, ELLIPSO, INC. shall deliver said stock certificate to MANN TECHNOLOGIES LIMITED.

The purchase price of said stock certificate shall be two hundred fifty thousand dollars ($250,000) payable as follows:
   A. Fifty thousand dollars ($50,000) upon execution of this agreement; and
   B. Twenty-five thousand dollars ($25,000) on the first day of each month thereafter commencing February 1, 2004, until the full purchase price is paid.

It is further agreed that as further consideration for the conveyance of this stock certificate; ELLIPOS, INC. shall receive fifty percent (50%) of any net proceeds received by MANN TECHNOLOGIES LIMITED from any subsequent sale of conversion of said stock certificate, or any portion thereof, to the extent such net proceeds exceed non dollar ($1.00) per share. Net proceeds means funds received by MANN TECHNOLOGIES LIMITED net of sales costs/commissions. Such funds or other proceeds shall be remitted to ELLIPSO, INC. within ten (10) days of receipt by MANN TECHNOLOGIES LIMITED.

In the event that no subsequent sale or conversion of the stock has occurred by the time of the tenth anniversary of this agreement, December ___, 2013, on that date MANN TECHNOLOGIES LIMITED shall remit two hundred fifty thousand (250,000) shares of ICOHoldings common stock to ELLIPSO, INC. and the parties hereto shall have no further obligations to each other pursuant to this agreement.

*ELLIPSO, INC/MANN TECHNOLOGIES LIMITED, P. 2.*

As an additional consideration for this agreement, ELLIPSO, INC. grants to MANN TECHNOLOGIES LIMITED, the right to purchase an additional five hundred thousand (500,000) shares of ICOHoldings common stock. This option to purchase shall apply only to shares of ICOHoldings common stock that are issued to ELLIPSO, INC. after January 31, 2004, pursuant to currently existing agreements between ELLIPSO, INC. and ICOHoldings, Inc. or their affiliates. The terms and conditions of this option to purchase shall be the same as the terms and conditions set forth herein except that the purchase price shall be five hundred thousand dollars ($500,000) and the fifty percent (50%) division of proceeds shall apply to proceeds exceeding two dollars ($2.00) per share.

This agreement contains all the terms and conditions of this transaction and any terms, conditions, representations, or warranties not specifically set forth heerin are specifically disclaimed by the respective parties. Disputes hereunder shall be governed by the laws of the District of Columbia and shall be submitted to binding arbitration pursuant to the rules of the American Arbitration Association.

Notices shall be delivered postage paid to:

ELLIPSO, INC. 4410 Massachusetts Ave., N.W. #385, Washington, D.C. 20016, Attention: Dr. David Castiel.
MANN TECHNOLOGIES LIMITED, _____.

EXECUTED THIS ___ DAY OF DECEMBER 2003.


_____         _____
Dr. David Castiel Chairman              John Mann, Director
ELLIPSO, INC.                           MANN TECHNOLOGIES LIMITED

## DECLARATION OF JOHN B. MANN UNDER PENALTY OF PERJURY

1. I am over the age of eighteen and competent to testify from personal knowledge on the matters set forth herein.

2. I invested personal funds in excess of $200,000 into Mann Technologies, LLC and The Registry Solutions Company (TRSC).

3. Mann Technologies and TRSC paid in excess of $200,000 to Ellipso from January 2004 through August 12, 2004.

4. Mann Technologies LLC came to possess funds that did not come from the proceeds of sale of the ICOHA stock.

5. There is nothing in the Mann Technologies charter, or any other oral or written document, that limits its investments.

I declare, pursuant to 28 U.S.C. Sec. 1746 and under the penalty of perjury, that the foregoing is true and correct to the best of my personal knowledge and belief.

Date: January 8, 2008

_/s/ John B. Mann_
John B. Mann

**EXHIBIT B**

1

```
 1          IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLUMBIA
 2    - - - - - - - - - - - - - -x
                                  :
 3    ELLIPSO, INC.,               :
                                  :
 4      Plaintiff/Counterclaim     :
        Defendant,                 :
 5                                 :
         v.                        : Case No. 05-cv01186(RCL)
 6                                 :
      JOHN B. MANN, et al.,        :
 7                                 :
        Defendants/Counterclaim    :
 8      Plaintiffs.                :
                                  :
 9    - - - - - - - - - - - - - -x
10                    Reston, Virginia
11                    Wednesday, May 2, 2007
12         Deposition of DAVID CASTIEL, Witness, called for
13    examination by counsel for the Defendant/Counterclaim
14    Plaintiff, at the Metro Offices, 11710 Plaza America,
15    Reston, Virginia, before Diana L. Cox, CCR, a stenographic
16    reporter and notary public in and for the District of
17    Columbia, commencing at 10:20 a.m., when were present on
18    behalf of the respective parties:
19
20
21
22
```

**EXHIBIT C**

```
                                                               2

   1    APPEARANCE:

   2      On Behalf of the Plaintiff/Counterclaim Defendant:
             MATTHEW H. GOODMAN, ESQ.
   3         Leftwich & Ludaway
             1400 K Street, Northwest
   4         Suite 1000
             Washington, DC 20036
   5         202-434-9100

   6      On Behalf of the Defendants/Counterclaim Plaintiffs:
             THOMAS A. MAURO, ESQ.
   7         Mauro Law Offices, PC &
             1020 Nineteenth Street, Northwest
   8         Suite 400
             Washington, DC 20036
   9         202-452-9865

  10         ROBERT PATTERSON, PRO SE
             11775 Stratford House Place, #407
  11         Reston, Virginia 20190

  12

  13

  14

  15

  16

  17

  18

  19

  20

  21

  22
```

108

1    had much bigger assets.  So, even as a selfish interest,
2    it made sense for him to -- okay, if Mann wants to give
3    him a kickback, he'll take it.  But long term, there was
4    more interest in Ellipso.
5           So, I -- I trusted that relationship.  And you
6    knew it.  And you continued working diligently on several
7    things; for example, the Sahagen settlement proposal that
8    you drafted as an expert Harvard-trained lawyer.  It was a
9    good document.  So, okay, he might pay you something one
10   day, but he's -- your allegiance, I believed, was still
11   with us, not to him.
12       Q    How much money did Ellipso receive during 2004
13   as a consequence of Mr. Patterson's efforts?
14       A    Net of our losses, probably negative, but in
15   terms of receipts, you can count what Mr. Mann reimbursed.
16   It's probably $200,000, if you add Mann Tech and TRS.  We
17   never received payment for Mr. Patterson's efforts in the
18   acquisition of -- whatever that company -- Locknet, since
19   they never paid us.
20       Q    How did Mr. Patterson's interests in Mann
21   Technologies cause you to be duped by entering into the
22   August 2nd amendment agreement?