## Unknown

**From:** Robert Patterson [rbplaw@hotmail.com]
**Sent:** Friday, December 05, 2003 3:16 PM
**To:** john.mann@starband.net
**Subject:** FW: Tomassoni Bio

Tomassoni Bio.doc (20 KB) MEMORANDUM OF \DERSTANDING-TRALE OF SECURITIE. CONTRACT FOR

JOHN, David is ready (anxious) to sign ASAP. Call to discuss. - Bob
703-517-1983

>From: "David Castiel" <dcastiel@ellipso.com>
>Reply-To: <dcastiel@ellipso.com>
>To: "Robert Patterson (E-mail)" <rbplaw@hotmail.com>
>Subject: Tomassoni Bio
>Date: Tue, 2 Dec 2003 20:27:22 -0500
>
>

---

Browse styles for all ages, from the latest looks to cozy weekend wear at MSN Shopping. And check out the beauty products! http://shopping.msn.com

EXHIBIT

A

MANN 00026

**JUAN R. TOMASSONI**

Juan Tomassoni is currently president of Tectel Incorporated, an international telecommunications services and consulting firm located in the Washington metropolitan area. Tectel has on-going activities in international services and is involved in various start up projects, primarily directed to Latin-American markets. Mr. Tomassoni brings to these projects more than 25 years experience in telecommunications

From 1993 to 1997, Juan Tomassoni was Director General of Telintar, the international telecommunications company for Argentina, a joint venture between the two national operators, with main stockholders including Telecom Italy, France Telecom, Telefonica of Spain, Citibank, Morgan Trust and other local investors. During his four years tenure with this company, he managed to position Telintar at the top of productivity among similar international carriers, introducing innovative services and advanced promotional programs as well as developing regional services in association with various Latin-American international operators. At Telintar Mr. Tomassoni managed 700 employees and $700 million dollars in revenues.

Before joining Telintar, Mr. Tomassoni spent nine years with Sprint International and was responsible for developing the regional business in the Americas. As Area Vice-president for Sprint, he developed a strong competitive presence with more than 30 major accounts, including PTTs as well as private companies, to whom Sprint introduced its advanced technology and services. This customer base was the foundation used to develop the current Global One services in the region.

Before joining Sprint Mr. Tomassoni worked for Plantronics, Computer Sciences Corporation and IBM.

Mr. Tomassoni holds a Master in Electronic Engineering and currently he lives with his family in Virginia, USA.

MANN  00027

MEMORANDUM OF UNDERSTANDING

WHEREAS, ELLIPSO, INC. is in the process of implementing telephony services utilizing its unique 881 universal number series;

WHEREAS, ELLIPSO, INC. wishes to establish a unified registration process for the marketing and implementation of its 881 universal number series;

WHEREAS, THE REGISTRY SOLUTIONS COMPANY (TRSC) possesses expertise and experience in initiating, implementing, marketing, and maintaining universal registration programs which ELLIPSO, INC. does not possess;

WHEREAS, TRSC is willing to devote its resources and expertise to assisting ELLIPSO, INC. in developing the 881 universal number business;

IT IS AGREED:

ELLIPSO, INC. hereby grants to TRSC the exclusive right to establish and maintain the registry of all 881-3 series universal numbers placed into service (THE REGISTRY).

TRSC will use its best efforts to establish THE REGISTRY as soon as practicable, but in any event, within sixty (60) days of the date of this agreement. TRSC will bear all costs for establishment of THE REGISTRY.

ELLIPSO, INC. will cooperate and assist TRSC in establishing THE REGISTRY by promptly providing all necessary information and support requested by TRSC pursuant to establishment of THE REGISTRY. To the extent ELLIPSO, INC. provides services or other support to TRSC, it shall be reimbursed for the reasonable costs incurred.

TRSC will initiate an aggressive marketing campaign to expeditiously and extensively populate THE REGISTRY, and shall perform all functions necessary to assure the successful implementation of THE REGISTRY.

Within thirty (30) days of the close of each calendar month, TRSC shall remit to ELLIPSO, INC. fifty percent (50%) of the net profits received by TRSC from operation of THE REGISTRY. Net profits shall be determined by generally accepted accounting practices.

For 881-3 usage by customers/users, who are generated through the marketing efforts of TRSC, TRSC shall receive a portion of the usage revenues received by ELLIPO, INC. from such usage by said customers/users. Such compensation shall be consistent with the maximum compensation paid to other marketing companies/agents for similar services.

MANN  00028

*ELLIPSO, INC./TRSC, p. 2.*

In the event ELLIPSO, INC. initiates telephony services using its 881-2 series universal numbers, TRSC and ELLIPSO, INC. shall use their best efforts to cooperate and coordinate their efforts to utilize THE REGISTRY in implementing and establishing such 881-2 series universal numbers.

The term of this agreement shall be five (5) years, and shall thereafter automatically renew for an additional terms of five (5) years, unless ELLIPSO, INC. exercises its option to acquire THE REGISTRY as set forth herein.

On the fifth anniversary of this agreement, ELLIPSO, INC shall have the right to acquire THE REGISTRY by tendering to TRSC a cash payment equilivant to the gross revenues received by TRSC during the immediately preceding _____ months. This is a one-time purchase option.

ELLIPSO, INC. and TRSC shall coordinate their efforts to successfully implement the 881 universal numbers and THE REGISTRY.

This agreement contains the entire agreement and representations of the parties hereto and any representations not set forth herein are specifically disclaimed.


AGREED THIS ____ DAY OF DECEMBER 2003:

David Castiel, Chairman          John Mann, Director
ELLIPSO, INC.                    THE REGISTRY SOLUTIONS COMPANY


_____          _____

MANN 00029

CONTRACT FOR SALE OF SECURITIES

ELLIPSO, INC., A Delaware Corporation, hereby conveys and transfers all right, title, and interest in and to five hundred thousand (500,000) shares of ICOHoldings common stock to MANN TECHNOLOGIES LIMITED, a Nevada Limited Liability Company, pursuant to the terms and conditions set forth herein.

ELLIPSO, INC. represents and warrants that is is the rightful owner on ICOHoldings stack certificate number _____ representing five hundred thousand (500,000) shares of ICOHoldings common stock; that the certificate is free and clear of any encumbrances; ant that ELLIPSO, INC. has full legal authority to transfer ownership of said certificate, including but not limited to, compliance with all securities regulatory requirements.

MANN TECHNOLOGIES LIMITED, represents and warrants that it is a qualified sophisticated purchaser pursuant to applicable securities regulations and that MANN TECHNOLOGIES LIMITED has full legal authority to consummate this transaction.

Commensurate with execution of this agreement, ELLIPSO, INC. shall deliver said stock certificate to MANN TECHNOLOGIES LIMITED.

The purchase price of said stock certificate shall be two hundred fifty thousand dollars ($250,000) payable as follows:
A. Fifty thousand dollars ($50,000) upon execution of this agreement: and
B. Twenty-five thousand dollars ($25,000) on the first day of each month thereafter commencing February 1, 2004, until the full purchase price is paid.

It is further agreed that as further consideration for the conveyance of this stock certificate; ELLIPOS, INC. shall receive fifty percent (50%) of any net proceeds received by MANN TECHNOLOGIES LIMITED from any subsequent sale of conversion of said stock certificate, or any portion thereof, to the extent such net proceeds exceed non dollar ($1.00) per share. Net proceeds means funds received by MANN TECHNOLOGIES LIMITED net of sales costs/commissions. Such funds or other proceeds shall be remitted to ELLIPSO, INC. within ten (10) days of receipt by MANN TECHNOLOGIES LIMITED.

In the event that no subsequent sale or conversion of the stock has occurred by the time of the tenth anniversary of this agreement, December __, 2013, on that date MANN TECHNOLOGIES LIMITED shall remit two hundred fifty thousand (250,000) shares of ICOHoldings common stock to ELLIPSO, INC. and the parties hereto shall have no further obligations to each other pursuant to this agreement.

*ELLIPSO, INC/MANN TECHNOLOGIES LIMITED, P. 2.*

As an additional consideration for this agreement, ELLIPSO, INC. grants to MANN TECHNOLOGIES LIMITED, the right to purchase an additional five hundred thousand (500,000) shares of ICOHoldings common stock. This option to purchase shall apply only to shares of ICOHoldings common stock that are issued to ELLIPSO, INC. after January 31, 2004, pursuant to currently existing agreements between ELLIPSO, INC. and ICOHoldings, Inc. or their affiliates. The terms and conditions of this option to purchase shall be the same as the terms and conditions set forth herein except that the purchase price shall be five hundred thousand dollars ($500,000) and the fifty percent (50%) division of proceeds shall apply to proceeds exceeding two dollars ($2.00) per share.

This agreement contains all the terms and conditions of this transaction and any terms, conditions, representations, or warranties not specifically set forth heerin are specifically disclaimed by the respective parties. Disputes hereunder shall be governed by the laws of the District of Columbia and shall be submitted to binding arbitration pursuant to the rules of the American Arbitration Association.

Notices shall be delivered postage paid to:

ELLIPSO, INC. 4410 Massachusetts Ave., N.W. #385, Washington, D.C. 20016, Attention: Dr. David Castiel.
MANN TECHNOLOGIES LIMITED, _____.


EXECUTED THIS ___ DAY OF DECEMBER 2003.




_____          _____
Dr. David Castiel Chairman           John Mann, Director
ELLIPSO, INC.                        MANN TECHNOLOGIES LIMITED



MANN 00031

## DECLARATION OF JOHN B. MANN UNDER PENALTY OF PERJURY

1. I am over the age of eighteen and competent to testify from personal knowledge on the matters set forth herein.

2. I invested personal funds in excess of $200,000 into Mann Technologies, LLC and The Registry Solutions Company (TRSC).

3. Mann Technologies and TRSC paid in excess of $200,000 to Ellipso from January 2004 through August 12, 2004.

4. Mann Technologies LLC came to possess funds that did not come from the proceeds of sale of the ICOHA stock.

5. There is nothing in the Mann Technologies charter, or any other oral or written document, that limits its investments.

I declare, pursuant to 28 U.S.C. Sec. 1746 and under the penalty of perjury. that the foregoing is true and correct to the best of my personal knowledge and belief.

Date: January 8, 2008

John B. Mann

**EXHIBIT**

**B**

1

```
 1          IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
 2   - - - - - - - - - - - - - -x
                                 :
 3   ELLIPSO, INC.,              :
                                 :
 4      Plaintiff/Counterclaim   :
        Defendant,               :
 5                               :
        v.                       : Case No. 05-cv01186(RCL)
 6                               :
     JOHN B. MANN, et al.,       :
 7                               :
        Defendants/Counterclaim  :
 8        Plaintiffs.            :
                                 :
 9   - - - - - - - - - - - - - -x

10                         Reston, Virginia

11                      Wednesday, May 2, 2007

12          Deposition of DAVID CASTIEL, Witness, called for

13   examination by counsel for the Defendant/Counterclaim

14   Plaintiff, at the Metro Offices, 11710 Plaza America,

15   Reston, Virginia, before Diana L. Cox, CCR, a stenographic

16   reporter and notary public in and for the District of

17   Columbia, commencing at 10:20 a.m., when were present on

18   behalf of the respective parties:

19

20

21

22
```

EXHIBIT

C

2

```
 1   APPEARANCE:

 2       On Behalf of the Plaintiff/Counterclaim Defendant:
              MATTHEW H. GOODMAN, ESQ.
 3            Leftwich & Ludaway
              1400 K Street, Northwest
 4            Suite 1000
              Washington, DC 20036
 5            202-434-9100

 6       On Behalf of the Defendants/Counterclaim Plaintiffs:
              THOMAS A. MAURO, ESQ.
 7            Mauro Law Offices, PC &
              1020 Nineteenth Street, Northwest
 8            Suite 400
              Washington, DC 20036
 9            202-452-9865

10            ROBERT PATTERSON, PRO SE
              11775 Stratford House Place, #407
11            Reston, Virginia 20190

12

13

14

15

16

17

18

19

20

21

22
```

108

1    had much bigger assets.  So, even as a selfish interest,

2    it made sense for him to -- okay, if Mann wants to give

3    him a kickback, he'll take it.  But long term, there was

4    more interest in Ellipso.

5          So, I -- I trusted that relationship.  And you

6    knew it.  And you continued working diligently on several

7    things; for example, the Sahagen settlement proposal that

8    you drafted as an expert Harvard-trained lawyer.  It was a

9    good document.  So, okay, he might pay you something one

10   day, but he's -- your allegiance, I believed, was still

11   with us, not to him.

12       Q    How much money did Ellipso receive during 2004

13   as a consequence of Mr. Patterson's efforts?

14       A    Net of our losses, probably negative, but in

15   terms of receipts, you can count what Mr. Mann reimbursed.

16   It's probably $200,000, if you add Mann Tech and TRS.  We

17   never received payment for Mr. Patterson's efforts in the

18   acquisition of -- whatever that company -- Locknet, since

19   they never paid us.

20       Q    How did Mr. Patterson's interests in Mann

21   Technologies cause you to be duped by entering into the

22   August 2nd amendment agreement?