UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC., ) | |
| ) | |
|     Plaintiff and ) | |
|     Counter-Defendant ) | |
| ) | |
| v. ) | Civil Action No. 05-1186 (RCL) |
| ) | |
| JOHN B. MANN, *et al.*, ) | |
| ) | |
|     Defendants and ) | |
|     Counter-Plaintiffs ) | |

**MANN DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT**

Come now John B. Mann and Mann Technologies, LLC, Defendants and Counter-Plaintiffs herein (collectively the "Mann Defendants"), by their undersigned counsel, and for their reply to the Plaintiff/Counter-Defendant's ("Plaintiff's") opposition to the Mann Defendants' motion for summary judgment in this matter state as follows:

**I.  INTRODUCTION**

Plaintiff's opposition not only betrays a lack of a fundamental understanding of the rule governing motions for summary judgment, but also contains, under the guise of a Rule 56 statement of material facts as to which there is a genuine dispute, a list of representations which are in fact hotly contested, unsupported (and indeed often contradicted) by the evidence and testimony in the record, and, more importantly, irrelevant to the issues raised by the Mann Defendants.

Because the opposition is not clearly organized with regard to Plaintiff's arguments, the

Mann Defendants will attempt to synopsize the major points which it has been able to glean from the pleading and briefly explain why each one is unpersuasive.

## II.  ARGUMENT

### A.  Plaintiff's Failure to Identify Actual Material Facts as to Which There Are Genuine Disputes.

Fed. R. Civ. P. 56(e) specifies that "[W]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial"*.  (Emphasis supplied).  Under Fed. R. Civ. P. 56( c), the motion must be granted if the record of evidence presented demonstrates that "there is no *genuine issue as to any material fact*...".  (Emphasis supplied).

L. Cv. R. 56.1 specifies that "[A]n opposition [to a motion for summary judgment] shall be accompanied by a separate concise statement of genuine issues *setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated*, which shall include references to the parts of the record relied on to support the statement".  (Emphasis supplied).

Of the 50 so-called "facts" identified in Plaintiff's Statement, only a very few purport to contradict the material undisputed facts put forth by the Mann Defendants in support of their motion.  For example, Plaintiff's asserted "facts" set forth at nos. 1-5 of its Statement address the history of Ellipso's relationship with Robert Patterson, which has nothing to do with the legal arguments propounded by the Mann Defendants in their dispositive motion, namely, ratification

and lack of unconscionability.  The only "facts" asserted by Plaintiff which are arguably germane to the issues raised in the motion are those found in paragraph nos. 12, 24, 29 and 43, all of which are supported by only one document, the Declaration of Dr. Castiel (and in fact are almost verbatim recitations of statements contained in the Declaration - *see, e.g.*, par. 24 of the Statement of Facts and par. 17 of the Castiel Declaration).   However, as will be discussed, *infra*, none of these four alleged "facts" is supported by any credible evidence, and indeed the record in this case establishes that they are demonstrably false.

There are only three instances in which Plaintiff directly contradicts assertions contained in the Mann Defendants' Statement of Material Facts Not In Dispute, and they are located at pp. 1-2 of Plaintiff's Statement.  The first has to do with John Mann's actual possession of the ICO stock certificate before the August 2, 2004 amendment to the loan agreement; the second with the date of incorporation of Mann Tech; and the third with incorporating Mann Tech "at the request of Dr. Castiel".[1]    However, the first two contentions are absolutely irrelevant to the issues raised in the summary judgment motion, as well as directly contradicted by the record.

With regard to "disputed fact #1", Mann never stated that he did not receive a stock certificate in January of 2004, but only that "[A]t the time I executed the Loan, Dr. Castiel showed me the stock transfer instructions he had given to ICO, and assured me that all was in conformity with the terms of the Loan documents", and that on April 27, 2004 Castiel provided Mann and Patterson with a letter "to Kelly Meadows of ICO instructing the reissuance of an enclosed stock certificate...".  Mann MSJ Ex. 1, par. 15, 19.  Mann also recounts a problem with

---

[1]This third point is also the subject of Plaintiff's "fact" no. 12.

selling the stock due to a lack of "additional documentation from Ellipso that authorized Mann Tech to sell the ICO shares". *Id.*, par. 20. Thus, Plaintiff is disputing an assertion never made by Mann, and this dispute has absolutely no relevance to the legal issues raised by the Mann Defendants' motion.

Regarding Plaintiff's disputed fact no. 2, the Mann Defendants have supplied the Court with the Limited-Liability Company Charter of Mann Technologies, LLC demonstrating that it was incorporated in the State of Nevada on February 25, 2004, exactly as asserted in par. 17 of the Mann Defendants' Statement of Undisputed Facts. MSJ Ex. 12. Plaintiff has given no factual basis for its contention that the date is wrong other than a general reference to the John Mann Declaration. The Mann Declaration does not state the date of incorporation. In any event, the date of Mann Tech's incorporation has no bearing whatsoever on the legal issues in this case.

Finally, with respect to Plaintiff's disputed fact no. 3, the Mann Defendants never stated that "Mann and Patterson agreed to incorporate a company as MannTech at the request of Dr. Castiel". In fact, the Mann Defendants asserted that in late 2003 "Castiel also *suggested* that Mann set up a separate Company to be named Mann Technologies Limited to purchase some of Ellipso's ICO shares" (Mann Defendants' Statement of Material Facts No. 9)(emphasis supplied), and that in late January of 2004, "Dr. Castiel and Mr. Patterson *suggested* to me that the loan be made by the company they had previously proposed to buy the shares, Mann Technologies, LLC ..." (MSJ Ex. 1, par. 12) (emphasis supplied). Once again, Plaintiff has chosen to refute an assertion never made by the Mann Defendants, and once again this "dispute" has no relevance to any issue raised by the summary judgment motion..

The Mann Defendants wish to stress that they do emphatically dispute many of the

assertions set forth in Plaintiff's Statement. As but one telling example, in trying to explain away the two emails, one dated October 20 and the other November 16, 2004, in which Dr. Castiel admits that he was fully aware of Patterson's involvement with Mann Tech as of June, 2004, Plaintiff asserts that Dr. Castiel "amalgamated the information as time went by" and that "[B]oth e-mails reflect the knowledge Dr. Castiel had in October and November 2004". Plaintiff's Statement of Facts, Nos. 41-42. However, the November 16, 2004 e-mail, which Dr. Castiel admitted in his deposition was genuine, specifically says "[I]n particular I never knew until May/June 2004 that you were 50% owner of MannTech and that you had a stake in the upside of the ICO stock". MSJ Ex. 21. There could not be a less ambiguous assertion of when Castiel learned of Patterson's role, and the e-mail clearly does *not* reflect knowledge as of October or November, but rather as of May/June.

Addressing the four "facts" asserted by Plaintiff which arguably have some relevance to the issues raised in the Mann Defendants' Motion, "fact" No. 12 has already been addressed and is of minimal if any relevance. "Fact" No. 24 is hotly disputed, but is immaterial because the Mann Defendants' contention is that Ellipso ratified the loan agreement after learning of Patterson's involvement with Mann Tech. "Fact" No. 29 cannot be refuted by the Mann Defendants because they are unaware of conversations between Patterson and Castiel, but it is not necessary for the Mann Defendants to establish that Castiel did not have legal advice at the time he ratified the loan agreement.[2] As the United States Court of Appeals for the District of Columbia Circuit stated in its Opinion affirming the preliminary injunction in this case, "... if

---

[2] The Mann Defendants will comment further on Ellipso's contention that it was helpless and without counsel after learning of Patterson's perfidy.

Ellipso continued to perform under the contract *after* learning of Patterson's conflict, Ellipso cannot then seek rescission of the contract". *Ellipso, Inc. v. Mann, et al.*, 375 U.S.App.D.C. 270, 275, 480 F.3d 1153, 1158 (2007)(emphasis supplied).   The same argument holds true for "fact" no. 43.

In sum, the so-called factual disputes conjured up by Plaintiff are either not germane to the issues raised in the motion for summary judgment, or they are directly refuted by evidence in the record herein.

### B.  Ellipso's Alleged Inability to Repay the Loan

A theme of Plaintiff's opposition is that Ellipso was unable to demand a rescission of the loan agreement because it was unable financially to repay the loan from Mann Tech. Opposition, at pp. 6-7, 8-9, 14-15.  The Mann Defendants reply that Ellipso's alleged inability to restore the benefits of the contract does not obviate the clear principle, under District of Columbia case law, that "the equitable remedy of rescission requires that the party seeking it restore the other party to its position at the time the contract was made".  *Dean v. Garland*, 779 A.2d 911, 915 (D.C. 2001) (citations omitted).  *See also*, *Dresser v. Sunderland Apartments Tenants Ass'n*, 465 A.2d 835, 840 (D.C. 1983); *Kent Homes, Inc. v. Frankel*, 128 A.2d 444, 445 (D.C. 1957); *Campbell Music Co. v. Singer*, 97 A.2d 340, 342 (D.C. 1953).  If the allegedly defrauded party treats the property as his own and affirms the contract through continued performance, that party is precluded from seeking rescission.  *Dresser*, 465 A.2d at 840 nn. 16 & 17.

Moreover, Plaintiff's assertion of poverty is disingenuous in the extreme in light of its

ownership, through its wholly-owned subsidiary, Mobile Communications Holdings, Inc. ("MCHI"), of 1,571,547 shares of ICO stock. MSJ Ex. 24. Dr. Castiel has acknowledged owning these shares through MCHI, MSJ Ex. 2, p. 78. Even at depressed prices, the value of this stock far exceeded the balance due under the loan agreement. Castiel has also admitted that the restrictive legends limiting the marketability of the shares could be removed at least as early as October 2, 2004, and that Ellipso sold between 500,000 and 600,000 of the shares between October and December of 2004, at prices ranging from $0.16 to $0.98 per share. MSJ Ex. 2, pp. 83, 136-38; Reply Ex. 1 (further pages from the deposition of Dr. Castiel), pp. 143-53, 197-98.[3]

### C. The Alleged Fraud and Ellipso's Ratification of the Contract

Plaintiff asserts that two e-mails between Robert Patterson and John Mann evidence the "conspiracy" they concocted in late 2003 to defraud Ellipso out of its ICO stock in connection with the $90,000 loan. However, those two e-mails, Ex. 1 and 2 to Plaintiff's opposition, do not relate to the loan transaction at all, but to the 881 registry business which Mann, Castiel and Patterson were discussing at the same time as the loan. This is made clear by Dr. Castiel's deposition, pp. 219-24 (Reply Ex. 1), which refers to these e-mails (Ex. 44 and 45 to the Castiel deposition) as relating to the contract between Ellipso and The Registry Service Corp. ("TRSC") regarding the 881 service. Indeed, the subject header on the December 23, 2003 e-mail relied upon by Ellipso (Opposition Ex. 2) clearly states "881 Registry". Furthermore, Ellipso neglected

---

[3] It should also be remembered that Ellipso had received a total of $200,000 from the Mann Defendants between February and August, 2004, at a time when Castiel was Ellipso's sole employee and was operating it out of his house. MSJ Ex. 1, par. 4; Reply Ex. 1, p. 108.

to include the attachments to these e-mails, which make it crystal clear that the subject of discussion was the 881 registry contract, and not the loan agreement. The complete e-mails with attachments are attached hereto as Reply Ex. 2 and 3.

Even if these exceedingly thin reeds could pass muster as evidence of a fraud, Ellipso cannot overcome the clear evidence of ratification after the "plot" was fully revealed. Whether the realization of Patterson's perfidy occurred on August 12, as admitted by Castiel on the record herein, or in May or June, as acknowledged in the November 16, 2004 e-mail (MSJ Ex. 21), there can be no doubt that Ellipso continued to act as if the loan agreement, as modified by the August 2, 2004 amendment, were in full force and effect. On August 13, 2004 it deposited the $10,000 check it had received from Mann Tech pursuant to the amendment. MSJ Ex. 25. On August 24 it transferred 492,611 ICO shares from its UBS account to Mann Tech's UBS account. MSJ Ex. 1, par. 35 (never disputed by Ellipso).[4] On August 27 it accepted $5,934 from Mann Tech as its share from the sale of 25,000 shares of ICO, pursuant to the amended agreement. MSJ Ex. 1, par. 36-7; MSJ Ex. 2, p. 101. In October of 2004 Castiel told Mann that "a deal is a deal" when Mann brought up the subject of additional security due to the falling ICO price. MSJ Ex. 1, par. 40 (never disputed).

In addition to Ellipso's alleged financial inability to demand a rescission based on the revelation of Patterson's relationship with Mann Tech, Plaintiff contends that Ellipso was somehow helpless to do anything for months because it "had barely had time to digest the meaning of Patterson's duplicity and treachery, and John Mann's connivance with it".

---

[4] Significantly, Robert Patterson signed the UBS account application form on behalf of Mann Tech on July 14, 2004. Reply Ex. 4. Both Ellipso and Mann Tech utilized the same UBS broker, John Piper.

Opposition, at p. 12.  This contention flies in the face of several irrefutable facts, including the fact that in the summer of 2004 Ellipso was represented by counsel named James Bailey, who was giving advice to Castiel regarding the ICO stock (Reply Ex. 5); that F. Whitten "Witt" Peters, a partner with the firm of Williams & Connolly, sat on Ellipso's Board and hosted at least one Board meeting in 2004 (Reply Ex. 1, pp. 33-34); and that Dr. Castiel was a highly experienced litigator.  By the summer of 2004, Castiel had been involved in extensive litigation in Delaware with a company called Virtual Geosatellite, LLC, including the following cases: *VGS, Inc. v. Castiel*, *et al.*, 2000 WL 1277372 (Del. Ch. 8/31/00); *VGS, Inc. v. Castiel, et al.*, 2001 WL 1154430 (Del. Ch. 9/25/01); *VGS, Inc. v. Castiel*, *et al.*, 2003 WL 723285 (Del. Ch. 2/28/03); *VGS, Inc. v. Castiel*, *et al.*, 2003 WL 1794210 (Del. Ch. 3/27/03).  He had also been involved, through MCHI, in several cases in this Court against an individual named John E. Draim, including: *MCHI, Inc. v. Draim*, 2001 CA 008202;  *MCHI, Inc. v. Draim*, 1:01-cv-02427-RWR; *MCHI, Inc. v. Draim*, 02-cv-00112-JCC;  *MCHI, Inc. v. Draim*, 01-cv-02690-JMF; *MCHI, Inc. v. Draim*, 02-cv-00775-JR.  Mr. Draim had also asserted claims against Castiel and his businesses in litigation in the Eastern District of Virginia.  *Draim v. VGH, Inc., Castiel, et al.*, C.A. 01-1588-A (U.S. Dist. Ct. - E.D.Va.).  The claim by Mr. Draim included a demand for rescission of a patent assignment.  Reply Ex. 1, pp. 56-58.   Thus it is disingenuous in the extreme for Ellipso to contend that Dr. Castiel did not understand the concept of rescission or how to take legal action upon his discovery of the alleged fraud.

   Apparently, however, Dr. Castiel was not so thunderstruck by this revelation that he was unable to negotiate checks from Mann Tech during his slow period of digestion after August 12.

   Interestingly, Ellipso has not argued here, as it did in its opposition to Patterson's Motion

to Quash the Injunction, that it repudiated the loan agreement by not paying interest on the loan. *See*, Opposition of Plaintiff/Counter-Defendant Ellipso, Inc. to Motion to Quash the Preliminary Injunction Entered November 2, 2005, as to Defendant Robert Patterson, at p. 6 ("Once on notice that the loan agreement was the product of a scheme between John Mann and Patterson to defraud Ellipso, Ellipso refused to make any payments due under the agreement"). This is probably because the first failure to pay interest occurred in April, 2004, well before the revelation.

Ellipso contends that Castiel sent a letter to Mann on December 23, 2004, advising that "the contracts between Ellipso and Mann Tech and TRSC may be subject to rescission due to the non disclosure of material information prior to signing". Opposition, at p. 12; Opposition Ex. 11. Significantly there is a "Bate" number on the cover e-mail to Ex. 11 ("Mann 00943"), but none on the letter itself. In fact, Mann never received the letter, as evidenced by e-mails between Mann and Patterson on January 1, 2005. Reply Ex. 6.

### D. Unconscionability

It is hard to get a grip on Ellipso's arguments regarding unconscionability, but the essence of it seems to be that Patterson, acting as a "double agent", inserted clauses into the loan agreement which were highly unfair to Ellipso. There seems to be a focus on the provision that allows Mann Tech, upon default by Ellipso, to take possession of and sell the collateral without notice to Ellipso. Ellipso then goes on to say there was never a default because it had not been notified that interest payments were due. Opposition, at p. 23.

However, this argument ignores the fact that the contract in question was a virtual

duplicate of one that Castiel had previously agreed to with Argyll Equities, MSJ Ex. 7(b), and that Castiel had made hand-written notations on the proposed Argyll term sheet which indicate that he thoroughly reviewed the loan documents.  MSJ Ex. 7(a).  Section 7.2 of the Argyll agreement provides that, upon an "Event of Default", "Lender shall thereupon have the rights, benefits, and remedies afforded to it under any of the Loan Documents with respect to the Collateral and may take, use, sell or otherwise encumber or dispose of the Collateral as if it were the Lender's own property".  MSJ Ex. 7(b).  Section 7.1 (a) of the Argyll agreement includes as an "Act of Default" "...the failure by Borrower to pay any interest on the Note within three business days of the date such interest becomes due".  *Id.*  This language, previously agreed to by Castiel in his discussions with Argyll, now becomes unconscionable when relied upon by the Mann Defendants.

It is interesting that Ellipso would argue unconscionability of the contract based upon alleged misconduct by Patterson when it is clear that Ellipso itself made at least three material misrepresentations in the agreement.  Under Section 3, "Representations and Warranties of Borrower", Ellipso represented that the "[C]ollateral is free of any restriction, including restrictive legends" and is "freely tradable and transferable" (par. 3.1); that "there is no action or proceeding pending ... against Borrower ... which might result in a material adverse change in the financial condition of the Borrower" (par. 3.4); and that "Borrower is not in default in the payment or performance of any of his obligations or in the performance of any contract, agreement or other instrument ..." (Par. 3.5).  In fact, there was a restrictive legend on the ICO stock certificate and it was not freely tradable (MSJ Ex. 1, par. 25-30; MSJ Ex. 19).  As we have seen, Castiel and Ellipso were involved in multiple litigations as of January, 2004.  And Ellipso

11

owed Castiel back pay of $400,000 to $600,000 as of January 30, 2004.  Reply Ex. 1, pp. 53-55.

Thus, if anyone was the victim of perfidy, it was the Mann Defendants.  Not only has Ellipso been unable to provide any credible evidence of the so-called "conspiracy" between Mann and Patterson, but also it comes to Court with very "unclean hands".

### E.  Failure to Share in the "Upside" of the ICO Stock Sales

Illustrating its total lack of understanding of its own theory of this case, Ellipso contends that under Section 2.3(a) of the Loan Agreement, "Ellipso is entitled to at least one-half (½) of the proceeds" of Mann Tech's sale of the collateral.  Opposition, at p. 18.   However, Ellipso has not sued for damages for breach of contract, but for rescission.  Moreover, par. 2.3 entitles the Borrower to 50% of "any appreciation in the value of the Collateral" "at loan maturity".  "Loan maturity" was due to occur on January 30, 2007; however, that of course did not occur because of Ellipso's default.   MSJ Ex. 3.

Ellipso chose to walk away from its obligations as early as April of 2004, the first date when an interest payment was due under Section 2.2( c).  Ellipso has not disputed that no interest was ever paid.  That was an "Event of Default" under Section 7.1(a).  Ellipso cannot now claim rights under a contract which it has acknowledged repudiating by not paying interest.  Contempt Motion Opposition, p. 6.

## CONCLUSION

There is a clear instruction from the Court of Appeals in this case.  "... [I]f Ellipso continued to perform under the contract *after* learning of Patterson's conflict, Ellipso cannot then seek rescission of the contract".  *Ellipso, Inc. v. Mann, et al.*, *supra,* 375 U.S.App.D.C. at 275 (emphasis supplied).  Ellipso did continue to perform well after it had uncovered the alleged nefarious plot of Patterson and Mann.  Thus, it cannot legally prevail on its claim.

WHEREFORE, the Mann Defendants respectfully request that their Motion for Summary Judgment be granted and that all counts in the Complaint against them be dismissed with prejudice.

>Respectfully submitted,
>
>/s/ Christopher G. Hoge
>Christopher G. Hoge #203257
>Counsel for Defendants/Counter-Plaintiffs
>John B. Mann and Mann Technologies, LLC
>
>CROWLEY, HOGE & FEIN, P.C.
>1710 Rhode Island Avenue, N.W.
>7th Floor
>Washington, D.C.  20036
>(202) 483-2900

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true copies of the foregoing Reply were, this 11th day of January, 2008, served electronically upon:

>VANESSA CARPENTER LOURIE, ESQ.
>4400 MacArthur Blvd., N.W.
>Suite #205
>Washington, D.C.  20007-2521

                Co-Counsel for Plaintiff/Counter-Defendant

and via first class mail, postage prepaid, upon:

        LINDA AWKARD, ESQ.
        4201 Cathedral Ave., N.W.
        Suite #1416W
        Washington, D.C. 20016
        Co-Counsel for Plaintiff/Counter-Defendant

        ROBERT B. PATTERSON
        11775 Stratford House Place
        #407
        Reston, VA 20190
        Defendant/Counter-Plaintiff *Pro Se*

                              /s/ Christopher G. Hoge
                              Christopher G. Hoge

cgh/z/wpdirs/civil
mannsjreply.wpd