UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

ELLIPSO, INC.,                                    )
                                                  )
    **Plaintiff and Counter-Defendant,**    )
                                                  )
**v.**                                            )          **Civil Action No. 05-1186 (RCL)**
                                                  )
JOHN B. MANN, *et al.*,                           )
                                                  )
    **Defendants and Counter-Plaintiffs** )

---

## MEMORANDUM OPINION

Now before the Court comes defendants and counter-plaintiffs John B. Mann and Mann

Technologies, LLC's (collectively "Mann") motion [153] for summary judgment on all counts

directed against Mann, defendant Robert Patterson's motion [134] to quash the preliminary

injunction entered November 2, 2005, as to Mr. Patterson, and plaintiff and counter-defendant

Ellipso's motion [156] for order to show cause why defendants should not be held in contempt of

court.  Upon consideration of the motions, opposition briefs, replies, the entire record herein, and

applicable law, the Court finds that the motion for summary judgment will be GRANTED in part

and DENIED in part, the motion to quash this Court's preliminary injunction will be

GRANTED, and plaintiff's motion for order to show cause will be DENIED.


## I.    BACKGROUND

In October 2002, plaintiff Ellipso[1] was a financially struggling telecommunications

---

[1] Ellipso, Inc. is a Delaware corporation doing business in the District of Columbia and
having a principal place of business in Washington, D.C.  Ellipso is a telecommunications
company that, among other endeavors, markets satellite telecom products to third parties for
their use in routing telephone calls.  (Compl. ¶ 2.)

company.  At that time, David Castiel, in his capacity of Ellipso president and chief executive

officer, hired defendant Robert Patterson to secure financing from investors.  (*See* Consulting

Agreement, Ex. 1 to Compl.)  Mr. Patterson structured a deal wherein defendant Mann

Technologies, L.L.C. ("Mann Tech") loaned Ellipso $90,000, secured by 492,611 shares of ICO

Global Communications Holding Ltd. Stock ("ICOHA Shares") that Ellipso held.  (*See* Loan

Agreement, Ex. 2 to Compl.)  The loan agreement was executed on January 30, 2004, at which

time the ICOHA shares were valued at $180,000.  While Mr. Patterson was acting as Ellipso's

agent to secure financing from Mann Tech, he—unbeknownst to Ellipso—stood to benefit from

the loan.  Accordingly, on February 25, 2004, Mr. Patterson, together with defendant John B.

Mann, incorporated Mann Tech in Nevada.  (*See* Ex. 12 to Mot. for Summ. J.)

    At the time of the loan, the ICOHA Shares were Ellipso's sole asset of any significant

value and upon execution of the loan, all of Ellipso's ICOHA Shares were pledged as collateral.

(Castiel Aff. (Aug. 12, 2005) ¶ 7.)  The loan agreement provides that a default by Ellipso allows

Mann Tech to take possession of the collateral.  (*See* Loan Agreement § 7.2.)  Although the loan

agreement only required Ellipso to pledge its ICOHA Shares as collateral, plaintiff argues that

Mr. Patterson later advised Ellipso that the loan required that title and possession to the ICOHA

Shares be transferred to and in the sole name of Mann Tech.  Thus, on or about August 12, 2004,

UBS Financial Services in Washington, D.C. deposited the ICOHA Shares into Mann Tech's

account.  As a result, Mann Tech obtained full title and control of the ICOHA Shares.  (Castiel

Aff. (Aug. 12, 2005) ¶ 9.)  In September 2004, Mr. Patterson, on behalf of Mann Tech, executed

a joint sales order permitting sale of 25,000 ICOHA Shares.  Sometime thereafter, Mann Tech

sold an additional 453,000 ICOHA shares and transferred some of the proceeds to other

accounts.  Mann Tech asserts that such actions were permitted under the loan agreement because Ellipso had failed to make a single payment on the loan and because the value of the shares had fallen to below $10,000, both grounds for default under the agreement.

Ellipso contends that, as a result of Mr. Patterson's concealed dual role, the loan documents contained terms and conditions extremely favorable to Mann Tech, and onerous and unconscionable to Ellipso.  According to plaintiff, Mr. Patterson presented the loan as Ellipso's only feasible financing option and Ellipso relied on Mr. Patterson's advice and counsel when deciding to execute the loan.  (*Id.* ¶ 8.)  Because of this alleged fraud, Ellipso asserts that the loan agreement is unenforceable.

Ellipso filed suit on June 14, 2005, and this Court granted Ellipso's motion for preliminary injunction on November 2, 2005, determining in part that Ellipso had shown a likelihood of success on the merits of its fraud claim because Mr. Patterson had not disclosed his dual role to Ellipso.  *See Ellipso*, *Inc. v. Mann*, No. 05-cv-1186, at *3, 2005 WL 5298646 (D.D.C. Nov. 2, 2005).  According to this Court's November 14, 2005 order, defendants were prohibited from disposing of any ICOHA stock it still held or any proceeds from the sale thereof; the order also required that defendants file a report identifying all "financial, banking . . . [or] like institutions" which held proceeds from the sale of ICOHA stock.  *See Ellipso, Inc. v. Mann*, No. 05-cv-1186, at *3, 2005 WL 5612442 (D.D.C. Nov. 14, 2005).  The Court of Appeals affirmed this Court's preliminary injunction on March 23, 2007.  *See Ellipso, Inc. v. Mann*, 480 F.3d 1153 (D.C. Cir. 2007).

## II.   ANALYSIS

### A.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), a court must grant summary judgment when the evidence in the record demonstrates that there are no disputed issues of material fact and that the moving party is entitled to judgment on the undisputed facts as a matter of law. FED. R. CIV. P. 56(c). A genuine issue of material fact exists if the evidence, when viewed in light most favorable to the non-moving party, "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, a party must provide more than "a scintilla of evidence" in support of its position; the quantum of evidence must be such that a jury could reasonably find for the moving party. *Id.* at 252. The burden is on the movant to make the initial showing of the absence of a genuine issue of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party is then entitled to a judgment as a matter of law if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

### B.   Motion for Summary Judgment as to Mann Defendants

#### 1.   Count I:  Rescission

As explained below, the Court finds that Ellipso fails to offer a basis for rescission that would survive Mann's motion for summary judgment.

##### i.   Rescission Based on Material Misrepresentation

The Court of Appeals considered the issue of Ellipso's right to rescission. There the Court stated, "[w]here a party to an executed contract discovers a material misrepresentation

made in the execution of a contract, that party may elect one of two mutually exclusive remedies. He may either affirm the contract and sue for damages, or repudiate the contract and recover that with which he or she has parted." *Ellipso, Inc. v. Mann*, 480 F.3d 1153, 1158 (D.C. Cir. 2007) (citing *Dean*, 779 A.2d at 915)). "It is the [defendants'] burden to show that Ellipso knew of Patterson's dual roles before the actions Mann Tech argues affirmed the loan agreement." *Id.* at 1159. Furthermore, "if Ellipso continued to perform under the contract after learning of Patterson's conflict, Ellipso cannot then seek rescission of the contract." *Id.* at 1158.

When the Court of Appeals considered Mann's challenge to this Court's November 2, 2005 preliminary injunction, Mann relied on an October 20, 2004 email from Mr. Castiel to Mr. Patterson, which purportedly showed Ellipso's knowledge of Mr. Patterson's dual role as early as June 2004. *See id.* However, the Court of Appeals found that the email in question could reasonably have been interpreted to mean that Ellipso found out at some later date—as late as October 20, 2004—that Mr. Patterson had been a principal in Mann Tech since June 2004. *Id.* at 1159.

Now, Mann points to a different email dated November 16, 2004 from Mr. Castiel to Mr. Patterson and argues that it proves Ellipso's knowledge of Mr. Patterson's dual roles prior to the actions that allegedly affirmed the loan agreement. (*See* Email from Castiel to Patterson (Nov. 16, 2004), Ex. 21 to Mot. for Summ. J.) In this email, Mr. Castiel states: "In particular I never knew until May/June 2004 that you were the 50% owner of Mann Tech and you had a stake in the upside of the [ICOHA] stock." (*Id.*) The Court finds that the only reasonable interpretation of this statement, unlike the content of the October 20, 2004 email, is that Ellipso had knowledge of Mr. Patterson's stake in Mann Tech no later than June 2004. Thus, the Court next considers

5

whether Ellipso continued to perform on the contract after June 2004.

Defendants argue that Ellipso performed several acts in affirmation of the loan agreement subsequent to June 2004 including: (1) it negotiated and executed the August 2, 2004 amendment to the loan agreement (*See* Ex. 15 to Mot. for Summ. J.); (2) on August 12, 2004, it accepted a $10,000 check from Mann pursuant to the August 2nd amendment and Ellipso deposited this check in its bank account on August 13th (*See* Mann Decl. ¶ 33; Cancelled check, ex. 25 to Mot. for Summ. J.); (3) on August 24, 2004, Ellipso transferred the 492,611 ICOHA Shares from its brokerage account to that of Mann Tech (Mann Decl. ¶ 35); and, (4) on August 27, 2004, Ellipso accepted $5,934 from Mann Tech, representing one-half of the proceeds of Mann Tech's August 27th sale of 25,000 ICOHA Shares (Mann Decl. ¶¶ 36–37; Castiel Dep. 101:3–15, May 2, 2007.)  The Court finds that these actions are sufficient to constitute Ellipso's performance on the contract in August 2004.

Plaintiff responds that it was impossible to affirm the loan agreement as long as Ellipso did not yet know that the contract was illicit and that it would be unreasonable to require immediate repudiation of the contract upon discovering Mr. Patterson's role.  (*See* Opp. to Mot. for Summ. J. at 22.)  Ellipso further states that on December 23, 2004—as soon as it had consulted counsel[2]—it gave notice to Mann that it may be entitled to rescission.[3]  (*See* Ltr. from Castiel to Mann (Dec. 23, 2004), Ex. 11 to Opp. to Mot. for Summ. J.)  Ellipso asserts that it

---

[2] The Court notes that Ellipso had in fact retained counsel who gave at least some advice regarding the ICOHA Shares no later than July 2004.  (*See* Email from Attorney James Bailey to Castiel (July 8, 2004), Ex. 5 to Reply.)

[3] Mann contends that it never received the letter in question.  (*See* Reply at 10; Email from Patterson to Mann (Jan. 1, 2005), Ex. 6 to Reply.)

performed no act in affirmation of the contract after this date.  The Court rejects the proposition

that a sophisticated party to a contract, upon receiving notice that its agent is beholden to the

other party to the contract, may continue to perform on the contract until a time when counsel

eventually advises of a possible right to rescission.  As soon as Ellipso knew of Mr. Patterson's

stake in Mann Tech, it had a duty not to affirm the contract if it desired to maintain the right to

rescission.  *See Ellipso, Inc. v. Mann*, 480 F.3d 1153, 1158 (D.C. Cir. 2007).  The negotiation

and execution of the August 2, 2004 amendment to the loan agreement is alone sufficient to

constitute performance that forecloses Ellipso's ability to seek rescission.

Thus, viewing facts in a light most favorable to Ellipso, the Court finds that Ellipso's

pleadings fail to create a sufficient factual dispute as to whether it affirmed the contract

following its June 2004 knowledge of Mr. Patterson's double-role.

### ii.      Rescission Based on Unconscionability

Ellipso argues that the loan agreement is unconscionable.  A finding of unconscionability

would require "an absence of meaningful choice on the part of the parties together with contract

terms which unreasonably favor the other party."  *Williams v. First Gov't Mortgage & Investors

Corp.*, 225 F.3d 738, 748 (D.C. Cir. 2000) (citation omitted).  And, courts are generally reluctant

to disturb the contractual terms negotiated by sophisticated parties.  *See Red Sage Ltd. P'ship v.

DESPA Deutsche Sparkassen Immobilien-Anlage-Gasellschaft mbH*, 254 F.3d 1120, 1129 (D.C.

Cir. 2001).  Here, the loan agreement, on its face, does not display such one-sidedness as to be

unconscionable and the Court cannot find an absence of meaningful choice on Ellipso's behalf

even in light of the company's financial difficulties at the time of the agreement's execution.

Ellipso thus cannot survive Mann's motion for summary judgment by asserting the loan agreement's unconscionability.

### iii.      Rescission Based on Economic Duress

As another grounds for rescission, Ellipso argues that it executed the loan agreement under economic duress.  (*See* Compl. ¶ 40.)  However, a "party who seeks to set aside a contract on this basis can succeed only if he adduces sufficient proof of (1) an improper threat and (2) the lack of a reasonable alternative."  *Osborne v. Howard Univ. Physicians*, Inc., 904 A.2d 335, 339 (D.C. 2006).  Here, Ellipso establishes that it was in a financially distressed condition, but makes no reference to any threat that this Court would find improper.  Thus, a claim for rescission due to economic duress cannot survive Mann's motion for summary judgment.

For the above reasons, Ellipso has lost the ability to rescind the loan agreement and will be restricted to bringing suit for damages under the contract.  Summary judgment will be granted in favor of Mann on Ellipso's rescission claim.

### 2.      Count II:  Breach of Fiduciary Duty

Mann moves for summary judgment on the second count alleging breach of fiduciary duty on the ground that no fiduciary relationship arises from a contract between a debtor and creditor.  Mann directs the Court's attention to the general proposition that "the relationship between a debtor and a creditor is ordinarily a contractual relationship . . . and is not fiduciary in nature."  *See e.g., Overseas Private Inv. Corp. v. Industria de Pesca, N.A., Inc.*, 920 F. Supp. 207, 210 (D.D.C. 1996) (citation omitted).  However, if a "special relationship of trust or confidence" exists in a particular case, a fiduciary relationship may arise in the lender–borrower context.  *See id.*; *Williams v. Fed. Land Bank*, 954 F.2d 774, 777 (D.C. Cir. 1992) (finding no

fiduciary relationship because plaintiff alleged no facts supporting the existence of a special relationship).

Here, Mann asserts that Ellipso has not plead any facts that would give rise to a special relationship between Mann and Ellipso and that the loan agreement was an arm's length transaction. Ellipso alleges that Mr. Patterson's dual role as agent of Ellipso and owner of Mann Tech is sufficient to constitute a special relationship between the Mann defendants and Ellipso. Ellipso however cites no authority for the proposition that a fiduciary relationship with its broker, Mr. Patterson would translate into a fiduciary relationship between Ellipso and Mann. In fact, assuming that Ellipso was unaware of Mr. Patterson's stake in Mann Tech at the time it entered the loan agreement, Ellipso would have no reasonable expectation that Mann would owe heightened duties to Ellipso because of any special trust or confidence. Consequently, the Court must grant summary judgment in favor of Mann on the count of breach of fiduciary duty.

### 3.     Count III:  Implied Covenant of Good Faith and Fair Dealing

Mann contends that it is entitled to summary judgment on Ellipso's claim for breach of the implied duty of good faith and fair dealing.  "[A]ll contracts contain an implied duty of good faith and fair dealing, which means that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006) (citation omitted).  Under District of Columbia law, this duty entails "faithfulness to an agreed common purpose and consistency with the expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate standards of decency, fairness or reasonableness." *Id.* at 201–02 (citing RESTATEMENT (SECOND) OF CONTRACTS §205 cmt. a.).  Although this duty is

implied in all contracts, the Court is aware of no District of Columbia authority that would imply

such a duty in parties' pre-contract negotiations.  Hence, the Court only considers the extent to

which Mann performed under the contract in good faith and fair dealing.  Ellipso's memorandum

opposing summary judgment briefly states that the motion should be denied because Mr.

Patterson acted as an "infiltrator" and that Mann has done nothing in good faith.  (*See* Opp. to

Summ. J. at 25.)  The thrust of the underlying dispute in this matter is grounded in Mr.

Patterson's alleged fraudulent inducement, which resulted in Ellipso entering a loan agreement

that profoundly advantaged the lender Mann Tech.  This situation is distinct from a claim based

on one party willfully "rendering imperfect performance" or impeding the "spirit of the bargain."

*See Allworth*, 890 A.2d at 202 (citing RESTATEMENT (SECOND) OF CONTRACTS §205 cmt. a.

(discussing bad faith)).  Given that Ellipso's evidence supports the claim not that Mann acted in

bad faith in performing the loan agreement but rather that fraudulent misrepresentations led to

the formation of a contract that was disadvantageous to Ellipso, the Court will grant summary

judgment in favor of Mann on this count.

### 4.    Counts IV and VIII:  Fraudulent Non-Disclosure and Fraud

For the reasons set forth below, the Court will deny Mann's motion for summary

judgment as to Ellipso's fraud claims.  Fraud consists of five elements: "(1) a false

representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with

intent to deceive, and (5) an action that is taken in reliance upon the representation. . . ."  *See*

*Park v. Sandwich Chef, Inc.*, 651 A.2d 798, 801 (D.C. 1994) (quoting *Hercules & Co. v. Sharma*

*Rest. Corp.*, 613 A.2d 916, 923 (D.C. 1992)).  Additionally, there is a sixth element in cases

involving commercial contracts negotiated at arm's length: "that the defrauded party's reliance

10

be *reasonable*." *Id.* (quoting *Hercules*, 613 A.2d at 923).  Non-disclosure can be the source of fraud only if there is a duty to speak.  *See Kapiloff v. Abington Plaza Corp.*, 59 A.2d 516, 517 (D.C. 1948).  Having assessed each of the six elements in the current case, the Court finds that it cannot grant summary judgment in favor of Mann on the fraud counts.

First, Ellipso alleges that Mr. Patterson and Mann had a duty to disclose the true nature of Mann Tech's ownership.  This Court has no doubt that as Ellipso's agent, Mr. Patterson owed a fiduciary's "duty of good faith and candor in affairs connected with the undertaking, including the duty to disclose . . . all matters coming to the agent's notice or knowledge concerning the subject of the agency, which it is material for the principal to know for his protection or guidance." *Aronoff v. Lenkin Co.*, 618 A.2d 669, 687 (D.C. 1992) (internal quotation omitted). However, the issue presently before the Court is not Mr. Patterson's duty to speak but rather whether Mann owed Ellipso a duty to disclose the nature of Mann Tech's ownership.  Given that Mann was clearly aware of Mr. Patterson's 50% Mann Tech stake—a fact that Ellipso was not privy to until June 2004—Mann had a duty to disclose this information to its borrower, Ellipso. The Court cannot imagine a set of circumstances where a corporate lender secretly owned by an agent of a potential borrower would not be under a duty to disclose this relationship prior to executing a loan.  Thus, non-disclosure of this information serves as an adequate substitute for the first element of false representation.

Second, a false representation is "material" if it is shown that the correct facts would have had a bearing on the action of a decision-maker.  *See Castaneda-Gonzalez v. INS*, 564 F.2d 417, 431 (D.C. Cir. 1977).  Here, knowledge that Ellipso's agent stood to benefit from his stake in  Mann Tech would likely have had a bearing on Ellipso's decision-making process.  At the

11

very least, Ellipso would likely have consulted a truly independent advisor.

The third element, knowledge, is satisfied because Mann at all times knew of Mr. Patterson's role.  In granting Ellipso's motion for preliminary injunction, the Court determined that "[d]efendants knew that Ellipso was actually relying on Patterson to advise and counsel with respect to financing options," and no recent evidence convinces this Court otherwise.  *See Ellipso*, *Inc. v. Mann*, No. 05-cv-1186, at *3, 2005 WL 5298646 (D.D.C. Nov. 2, 2005).

Based on the current record in this case, the Court is likewise unable to find that the fourth requirement, intent to deceive is lacking.  Ellipso points to an email sent from Mr. Patterson to Mr. Mann dated December 24, 2003, as evidence of intent.  (*See* Email, Ex. 1 to Opp. to Mot. for Summ. J.)  In the email, Mr. Patterson refers to the Mann loan offer as "our offer" and suggests that "*we* accept [Ellipso's proposed terms] with two modifications." (*Id.*)  At a minimum, this email is sufficient to create a fact issue as to Mann's intent and demonstrates that Mr. Patterson was counseling not only Ellipso but Mr. Mann as well.

The Court also finds that Ellipso has made a sufficient showing regarding its reasonable reliance on Mann's failure to disclose the fact that Ellipso's agent stood to benefit from whatever profits Mann Tech derived from its loan to Ellipso.  Mr. Patterson had an established business relationship with Ellipso for over one year prior to the loan agreement and it would be reasonable for Ellipso to rely on the representation that his agent only stood to profit from the commission that Ellipso would pay upon closing of the loan agreement.

The Mann defendants are not entitled to summary judgment on Ellipso's fraud claims.

5.      **Count IX:  Conversion**

Mann has also submitted insufficient evidence to justify summary judgment in its favor on Ellipso's conversion action.  Conversion is "any unlawful exercise of ownership, dominion or control over the personal property of another in denial or repudiation of his rights thereto."  *See Bucheit v. Palestine Liberation Org.*, 388 F.3d 346 (D.C. Cir. 2004) (citing *Duggan v. Keto*, 554 A.2d 1126, 1137 (D.C. 1989)).  Mann states that its possession and sale of the collateral was precisely in accordance with the parties' loan agreement and is thus presumptively valid unless the contract itself is found invalid.  (*See* Mot. for Summ. J. at 25.)  Despite the validity of the contention that Mann acted within the parameters of the loan agreement,[4] the Court will not grant summary judgment in favor of Mann; because the Court found that Mann is not entitled to summary judgment on Ellipso's fraud claims, the Court will also deny summary judgment on the conversion claim.  *See United States v. Inslaw, Inc.*, 932 F.2d 1467, 1474 (D.C. Cir. 1991) (suggesting that fraudulent inducement may give rise to a conversion claim).  Mann has failed to establish that a reasonable jury could not find that Mann's fraud resulted in it unlawfully taking possession and selling the ICOHA Shares.

---

[4] The loan agreement specifies several events of default including the failure to pay principal or interest within three business days of the due date.  (*See* Loan Agreement § 7.1(a).)  Under the agreement, quarterly interest payments were due beginning on April 15, 2004.  (*Id.* § 2.2(c).)  Upon an event of default and without notice to Ellipso, the loan would become immediately due in full.  (*See id.* § 7.2.)  And, at that time Mann Tech would have the right to take and dispose of the collateral as if it were its own property.  (*See id.*)  Given that Ellipso never made any payments on the loan, a default occurred in April 2004, giving Mann Tech the contractual rights to the ICOHA Shares to which Ellipso objects.

### 6.     Count X:  Replevin[5]

Mann argues that Ellipso is only entitled to replevin if it can show that the ICOHA Shares were wrongfully converted.  (*See* Mot. for Summ. J. at 25.)  Because the Court will not grant summary judgment on the conversion claim, it also cannot grant summary judgment on Ellipso's replevin claim.

### 7.     Count XI:  Civil Conspiracy

A plaintiff must establish four elements under District of Columbia law to prove civil conspiracy: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; [and], (4) [the] overt act was done pursuant to and in furtherance of the common scheme."  *See Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (2001) (citation omitted).  Because Ellipso's underlying fraud claims have survived Mann's motion for summary judgment, the Court will also deny Mann's motion as to this charge.  The record currently before the Court offers adequate support to deny summary judgment based on the contention that Mr. Mann and Mr. Patterson covertly agreed to create Mann Tech for the purpose of taking advantage of Mr. Patterson's position as advisor to Ellipso in order to generate illicit profits for Mr. Mann and Mr. Patterson at Ellipso's expense.

---

[5] This count of the complaint is titled "Trover/Replevin."  (Compl. ¶ 91–94.)  However, Ellipso states that it seeks return of the ICOHA Shares.  (*Id.* ¶ 94.)  This is an indication that it is asserting a replevin action—recovery of possession of wrongfully taken property and damages incidental to detention.  *See Wardman-Justice Motors v. Petrie*, 39 F.2d 512, 515 (D.C. Cir. 1930).  In contrast, trover is an action not to recover the specific property, but rather damages. *See* 90 C.J.S. *Trover and Conversion* § 2.

8.      **Count XIII:  RICO**

A violation of the Racketeer Influenced and Corrupt Organizations Act's ("RICO")

prohibition against conducting an enterprise's affairs through a pattern of racketeering activity or

collection of unlawful debt consists of four elements: (1) conduct (2) of an enterprise (3) through

a pattern (4) of racketeering activity.  *Western Assocs. Ltd., ex rel. Ave. Assocs. Ltd. v. Mkt.*

*Square Assocs.*, 235 F.3d 629, 631 (D.C. Cir. 2001) (citations omitted); *see* 18 U.S.C. § 1962(c).

However, when a "plaintiff alleges only a single scheme, a single injury, and few victims it is

'virtually impossible for plaintiffs to state a RICO claim'" for failure to meet the pattern of

racketeering requirement.  *Western Assocs.*, 235 F.3d at 634 (quoting *Edmondson & Gallagher*

*v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995)).  Mann's alleged conduct

is best characterized as a single effort to deceive Ellipso regarding the $90,000 loan.  Although

the Court recognizes that in certain instances, a single scheme may suffice to prove a "pattern,"

the number of alleged schemes remains useful.  *See id.*  Ellipso appears to argue that Mann's

multiple false statements transmitted by telephone, fax, and email were sufficient to constitute a

pattern of racketeering activity.  (*See* Compl. ¶ 106–108.)  The court finds that these alleged wire

transmissions are insufficient to satisfy this RICO requirement.  *See Western Assocs.*, 235 F.3d at

264–65 (noting that courts must *particularly scrutinize* RICO claims based on mail or wire fraud

and that the pattern requirement helps "prevent ordinary business disputes from becoming viable

RICO claims").  Mann's motion for summary judgment on this count will be granted.

C.      **Preliminary Injunction Shall Be Dissolved**

The Court of Appeals has stated that "an injunction freezing assets is only permissible

when a party has demonstrated an equitable claim to the assets."  *Ellipso, Inc. v. Mann*, 480 F.3d

15

1153, 1160 (D.C. Cir. 2007) (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 332–33 (1999)).  Applying that principle to the instant case, the Court of Appeals indicated that "[i]f Ellipso had in fact affirmed the loan agreement, Ellipso's sole remedy for fraud in the inducement of the contract would have been damages—a legal remedy; it would have been unable to show the equitable interest in the shares held by Mann Tech necessary to support the equitable remedy of an injunction."  *Id.* (citation omitted).

Following the Court of Appeals' guidance, this Court, having determined in Part II.B.1 of this Opinion that when construing facts in a light most favorable toward Ellipso no jury could reasonably find in favor of Ellipso on rescission, finds that preliminary injunction is no longer appropriate.  Accordingly, the preliminary injunction will be dissolved as to all defendants.[6]

### D.    Motion for Order to Show Cause

Plaintiff asks this Court to issue an order directing Mann and Robert Patterson to show cause why they should not be held in contempt of Court for violating this Court's November 2, 2005 preliminary injunction.  Mann's alleged violation of the injunction involves possession of 399,000 shares of publicly traded Coastal Services Group, Inc. ("Coastal") stock at the time of the Court's injunction that was not disclosed as an asset in Mann's November 14, 2005 report. (See Mot. for Order to Show Cause at 3.)  According to Ellipso, Mann Tech acquired the Coastal stock for $30,000 from Dolphin Bay Capital, Inc. ("Dolphin Bay") several months before the injunction using proceeds from the sale of ICOHA stock.  (*See id.*, Ex. 2.)  In support of its argument, Ellipso submits a February 2005 UBS statement for Mann Tech indicating an

---

[6] Consistent with this finding, Mr. Patterson's motion [134] to quash the preliminary injunction will be granted.

outgoing wire in the amount of $30,000 made on February 9, 2005.  (*See Id.*, Ex. 3 at 3.)  Ellipso

asserts that these funds were cash proceeds of ICOHA Shares because this Court previously

found that Mann Tech's only significant assets were its ICOHA Shares and the cash proceeds

thereof.  *See Ellipso*, *Inc. v. Mann*, No. 05-cv-1186, at *1, 2005 WL 5298646 (D.D.C. Nov. 2,

2005).  At oral argument before the Court of Appeals, counsel for Mann stated that this was true

at the time of the injunction.  *Ellipso, Inc. v. Mann*, 480 F.3d 1153, 1159 (D.C. Cir. 2007).

Ellipso provided the Court with documentation that it believes shows that on February 9, 2006,

Dolphin Bay tendered a check to Mann Tech in the amount of $30,000 in return for the Coastal

stock held by Mann Tech.  (*See* Ex. 5 to Mot. for Order to Show Cause.)  Robert Patterson then

allegedly deposited this $30,000 check into his account with BB&T.  (*See id.*)  This account was

not identified by defendants as holding proceeds from the sale of ICOHA Shares.

        Mann asserts that Mann Tech "came to possess funds that did not come from the

proceeds" of ICOHA Shares and that these funds were used to invest in other ventures such as

Dolphin Bay and Coastal.  (*See* John B. Mann Decl., Ex. B to Opp.)   Mann further contends that

even if Ellipso could establish that Mann Tech used ICOHA proceeds to invest in Dolphin or

Coastal, it still would not be in violation of this Court's order because neither is a "financial,

banking, or like institution," which are the only entities mentioned in the Court's November 14,

2005 order.

        The Court's November 2, 2005 order granting preliminary injunction ordered that

"defendants [could not] sell, transfer or remove from the jurisdiction the remaining ICOHA

Shares and the cash proceeds from their previous sale of ICOHA Shares."  *Ellipso*, at *4, 2005

WL 5298646 (D.D.C. Nov. 2, 2005).  The Court clarified this instruction in its November 14,

2005 order stating that the injunction related "to all unsold ICOHA shares in defendants' possession, custody or control and all cash proceeds from the defendants' sale of such ICOHA stock wherever such shares and cash may be located."  *See Ellipso*, at *3, 2005 WL 5612442 (D.D.C. Nov. 14, 2005).  The Court also ordered defendants to identify the "financial, banking, and like institutions . . . in which defendants, jointly or separately, own or control accounts holding ICOHA shares and/or cash proceeds from the sale of ICOHA stock."  (*See id.*)

At this time, the Court is unable to determine that the requisite nexus exists that would tie cash proceeds from ICOHA Shares to funds received by Dolphin Bay or Coastal.  Ellipso's argument appears to be dependent on Mann Tech's only source of funds being ICOHA stock.  However, because this Court previously found—and defendants later admitted—that Mann Tech had no significant assets other than ICOHA stock, the Court will order Mann to within 10 days provide an updated status report with the Court that includes a listing of all financial contributions to Mann Tech.  This report shall clearly identify the extent to which Mann Tech is funded by ICOHA proceeds and the extent to which contributions were received from other sources.  Further, this report should confirm whether any ICOHA proceeds were transferred to locations—including entities that do not fall within the definition of "financial, banking and like institutions"—other than the previously disclosed UBS bank account.  Aside from this order to produce a status report, the motion to show cause will be denied at this time.

III.   **CONCLUSION**

Upon full consideration of the parties' filings, applicable law, and the record herein, this Court will GRANT in part and DENY in part Mann's motion for summary judgment.  The

18

motion will be granted with respect to Count I, rescission, Count II, breach of fiduciary duty,

Count III, breach of the implied covenant of good faith and fair dealing, and Count XIII, RICO.

Summary judgment will be denied on all other counts.  The Court will lift the preliminary

injunction as to all defendants and GRANT Mr. Patterson's motion to quash the preliminary

injunction.  Ellipso's motion for order to show cause will be DENIED.

      A separate order shall issue this date.


      Signed by Royce C. Lamberth, United States District Judge, on April 1, 2008.