UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC., <br><br> Plaintiff and <br> Counter-Defendant <br><br> v. <br><br> JOHN B. MANN, *et al.*, <br><br> Defendants and <br> Counter-Plaintiffs | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 05-1186 (RCL) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MOTION OF DEFENDANTS JOHN B. MANN
AND MANN TECHNOLOGIES, LLC, FOR RECONSIDERATION**

Come now John B. Mann and Mann Technologies, LLC, Defendants and Counter-Plaintiffs herein (collectively the "Mann Defendants"), by their undersigned counsel, and respectfully move this Court, pursuant to Fed. R. Civ. P. 59(e) and/or 60(b)(1) and/or 60(b)(6), to reconsider, alter or amend, or grant relief from its Order and Memorandum Opinion of April 1, 2008, with respect to Count IV (Fraudulent Non-Disclosure), Count VIII (Common Law Fraud), Count IX (Conversion), Count X (Trover/Replevin), and Count XI (Civil Conspiracy). In support of their Motion, the Mann Defendants rely on the attached exhibits and the arguments set forth herein.

**I. BACKGROUND**

On April 1, 2008, the Court granted in part and denied in part the Mann Defendants' Motion for Summary Judgment. Specifically, the Court granted the Motion with respect to all Counts alleged against the Mann Defendants except for Counts IV and VIII (respectively,

1

Fraudulent Non-Disclosure and Common Law Fraud) ("the fraud claims"), and three counts derivative of these fraud claims. *See* Mem. Op. 12 (denying Mann's Motion for Summary Judgment as to Ellipso's fraud claims); *id.* at 13 ("[B]ecause the Court found that Mann is not entitled to summary judgment on Ellipso's fraud claims, the Court will also deny summary judgment on the conversion claim."); *id.* at 14 ("Because the Court will not grant summary judgment on the conversion claim, it also cannot grant summary judgment on Ellipso's replevin claim."); *id.* at 14 ("Because Ellipso's underlying fraud claims have survived Mann's motion for summary judgment, the Court will also deny Mann's motion as to this charge [of civil conspiracy].").

In determining that it could not grant summary judgment to the Mann Defendants with respect to the fraud claims, the Court relied on three significant, but erroneous, findings of fact: (1) that an email dated December 24, 2003, from Patterson to John Mann, related to the Loan Agreement between Mann tech and Ellipso; (2) that Patterson was an agent of Ellipso's; and (3) that Patterson derived a benefit from the execution of the Loan Agreement. Because all three of these propositions are mistaken and squarely contradicted by the evidence, there exists no genuine issue of material fact as to whether the Mann Defendants intended to defraud Ellipso, or as to whether Ellipso can prove damages resulting from any fraudulent activity.

## II. ARGUMENT

**A. Ellipso cannot satisfy all the elements of fraud because (a) the email from Patterson to Mann purporting to establish an intent to deceive Ellipso did not relate to the Loan Agreement, and (b) Patterson was never Ellipso's agent.**

As the Court noted, fraud "consists of five elements: '(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with intent to deceive, and (5) an action that is taken in reliance upon the representation.'" Mem. Op. 10 (quoting *Park v. Sandwich Chef, Inc.*, 651 A.2d 798, 801 (D.C. 1994)). The Court predicated its finding that an issue of fact exists as to the fourth element on an email that, in reality, has nothing to do with any of the surviving claims. The Court further predicated its finding that an issue of fact existed as to the first two elements on the assumption that Patterson was Ellipso's agent at the time of the loan transaction.

The only item of evidence that the Court addressed in finding an issue of fact as to the Mann Defendants' intent to deceive Ellipso was an email dated December 24, 2003, from Patterson to Mann. The Court was persuaded by Patterson's reference to "our offer", and his suggestion that "*we* accept [Ellipso's proposed terms] with two modifications." Mem. Op. 12 (emphasis and brackets in original). However, the Court's reliance on this email is misplaced. As the Mann Defendants explained in their Reply to Plaintiffs' Opposition to Motion for Summary Judgment, this email "do[es] not relate to the loan transaction at all, but to the 881 registry business which Mann, Castiel and Patterson were discussing at the same time as the loan." Reply Opp'n Mot. Summ. J. 7; *see also* Ex. 1 hereto (reproducing email along with attachment). A quick look at the email's attachments, not included in Ellipso's Ex. 1 to its Opposition to the Mann Defendants' Motion for Summary Judgment, elucidates the total lack of relation between

the email and the Loan Agreement.1  Ex. 1 hereto.  All of Ellipso's claims against the 811 registry business, the actual subject of the email, were previously dismissed by this Court due to an arbitration clause in the contract between Ellipso and the registry Solutions Company.  *See* Order, January 30, 2006.  Because the Court premised its finding that an issue of fact exists as to the Mann Defendants' intent to deceive Ellipso on an email that does not relate to the transaction in question in this case, Ellipso's fraud claim must fail as a matter of law.

The first two elements of the fraud count must also fail as a matter of law because the Court's decision with regard to each of these elements rests on the mistaken assumption that Patterson acted as Ellipso's agent in connection with the loan.  *See* Mem. Op. 11 ("The Court cannot imagine a set of circumstances where a corporate lender secretly owned by an *agent of a potential borrower* would not be under a duty to disclose this relationship prior to executing a loan.") (emphasis added); *id.* at 11 ("Here, knowledge that *Ellipso's agent* stood to benefit from his stake in Mann Tech would likely have had a bearing on Ellipso's decision-making process.") (emphasis added).  In the context of the fraud claims, the Court found that Patterson's alleged

---

[1] This is not the only factual inaccuracy in the Court's opinion, and the Mann Defendants do not intend their silence as to other inaccuracies to amount to a concession of their truth.  For example, while the Court seizes upon August 12 as the date on which "UBS Financial Services in Washington, D.C. deposited the ICOHA Shares into Mann Tech's account" (Mem. Op. 2), the evidence establishes that the actual date was August 24.  *See* Letter from John Piper, UBS Financial Services, August 12, 2004 (Ex. 3(a)) (noting that the ICOHA shares will not be deposited until "after the legend [restricting their deposit] has been removed"); Brokerage Statement, Mann Technologies, 2 (Ex. 3(b)) (revealing that transfer of the ICOHA shares from Ellipso's account occurred on August 24, 2004).  And while the Court refers to the ICOHA Shares used as collateral as "Ellipso's sole asset of any significant value" (Mem. Op. 2), in fact as of July 22, 2004, Ellipso, through its subsidiary, MCHI, owned another 1,571,547 shares of ICO stock.  *See* Mann Defs.' Am. Mot. Summ. J. 11 (citing Ex. 24).

agency to Ellipso may have given rise to a duty on the part of the Mann Defendants to disclose Patterson's relationship to them, even though the Court concluded there is no fiduciary duty between the Mann Defendants as lender and Ellipso as borrower. *See* Mem. Op. 9 (holding that a fiduciary duty between Ellipso and Patterson would not "translate into a fiduciary relationship between Ellipso and Mann"). Regardless, the Court never explicitly found an agency relationship between Patterson and Ellipso, and the evidence clearly establishes that no such relationship existed.

Here, the Agreement for Services between Ellipso and Patterson made their relationship crystal clear:

> 8. RELATIONSHIP OF THE PARTIES
> Consultant is an independent contractor. Nothing herein contained shall be construed to place Consultant and Company in the relationship of principal and agent, master and servant, partners, joint ventures or employer and employee, and neither party shall have, whether expressly or by implication, nor shall represent itself as having, any authority to make contracts in the name of or binding upon the other, or to obligate or bind the other in any manner whatsoever.

Ex. 2 § 8.

Considering the Court's inference that Ellipso was a "sophisticated party" in its contractual dealings with Patterson and the Mann Defendants (Mem. Op. 7), any argument that its President, David Castiel, did not comprehend the language that plainly limited Patterson's role to that of a non-agent independent contractor is simply frivolous. Not only did Patterson's Agreement for Services specifically deny the existence of an agency relationship, but nothing in its terms governed Patterson's conduct to any degree that would imply such a relationship. *See* Ex. 2 § 1 (specifying that "[*c*]onsultant will . . . establish a practical business strategy" rather than Ellipso) (emphasis supplied).

5

"In determining whether an agency relationship exists, courts examine both 'the terms of [the] contract . . . and . . . the actual course of dealings between the parties.'" *C&E Servs. v. Ashland, Inc.*, 498 F. Supp. 2d 242, 264 (D.D.C. 2007) (quoting *Judah v. Reiner*, 744 A.2d 1037, 1040 (D.C. 2000)).  Courts in the District of Columbia will give substantial weight to contractual provisions that define the relationship in question.  *See Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 15, 46 (D.D.C. 2006) (noting that a contractual provision stating that one party would act as the other's independent contractor and not as an agent "may well prove dispositive on the issue of a fiduciary relationship"); *Lempert v. Republic of Kazakstan*, 223 F. Supp. 2d 200, 201 n.1 (D.D.C. 2002) (holding that a contract for consulting services did not create an agency relationship); *United States v. District of Columbia*, 558 F. Supp. 213, 217-18 (D.D.C. 1982) (holding that contractual provisions foreclosed existence of agency relationship), *vacated on other grounds*, 709 F.2d 1521, 1523 (D.C 1983).

With regard to the parties' actual dealings with each other, the District of Columbia has adopted the "control-of-physical-conduct test" suggested by Restatement (Second) of Agency § 2 (1958) to distinguish between employees or agents on the one hand and non-agent independent contractors on the other.  *See Cannon v. United States*, 645 F.2d 1128,1133 (D.C. 1981).  Under this test, the distinction between these two categories "turn(s) on the absence of authority in the principal to control the physical conduct of the contractor in performance of the contract." *Id.* (citing *Logue v. United States*, 412 U.S.521, 527 (1973)).  In other words, an agency relationship will usually only arise when "'the employer has the right to control and direct the servant in the performance of his work *and the manner in which the work is to be done*.'"  *Judah*, 744 A.2d at 1040 (citing *Le Grand v. Insurance Co. of North America*, 241 A.2d 734, 735 (D.C. 1968)) (emphasis added).

6

Since Patterson's agreement to provide consulting services to Ellipso explicitly rendered Patterson a non-agent independent contractor, and because Ellipso has offered no evidence whatsoever as to Ellipso's ability to control Patterson's conduct, Patterson did not owe a fiduciary duty to Ellipso, but merely a contractual duty to perform his obligations as a consultant. *See Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 15, 46 (D.D.C. 2006) (suggesting that a fiduciary duty would not exist without an agency relationship). Whether he did, in fact, perform his duties as consultant is immaterial to the liability of the Mann Defendants in this litigation. The only tenuous basis that the Court has opined may attach liability to the Mann Defendants is the relationship between Ellipso and Patterson as Mann Tech's co-owners. However, because Patterson was clearly not Ellipso's agent, this theory must fail as a matter of law.

**B.  Ellipso cannot prove damages because (a) the Loan Agreement was fair, (b) Patterson was never Ellipso's agent, and (c) Ellipso repeatedly ratified the Loan Agreement before Patterson derived any significant benefit from its execution.**

In addition to proving the five traditional elements of fraud by clear and convincing evidence, a plaintiff also "must show that 'provable damages' resulted from the fraud." *Kitt v. Capital Concerts, Inc.*, 742 A.2d 856, 860-61 (D.C. 1999) (citing *Dresser v. Sunderland Apartments Tenants Ass'n*, 465 A.2d 835, 839 (D.C. 1983)).  Because it is impossible, as a matter of law, for Ellipso to demonstrate damages resulting from the alleged fraud, these claims, along with the claims deriving therefrom, must fail.

The Court has examined the Loan Agreement between Ellipso and the Mann Defendants, as well as the facts surrounding its execution and performance, and has determined that its terms were not unconscionable, that the Mann Defendants acted in good faith in performing under it,

and that Ellipso ratified it after discovering Patterson's partial ownership of Mann Tech. *See* Mem. Op. 7 (holding the contract conscionable); *id.* at 10 (holding that Ellipso's evidence fails to support the claim that Mann acted in bad faith in performing loan agreement"); *id.* at 5-7 (finding that Ellipso knew of "Patterson's stake in Mann Tech no later than June 2004," and ratified it by at least August 2, 2004). Even assuming, *arguendo*, that the Mann Defendants had a duty to disclose Patterson's partial ownership of Mann Tech to Ellipso prior to execution of the contract, Ellipso still cannot prove damages from having been induced to sign a fair contract that was performed in good faith and whose terms Ellipso consistently affirmed (at least, until the collateral it had forfeited under the contract appreciated in value).

Based on the Court's above findings, the only cognizable damages that could conceivably arise from the alleged fraud would consist of Patterson's monetary gain from the execution of the Loan Agreement. The award of this gain as damages suffered by Ellipso would necessarily rest on the common-law rule that an agent must repay to his principal the "secret profits" he derived in the course of his agency, less the expenses he incurred in deriving them. *Jay v. General Realties Co.*, 49 A.2d 752, 755 (D.C. 1946). However, as discussed *supra*, there exists no issue of material fact as to whether Patterson was Ellipso's agent. Based on the plain language of the Agreement for Services between Patterson and Ellipso, Patterson was a non-agent independent contractor, and there is no evidence that Ellipso had the right to control Patterson's conduct to any degree that would reasonably support an implied agency relationship. Thus, any benefit that Patterson may have derived from Ellipso's execution of the Loan Agreement could not possibly give rise to a requirement that Patterson repay Ellipso, much less that the Mann Defendants repay Ellipso.

Even if an issue of fact did exist as to whether Patterson was Ellipso's agent, Ellipso still would not be able to prove any damages, as its repeated ratification of the Loan Agreement preceded Patterson's capture of any significant profit from Mann Tech's loan to Ellipso. "A person who has been misled by fraud or misrepresentation is required, as soon as he learns the truth, to disaffirm or abandon the transaction with all reasonable diligence, so as to afford both parties an opportunity to be restored to their original position. If, after discovery of the untruth of the representation, he conducts himself with reference to the transaction as though it were still subsisting and binding, he thereby waives all benefit of relief from the misrepresentations". *HAVOCO of America v. Hilco, Inc.*, 731 F.2d 1282 (7th Cir. 1984). *See also Allied Erecting & Dismantling Co. v. USX Corp.*, 249 F.3d 191 (3rd Cir. 2001); *United Forest Products Co. v. Baxter*, 452 F.2d 11 (8th Cir. 1971).

The Loan Agreement, which was executed on January 30, 2004, specified only that Patterson would be paid "a fee equal to five percent (5%) of the principal amount being borrowed." *See* Loan Agreement (Ex. 4) § 2.2(a). However, at the time that Mann Tech and Ellipso executed the Loan Agreement, Mann Tech did not have control over the collateral at issue in this case; the Court found that Mann Tech only gained control over the ICOHA shares "on or about August 12, 2004," at least five weeks after Ellipso knew of Patterson's relationship to Mann Tech, and at least ten days after Ellipso nonetheless ratified the Loan Agreement.2  Mem. Op. 2, 6-7. Thus, even assuming *arguendo* that Patterson was Ellipso's agent, and that, as a consequence, the Mann Defendants are liable along with Patterson for any secret profits Patterson

---

[2] In actuality, Mann Tech did not gain control over the ICOHA shares until on or about August 24. *See supra*, note 1.

derived through such agency, the profits in question would consist exclusively of the five-percent fee Patterson was paid pursuant to the Loan Agreement, or $4,500.

Of course, even liability for this sum would be questionable, since a jury would first have to find that the fee was a *secret* profit, and also that it was not deductible as an expense that Patterson legitimately incurred in the course of doing business. *See Jay*, 49 A.2d at 755. The inclusion of the fee in the Loan Agreement would seem to preclude a finding of secrecy. Ex. 4, par. 2.2(a).

While Ellipso has not introduced any evidence of any alleged secret benefit to Patterson resulting from the alleged fraud other than the 5% commission, if there were a concern that Patterson derived secret profits from the increase in value of the ICOHA stock, it must be remembered that a) all the sales of ICOHA stock by Mann Tech occurred *after* Ellipso signed the August 2 amendment and was clearly on notice of Patterson's role; b) the August 2 amendment expired by its terms on October 1, 2004, such that after that date all unsold ICOHA stock was unencumbered by its provisions and Mann Tech was free to dispose of the stock at will; and c) other than the August 27, 2004 sale of ICOHA stock, the proceeds of which were divided equally with Ellipso, no ICOHA stock was sold until December, 2004, well after the amended agreement had expired.

Based on the clear lack of an agency relationship between Patterson and Ellipso, and on the lack of any cognizable damages resulting from the alleged fraud, the Mann Defendants are entitled to summary judgment on the fraud claims, and all derivative claims, as a matter of law.

## III.  CONCLUSION

For the reasons set forth above, the Court should grant the Mann Defendants' Motion for Reconsideration and dismiss the claims that remain pending against them.

          Respectfully submitted,

          /s/ Christopher G. Hoge
          Christopher G. Hoge #203257
          Counsel for Defendants/Counter-Plaintiffs
          John B. Mann and Mann Technologies, LLC

          CROWLEY, HOGE & FEIN, P.C.
          1710 Rhode Island Avenue, N.W.
          7th Floor
          Washington, D.C.  20036
          (202) 483-2900

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that true copies of the foregoing Reply were, this 14th day of April, 2008, served electronically upon:

          VANESSA CARPENTER LOURIE, ESQ.
          4400 MacArthur Blvd., N.W.
          Suite #205
          Washington, D.C.  20007-2521
          Co-Counsel for Plaintiff/Counter-Defendant

and via first class mail, postage prepaid, upon:

          LINDA AWKARD, ESQ.
          4201 Cathedral Ave., N.W.
          Suite #1416W
          Washington, D.C. 20016
          Co-Counsel for Plaintiff/Counter-Defendant

ROBERT B. PATTERSON
P.O. Box 3106
Reston, VA 20195
Defendant/Counter-Plaintiff *Pro Se*


/s/ Christopher G. Hoge
Christopher G. Hoge