**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELLIPSO, INC.**                      ) | |
|                                        ) | |
|     **Plaintiff/Counter-Defendant**   ) | |
|                                        ) | |
|     v.                              ) | **Civil Action No.: 05-01186 (RCL)** |
|                                        ) | |
| **JOHN B. MANN, et al.**               ) | |
|                                        ) | |
|     **Defendants/Counter-Plaintiffs** ) | |
| _____ ) | |

**PLAINTIFF"S RESPONSE TO UPDATED STATUS REPORT OF THE MANN
DEFENDANTS PURSUANT TO COURT'S ORDER ENTERED APRIL 1, 2008**

Plaintiff, Ellipso, Inc., respectfully submits this response to the Updated Status Report submitted by the Mann Defendants and Counter-Plaintiffs (collectively the "Mann Defendants" or simply "Mann") as required by this Court's Order entered on April 1, 2008. Defendant Robert Patterson has not submitted an Updated Report. Although not specifically required to do so, since the Mann Defendants admitted that Patterson deposited the proceeds of the Coastal transaction into his personal account at BB&T, an Updated Report from him is critical to resolving this issue.

The Mann Defendants have not fully complied with the Court's Order which required the "listing of all financial <u>contributions to Mann Tech</u>" (emphasis added). Defendants Updated Report, in item 1, lists John Mann's contributions not to Mann Tech but to Ellipso, either pursuant to the loan agreement or pursuant to a separate agreement with another Mann-Patterson company, TRSC, which is not a subject of this litigation. Further, the Mann Defendants do not provide any details as to any disbursements by Mann Tech as required by the Court Order.

Finally, the Mann Defendant's Updated Report commingles John Mann's personal funds with Mann Tech's, presumably benefitting Patterson as fifty percent (50%) owner of Mann Tech with no consideration to John Mann, and with no documentation whatsoever. It is unclear from the submitted information whether Patterson's fifty percent (50%) interest in Mann Tech is diminished as a result of John Mann's contribution. The Updated Report continues Mann Defendants' to attempt to conceal vital information.

The Mann Defendants complain about the source of plaintiff's information. The full one hundred and forty-five (145) pages of the discovery supplied by UBS under subpoena on or about March 30, 2007, and served on the Mann Defendants' prior counsel, are attached in Exhibit 1. According the UBS statements, which Mann does not provide, a summary of the recipients of monies disbursed by Mann Tech over a period of eight (8) months is as follows:

| Mann | Check # | Amount |
|---|---|---|
| 19-Jan-05 | 101 | $ 7,500 |
| 25-Jan-05 | 103 | $ 30,000 |
| 17-Mar-05 | 107 | $ 25,000 |
| 7-Apr-05 | 109 | $ 20,000 |
| 28-Apr-05 | 111 | $ 5,000 |
| 3-May-05 | 112 | $ 20,000 |
| 15-May-05 | 114 | $ 25,000 |
| 23-May-05 | 116 | $ 10,000 |
| 14-Jun-05 | 118 | $ 30,000 |
| 23-Jun-05 | 119 | $ 60,000 |
| 1-Aug-05 | 123 | $ 50,000 |
| 19-Aug-05 | 124 | $ 80,000 |
| | | $ 362,500 |

| Patterson | Check # | Amount |
|---|---|---|
| 26-Jan-05 | 102 | $ 5,000 |
| 8-Mar-05 | 105 | $ 5,000 |
| 1-Apr-05 | 108 | $ 5,000 |
| 4-May-05 | 113 | $ 5,000 |
| 1-Jul-05 | 121 | $ 10,000 |
| | | $ 30,000 |

| Other withdrawals | Item | | Amount |
|---|---|---|---|
| 9-Feb-05 | Federal Funds | | $ 30,000 |
| 17-Mar-05 | DBH | 104 | $ 25,000 |
| 23-May-05 | Legacy | 115 | $ 25,000 |
| 29-Jul-05 | Federal Funds | | $ 10,000 |
| 17-Aug-05 | Federal Funds | | $  5,000 |
| 19-Aug-05 | Federal Funds | | $ 50,000 |
| | | | $ 145,000 |

Of interest in the above chart are three (3) points:

1) "Federal Funds" is code word for a wire transfer at UBS.

2) DBH Telecom's principals are the same as Coastal's principals. Mann must provide an explanation of the withdrawals above, in addition to certifying that the undocumented, alleged "loans" to Mann Tech did not derive from the at least $362,500 he took in proceeds from Mann Tech. Mann must also reveal the identity of Legacy, which may be linked to Coastal, or Dolphin, or both.

3) Mann withdrew for himself $130,000 in checks, and possibly another $60,000 in wire transfers in the days when the injunction was first sought, thus depleting the assets of Mann Tech at UBS prior to the injunction.

I.   **Mann has not shown that funds other than ICOHA were available to Mann Tech.**

In response to an obligation to show all contributions to Mann Tech, according to Mann there are only two, and they remain undocumented:

1) A deposit of $30,000 on May 26, 2005 which is presumably the one listed in the May 2005 UBS statement as "local check", five-six months <u>after</u> the Dolphin/Coastal transaction. Further, Mann has provided no proof that even this belated "contribution" came from him at all.

```
05/24  DIVIDEND           RMA MONEY MKT. PORTFOLIO AS OF 05/23/05              -25,000.00
05/26  DEPOSIT            LOCAL CHECK                                          -10,000.00   -27,793.09
                                                                                    62.52   -27,730.57
                                                                                30,000.00     2,269.43
```

2) "Loans" totaling $30,000.00 from John Mann to Mann Tech via Patterson on December 20, 2004 and January 4, 2005, curiously close to the date of the Dolphin transaction and matching the amounts of checks <u>paid</u> to John Mann out of the proceeds of ICOHA shares in January 2005 according to the January 2005 UBS statement:

```
                                                                       162,598.70
Checking/bill payment summary
Check                                                      Expense
number     Description                         Date         code       Amount
00000101   JOHN B MANN                        01/19                    7,500.00
00000102   ROBERT PATTERSON                   01/26                    5,000.00
00000103   JOHN B MANN                        01/25                   30,000.00
           Total checks paid                             $            42,500.00
```

As explained by Patterson in his Opposition to the Motion to Show Cause, funds are paid by Mann Tech to John Mann (for example check #103 for $30,000), and then John Mann turns around and "lends" this $30,000 to Mann Tech, either through a personal loan to Patterson (undocumented, and why not directly to Mann Tech?) for the purported goal of effecting the Coastal transaction in January 2005, or as a loan for other purposes in May 2005. Mann does not say which one and the two uses of the purported undocumented loans are in conflict with each other. Mann does not say whether Patterson reimbursed the loan, since Patterson deposited the Coastal proceeds in his own bank account, rather than reimbursing the alleged loan to John Mann or to Mann Tech.

4

It is clear that Mann is struggling to demonstrate that the funds used for Coastal are not proceeds of ICOHA shares and according to Defendants, not subject to the injunction. But the facts demonstrate the opposite. Furthermore, Defendants never provided in discovery any documentation or any other evidence concerning these "loans" and never mentioned them until the Motion to Show Cause was filed.

The post-fact justification, that John Mann was paid for services and used the proceeds of his then "personal funds" to loan to Mann Tech (via Patterson!) requires blind faith in Mann's explanation. In fact, assuming that the $30,000 to GBH contemporaneous with the Coastal transaction is not actually the loan to Coastal, this scheme supports Plaintiff's theory of money laundering as confessed by Patterson and explained in plaintiff's second Reply. All assets into MannTech were proceeds of ICOHA stock; some were paid for "services" rendered by Mann and Patterson; and then Mann-Patterson would use these personal funds to make contributions to Mann Tech thereby from proceeds now other than ICOHA shares. Unfortunately for Mann, the dates of the loans and advances do not match with the Coastal transaction and it is clear that John Mann withdrew funds derived from ICOHA to effect the Coastal transaction.

When Coastal reimbursed Mann Tech, Mann simply asked Patterson to deposit the funds in his personal account to evade the injunction. Patterson, rather than repaying the loan to John Mann, or to Mann Tech, just kept the funds for himself: sixty thousand dollars, plus interest of over $2,000 that Mann has not even addressed.

Finally the Mann Defendants do not explain why John Mann makes a personal loan to Mann Tech in January 2005, via Patterson, to close the Coastal deal when in fact Mann Tech had funds and other liquid assets to effect that transaction. Even if one wished to believe Mann's story, it suffers from a fatal flaw: none of the Mann Defendants and/or Patterson allege any consideration for their generosity to Mann Tech (personal donation to MannTech without consideration). Thus, this story appears totally fabricated to justify acts designed to neuter this Court's injunction.

## II. Mann has not complied with the Order of this Court

Mann's Updated Report does not comply with the Order requiring the listing of all "proceeds [that] were transferred to locations, including entities that do not fall within the definition of 'financial, banking and the like institutions- other than the previously disclosed UBS bank account". Although Mann argues that Dolphin Bay Capital and Fountain Capital Fund are not financial institutions, which they clearly are, it had the obligation to disclose assets transferred to them, and received from them.

As discussed earlier, although required by the Order, Mann does not give any details of transfers of over $500,000 in cash to locations or persons out of the UBS account –which contained exclusively proceeds from ICOHA- in a matter of a few months.

Instead Mann just states that "*on December 20, 2004, John Mann wrote a personal check to Robert Patterson in the amount of $25,000 for a loan, convertible into 399,900 shares of Coastal stock, which Mann Tech had agreed to make to Coastal Services Group, Inc. On January 4, 2005, John Mann wrote a check to Dolphin Bay in the amount of $5,000, to complete the $30,000 convertible loan to Coastal Services*".

6

No documentation is provided to establish these assertions and if indeed John Mann gave these personal funds to Patterson for Patterson to acquire certain assets on behalf of Mann Tech, Mann does not provide any details as to any consideration whatsoever for John Mann's largesse on behalf of Patterson and Mann Tech, presumably owned still 50%-50% with Patterson. This scheme does raise a substantial question as to whether John Mann believes he is Mann Tech, and has now voluntarily lifted any corporate veil he might invoke when defending the fraud counts.

However, Mann states that "*of the $519,138 received into the Mann Tech UBS account from the sale of ICOHA shares as of November 2, 2005, a total of $516,558 was paid out of that account to John Mann, Robert Patterson and third parties for expenses, services rendered to Mann Tech and/or Ellipso*". Mann does not specify who the "third parties" are and since the bulk of the disbursements went to John Mann and Patterson, it is easy to identify the few third parties: GBH, Legacy. Mann fails to explain why with so much cash within Mann Tech, he felt the need to "loan" $30,000 to Mann Tech via Paterson with no consideration whatsoever, nor why the loan was never repaid.

The final argument concerning whether Dolphin Bay Capital is a financial institution is moot since it is, and in any event the Order required Mann to disclose assets even if in institutions other than financial. Moreover, Mann's belief that these advances to Coastal would be offset by <u>future</u> services to be provided to Mann Tech *and Ellipso* by Coastal's principals defies credulity. Ellipso is not aware of its own participation in the Coastal deal, not that it had a stake in John Mann's personal advances of funds to Coastal on behalf of Mann Tech which resulted in assets being disbursed to Mann Tech and deposited into Patterson personal bank account. Mann further asserts, commenting on its

7

own acts, that the Coastal funds were "upon information and belief" deposited into Patterson's personal bank account. Mann, as principal in Mann Tech knows or should know where these funds went and cannot make a declaration only 'upon information and belief". Unless John Mann is unaware of Patterson's handling of the $30,000 he allegedly received in re-payment of a personal loan from John Mann to Patterson. Mann at least should indicate what efforts he made to recover the funds on behalf of Mann Tech and presumably his own funds.

The Order required specific and true information, not speculation. If Mann does not know what happened to funds definitely drawn from proceeds of ICOHA stock, and which according to Mann were paid to Patterson, who forwarded them to Coastal, who in turn reimbursed Mann Tech through a check diverted to Patterson's bank account, who would know? Mann's Updated Report clearly does not comply with the letter or the spirit of the Order. Mann still evades the question of why the Coastal proceeds, received while the injunction was in force, were not deposited into the UBS account, allegedly the only bank account Mann Tech ever held.

### III.    Mann commingles his personal assets with MannTech's

It is clear that Mann wishes to confuse this Court by intermingling of funds, parties, loans, instituions and services and expenses, none of which was ever disclosed or discovered. This Court should accept the earlier representation that Mann Tech had no source of funds other than the proceeds from the sale of ICOHA shares as declared by Mann during the injunction phase. As a result, the Coastal transaction was clearly financed out of the proceeds from the sale of ICOHA shares, although sometimes

cleansed via Patterson's scheme. Believing otherwise requires blind faith in John Mann's declarations.

IV. **Mann finally confesses to assets it did not declare in November 2005.**

Finally, Mann now declares that "as of November 2, 2005, Mann Tech's only tangible assets were:

   a) 37,611 shares of ICOHA shares held in its UBS account.

   b) $2,580 in cash held in its UBS account.

   c) 399,900 shares of Coastal Services stock, held as collateral for the $30,000 loan".

In its original declaration to this Court, made during the injunction proceeding, Mann avoided item c), the Coastal stock. That in itself should resolve the question of not being candid with this Court and attempting, and succeeding, to circumvent the injunction by shielding from the injunction any deposits and assets coming to MannTech.

## CONCLUSION

Mann Tech's Updated Report provides no transparency into the deposits and disbursement of Mann Tech as required by the Order. In particular the Report does not provide sufficient evidence that the funds to purchase an interest in Coastal, later reconverted to cash proceeds, came from a source other than the proceeds from the sale of ICOHA stock. Mann's attempts to explain through convoluted transactions involving personal funds, loans and payments to Patterson, future services from or to Coastal and even to Ellipso only serve to highlight the comingling of Mann's personal interest and that of Mann Tech. It leaves wanting an explanation of the role of Patterson in Mann Tech, since it appears Mann Tech is John Mann and the Mann Tech corporate form is an artifice crafted by Patterson to provide John Mann with a very lucrative "loan" deal, and

the means to hoodwink Ellipso at every turn, including a "ratification" Ellipso only understood over a year *after* it was argued by Defendants. Of note are Patterson's total payments from Mann Tech amounting to about $30,000, much lower than the fifty percent (50%) ownership of Mann Tech would warrant. Mann Tech was nothing more than a vehicle for John Mann to use Patterson as a Trojan horse to deprive Ellipso of its assets. The Motion should now be granted and sanctions imposed on John Mann, Mann Tech, and Patterson.

April 25, 2008                                              Respectfully submitted,

                                                            _____/s/_____
                                                            Vanessa Carpenter Lourie, #250068
                                                            4400 MacArthur Blvd., N.W.
                                                            Suite #205
                                                            Washington, D.C. 20007-2521
                                                            (202) 342-8000 (Telephone)
                                                            (202) 342-9000 (Facsimile)
                                                            vlourie@carpenterlourie.com (e-mail)

                                                            _____/s/_____
                                                            Linda Awkard, #38748
                                                            4201 Cathedral Avenue, N.W.
                                                            Suite 1416 W
                                                            Washington, D.C. 20016
                                                            (202) 237-1535 (Telephone)
                                                            (202) 237-1204 (Facsimile)
                                                            lawkard@earthlink.net (e-mail)

                                                            Counsel for Plaintiff

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Plaintiff's Response to Updated Status Report of The Mann Defendants Pursuant to Court's Order Entered April 1, 2008 were, this 15th day of April, 2008, served electronically upon:

> Christopher G. Hoge, Esquire
> CROWLEY, HOGE & FEIN, P.C.
> 1710 Rhode Island Avenue, N.W.
> 7th Floor
> Washington, D.C. 20036

And via first class mail to:

> Robert B. Patterson
> PO Box 3106
> Reston, Virginia 20195

                                                                       /s/
                                                       Vanessa Carpenter Lourie, Esquire