UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC., )<br>)<br>      Plaintiff and )<br>      Counter-Defendant )<br>)<br>v. )<br>)<br>JOHN B. MANN, *et al.*, )<br>)<br>      Defendants and )<br>      Counter-Plaintiffs ) | Civil Action No. 05-1186 (RCL) |

**MANN DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE
TO UPDATED STATUS REPORT OF THE MANN DEFENDANTS
PURSUANT TO THE COURT'S ORDER ENTERED APRIL 1, 2008**

    Come now John B. Mann and Mann Technologies, LLC, Defendants and Counter-Plaintiffs herein (collectively the "Mann Defendants"), by their undersigned counsel, and in brief reply to the Plaintiff/Counter-Defendant's ("Plaintiff's") response to the Mann Defendants' updated status report filed pursuant to this Court's April 1, 2008 Order state as follows:

    It is clear that Plaintiff is trying to obtain as much "mileage" as possible out of this Court's requirement that the Mann Defendants submit an updated status report in supplementation of their previously filed November 29, 2005 report.  Eleven pages of hyperbolic text and 145 pages of irrelevant financial records notwithstanding, the record is clear that the Mann Defendants have fully complied with both the letter and the spirit of this Court's directives.  Moreover, as more particularly set forth in the Mann Defendants' Reply to Plaintiff's Opposition to the Motion for Reconsideration, to be filed on May 5, 2008, the injunction which the Mann Defendants are accused of violating was issued solely as the result of the perjurious statements of David Castiel, President and Chief Executive Officer of Plaintiff Ellipso.  While

that fact may not excuse a violation of the Injunction Order, which the Mann Defendants deny, it must certainly be taken into account when evaluating Ellipso's irresponsible contentions.

It is important to keep a clear "eye on the ball" in the midst of all the smoke raised in Plaintiff's Reply. What is at issue is whether the Mann Defendants have complied with this Court's Injunction Order of November 14, 2005, and its Order of April 1, 2008. The 2005 Order required the Mann Defendants to file a "report identifying: (1) the amount of unsold ICOHA shares remaining in their possession, custody or control; (2) the amount of cash proceeds realized from their sale of ICOHA stock; and (3) the financial, banking and like institutions, including contact names and addresses, in which defendants, jointly or separately, own or control accounts holding ICOHA shares and/or cash proceeds from the sale of ICOHA stock".

The Mann Defendants filed such a report on November 29, 2005 (Document 31). It gave all the required information, except that it made no mention of funds disbursed from John Mann's personal account at Fauquier Bank to Robert Patterson to purchase, on behalf of Mann Technologies, LLC ("Mann Tech"), a convertible promissory note from Coastal Services Group, Inc. ("Coastal"). The Mann Defendants explained that omission in their response to Plaintiff's Motion for Contempt, filed January 10, 2008 (Document 162). The primary reason this investment was not included in the first report was because Coastal was not a "financial, banking ... [or] like institution". It was also not clear that the funds in John Mann's personal account at Fauquier, owned jointly with his wife, were derived from the sale of ICOHA stock.

In its April 1, 2008 Order, granting in part and denying in part the Mann Defendants' Motion for Summary Judgment and lifting the November, 2005 injunction, this Court directed the Mann Defendants to file an updated status report with further information. Memorandum

Opinion, 4/1/08, at 18. All such information was included in the report timely filed by the Mann Defendants on April 10, 2008. Very specifically, the Mann Defendants itemized each and every financial contribution to Mann Tech which was made independent of any sale of ICOHA stock. They also fully responded to the question "whether any ICOHA proceeds were transferred to locations - including entities that do not fall within the definition of 'financial, banking and like institutions' - other than the previously disclosed UBS bank account". The Mann Defendants reiterated information contained in the first report that $519,138.22 had been received from the sale of ICOHA stock prior to the injunction, and they explained that virtually all of that money had been paid out, prior to the injunction, "to John Mann, Robert Patterson and third parties for expenses, services rendered to Mann Tech and/or Ellipso, or repayment of loans made by Mann to Mann Tech".

      The updated report went on to explain that the $30,000 payment for the Coastal Services convertible loan was not included in the original report because Coastal services was not a "financial, banking ... [or] like institution", and because the Mann Defendants believed that "funds advanced to Coastal would be offset, over time, by services to be provided to Mann Tech and Ellipso by Coastal's principals". Updated Status report, at 3.

      Nothing in the Plaintiff's Response comes close to establishing that the Mann Defendants failed to comply with the April 1, 2008 Order. All Plaintiff can do is complain that John Mann used money he personally derived from the sale of ICOHA stock to fund Mann Tech's investment in Coastal. Mann has never denied that some of the money in his and his wife's personal Fauquier Bank account may have been derived from the sale of the ICOHA stock. However, as has been clearly demonstrated, such stock sales occurred well before the injunction,

and there was nothing to prohibit Mann Tech from using that money for another investment in late 2004 and early 2005, well before the injunction.

Since there was nothing wrong with the sale of the stock prior to the injunction, pursuant to a contract which this Court has upheld as not unconscionable (Memorandum Opinion, at 7-8), nor with the use of the proceeds to pay people for services rendered or to repay loans, all of Plaintiff's fulminating about funds from the ICOHA sales being used for the Coastal investment are for naught.

Indeed, the Mann Defendants, in describing not only funds paid by John Mann to Mann Tech but also advances which he made on Mann Tech's behalf to Ellipso, have gone beyond the strict dictates of this Court's Order.

Finally, Plaintiff reveals that the Mann Tech UBS records attached to its Motion for Contempt and its response to the Updated Report were derived from a subpoena served by Plaintiff on UBS. However, in March of 2007, when UBS apparently complied with the subpoena, there was an agreement among then-counsel for Plaintiff, Mr. Goodman, and then-counsel for the Mann Defendants, Mr. Mauro, that both parties' pending subpoenas to UBS would be held in abeyance pending the negotiation and execution of a Protective Order, which never occurred. *See*, Ex. 1, March 2, 2007 letter from Mr. Mauro to Mr. Goodman, pp. 1-2, par. C ("We agreed to send a Joint Subpoena to UBS. In light of the February 23, 2007, Subpoena you have already sent to UBS, we have prepared our own and served it on UBS today.... In this regard, we have agreed that the documents produced pursuant to the subpoenas issued to UBS by both parties will be subject to the Protective Order which is discussed below."). *See also*, Ex. 2, March 14, 2007 letter from Mr. Mauro to Mr. Goodman, p. 1, par. 2 ("Concerning the UBS

subpoena, in light of our agreement that the UBS documents will be covered by the protective order, your inability to respond to the draft protective order I have proposed in my March 2, 2007, letter makes moot the delay in getting the documents from UBS.").

The Mann Defendants were unaware, prior to the filing of Plaintiff's response to the Updated Report, that UBS had in fact responded to the subpoena. They understood that because a protective order had never been consummated, no documents had ever been produced by UBS. It now appears that Plaintiff has violated the agreement between Mr. Mauro and Mr. Goodman by obtaining the documents prior to the adoption of a protective order. Moreover, the documents which Ellipso has now improperly filed in the public record contain confidential financial information, including account numbers, which is the exact reason why a Protective Order needed to be in place before the subpoena was enforced.

Respectfully submitted,

/s/ Christopher G. Hoge
Christopher G. Hoge #203257
Counsel for Defendants/Counter-Plaintiffs
John B. Mann and Mann Technologies, LLC

CROWLEY, HOGE & FEIN, P.C.
1710 Rhode Island Avenue, N.W.
7th Floor
Washington, D.C. 20036
(202) 483-2900

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that true copies of the foregoing Reply were, this 2nd day of May, 2008, served electronically upon:

>VANESSA CARPENTER LOURIE, ESQ.
>4400 MacArthur Blvd., N.W.
>Suite #205
>Washington, D.C. 20007-2521
>Co-Counsel for Plaintiff/Counter-Defendant

  and via first class mail, postage prepaid, upon:

>LINDA AWKARD, ESQ.
>4201 Cathedral Ave., N.W.
>Suite #1416W
>Washington, D.C. 20016
>Co-Counsel for Plaintiff/Counter-Defendant

>ROBERT B. PATTERSON
>P.O. Box 3106
>Reston, VA 20195
>Defendant/Counter-Plaintiff *Pro Se*

                      /s/ Christopher G. Hoge
                      Christopher G. Hoge

cgh/z/wpdirs/civil
mannreplystatusrpt .wpd