UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC., )<br>  )<br>     Plaintiff and )<br>     Counter-Defendant )<br>  )<br>v.  ) <br>  )<br>JOHN B. MANN, *et al.*, )<br>  )<br>     Defendants and )<br>     Counter-Plaintiffs ) | Civil Action No. 05-1186 (RCL) |

**MANN DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION
TO MOTION FOR RECONSIDERATION**

Come now John B. Mann and Mann Technologies, LLC, Defendants and Counter-Plaintiffs herein (collectively the "Mann Defendants"), by their undersigned counsel, and in reply to the Plaintiff/Counter-Defendant's ("Plaintiff's") Opposition to the Mann Defendants' Motion for Reconsideration state as follows:

**I.  Standard of Review**

Plaintiff cites *Lightfoot v. District of Columbia*, 355 F. Supp. 2d 414, 421 (DDC 2005) as authority for the proposition that a Rule 59(e) motion for reconsideration can be granted only upon a showing of "extraordinary circumstances".  However, as Plaintiff acknowledges, one such "extraordinary circumstance" justifying the grant of a Rule 59(e) motion is "clear error". Indeed, "clear error" or "manifest injustice" constitute adequate grounds for granting a motion for reconsideration under this rule, and failure to grant reconsideration where such circumstances exist has been deemed a reversible abuse of discretion.  *Anyanwutaku v. Moome*, 331 U.S.App.D.C. 379, 151 F.3d 1053, 1057 (D.C.Cir. 1998); *Firestone v. Firestone*, 316

U.S.App.D.C. 152, 76 F.3d 1205, 1208 (D.C. Cir. 1996). In *Anyanwutaku* the error was failure of the Trial Court to give adequate consideration to the *pro se* plaintiff's discrimination claim. In *Firestone* the Trial Court erred by dismissing the claim as time-barred *with prejudice*, thereby prohibiting amendment of the complaint. In both cases the Trial Courts' refusals to grant reconsideration under Rule 59(e) were reversed for abuse of discretion.

     Here, the Mann Defendants have demonstrated three "clear errors" leading to this Court's conclusion that there are genuine issues of material fact concerning Plaintiff's claim of fraudulent misrepresentation and related allegations. As will be seen, nothing asserted by Plaintiff in its opposition negates the fact that the Court premised its denial of summary judgment on erroneous information.

     Plaintiff also complains that the Mann Defendants are raising for the first time their argument about no damages flowing from the alleged fraud. While it is true that ordinarily a motion for reconsideration cannot set forth new arguments not previously raised, here the argument about lack of damages could not have been asserted prior to this Court's finding that the loan agreement was not unconscionable. Prior to that finding, it could have plausibly been contended that Plaintiff was damaged as a result of the fraud by entering into an unfair contract which contained excessive benefits for Defendants. However, this Court's ruling that the contract was not unconscionable, and that the Plaintiff had ratified it in several ways after learning of Patterson's involvement with Mann Tech, eliminated any possible damages emanating from the alleged misrepresentations. All Plaintiff can say is that, in reliance upon the misrepresentations (or in Mann's case the non-representations), it was induced to enter into the loan agreement, which according to this Court was not unfair. One cannot be damaged by a fair agreement unless that agreement is breached. There is no allegation by Plaintiff that the Mann

Defendants breached the loan agreement.  Indeed, the only breach was by Ellipso, which failed to make even one of the interest payments called for in the agreement.

## II. Argument

### A. The Evidence of Intent to Deceive Cited by the Court Was Clearly Misconstrued.

After arguing strenuously in its original Opposition to the Mann Defendants' Motion for Summary Judgment that the December 24, 2003 e-mail is the "smoking gun" which demonstrates the conspiracy between John Mann and Robert Patterson, and after being shown conclusive evidence that such e-mail had nothing to do with the loan transaction, Plaintiff now says that it doesn't matter.  All that matters to Plaintiff is that "Patterson and Mann were operating as business partners" in some kind of transaction, and that Ellipso was kept "in the dark" about the relationship.

Fraudulent misrepresentation is a tort which requires clear and convincing proof of several specific elements, including proof that the defendant made a false representation of a material fact.  District of Columbia Standardized Civil Jury Instruction No. 20.01; *Hercules & Co. v. Shama Restaurant Corp.*, 613 A.2d 916 (D.C. 1992).  The fact misrepresented must be described with particularity, and in fact, in its Complaint Plaintiff did identify two, and only two, highly specific "facts" which it says were misrepresented by Mann, Mann Tech, Patterson and Consulting Management, Ltd.  Those allegedly misrepresented facts were: (a) "The [sic] Robert Patterson was in fact also the Lender"; and (b) "The Lender intended to take control of the ICOHA shares".  Complaint, Count IV, par. 56; Count VIII, par. 82; Count XI, par. 97.  The failure of the Defendants to alert Ellipso to those two precise "facts" is the foundation of the

fraud claim, as well as the other claims dependent thereon (conversion, trover, civil conspiracy).

In analyzing this claim, the Court focused on one piece of documentary evidence, an e-mail dated December 24, 2003, attached as Ex. 1 to Ellipso's Opposition to the Motion for Summary Judgment. The Court states: "[I]n the email, Mann refers to the *Mann loan offer* as 'our offer' and suggests that '*we* accept [Ellipso's proposed terms] with two modifications'. Memorandum Opinion at 12 (first emphasis supplied; second in original). "At a minimum, *this email* is sufficient to create a fact issue as to Mann's intent and demonstrates that Mr. Patterson was counseling not only Ellipso but Mr. Mann as well". *Id.* (emphasis supplied).

However, Defendants have offered irrefutable evidence that the email in question was not about the loan at all, but rather about the proposed telephone registry business. It is understandable that the Court made this error, because Ellipso failed to include the attachment to the email which clarifies what it was all about.

Recognizing that its smoking gun was shooting blanks, Ellipso now suggests that two other emails, both sent *after* the loan documents had been signed by Castiel[1], "demonstrate and leave no doubt that Mann and Patterson were acting in concert in their successful attempt to deceive Ellipso". There can be no doubt that these two emails do relate to the loan. However, Defendants have never denied that Mann and Patterson were involved in Mann Tech and worked on the loan together. As John Mann attested in his Declaration in support of the Motion for Summary Judgment, when the loan was being negotiated "Dr. Castiel and Mr. Patterson suggested to me that the loan be made by the company they had previously proposed to buy the shares, Mann Technologies, LLC and that Dr. Castiel would feel comfortable with Mr. Patterson

---

[1] *See*, Complaint, at par. 20 and Ex. 2.

having the same kind of interest he had in TRSC." MSJ Ex. 1, par. 12.

Ellipso obtained its preliminary injunction and kept its case alive by regularly asserting that its principal, Dr. Castiel, had no knowledge of any of this. *See, e.g.*, Reply Ex. 1, 6/23/05 Affidavit of David Castiel (originally attached to Complaint), at par. 5 ("At no time prior to, during, or after the negotiations did Patterson, John Mann or Mann Tech disclose to Ellipso the material fact that Patterson was a member of Mann Tech"); Reply Ex. 2, Ellipso Answers to Interrogatories, 3/27/07, at Answer No. 1 ("I first learned of Robert Patterson's interest in Mann Technologies, LLC, following the parties' execution of the Joint Sale Order on or about August 12, 2004."); Reply Ex. 3, Castiel 5/2/07 Deposition, p. 115 ("Q - And your testimony is that when you signed the August 2nd amendment, you did not know what Mr. Patterson's interest in Mann Technologies was; is that correct? A - That's correct, the interest ownership. Q - Right, ownership interest, right. A - I knew he had a kickback from Mr. Mann, though."). All of this testimony of Dr. Castiel, however, has been refuted by his own email of November 16, 2004 (MSJ Ex. 21), in which he tells Patterson "[I]n particular I never knew until May/June 2004 that you were 50% owner of Mann Tech and you had a stake in the upside of the [ICOHA] stock".

In other words, Dr. Castiel has lied under oath at least three times about what he knew and when he knew it. In contrast, Mann's sworn assertion that his and Patterson's partnership in Mann Tech was not only known to Castiel, but suggested by him, has never been impeached.

Ellipso has thus far succeeded in persuading the Court that there is sufficient evidence to keep the fraud claims alive, but that "evidence" evaporates upon close examination.

### B. Patterson Was Not Ellipso's Agent, and the Mann Defendants Owed No Fiduciary Duty to Disclose.

While it is true that, under District of Columbia law, a contract between the parties is not necessarily dispositive of the question whether an agency relationship exists, in order to overcome the clear provision in the Agreement for Services between Ellipso and Patterson that Patterson was an "independent contractor", Ellipso has the burden to prove that it had the right "to control the physical conduct of the contractor in performance of the contract". *Cannon v. United States*, 645 F.2d 1128, 1133 (D.C. 1981); *Judah v. Reiner*, 744 A.2d 1037, 1040 (D.C. 2000). Plaintiff has offered not one iota of evidence on the question of whether Ellipso had the right to control Patterson's activities. Accordingly, it cannot overcome the clear language of the service agreement. Motion for Reconsideration Ex. 2.

Plaintiff cites *Toledano v. O'Connor*, 501 F. Supp. 2d 127, 145 (D.D.C. 2007) in support of its contention that there is "a duty to disclose ... where the 'facts are known or accessible only to defendant, and defendant knows they are not known or reasonably discoverable by the plaintiff'." Opposition, at pp. 6-7. However, it neglects to cite other language in *Toledano* that "absent a duty to disclose... a party making a contract is *not expected to tell all that he knows to the other party, even if he knows that the other party lacks knowledge on some aspects of the transaction*". *Id.* (emphasis supplied). The Court in *Toledano* in fact found no duty to disclose an arbitration agreement in the contract, and hence found no fraudulent misrepresentation.

Here, the Mann Defendants had no independent fiduciary duty to Ellipso, as this Court concluded at pp. 8-9 of its Memorandum Opinion. Any such duty it might have would be purely derivative of Patterson's, and Ellipso has utterly failed to produce any evidence of control that would overcome the assertion in the agreement between Ellipso and Patterson that no agency relationship existed.

## C. <u>Lack of Damages</u>

As stated in the introduction, the Mann Defendants' argument concerning lack of damages from the alleged fraud could not have been raised unless and until this Court ruled that the loan agreement itself was not unconscionable.  Once that ruling was made, however, it eliminated the possibility of damages resulting from the alleged failure to inform.

If the contract was not unfair, and the terms not unreasonably onerous, then Ellipso's financial disadvantage as a result of Mann Tech's sale of ICOHA stock is not attributable to any misrepresentations, but rather to proper enforcement of the agreement.  As discussed at length in the motion for summary judgment, the ICOHA stock which Mann Tech held as collateral was extremely volatile, with a value that fell as low as $10,000 at a time when the loan was in serious default.  The fact that the value bounced back up after Mann Tech assumed control was lucky for the Mann Defendants and unlucky for Ellipso, but in no way could Mann Tech's profits on the sale of the collateral be construed as damages resulting from fraud.

The only other kind of damage that could conceivably be claimed against the Mann Defendants would be any "secret profits" derived by Patterson as a result of the perfidy.  *Jay v. General Realties Co.*, 49 A.2d 752, 755 (D.C. 1946).  *See also, Urban Invest., Inc. v. Branham*, 464 A.2d 93, 96 (D.C. 1983); *United States v. Wight*, 839 F.2d 193, 197 (4th Cir. 1987).  However, the 5% commission paid to Patterson was no secret; it was plainly set forth in the Loan Agreement, at par. 2.2(a).  Furthermore, while Patterson was paid money by Mann Tech for services after Mann Tech had sold some of the ICOHA stock, such payments cannot be claimed to be secret because Patterson's role with Mann Tech was well-known by then, and ratified by

Ellipso in several ways, as found by the Court.

## CONCLUSION

The Mann Defendants well understand that motions for reconsideration are rarely granted.  However, this should be one of those rare instances.   The clearly erroneous interpretation of the December 24, 2003 email; the lack of any evidence whatsoever to overcome the contractual provision that Patterson was an independent contractor and not an agent of Ellipso; and the utter absence of any provable damages resulting from the alleged fraud clearly demonstrate that summary judgment ought to be granted as to the fraudulent misrepresentation count and all other counts dependent thereon.

Ellipso's lawsuit, premised on testimony that has been proven false, should come to an end.

>   Respectfully submitted,
>
>   /s/ Christopher G. Hoge
>   Christopher G. Hoge #203257
>   Counsel for Defendants/Counter-Plaintiffs
>    John B. Mann and Mann Technologies, LLC
>
>   CROWLEY, HOGE & FEIN, P.C.
>   1710 Rhode Island Avenue, N.W.
>   7th Floor
>   Washington, D.C.  20036
>   (202) 483-2900

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true copies of the foregoing Reply were, this 5th day of May, 2008, served electronically upon:

>VANESSA CARPENTER LOURIE, ESQ.
>4400 MacArthur Blvd., N.W.
>Suite #205
>Washington, D.C. 20007-2521
>Co-Counsel for Plaintiff/Counter-Defendant

and via first class mail, postage prepaid, upon:

>LINDA AWKARD, ESQ.
>4201 Cathedral Ave., N.W.
>Suite #1416W
>Washington, D.C. 20016
>Co-Counsel for Plaintiff/Counter-Defendant
>
>ROBERT B. PATTERSON
>P.O. Box 3106
>Reston, VA 20195
>Defendant/Counter-Plaintiff *Pro Se*

/s/ Christopher G. Hoge
Christopher G. Hoge

cgh/z/wpdirs/civil
mannreconsiderreply .wpd