IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ELLIPSO, INC.<br>4410 Massachusetts Ave., Suite 385<br>Washington, DC 20016,<br><br>　　　Plaintiff,<br><br>v.<br><br>JOHN B. MANN<br>9330 Harts Mill Road<br>Warrenton, VA 20186<br><br>MANN TECHNOLOGIES, LLC<br>9330 Harts Mill Road<br>Warrenton, VA 20186<br><br>ROBERT B. PATTERSON<br>PO Box 2051<br>Middleburg, VA 20118<br><br>CONSULTING MANAGEMENT, LTD.<br>PO Box 2051<br>Middleburg, VA 20118<br><br>and<br><br>THE REGISTRY SOLUTIONS CO.<br>9330 Harts Mill Road<br>Warrenton, VA 20186<br><br>　　　Defendants. | Case No.: _____ |

### AFFIDAVIT OF DAVID CASTIEL

1.　I am over the age of eighteen and otherwise competent to testify on all matters contained herein.

2.　At all relevant times I have been the Chief Executive Officer of Ellipso, Inc. and, as such, have personal knowledge of all facts contained herein.

**EXHIBIT 1**

3. In or about December 2003, Ellipso entered into negotiations with Mann Technologies, LLC ("Mann Tech"), a Nevada corporation whose corporate status currently is in default and although having a principal place of business in Virginia, never registered to do business in the Commonwealth of Virginia and John Mann, a member of Mann Tech, with respect to a loan Mann Tech proposed to make to Ellipso.

4. Robert Patterson, a business consultant for Ellipso since October 2002, introduced Ellipso to Mann Tech and John Mann and conducted much of the negotiations with Mann Tech and John Mann on behalf of Ellipso.

5. Although Patterson owed Ellipso, as its business consultant, fiduciary duties to act in Ellipso's best interests and not engage in self-dealing, Patterson failed to advise Ellipso that Patterson also was a member of Mann Tech. At no time prior to, during, or after the negotiations did Patterson, John Mann or Mann Tech disclose to Ellipso the material fact that Patterson was a member of Mann Tech

6. Knowing of Ellipso's precarious financial condition in December 2003 and Ellipso's desperate need for financing, Patterson "negotiated" a loan agreement with Mann Tech, his company, which provided Ellipso a loan of $90,000 which was secured by over 492,000 shares of publicly traded ICO Global Communications (Holding) Ltd. ("ICOHA Shares") stock. As of December 2003, the ICOHA Shares were Ellipso's sole asset of any significant liquid value.

7. The loan documents contained terms extremely favorable to Mann Tech, *see generally*, Ellipso's Complaint filed against John Mann et al., yet Patterson presented the loan as Ellipso's only realistic financing option. Accordingly, under severe financial

duress and on the basis of false information, Ellipso executed the loan documents in January 2004.

8. As a condition of the loan agreement, Ellipso was required to pledge all its ICOHA Shares as collateral for the loan but also was later wrongfully advised by Patterson that it was required to transfer title to the ICOHA Shares in the sole name of Mann Tech. As a result, Ellipso was stripped of any and all control over the ICOHA Shares and Mann Tech obtained full title and control of the ICOHA Shares.

9. Despite that Mann Tech never has provided Ellipso notice of default under the loan documents, as it is required to do, and despite that the entire loan transaction was riddled with fraud and thus is void and should be rescinded, it is my understanding since early December 2004 following my last correspondence with John Mann and Patterson that of the original ICOHA shares held by Mann Tech at UBS, a stock broker with offices in Washington, D.C. approximately 200,000 of those ICOHA Shares had been sold by Mann Tech without notice and without rendering any consideration to Ellipso.

10. Within the past six months, the ICOHA Shares have traded between $.50 and $3.55. Thus, Mann Tech, even assuming the loan transaction was not the fraudulent scheme that it is, has recovered anywhere between $100,000 and $710,000 on a $90,000 loan.

11. In addition to the loss of the ICOHA Shares, the fraudulent scheme prevented Ellipso from securing during that that frame any other financing as it no longer had any significant liquid assets – having lost its ICOHA Shares – to pledge or otherwise use as collateral, resulting in lost profits to Ellipso caused by its inability to enter various

3

markets, retain key personnel and by having to accept inequitable terms on future business transactions.

12. The present value of the ICOHA Shares pledged to Mann Tech and which Ellipso seeks to attach is approximately $670,000.00 plus any of the proceeds of the unauthorized stock sale still remaining in the UBS account in the name of Mann Tech, the exact value of which is unknown to me but potentially valued at least at $200,000 or more.

13. An attachment before judgment is necessary, therefore, to ensure that Ellipso can recover the ICOHA Shares, and the proceeds of the misappropriated shares that were sold, all of which properly belonging to it, from Mann Tech which is a foreign corporation, no longer authorized to conduct business, and owned by John Mann, a Virginia resident, and Robert Patterson, a debarred Virginia and District of Columbia attorney, a Virginia resident and a twice convicted felon

I declare under the penalty of perjury that the foregoing is true and correct.

June 23, 2005
Date

David Castiel
CEO
Ellipso, Inc.

4