UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC., )<br> )<br>    Plaintiff and )<br>    Counter-Defendant )<br> )<br>v. )<br> )<br>JOHN B. MANN, *et al.*, )<br> )<br>    Defendants and )<br>    Counter-Plaintiffs ) | Civil Action No. 05-1186 (RCL) |

**MANN DEFENDANTS' MOTION FOR DAMAGES
SUFFERED AS A CONSEQUENCE OF PRELIMINARY INJUNCTION**

Come now John B. Mann and Mann Technologies, LLC, Defendants and Counter-Plaintiffs herein (collectively the "Mann Defendants"), by their undersigned counsel, and respectfully move this Court, pursuant to its Order of November 14, 2005, for damages suffered as a result of the Preliminary Injunction entered on November 2, 2005.  As grounds for this motion, the Mann Defendants state as follows:

**I.   BACKGROUND**

Plaintiff's Motion for Preliminary Injunction was filed almost three years ago, on August 16, 2005.  It was supported by a sworn Affidavit executed by David Castiel, Chief Executive Officer of Ellipso, Inc.  Ex. 1.  The Motion sought to enjoin the Mann Defendants and Defendant Robert Patterson "from selling, transferring or removing from the jurisdiction the remaining ICOHA Shares and the cash proceeds from their previous sale of ICOHA Shares".

Motion, pp. 8-9.[1]

The Mann Defendants duly filed an opposition to the Motion, supported by a sworn Declaration of John B. Mann, disputing many of the factual assertions set forth in the Castiel Affidavit. On October 28, 2005, this Court held a hearing on the motion, at which oral argument was made but no testimony was taken. On November 2, 2005, this Court entered a Memorandum Opinion and Order granting the injunction, ordering "that the defendants cannot sell, transfer or remove from the jurisdiction the remaining ICOHA Shares and the cash proceeds from their previous sale of ICOHA Shares, ..."

Upon the Mann Defendants' Motion for Reconsideration, on November 14, 2005, the Court entered a second Memorandum Opinion and Order denying reconsideration, clarifying the terms of the injunction, ordering Ellipso to post a $100,000 bond, and ordering the Defendants to file a report identifying the number of ICOHA shares still in their possession and the amount of cash proceeds realized from their sale of ICOHA shares prior to issuance of the injunction. In its Memorandum Opinion, the Court stated: "... upon the dissolution of this injunction, defendants shall be permitted to present proof of any damages which they suffered as a consequence of this injunction". 11/14/05 Memorandum Opinion, at p. 5.

The Mann Defendants appealed, and the District of Columbia Court of Appeals affirmed, finding sufficient support in the record for the Trial Court to conclude that Ellipso and Castiel did not know of Patterson's relationship with Mann Tech when they executed the Loan Agreement. *Ellipso, Inc. v. Mann*, 480 F.3d 1153, 375 U.S.App.D.C. 270 (2007). In so holding, the appellate court noted that if Ellipso's equitable claim for rescission should fail, there would

---

[1] "ICOHA Shares" refer to shares of publicly traded stock in ICO Global Communications (Holding) Ltd.

be no longer any basis for an injunction:

> Had Mann Tech been able to prevail on its argument that Ellipso affirmed the loan agreement, it would have been in a position to launch a persuasive challenge to the power of the district court to freeze its assets. An injunction freezing assets is only permissible when a party has demonstrated an equitable claim to the assets. *See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 332-33 (1999) (holding that a court may not enter an injunction freezing assets in action for damages where there is no equitable interest in frozen assets); *cf. Deckert v. Independence Shares Corp.*, 311 U.S. 282, 289-90 (1940) (permitting an injunction freezing assets because it assisted the ultimate equitable relief of rescission). If Ellipso had in fact affirmed the loan agreement, Ellipso's sole remedy for fraud in the inducement of that contract would have been damages—a legal remedy, *see Dean*, 779 A.2d at 915 (holding that party affirming contract is precluded from later seeking rescission); it would have been unable to show the equitable interest in the shares held by Mann Tech necessary to support the equitable remedy of an injunction.

480 F.3d at 1160.

On April 1, 2008, this Court entered a Memorandum Opinion and Order granting in part the Mann Defendants' Motion for Summary Judgment and lifting the injunction. Among the counts of the Complaint as to which summary judgment was granted was Count One seeking rescission of the Loan Agreement. This was the sole count seeking equitable relief.

The process of discovery in this extended litigation has clearly revealed that Dr. Castiel's affidavit and the pleadings submitted on his behalf contained several misrepresentations which led to the injunction. Indeed, as will be demonstrated *infra*, those very misrepresentations formed the basis for issuance of the injunction asserted by the Court in its November 2, 2005 Memorandum Opinion.

## II. LEGAL STANDARD FOR AWARD OF DAMAGES

"... [A] defendant injured by a wrongfully issued preliminary injunction is presumptively entitled to recovery on the injunction bond." *National Kidney Patients' Ass'n v. Sullivan*, 958 F.2d 1127, 1134, 294 U.S.App.D.C. 269 (1992), *cert. denied,* 113 S.Ct. 966.  A motion seeking damages resulting from a preliminary injunction is appropriate following a ruling on a motion for summary judgment which causes the injunction to be lifted. *Pro Edge L.P. v. Gue*, 451 F. Supp. 2d 1026 (D. Iowa 2006).

When an injunction has been lifted after a further review of the evidence, the liability of the plaintiff for damages caused by the injunction is not "limited to the amount of the bonds that had been posted". *Mitchell v. Riegel Textile*, 259 F.2d 954, 104 U.S.App.D.C. 139 (1958). "... [A] party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby". *Id.*, 259 F.2d at 955.

In a case where a party has been enjoined from selling securities, "the measure of damages is the difference between the value of the stock on the date the injunction issued and the value of the stock on the date the injunction is dissolved". *Sionix Corp. v. Moorehead*, 299 F. Supp. 2d 1082 (So. Dist. Calif. 2003). *See also, de Castro v. de Castro*, 616 N.E.2d 52, 58, 415 Mass. 787 (Mass. 1993); *Clay Ctr. v. Williamson*, 79 Kan. 485, 100 P. 59, 61 (Kan. 1909).

## III.  ARGUMENT

### A.  The Injunction Was Based Upon Material Misrepresentations By Ellipso.

Plaintiff obtained this injunction by falsely asserting that Ellipso did not know of Patterson's role in Mann Tech "before, during or after"[2] its execution of the January 31, 2004 Collateralized Loan Agreement.  Plaintiff maintained this falsehood not only in its motion for preliminary injunction, but again in its reply to Mann's opposition[3] to the motion; in its Brief in opposition[4] to Mann's appeal of the injunction; in its responses to the Mann Defendants' Requests for Admissions[5]; in its answers to the Mann Defendants' Interrogatories[6]; and in

---

[2] **8/12/2005 Affidavit of David Castiel:** @¶5. "Although Patterson owed Ellipso, as its business consultant, fiduciary duties of loyalty and to act in Ellipso's best interests and not engage in self-dealing, Patterson failed to disclose to Ellipso that Patterson was himself a member of Mann Tech. *At no time prior to, during, or after the negotiations* did Patterson, Mann or Mann Tech disclose to Ellipso the material fact that Patterson was a member of Mann Tech...." (Ex. 1, emphasis supplied).

[3] "...at the time of the negotiation and execution of the loan agreement *and thereafter* while Patterson continued to provide advice and counsel to Ellipso, Ellipso was unaware that Patterson was an owner of Mann Technologies..." **(10/7/2005 Reply in Further Support of its Motion for Preliminary Injunction, at pg.3)** (Ex. 2, emphasis supplied).

[4] **Ellipso Brief on Preliminary Injunction Appeal, 11/1/2006, at pg. 16:** "Ellipso's execution of the Sale Order in September 2004 did not constitute a ratification of the fraudulently induced Loan Agreement since the Sale Order did not fully apprise Ellipso of Patterson's ownership interest in Mann Tech ..."  (Ex. 3).

[5] **Ellipso Responses to Mann Defendants' Request for Admissions (Ex. 4):**
   5. Prior to Your signing a document entitled Amendment to Collateralized Loan Document dated August 2,2004, You knew of Robert Patterson's participation in Mann Technologies.
   Response: Denied.
   6. Prior to Your signing a document entitled Amendment to Collateralized Loan Document dated August 2,2004, You knew of Robert Patterson's financial interest in Mann Technologies.
   Response: Denied.
   8. Prior to receiving funds from the Mann Technologies' UBS account pursuant to the terms of the Amendment to Collateralized Loan Document dated August 2, 2004, You knew of Robert Patterson's participation or financial interest in Mann Technologies.
   Response: Denied.
   34. Your statement in Paragraph 5 of David Castiel's Declaration dated August 12, 2005. that "(a)t no time prior to, during or after the negotiations did Patterson, Mann or Mann Tech disclose to Ellipso the material fact that Patterson was a member of Mann Tech" is not factually correct.
   Response: Denied.

Castiel's sworn deposition[7].

Ellipso's intent to deceive this Court is undeniable.  Ellipso never produced in discovery the two emails in which David Castiel admits knowing of Patterson's role at least as early as June 2004.  After the October 20, 2004 email was produced by Patterson at the Preliminary Injunction hearing on 10/28/05, Ellipso argued that the document did not mean that Castiel knew of Patterson's interest in MannTech in June 2004.  In its subsequent responses to the Mann Defendants' First Request for Admissions, submitted in September of 2006, almost one year after the injunction hearing, Ellipso continued to assert complete ignorance of Patterson's dual-role when it signed the Amendment on August 2, 2004.  Ex. 4.  In its 3/27/2007 Answers to Interrogatories, Ellipso swore that it first learned of Patterson's role in MannTech on August 12, 2004.  Ex. 5.  Indeed, Ellipso maintained this fiction of categorical ignorance until May 2007,

---

[6]  **Interrogatory No.1:** Please describe each instance (oral, written or otherwise) in which You first learned of any aspect or element of Defendant Robert Patterson's role or interest in Mann Technologies, L.L.C.  Include in Your answer all details including the circumstances, date, location, identity of documents, and person or persons involved in or present at each such instance or disclosure and describe, in detail, the information learned.
ANSWER: I first learned of Robert Patterson's interest in Mann Technologies, L.L.C., following the parties' execution of the Joint Sale Order on or about August 12, 2004. Mann, Patterson and I had met at a Starbucks coffee shop for a meeting. Following the meeting, Patterson confessed his financial interest in Mann Technologies. I asked him if that did not create a conflict of interest. He responded "yes" and something to the effect that he "hoped it didn't come down to that." No other persons were involved or present during these discussions. **Ex. 5**

[7] **5/2/2007 Castiel Deposition pg. 115 (Ex. 6):**
    Q    And your testimony is that when you signed the August 2nd amendment, you did not
           know what Mr. Patterson's interest in Mann Technologies was; is that correct?
    A    That's correct, the interest ownership.
    Q    Right, ownership interest, right.
    A    I knew he had a kickback from Mr. Mann, though.

when Patterson produced in discovery a second email, dated November 16, 2004, which established beyond doubt Castiel's knowledge of the relationship as of at least June, 2004. April 1, 2008 Memorandum Opinion, at pp. 5-6. Subsequently in May of 2007, after any "ambiguity" in the October 20 2004 email had been resolved, Castiel attempted to explain at his deposition that he knew in June 2004 only of some promised "kickbacks" from Mann to Patterson. Ex. 6. Finally, in its recent opposition to the Motion to Quash the Injunction, Ellipso continued to deny its knowledge prior to August of 2004.[8]

Ellipso's misrepresentations to this Court as to what and when it knew about Patterson's interest in MannTech were effective in obtaining the injunction[9]. Based upon this falsehood, the Court found that Ellipso had a "substantial chance of prevailing on its claim for rescission of the loan documents". November 2, 2005 Memorandum Opinion, at p. 5. Ellipso cannot contend that it did not understand the relevance of when Ellipso knew of Patterson's interest, since the interrogatories and requests for admissions were quite specific on this point, and the legal issue of ratification was raised early and often in these proceedings. The only reasonable conclusion is that Ellipso's initial and continuing categorical denial of any knowledge of Patterson's role was designed solely to mislead the Court into granting the injunction. The belated attempt by its CEO, David Castiel, to introduce the desultory notion of "kickbacks" was simply a transparent

---

[8] **11/26/07 Opposition to Motion to Quash Preliminary Injunction, at pg 3**: "...Ellipso did not learn of Patterson's disloyalty and deception until **after** the August 2004 partial sale of ICOHA stock." (Emphasis in original).

[9] **Court Preliminary Injunction Memorandum Order 11/2/2005, p. 6:** "Ellipso argues that prior to September 2004 it was unaware that Patterson, who continued to provide advice and counsel to Ellipso, was an owner of Mann Tech."

attempt to blunt the devastating effect of Patterson's discovery of Castiel's November 16, 2004 email. Presumably, it was also meant to mitigate the serious consequences of being found to have lied to this Court.

### B. Analysis of the Mann Defendants' Damages

The Mann Defendants have incurred costs and damages as a result of the preliminary injunction consisting of 1) reduction in the value of the ICOHA stock frozen by the injunction, and 2) legal fees and costs to oppose, appeal and dissolve the preliminary injunction. Each of these is enumerated and discussed below.

When the Mann Defendants were first served with Ellipso's Motion for Preliminary Injunction on August 19, 2005, the ICOHA shares closed at $4.97 per share. Ex. 7. Upon such notice, and on the advice of counsel, the Mann Defendants voluntarily refrained from selling any more of the subject shares. At the time, Mann Tech held 37,611 ICOHA Shares. Ex. 8. On Nov. 2, 2005, the date of the injunction, the shares traded at $3.98 per share. Ex. 7. When the preliminary injunction was lifted on April 1, 2008, the ICOHA stock closed at $3.49 per share. *Id.*

As we have seen, in a case where a party has been enjoined from selling securities, "the measure of damages is the difference between the value of the stock on the date the injunction issued and the value of the stock on the date the injunction is dissolved". *Sionix Corp. v. Moorehead*, *supra.* If that is to be the measure here, then the loss to the Mann Defendants comes to $18,429.39 (37,611 shares @ $3.98 per share, minus 37,611 shares @ $3.49 per share).

As a matter of equity, since the Mann Defendants acted responsibly and refrained from

selling any of its remaining shares from the date it was served with the papers, August 19, 2005, they should be awarded damages based on the differential between the share price on that date ($4.97) and on the date the injunction was lifted ($3.49). That would amount to a total loss of $55,664.28.

Exhibit 9 details $83,905 in legal costs and attorneys' fees the Mann Defendants have incurred which are directly attributable to the preliminary injunction. Of this amount, $22,957 was incurred in opposing Ellipso's Motion for Preliminary Injunction before this Court; $15,063 was spent for the appeal of the injunction; $21,435 was incurred in uncovering the facts refuting Ellipso's false assertions that it had first learned of Patterson's role in MannTech in August or September of 2004; and $24,450 was spent in prosecuting its Motion for Summary Judgment, which required marshaling the undisputed facts necessary to demonstrate that Ellipso had continually misrepresented its knowledge of Patterson's role in Mann Tech, and had ratified its agreements with Mann Tech after learning all the material facts it alleged that the Mann Defendants had concealed.

## CONCLUSION

For the foregoing reasons, the Mann Defendants respectfully request an award of damages resulting from the issuance of the preliminary injunction in the total amount of $139,569.28.

Respectfully submitted,

/s/ Christopher G. Hoge
Christopher G. Hoge #203257
Counsel for Defendants/Counter-Plaintiffs
John B. Mann and Mann Technologies, LLC

>CROWLEY, HOGE & FEIN, P.C.
>1710 Rhode Island Avenue, N.W.
>7th Floor
>Washington, D.C. 20036
>(202) 483-2900

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true copies of the foregoing Motion were, this 14th day of July, 2008, served electronically upon:

>VANESSA CARPENTER LOURIE, ESQ.
>4400 MacArthur Blvd., N.W.
>Suite #205
>Washington, D.C. 20007-2521
>Co-Counsel for Plaintiff/Counter-Defendant

and via first class mail, postage prepaid, upon:

>LINDA AWKARD, ESQ.
>4201 Cathedral Ave., N.W.
>Suite #1416W
>Washington, D.C. 20016
>Co-Counsel for Plaintiff/Counter-Defendant

>ROBERT B. PATTERSON
>P.O. Box 3106
>Reston, VA 20195
>Defendant/Counter-Plaintiff *Pro Se*

>/s/ Christopher G. Hoge
>Christopher G. Hoge

cgh/z/wpdirs/civil
manndamagesmtn .wpd

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELLIPSO, INC., | ) | |
| | ) | |
| Plaintiff and | ) | |
| Counter-Defendant | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1186 (RCL) |
| | ) | |
| JOHN B. MANN, *et al.*, | ) | |
| | ) | |
| Defendants and | ) | |
| Counter-Plaintiffs | ) | |

## **ORDER**

UPON CONSIDERATION of the Motion for Damages Suffered as a Consequence of Preliminary Injunction filed by Defendants/Counter-Plaintiffs, John B. Mann and Mann Technologies, LLC, and of the Plaintiffs' memorandum in opposition thereto, and for good cause shown, it is by the Court, this _____ day of _____, 2007, hereby

ORDERED, that the Motion be, and it is hereby, GRANTED; and it is further

ORDERED, that John B. Mann and Mann Technologies, LLC are awarded a judgment for damages against the Plaintiff, Ellipso, Inc., in the amount of $ _____.


_____
CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies:

VANESSA CARPENTER LOURIE, ESQ.
4400 MacArthur Blvd., N.W.
Suite #205
Washington, D.C. 20007-2521
vlourie@carpenterlourie.com

LINDA AWKARD, ESQ.
4201 Cathedral Ave., N.W.
Suite #1416W
Washington, D.C. 20016
lawkard@earthlink.net

CHRISTOPHER G. HOGE, ESQ.
CROWLEY, HOGE & FEIN, P.C.
1710 Rhode Island Avenue, N.W.
7th Floor
Washington, D.C. 20036
chfcgh@aol.com

ROBERT B. PATTERSON
P.O. Box 3106
Reston, VA 20195