IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELLIPSO, INC.                    )
                                 )
        Plaintiff,               )
                                 )
v.                               )        Civil Case No.: 05-01186
                                 )
JOHN B. MANN, et al.             )
                                 )
        Defendants.              )
                                 )

## AFFIDAVIT OF DAVID CASTIEL

1.      I am over the age of eighteen and otherwise competent to testify on all matters contained herein.

2.      At all relevant times I have been the Chief Executive Officer of Ellipso, Inc. and, as such, have personal knowledge of all facts contained herein.

3.      In or about December 2003, Ellipso entered into negotiations with Mann Technologies, LLC ("Mann Tech"), then purportedly a Nevada corporation, and having a principal place of business in Virginia, and John B. Mann (" Mann"), one of the founding members of Mann Tech, with respect to a loan Mann Tech proposed to make to Ellipso.

4.      Robert B. Patterson ("Patterson"), a business consultant for Ellipso since October 2002, initially was hired to identify debt and/or investor financing on favorable rates and terms and to protect Ellipso's intellectual property and assets.  In this role, Patterson introduced Ellipso to Mann Tech and John Mann and conducted much of the negotiations with Mann Tech and Mann on behalf of Ellipso.

5.      Although Patterson owed Ellipso, as its business consultant, fiduciary duties of loyalty and to act in Ellipso's best interests and not engage in self-dealing,

EXHIBIT

1

Patterson failed to disclose to Ellipso that Patterson was himself a member of Mann Tech. At no time prior to, during, or after the negotiations did Patterson, Mann or Mann Tech disclose to Ellipso the material fact that Patterson was a member of Mann Tech and, thus, had conflicting fiduciary duties.

6.     In fact, both Mann and Patterson were incorporators of Mann Tech and ignored the separate corporate existence of Mann Tech by commencing business without completing the organization of Mann Tech or any of the corporate formalities. Indeed, Mann and Patterson did not incorporate Mann Tech until February 25, 2004, nearly a month after they had entered the collateralized loan agreement with Ellipso on January 30, 2004. Moreover, Mann Tech never registered in Virginia, or the District of Columbia as a foreign corporation, jurisdictions where it conducted business.

7.     Having gained full knowledge of proprietary and confidential information regarding Ellipso and its then precarious financial condition in and about the last quarter of 2003 and of Ellipso's desperate and urgent need for financing, Patterson "negotiated" a loan agreement with Mann Tech, Patterson's own company, which provided Ellipso a loan of $90,000 and which was secured by over 492,000 shares of publicly traded ICO Global Communications (Holding) Ltd. ("ICOHA Shares") stock. See "Loan Documents," true and correct copies of which are attached hereto at Exhibit 1. As of December 2003, and as Patterson knew, the ICOHA Shares were Ellipso's sole asset of any significant value.

8.     The Loan Documents contained terms and conditions extremely favorable to Mann Tech, and onerous and unconscionable to Ellipso. Patterson presented the loan as Ellipso's only realistic financing option. Relying on the advice and counsel of

2

Patterson, Ellipso's financial consultant, and under severe financial duress, Ellipso executed the Loan Documents in January 2004.

9.      The Loan Documents required Ellipso to pledge all its ICOHA Shares as collateral for the loan.  Although the Loan Documents only required Ellipso to pledge its ICOHA Shares as collateral, Patterson later falsely advised Ellipso that the Loan Documents required that title and possession to the ICOHA Shares had to be transferred to and in the sole name of Mann Tech.  Thus, on or about August 12, 2004, UBS Financial Services in Washington, DC deposited the ICOHA Shares into Mann Tech's account pursuant to Patterson's instructions.  As a result, Ellipso lost all ownership and control of its major asset and Mann Tech wrongfully obtained full title and control of the ICOHA Shares.

10.      Despite the fact that Mann Tech never has provided Ellipso notice of a default as required under the Loan Documents,, and despite that the entire loan transaction was riddled with fraud, Mann Tech wrongfully exercised the power of sale provision in the Loan Documents without notice to Ellipso and, within the past seven months, has sold approximately 200,000 of the ICOHA Shares.

11.      The increasing value of the ICOHA Shares within the past seven months underscores the urgency of protecting the remaining unsold ICOHA Shares.  The ICOHA Shares recently have traded at or above $5.00.  Thus, even assuming the loan transaction was not a fraudulent scheme, the principal and any accrued interest of the $90,000.00 Mann Tech loan has been fully repaid and then some.  Indeed, Mann Tech, Mann and Patterson, in exercising the power of sale, already have illegally converted at least

3

$1,000,000.00 of Ellipso's assets and have the immediate power to sell and convert the remaining ICOHA Shares.

12.    The market value of the ICOHA Shares pledged to Mann Tech as of August 10, 2005 exceeds $2,500,00.00.

13.    A preliminary injunction is vital and essential to ensure that the remaining collateral is protected while Ellipso's claims are adjudicated and so that Ellipso can recover the ICOHA Shares from Mann Tech, a foreign corporation which no longer is authorized to conduct business; John Mann, a Virginia resident; and Robert Patterson, a disbarred Virginia and District of Columbia attorney and a Virginia resident. In fact, Patterson has served time in federal prison for, among other crimes, theft of government property. *See* Virginia State Bar Docket No.02-000-1882

14.    Mann Tech presently conducts no business and, aside from the ICOHA Shares and cash proceeds from the sale of a portion of the ICOHA Shares, has no other assets of substantial value which could be used to satisfy a judgment in Ellipso's favor on its claim for rescission.

I declare, pursuant to 28 U.S.C. § 1746 and under the penalty of perjury, that the foregoing is true and correct.

August 12, 2005
_____
Date

_____
David Castiel
CEO
Ellipso, Inc.

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ELLIPSO, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action No.: 05-01186 (RCL) |
| | ) | |
| **JOHN B. MANN, et al.** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### PLAINTIFF'S REPLY IN FURTHER SUPPORT
### OF ITS MOTION FOR PRELIMINARY INJUNCTION

Ellipso, Inc. ("Ellipso") respectfully submits the instant reply to Defendant John

Mann and Mann Technologies, LLC's (the "Defendants")[1] opposition to Ellipso's motion

for preliminary injunction and in further support thereof states as follows:

### Preliminary Statement

Rather than address the issues relevant to Ellipso's motion for preliminary relief

respecting the Defendants' fraudulent and unconscionable loan agreement with Ellipso,

Defendants dedicate an inordinate amount of ink to a completely separate agreement

between Ellipso and their co-defendant The Registry Solutions Co. ("Registry

Solutions").[2] The alleged ownership arrangement of Registry Solutions and the

contractual arrangement between Registry Solutions and Ellipso – which itself is

---

[1]     Although Ellipso, in its motion, requested that Defendant Robert Patterson also be enjoined, Patterson, to date, has successfully avoided personal service and has not otherwise agreed to service via mail delivery. Accordingly, while Ellipso continues to effectuate service on Patterson, it must withdraw its motion for preliminary injunction with respect to Patterson. Ellipso, therefore, seeks preliminary relief only against Defendants John Mann and Mann Technologies, LLC.

[2]     Defendants' focus on Registry Solutions is doubly perplexing given that, in a separate motion, Defendants have requested that the claims against Registry Solutions be dismissed because those claims are subject to a contractual arbitration clause.

**EXHIBIT**

**2**

voidable – simply is not relevant to the matter at hand. Rather, all that is relevant is the

loan agreement between Mann Technologies and Ellipso. Upon review of this

agreement, the circumstances surrounding its execution and the applicable case law, the

Court should grant Ellipso the requested preliminary relief and preclude the Defendants

from selling, transferring or otherwise removing from the jurisdiction the loan collateral.

<u>**Argument**</u>

**1.    Ellipso Is Likely to Succeed on the Merits of Its
        Rescission Claim**

Defendants contend that Ellipso is not likely to succeed on the merits because:

(1) the loam terms negotiated by Ellipso with Mann Technologies are the same terms

Ellipso previously negotiated with a different party and (2) Ellipso knew of co-defendant

Robert Patterson's ownership interest in Mann Technologies. Neither claim is correct or

supported in the record.

First, Patterson, on behalf of Ellipso, negotiated the terms of the loan agreement

with Mann Technologies, not Ellipso's owner, David Castiel. Patterson also negotiated

the prior, unconsummated loan agreement between Ellispo and Argyll Equities

("Argyll"). The differences between the two agreements, on their face, are striking.

For instance, the proposed deal with Argyll only required Ellipso to pledge

250,000 of its ICO Global Communications (Holdings) Ltd ("ICOHA Shares") stock as

collateral whereas the loan agreement with Mann Technologies required Ellipso to pledge

its <u>entire</u> holdings in ICOHA Shares. *Compare* Exhibit 1 to Motion for Preliminary

Injunction *to* Exhibit A attached hereto. In addition, unlike the loan agreement involving

Patterson's company Mann Technologies, the proposed agreement with Argyll did not

include a broker's fee payable to Patterson. *Id.* These two differences alone demonstrate

how Patterson, despite his fiduciary and contractual obligations to Ellipso, crafted the loan documents to benefit himself and his and John Mann's company, Mann Technologies.[3] [4] Moreover, the terms of default, without notice or opportunity to cure, smack of an environment for creating a contract of adhesion and an unequal bargaining position.

Second, although Defendants make much of Ellipso's alleged knowledge of Patterson's dual and conflicting loyalties as of September 2004 (pursuant to a jointly executed stock transfer), Defendants are unable to rebut the fact that, at the time of the negotiation and execution of the loan agreement and thereafter while Patterson continued to provide advice and counsel to Ellipso, Ellipso was unaware that Patterson was an owner of Mann Technologies and owed both Ellipso and Mann Technologies conflicting fiduciary duties. All Defendants state is that Patterson's ownership interest was common knowledge.

The Court may ask why there is no affidavit from Patterson if his conflicting roles were as commonly known to all parties as Defendants so claim. Moreover, given that Patterson once was a practicing attorney with several major firms, and John Mann

---

[3]     Defendants' claim that because David Castiel, Ellipso's CEO, is a well-educated businessman, he could not have been duped into executing an unconscionable agreement by Defendants and Patterson is, unfortunately, incorrect. Ellipso, through Castiel, relied on Patterson's advise and counsel to identify funding sources, negotiate the terms of financing arrangements and protect Ellipso's few substantial assets specifically because Ellipso, at the time, was in dire financial straits and such tasks were not Ellipso's strengths or expertise. Given that Patterson, a Harvard-trained attorney, supposedly was operating in Ellipso's best interests and had no disclosed conflicts, it was inherently reasonable for Ellipso to rely on Patterson's representation respecting the alleged fairness of the loan agreement.

[4]     Defendants' claim that because David Castiel, Ellipso's CEO, is a well-educated businessman, he could not have been duped into executing an unconscionable agreement by Defendants and Patterson is, unfortunately, incorrect. Ellipso, through Castiel, relied on Patterson's advice and counsel to identify funding sources and negotiate the terms of financing arrangements and protect Ellipso's precious few assets, specifically because Ellipso, at the time, was in dire financial straits and such tasks were not Ellipso's strengths or expertise. Given that Patterson, a Harvard-trained attorney, supposedly was operating in Ellipso's best interests and had no disclosed conflicts, it was inherently reasonable for Ellipso to rely on Patterson's representation respecting the alleged requirements of and fairness of the loan agreement.

obviously is a sophisticated business man, the Court would expect some memorialization of Patterson's conflicting roles and Ellipso's acknowledgement thereof.  There is no such written document because, as Defendants well know, no disclosure of Patterson's dual role was made to Ellipso.  Accordingly, for the reasons expressed in Ellipso's motion for preliminary injunction, it is likely to succeed on the merits of its claim for rescission and injunctive relief is warranted.

**B.     Ellipso Will Suffer Irreparable Harm Absent
        Injunctive Relief**

Although Defendants argue that Ellipso can be "adequately compensated in money damages" and thus no injunction should issue, *see* Defendants' Opposition at 4, Defendants' argument misses the mark.  The great weight of authority, which Defendants completely ignore, holds that preliminary relief always is available on an equitable claim to preserve a defendant's assets.  Deckert v. Independence Shares Corp., 311 U.S. 282, 290 (1940) (upholding preliminary injunction to freeze defendant's assets to ensure availability of remedy on rescission claim); Foltz v. U.S. News & World Report, 760 F.2d 1300, 1309 (D.C. Cir. 1985) (acknowledging that injunctive relief is appropriate to freeze *status quo* on a claim for equitable relief); Elliott v. Kiesewetter, 98 F.3d 47, 58 (3d Cir. 1996) (upholding preliminary injunction to freeze assets which were subject of equitable claims); e.g. Federal Sav. & Loan Ins. Corp. v. Dixon, 835 F.2d 554 (5th Cir. 1987); FTC v. H. N. Singer, Inc., 668 F.2d 1107 (9th Cir. 1982); Fairview Machine & Tool Co. v. Oakbrook Int'l, Inc., 77 F. Supp. 2d 199 (D. Mass. 1999); Reebok Int'l Ltd. v. Marnatech Enterprises, Inc., 737 F. Supp. 1521 (S.D. Cal. 1990).

Here, given the circumstances, especially considering Patterson's extensive legal training and experience and that he is a disbarred attorney once convicted of theft of

Government property and that Mann Technologies, despite John Mann's insincere assurances, has been operating without authorization in any jurisdiction, preservation of Mann Technologies only known assets – the ICOHA Shares and proceeds therefrom which Defendants fraudulently obtained from Ellipso – is warranted. Accordingly, injunctive relief should be granted.

**C.    The Balance of Hardships Favors Ellipso**

Defendants argue that the balance of hardships favors them because Ellipso has breached a separate agreement with Registry Solutions. That transaction, however, is not at issue.

Nor are Mann Technologies alleged efforts to implement 881 telephony service which it claims will be harmed if the ICOHA Shares are frozen. Of course, Mann Technologies is not a party to the Registry Solutions transaction with Ellipso and Mann Technologies has no authority under the loan agreement to implement 881 telephony services or otherwise participate in Ellipso's 881 business which is exclusively the purview of Ellipso.

Thus, it remains undisputed that the only party which will suffer any hardship is Ellipso if it is not granted preliminary relief. Mann Technologies' alleged hardship is illusory for it has no authority to conduct 881 telephony business and, given that it only now seeks access to the ICOHA Shares and proceeds therefrom after having been placed on notice of the instant litigation, fully demonstrates the need for preservation of the *status quo*.

## <u>Conclusion</u>

Based upon the foregoing, Ellipso, Inc. respectfully requests that this Court grant the preliminary relief requested herein and preclude Defendants from selling, transferring or removing from the jurisdiction the remaining ICOHA Shares and the cash proceeds from their previous sale of ICOHA Shares.

Respectfully submitted,

**LEFTWICH & LUDAWAY, LLC**

_____/s/_____
Mark S. Guberman (#442683)
1400 K Street, NW
Suite 1000
Washington, DC 20005
(202) 434-9109 (voice)
(202) 783-3420 (facsimile)

*Counsel for Ellipso, Inc.*

Ellipso's execution of the Sale Order in September 2004 did not constitute a ratification of the fraudulently induced Loan Agreement since the Sale Order did not fully apprise Ellipso of Patterson's ownership interest in Mann Tech and the ICOHA shares had already been misappropriated by the Mann Defendants when the Sale Order was signed.

As Ellipso has asserted several other claims against the Mann Defendants in addition to fraud and rescission, the District Court's granting of a preliminary injunction was appropriate in light of Ellipso's likelihood of success on the merits of these other claims. Since the remaining ICOHA shares in Mann Tech's possession represent Ellipso's sole asset of significant value and Mann Tech presently conducts no business and lacks any assets of substantial value which could be used to satisfy a judgment favorable to Ellipso, the District Court did not erroneously conclude that the potential harm to Ellipso in denying injunctive relief was far greater than any potential harm to the Mann Defendants should the injunction be granted.

## ARGUMENT

I.    **Standard of Review**

Review of the District Court's decision to grant preliminary injunctive relief is conducted under the extremely deferential "abuse of discretion" standard. *Friends for all Children v. Lockheed*, 746 F.2d 816, 835 (D.C. Cir. 1984). Deference is necessary because the decision to grant injunctive relief is typically based on

6

**EXHIBIT**

**3**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELLIPSO, INC.              )

        **Plaintiff and Counterclaim**   )
        **Defendant**                    )

        v.                         )      **Case No. 05cv01186 (RCL)**

JOHN B. MANN, et al.        )      **Judge: Royce C. Lamberth**

        **Defendants and Counterclaim**   )
        **Plaintiffs**                    )

## PLAINTIFF'S REPONSE TO FIRST REQUEST FOR ADMISSIONS

Pursuant to Federal Rule 36, Plaintiff, Ellipso, Inc., hereby submits the following response to request for admissions:

1.     Prior to Your execution of a document entitled Collateralized Loan Agreement dated Jan. 30, 2004, You knew of Robert Patterson's planned participation in Mann Technologies.

Response:     Denied.

2.     Prior to Your execution of a document entitled Collateralized Loan Agreement dated Jan. 30, 2004, You knew of Robert Patterson's planned financial interest in Mann Technologies.

Response:     Denied.

3.     Prior to Your execution of a document entitled Collateralized Loan Agreement dated Jan. 30, 2004, You communicated with John Mann or Robert Patterson or any other third party, concerning Robert Patterson's planned participation in Mann Technologies.

1

**EXHIBIT**

**4**

Response:     Denied.

4.     Prior to Your execution of a document entitled Collateralized Loan Agreement dated Jan. 30, 2004, You communicated with John Mann or Robert Patterson or any other third part, concerning Robert Patterson's planned financial interest in Mann Technologies.

Response:     Denied.

5.     Prior to Your signing a document entitled Amendment to Collateralized Loan Document dated August 2,2004, You knew of Robert Patterson's participation in Mann Technologies.

Response:     Denied.

6.     Prior to Your signing a document entitled Amendment to Collateralized Loan Document dated August 2,2004, You knew of Robert Patterson's financial interest in Mann Technologies.

Response:     Denied.

7.     Prior to Your signing a document entitled Amendment to Collateralized Loan Document dated August 2,2004, You communicated with John Mann or Robert Patterson or any other third part, concerning Robert Patterson's participation or financial interest in Mann Technologies.

Response:     Denied.

8.     Prior to receiving funds from the Mann Technologies' UBS account pursuant to the terms of the Amendment to Collateralized Loan Document dated August 2, 2004, You knew of Robert Patterson's participation or financial interest in Mann Technologies.

Response:     Denied.

2

34.     Your statement in Paragraph 5 of David Castiel's Declaration dated August 12, 2005, that "(a)t no time prior to, during or after the negotiations did Patterson, Mann or Mann Tech disclose to Ellipso the material fact that Patterson was a member of Mann Tech" is not factually correct.

Response:     Denied. Robert Patterson never disclosed his membership, he confessed it.

35.     John Mann has not engaged in any wrongful conduct concerning You.

Response:     Denied.

36.     Mann Technologies has not engaged in any wrongful conduct concerning You.

Response:     Denied.

37.     Your Board of Directors did not authorize You to file this lawsuit against John Mann or Man Technologies.

Response:     Objection. This request seeks information which is irrelevant and immaterial to this proceeding. This Defendant lacks standing to challenge actions by the Board of Directors.

38.     At no time prior to the execution of the document entitled Collateralized Loan Agreement dated Jan. 30, 2004, or the document entitled Memorandum of Agreement bearing the effective date of December 15, 2003 did you advise Mann or Mann Tech of Your agreement and arrangement with Sunburst Communications.

Response:     Objection. This Request seeks discovery on matters that are irrelevant to this proceeding. TRSC has been dismissed from this proceeding and any dispute involving TRSC is subject to binding arbitration. However, subject to the above objection, this Request is denied.

39.     You executed the document entitled Memorandum of Agreement bearing the effective date of December 15, 2003 in January 2004.

Response:     Admitted.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELLIPSO, INC.                          )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )      Civil Action No.: 05-01186 (RCL)
                                       )
JOHN B. MANN, et al.                   )
                                       )
                                       )
        Defendants.                    )
_____)

### PLAINTIFF'S ANSWERS TO INTERROGATORIES OF JOHN MANN AND MANN TECHNOLOGIES, LLC.

Pursuant to Rules 26 and 33 of the Superior Court Rules for the District of Columbia, Plaintiff Ellipso, Inc., through undersigned counsel, hereby submits the following responses to Defendant John Mann and Mann Technologies, LLC, Interrogatories and states as follows:

### GENERAL OBJECTIONS

a.      Ellipso objects to the Requests to the extent they call for disclosure of confidential information or documents protected by the attorney-client, work product, or other privilege or protection.

b.      Ellipso objects to the Requests to the extent they call for disclosure of information prepared or obtained in anticipation of litigation and/or trial preparation material without the showing required under the rules of this Court.

c.      Ellipso objects to the Requests to the extent they call for disclosure of information not relevant to the issues raised in this lawsuit, and not reasonably calculated to lead to the discovery of admissible evidence.

**EXHIBIT**

**5**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ANSWERS TO INTERROGATORIES

**Interrogatory No. 1:**     Please describe each instance (oral, written or otherwise) in which You first learned of any aspect or element of Defendant Robert Patterson's role or interest in Mann Technologies, L.L.C.  Include in Your answer all details including the circumstances, date, location, identity of documents, and person or persons involved in or present at each such instance or disclosure and describe, in detail, the information learned.

ANSWER:     I first learned of Robert Patterson's interest in Mann Technologies, L.L.C., following the parties' execution of the Joint Sale Order on or about August 12, 2004. Mann, Patterson and I had met at a Starbucks coffee shop for a meeting.  Following the meeting, Patterson confessed his financial interest in Mann Technologies.  I asked him if that did not create a conflict of interest.  He responded "yes" and something to the effect that he "hoped it didn't come down to that."  No other persons were involved or present during these discussions.

**Interrogatory No. 2:**     Please describe each and every action You took in consequence of each instance You describe in Your answer to Interrogatory No. 1, regarding Defendant Robert Patterson's role or interest in Mann Technologies, L.L.C.

ANSWER:     I sought the advice of counsel in November/December 2004.

**Interrogatory No. 3:**     Please describe each instance (oral, written or otherwise) in which You first learned of any aspect or element of Defendant Robert Patterson's role or interest in The Registry Solutions Company.  Include in Your answer all details including the circumstances, date, location, identity of documents, and person or persons involved

1

```
 1            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
 2    - - - - - - - - - - - - - -x
                                  :
 3    ELLIPSO, INC.,              :
                                  :
 4       Plaintiff/Counterclaim   :
         Defendant,               :
 5                                :
         v.                       : Case No. 05-cv01186(RCL)
 6                                :
      JOHN B. MANN, et al.,       :
 7                                :
         Defendants/Counterclaim  :
 8        Plaintiffs.             :
                                  :
 9    - - - - - - - - - - - - - -x
```

10                          Reston, Virginia

11                          Wednesday, May 2, 2007

12           Deposition of DAVID CASTIEL, Witness, called for

13   examination by counsel for the Defendant/Counterclaim

14   Plaintiff, at the Metro Offices, 11710 Plaza America,

15   Reston, Virginia, before Diana L. Cox, CCR, a stenographic

16   reporter and notary public in and for the District of

17   Columbia, commencing at 10:20 a.m., when were present on

18   behalf of the respective parties:

19

20

21

22

**EXHIBIT**

**6**

115

```
 1            MR. GOODMAN:  That's fine.  And if it

 2    turns out that the judge finds that I was improper

 3    in analyzing the question and making sure it wasn't

 4    misleading and didn't have a foundation, then so be

 5    it.  But I am confident that it will not reflect

 6    that.

 7    BY MR. PATTERSON:

 8        Q    Let's take this a step at a time.  Dr. Castiel

 9    you signed the August 2nd amendment, correct?

10        A    Yes.

11        Q    And your testimony is that when you signed the

12    August 2nd amendment, you did not know what Mr.

13    Patterson's interest in Mann Technologies was; is that

14    correct?

15        A    That's correct, the interest ownership.

16        Q    Right, ownership interest, right.

17        A    I knew he had a kickback from Mr. Mann, though.

18        Q    Right.  Now, how did this lack of knowledge of

19    Mr. Patterson's ownership interest in Mann Tech harm

20    Ellipso?

21        A    Is that the end of the question?

22        Q    Yes.
```



**No Splits**

Get another quote any day after 1/2/1970

1/2/1970

Symbol: [          ]    Date: [ 8/19/2005 ]    [ Go ]

Copyright © 1999-2008 BigCharts.com Inc. All rights reserved.
Please see our Terms of Use. Historical and current end-of-day data provided by FT Interactive Data.



Copyright © 2008 Dow Jones & Company, Inc. All Rights Reserved

**EXHIBIT**

**7**



## HISTORICAL QUOTES                                    Help ?   CLOSE

**Ico Global Comm Hldgs Ltd De (ICOG)**

(NASDAQ GM)    U.S. Dollar

| Date | Price | High | Low | Volume |
|------|-------|------|-----|--------|
| 11/2/05 | **3.98** | 3.98 | 3.98 | 900 |

### No Splits

Get another quote any day after 1/2/1970

1/2/1970

**Symbol:** [        ]    **Date:** 11/02/2005    [ Go ]

Copyright © 1999-2008 BigCharts.com Inc. All rights reserved.
Please see our Terms of Use. Historical and current end-of-day data
provided by FT Interactive Data.



THE WALL STREET JOURNAL

A Unique Perspective of the '08 Campaign Trail
from the eyes of The Wall Street Journal opinion editors

SIGN UP NOW

Copyright © 2008 Dow Jones & Company, Inc. All Rights Reserved



### HISTORICAL QUOTES

Help ❓    CLOSE

**ico Global Comm Hldgs Ltd De (ICOG)**

(NASDAQ GM)    U.S. Dollar

| Date | Price | High | Low | Volume |
|------|-------|------|-----|--------|
| 4/1/08 | **3.49** | 3.5 | 3.05 | 243,300 |

2 Month (Daily)    ©BigCharts.com

**No Splits**

Get another quote any day after 1/2/1970

1/2/1970

**Symbol:** [        ]    **Date:** 4/01/2008    [ Go ]

1mo   2mo   3mo   6mo   1yr   3yr   5yr

Copyright © 1999-2008 BigCharts.com Inc. All rights reserved.
Please see our Terms of Use. Historical and current end-of-day data
provided by FT Interactive Data.



Copyright © 2008 Dow Jones & Company, Inc. All Rights Reserved

**DECLARATION OF JOHN B. MANN UNDER PENALTY OF PERJURY**

1.  I am over the age of eighteen and competent to testify from personal knowledge on the matters set forth herein.

2.  I am an engineer and business consultant. I reside in Warrenton, Virginia.

3.  On or about August 19, 2005, I was served with Ellipso's Motion for Preliminary Injunction seeking to, among other things, enjoin Mann Tech from selling any of its ICO stock.

4.  On advice of counsel Thomas Mauro, Esq., I refrained from selling any ICO stock while the Court was considering the Motion.  At the time of service of Ellipso's Motion on August 19, 2005 and thereafter, MannTech was still in possession of 37,611 shares of ICO stock.  After this Court ordered the Preliminary Injunction, MannTech was unable to lawfully sell the ICO stock.

5.  As a result of the Preliminary Injunction, MannTech was forced to terminate all business activities due to a lack of capital and the uncertainty that the Preliminary Injunction imposed on Mann Tech's credibility and business activities.

I declare, pursuant to 28 U.S.C. Sec. 1746 and under the penalty of perjury, that the foregoing is true and correct to the best of my personal knowledge and belief.


Date: July 14, 2008

_John B. Mann_

John B. Mann

**EXHIBIT**

**8**