UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELLIPSO, INC.,                              )
                                            )
            Plaintiff and                   )
            Counter-Defendant               )
                                            )
v.                                          )        Civil Action No. 05-1186 (RCL)
                                            )
JOHN B. MANN, *et al.*,                     )
                                            )
            Defendants and                  )
            Counter-Plaintiffs              )


**MANN DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO PARTIALLY QUASH SUBPOENAS**

Come now John B. Mann and Mann Technologies, LLC, Defendants and Counter-Plaintiffs herein (collectively the "Mann Defendants"), by their undersigned counsel, and respectfully submit their Memorandum in Opposition to Motion to Partially Quash Subpoenas.


**I.  INTRODUCTION**

The Mann Defendants, through the subpoenas in question, seek certain designated information from UBS files for the period November 1, 2003 through June 30, 2005, concerning the following entities owned or controlled by David Castiel:  Ellipso, Inc.; Ellipso Private Holdings, Inc.; ESBH; which is a subsidiary of Ellipso, Inc.; and Mobile Communications Holdings, Inc. ("MCHI").

The Mann Defendants seek from David Castiel certain information regarding Ellipso, Inc.; Ellipso Private Holdings, Inc.; and Mobile Communications Holdings, Inc.

As to Ellipso Private Holdings and ESBH, Ellipso has previously asserted[1] that UBS holds no account information concerning them. So the only issue before the Court concerning the UBS subpoena is whether the Mann Defendants are entitled to the information requested from UBS concerning Ellipso, Inc. and MCHI.

Because the Complaint and other pleadings filed by Plaintiff, including the instant motion to quash, have put the financial condition of Ellipso at the time of the January 30, 2004 Loan Agreement squarely at issue, it is disingenuous, to say the least, for Ellipso now to claim that documents pertaining to its finances are irrelevant.  Moreover, the Loan Agreement itself contains misrepresentations by Ellipso for which Mann Tech has counterclaimed.  Among the specific allegations of the counterclaim are that, in requesting the loan, Ellipso "misrepresented Ellipso's significant legal problems, namely that Ellipso had ongoing litigation with several individuals and entities, this despite Castiel and Ellipso representing in the Loan Agreement that there were no lawsuits", and "misrepresented the state of Ellipso's respective businesses, namely that it was bankrupt or verged on bankruptcy, owed very large amounts in legal fees, and had serious financial problems".  Mann Defendants' Counterclaim, par. 43.

UBS is the banking and brokerage institution where Ellipso and its affiliates banked and traded their ICO stock at times pertinent to this case.   UBS has not objected to the subpoena, and its counsel has represented to counsel for the Mann Defendants that responsive documents are ready for delivery upon the Court's ruling on this motion.

---

[1] Ellipso's Memorandum in Support of the Motion for Protective Order and Motion to Quash Subpoena, Document 105, pgs 8-9.

## II.  ARGUMENT

### A.  The Financial Records of Ellipso and MCHI are Relevant To Issues Raised in both the Complaint and the Counterclaim.

Ellipso argues that the subpoenas should be partially quashed because the financial records requested from Ellipso and its affiliates and from UBS are not relevant to its claims or to the Mann Defendants' Counterclaim.  Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion to Partially Quash Subpoenas ("Plaintiff's Memorandum"), at p. 5. However, a review of Ellipso's Complaint and Mann Tech's Counterclaim[2] clearly reveals the fallacy of Plaintiff's argument.

First, the Motion itself concedes the relevancy of the information sought.  In the preliminary pages of its supporting Memorandum, Ellipso asserts that Defendant Patterson used secret information he had about Ellipso's "precarious financial state" (Plaintiff's Memorandum at p.1) as a basis for the fraud it claims the Mann Defendants committed against Ellipso.  "As a result, Ellipso lost all ownership and control of its major asset, and Mann Tech obtained full title and control of the ICOHA shares." (*Id.* at p. 2). It was on the strength of such allegations, in part, that this Court issued its preliminary injunction freezing the remaining ICO shares held by the Defendants. (Motion for Preliminary Injunction, ¶ 5: "As of December 2003, the ICOHA Shares were Ellipso's sole asset of any significant value";  Castiel Affidavit, August 16, 2005, ¶7: "As of December 2003, and as Patterson knew, the ICOHA Shares were Ellipso's sole asset of any significant value".)

_____

[2]Counts One and Two of the Counterclaim survived summary judgment and will be tried.

3

Nevertheless, Ellipso asserts in its Motion that "[T]he financial records of Ellipso and its affiliates which have been subpoenaed are not relevant to any issue raised by the parties." (Plaintiff's Memorandum, at p. 5), and that "Ellipso's financial situation prior to, during, and following execution of the Loan Agreement has no relevancy to this litigation...." (*Id.*, at pp. 6-7). Thus, Plaintiff asserts the irreconcilable propositions that for purposes of its Complaint Ellipso's "precarious financial condition" and the loss of its "major asset" or its "sole asset" at the hands of the allegedly nefarious Defendants are to be accepted as significant allegations, but for the purposes of this Motion those allegations are irrelevant.

In fact, the pleadings in this case make Ellipso's financial condition expressly relevant. In their Answers, the Mann Defendants have expressly denied the allegations in the Complaint as to Ellipso's financial condition, and thus placed the financial condition of Ellipso and its wholly owned affiliates squarely at issue. The following allegations of the Complaint and responses in the Mann Answers are illustrative:

> Complaint, ¶14: "As Ellipso's trusted and principal business consultant, Patterson had access to significant confidential and proprietary
> information regarding Ellipso and knew that Ellipso, in 2002, 2003 and 2004, was experiencing severe cash flow problems and desperately needed a cash infusion."

> Answer, ¶14: "Mann is without sufficient information or knowledge to form a belief as to the truth of the allegations of Paragraph 14 and therefore denies each of them."

> Complaint, ¶18: "At the time of the introduction, Patterson in his fiduciary capacity, was well aware of Ellipso's severe cash flow problems and the attendant need for an immediate cash infusion ... "

> Answer, ¶18: "Mann is without sufficient information or knowledge to form a belief as to the truth of the allegations of Paragraph 18 and therefore denies each of them."

Complaint, ¶39: "As described above, Ellipso, at the time of its execution of the Loan Documents and as Mann Tech knew through Patterson, was in a distressed financial condition and desperately needed an infusion of cash; thus, Ellipso agreed to pledge over 492,000 ICOHA Shares for a loan of only $90,000."

Answer, ¶39: "Mann is without sufficient information or knowledge to form a belief as to the truth of the allegations of the first sentence of Paragraph 39 and therefore denies each of them. Defendant Mann denies each of the remaining allegations in the Paragraph."

Complaint, ¶40: "As a result of Mann Tech's failure to disclose a material fact, the unconscionable language of the Loan Documents and that Ellipso executed the Loan Documents under economic duress, the Loan Documents are voidable and must be rescinded."

Answer:, ¶40: "Paragraph 40 contains conclusions of law and argument of counsel to which no response is necessary. Insofar as a response may be deemed necessary, it is denied as to each allegation."

Complaint, ¶53 (a) [Mann Technologies breached its covenant as a Lender by, inter alia]: "Taking advantage of the necessitous circumstances the Lender created by causing language of the loan documents to be drafted solely in Lender's interest and structuring a mechanism which allowed Lender to obtain all of the ICOHA Shares while Lender manipulated the cash flow which was to be made by Ellipso through the Registry Business and Purchase Agreement which were to be utilized to make payments on the loan;" and (c) "Preventing Ellipso from performing under the loan documents."

Answer, ¶53: "Paragraph 53 contains conclusions of law, unintelligible cross references and conclusory allegations of fact, and argument of counsel to which no response is necessary. Insofar as a response may be deemed necessary, it is denied as to each allegation."

Complaint, ¶84: " ... Patterson represented, purportedly in his independent judgment, that the loan transaction with Mann Tech was the best deal on the best terms Ellipso could obtain given its financial condition."

Answer, ¶84: "Denied as to each allegation."

These allegations made by Ellipso itself go directly to its financial condition and were directly contradicted in the Mann answers. Accordingly, it is at the very least reckless, if not bad faith, to argue, as Ellipso does in the instant Motion, that "Ellipso's financial information is not

relevant to any issue raised by the parties." (Plaintiff's Memorandum at p. 5.)

If that were not enough, Mann Tech's contention in its counterclaim that Ellipso, in seeking the loan, misrepresented its financial condition makes the Ellipso financial records highly relevant. The Collateralized Loan Agreement at the center of this controversy contains the following "Representations and Warranties of Borrower":

> **3.1 <u>No Liens or Restrictions.</u>** The Borrower is the direct legal and beneficial owner of record of the Collateral as of the date of this Loan Agreement. *Collateral is free of any restriction, including restrictive legends. The collateral is freely tradable and transferable.*
>
> **3.4 <u>Litigation.</u>** There is no action or proceeding pending, contemplated or threatened against Borrower before or by any court, arbitrator, grand jury or administrative agency ... which might result in a material adverse change in the financial condition of the Borrower.
>
> **3.5 <u>No Defaults.</u>** Borrower is not in default in the payment or performance of any of his [sic] obligations or in the performance of any contract, agreement or other instrument to which he [sic] is a party or by which any of his [sic] assets or properties may be bound.

Exhibit 2 to Complaint (emphasis supplied).

All of these representations and warranties were demonstrably false. Accordingly, the financial condition of Ellipso and the other information sought in the subpoenas is clearly relevant to these counterclaim allegations.

Finally, the Mann Defendants note that the interrelationship between Ellipso and its wholly owned subsidiary, MCHI, justifies a subpoena for information relating to MCHI for several reasons. First, the evidence will show that MCHI assets have routinely been used, at critical times during the relevant period, to satisfy the business and contractual obligations of Ellipso, Inc. Further, among the false statements made by Ellipso in the loan documents were representations

that Ellipso owned the ICO stock and that the stock was freely tradable without any restrictive

legends.  The Mann Defendants must determine the history of the Ellipso transactions in ICO

stock to determine if such assertions were true at the time they were made.  Ellipso's President,

Mr. Castiel, could not himself distinguish between the two entities when he swore that the ICO

shares at issue came from MCHI[3], when they actually came from Ellipso[4].   By claiming they came

from MCHI, Castiel put MCHI's transactions at UBS into issue.   As an example of the purposeful

confusion surrounding the various Castiel entities, in another case brought by one of Castiel's prior

employees and consultants for consulting fees,  Magistrate Judge Facciola was forced to refer to

the Ellipso companies simply as the "Castiel entities" when he could not sort them out, even after

a trial.  *See, John E. Draim* v. *Virtual Geosatellite Holdings, Inc., et aI.,* Civil Action Nos. 01-

2690 and 02-0775 (consolidated), Findings of Fact, Conclusions of Law and Order, December 12,

2006, and Memorandum Opinion, March 14, 2007. (Judgment entered against the Castiel entities

in the amount of $78,125.02)

---

[3] Ellipso's Memorandum in Support of the Motion for Protective Order and Motion to
Quash Subpoena, Document 105 , Exhibit 2 ¶5)

[4] Plaintiff's Reply to Opposition to Motion for Protective Order and to Quash Subpoena
Issued to ICO Global Communications (Holdings), Inc. (Document 113, pg. 2 footnote 2)

**B.  Ellipso's Laptop Computer and the Electronic Form of its Emails
Contain Relevant Information Not Produced by Ellipso in Discovery.**

Ellipso argues at pp. 5-6 of its supporting Memorandum that the subpoena is a burden in that " [T]he defendants have equal access to all electronic correspondence among Ellipso and the defendants" and that the "probative value of the requested information is outweighed by the resulting prejudice to Ellipso..."   This argument ignores the fact that Ellipso's CEO, Mr. Castiel, has failed to produce many relevant emails between himself and Robert Patterson, and his explanations of "computer failures" do not explain their absence in the presence of contemporaneous emails that Ellipso <u>has</u> produced.  For example, the critical November 16, 2004 email from Castiel to Patterson, which this Court largely relied upon in granting partial summary judgment to the Mann Defendants, was never produced in discovery by Ellipso; it came from Robert Patterson.  Moreover, Ellipso has yet to produce *any* emails from the critical period prior to June, 2004, when, this Court has found, Mr. Castiel knew of Mr. Patterson's participatory interest in Mann Tech.  In contrast, the Mann Defendants and Patterson have produced emails from the entire relevant period - November, 2003 through June, 2005.

Additionally, at his deposition Mr. Castiel claimed to be unable to verify the authorship, or even the existence, of several attachments to various emails.  The electronic form of these emails (contained on his laptop) will contain electronic signatures, or "metadata", that will easily resolve any confusion regarding the provenance of such attachments.

Finally, Ellipso has itself subpoenaed the Mann Defendants' laptop and electronic communications.  The Mann Defendants do not object to this request.

### C.  The Minutes of Ellipso's Board of Directors' Meetings Are Relevant as to the Extent to which the Board was Informed of Ellipso's and Castiel's Fund-Raising Activities.

Several email communications between Castiel, Mann and Patterson refer to Ellipso's Board of Directors and its involvement, or lack thereof, in the loan agreement and amendments thereto which are the heart of Ellipso's case.   The Mann Defendants seek to know to what extent the Board of Directors was formally or informally involved in the loan negotiations.  Given that such Board meetings generally took place once a quarter, it is hardly a burden for Ellipso to produce the six or seven sets of minutes asked for in the subpoena.

### D.  Ellipso's Claims of Confidentiality, Privilege and Protection of its Financial, Customer and Business Information Should be Addressed by a Protective Order, which Ellipso has not Requested.

Strangely, Ellipso has not suggested a Protective Order for such information.  The Mann Defendants would be pleased to agree to such an Order.  However, the rationale behind any such request appears flimsy in light of the fact that the requested information is over three years old, and covers a time period when, by Ellipso's own admission, it had little or no business activities other than litigation.

9

### III.  CONCLUSION

Ellipso's Complaint and its associated Motion for Preliminary Injunction are replete with references to its desperate financial condition, the Defendants' purported conspiracy to maneuver Ellipso into a financially disadvantageous position, and the Mann Defendants' alleged illegal acts in taking advantage of the unequal bargaining position they purportedly created. The Mann Defendants need access to information about Ellipso's and its subsidiaries' financial condition, and about ICO stock transactions in which they engaged, to defend against these hotly contested fraud claims.

After having put its financial condition directly at issue through its pleadings, Ellipso cannot now assert that its condition is irrelevant merely for the purpose of obstructing these proceedings, hoping that at this late juncture such transparent inconsistencies will not be exposed. The easy way for Ellipso to have avoided subpoenas that it finds "annoying" or "vexatious" would have been to make good faith discovery and avoid engaging in frivolous motions practice.  Their Motion to Quash should be denied and the Mann Defendants should be awarded their costs of opposing it, including reasonable attorney's fees.

Respectfully submitted,

/s/ Christopher G. Hoge
Christopher G. Hoge #203257
Counsel for Defendants/Counter-Plaintiffs
John B. Mann and Mann Technologies, LLC

CROWLEY, HOGE & FEIN, P.C.
1710 Rhode Island Avenue, N.W.
7th Floor
Washington, D.C.  20036
(202) 483-2900

10

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that true copies of the foregoing Opposition were, this

22nd day of July, 2008, served electronically upon:

> VANESSA CARPENTER LOURIE, ESQ.
> 4400 MacArthur Blvd., N.W.
> Suite #205
> Washington, D.C.  20007-2521
> Co-Counsel for Plaintiff/Counter-Defendant

and via first class mail, postage prepaid, upon:

> LINDA AWKARD, ESQ.
> 4201 Cathedral Ave., N.W.
> Suite #1416W
> Washington, D.C. 20016
> Co-Counsel for Plaintiff/Counter-Defendant

> ROBERT B. PATTERSON
> P.O. Box 3106
> Reston, VA 20195
> Defendant/Counter-Plaintiff *Pro Se*

> /s/ Christopher G. Hoge
> Christopher G. Hoge

cgh/z/wpdirs/civil
mannoppmtnquash .wpd

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELLIPSO, INC.,                          )
                                        )
            Plaintiff and               )
            Counter-Defendant           )
                                        )
        v.                              )        Civil Action No. 05-1186 (RCL)
                                        )
JOHN B. MANN, *et al.*,                 )
                                        )
            Defendants and              )
            Counter-Plaintiffs          )

## **ORDER**

UPON CONSIDERATION of the Motion to Partially Quash Subpoenas filed by

Plaintiff/Counter-Defendant, and of the Mann Defendants' memorandum in opposition thereto,

and for good cause shown, it is by the Court, this _____ day of _____, 2008, hereby

            ORDERED, that the Motion be, and it is hereby, DENIED.


                    _____
                    CHIEF JUDGE
                    UNITED STATES DISTRICT COURT

Copies:

VANESSA CARPENTER LOURIE, ESQ.
4400 MacArthur Blvd., N.W.
Suite #205
Washington, D.C.  20007-2521
vlourie@carpenterlourie.com

LINDA AWKARD, ESQ.
4201 Cathedral Ave., N.W.
Suite #1416W
Washington, D.C.  20016
lawkard@earthlink.net

CHRISTOPHER G. HOGE, ESQ.
CROWLEY, HOGE & FEIN, P.C.
1710 Rhode Island Avenue, N.W.
7th Floor
Washington, D.C.  20036
chfcgh@aol.com

ROBERT B. PATTERSON
P.O. Box 3106
Reston, VA 20195