UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELLIPSO, INC., | ) | |
| | ) | |
| Plaintiff and | ) | |
| Counter-Defendant | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1186 (RCL) |
| | ) | |
| JOHN B. MANN, *et al.*, | ) | |
| | ) | |
| Defendants and | ) | |
| Counter-Plaintiffs | ) | |

**TRIAL BRIEF OF MANN DEFENDANTS**

John B. Mann and Mann Technologies, LLC, Defendants and Counter-Plaintiffs herein (collectively the "Mann Defendants"), by their undersigned counsel, hereby submit their Trial Brief addressing certain legal issues expected to be raised at the trial.

**I.  INTRODUCTION**

This Court is already familiar with the major allegations and many of the facts involved in this case, so the Mann Defendants will not present yet another discussion of what this case is about.  They do, however, wish to emphasize that their main defense to the remaining counts of the Complaint is quite simple - they engaged in no fraud or conspiracy, and Dr. Castiel has engaged in numerous misrepresentations both before and during this litigation.  The evidence of such misrepresentations is ample and will be presented in due course at trial.

However, there are certain legal issues which must also be addressed during trial, and this document is designed to familiarize the Court with the Mann Defendants' position regarding such issues.

## II. DISCUSSION OF ISSUES

**A. Ellipso waived any claim for fraud damages by affirming the contract through continued performance under its terms.**

Ellipso waived any action for damages when it continued to perform under the terms of the loan agreement after its discovery of the alleged fraud. As the District of Columbia Court of Appeals held in *Horning v. Ferguson*, 52 A.2d 116, 118 (D.C. 1947), a party to an executory contract who learns he has been induced by fraud to enter into the contract and then insists on performance with knowledge of the fraud waives any claim for damages. Allowing recovery under such circumstances would effectively be awarding damages for "self-inflicted injuries." *Id.* These principles were later applied by the District of Columbia Court of Appeals in *Simon v. Rossier,* 127 A.2d 394, 395 (D.C. 1956), in which defrauded homebuyers were found to have waived their action for damages for fraudulent misrepresentations by their builder, since they had repeatedly urged the builder to move forward with the plans, even after learning the home would not be built and delivered as represented. "By urging that the other party proceed with performance a new contract is made. . . . Any fraud with respect to delivery in sixty days was waived." *Id.*

The loan agreement between Ellipso and Mann Tech was an executory contract at the time when Ellipso, with full, unequivocal knowledge of Patterson's role in Mann Tech, continued to perform under its terms. An executory contract is "a contract that remains wholly unperformed or for which there remains something still to be done on both sides, often as a component of a larger transaction and sometimes memorialized by an informal letter agreement, by a memorandum, or by oral agreement." *Black's Law Dictionary* (8th ed. 2004) (Westlaw).

2

*See also Lee v. Cherry*, 812 S.W.2d 361, 363 (Tex. App. 1991) (characterizing an executory contract as "one that is still unperformed by both parties or one with respect to which something still remains to be done on both sides").  The amendment to the loan agreement negotiated and executed by Ellipso, Mann Tech and Patterson on August 2, 2004, created additional obligations and called for further activities to be performed by both Ellipso and Mann Tech.  This amendment required Ellipso's transfer of 492,111 ICOHA shares to Mann Tech, detailed the conditions of their sale by Mann Tech, and mandated distribution of the proceeds by Mann Tech.  By this point, Ellipso was fully aware of the nature and extent of Patterson's relationship with Mann and in fact, had been for several months.  *Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365, 371 (D.D.C. 2008) ("Ellipso had knowledge of Mr. Patterson's stake in Mann Tech no later than June 2004.").

The August 2, 2004 amendment provided that "[a]ll shares not sold shall be subject to the terms of the original January 16, [sic] 2004 Loan Agreement." (Mann Trial Ex. 15).  Thus, the parties contemplated that they would be bound by the original terms of the Collateralized Loan Agreement to the extent that they were not modified by the August amendment.

Ellipso's execution of the amended agreement and its subsequent actions pursuant thereto constituted continued performance under the loan contract.  *Id.* at 372.  Ellipso accepted an additional $10,000 from Mann Tech on August 12, 2004, transferred the 492,611 ICOHA shares to Mann Tech on August 24, 2004, and accepted $5,934 from the proceeds of Mann Tech's sale of 25,000 ICOHA shares on August 27, 2004.  *Id.*  Ellipso's continued performance in affirmation of the loan agreement *after* its discovery of Patterson's relationship with Mann Tech constituted a waiver of any action for damages.  Any claimed harm Ellipso suffered as a result of

3

its actions after August 2, 2004 amounts to nothing more than "self inflicted injuries." *Horning*, 52 A.2d at 118.

**B. Ellipso's claim of fraud must fail because it is unable to prove any cognizable damages.**

Assuming, *arguendo*, that the Mann Defendants violated a duty to disclose Patterson's involvement in Mann Tech prior to execution of the loan agreement, and that there was no affirmation by Ellipso after the discovery of the fraud, Ellipso's claim of fraud cannot stand due to the lack of evidence of any cognizable damages.

The plaintiff in an action for fraud has the high evidentiary burden of proving each of the requisite five elements of the claim by "clear and convincing evidence." *Hercules & Co. v. Shama Restaurant Corp.*, 566 A.2d 31, 39 n. 16 (D.C. 1989). In addition to proving each element of the claim, it is "crucial" that a plaintiff demonstrate that "'provable damages' resulted from the fraud." *Kitt v. Capital Concerts, Inc.*, 742 A.2d 856, 860-61 (D.C. 1999) (citing *Dresser v. Sunderland Apartments Tenants Ass'n*, 465 A.2d 835, 839 (D.C. 1983)); *see also Day v. Avery,* 548 F.2d 1018, 1029 (D.D.C. 1976) ("[A] *sine qua non* of any recovery for misrepresentation is a showing of pecuniary loss proximately caused by reliance on the misrepresentation."). The plaintiff must show that there is a "causal connection between the misrepresentation and the injury . . . charge[d]." *Day,* 548 F.2d at 1028. The damages alleged must be "clearly defined and ascertained" and must not be speculative. *Nartex Consulting Corp. v. Watt*, 722 F.2d 779, 793, 793 n. 22 (D.D.C. 1983) (citing 37 Am. Jur. 2d. *Fraud & Deceit* §343 at 461).

4

Damages for fraud in this jurisdiction are awarded based on the defrauded party's out of pocket losses, known as the "out of pocket" rule.  Under this rule, the measure of damages in a claim alleging fraud in a sales transaction is the "difference between the amount paid and the market value of the thing acquired."  *Horning*, 52 A.2d at 119..   However, this case is not about fraud in connection with a sale, so the *Horning* formula is inapplicable.  The only damages Ellipso may legitimately recover are any pecuniary losses it can prove by clear and convincing evidence that it suffered as a direct consequence of the alleged fraud.  *Nartex*, 622 F.2d at 793.  Thus far, Ellipso has utterly failed to even suggest a formula by which its damages can be assessed.

Ellipso's claim for restitution of the ICOHA shares was rejected by this Court when it ruled that Ellipso's affirmation of the loan agreement in August, 2004 precluded it from the remedy of rescission.  *Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365, 374 (D.D.C. 2008).

In the Joint Pretrial Statement, Ellipso also claims that, but for its execution of the loan agreement with Mann Tech, it would have retained possession of the collateralized ICOHA shares and avoided a substantial loss of revenue.  This claim is speculative and inconsistent with its repeated and unsuccessful attempts, prior to executing the loan agreement with Mann Tech, to sell the ICOHA stock or offer it as collateral in exchange for investment capital to fund Ellipso's various business ventures.  (Mann Trial Ex.'s 3, 5, 8, 9, 21.)  Ellipso's claim that Mann Tech's exercise of control over the collateral, pursuant to the terms of the loan agreement, forced Ellipso to generate cash in late 2004 at a time when the value of the stock was at its lowest is similarly speculative.  *Nartex Consulting Corp.*, 722 F.2d at 793 n. 22.

Ellipso further claims damages for loss of business opportunity which it vaguely contends caused it to suffer "large[] losses" as a result of not having the collateralized ICOHA shares at its disposal.  Damages claimed for a lost business opportunity should represent the plaintiff's "'opportunity cost, or the return it could have made on an alternative investment of the funds' not spent on the foregone opportunity." *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 997 F.2d 949, 954 (D.C. Cir. 1993) (citing *Fishman v. Estate of Wirtz*, 807 F.2d 520, 555 (7th Cir. 1986). Ellipso presents no evidence of any specific alternative investments it passed up as a result of its execution of the loan agreement with Mann Tech.

Ellipso's claim for punitive damages is also unavailing.  Punitive damages are generally disfavored in the District of Columbia.  *Feltman v. Sarbov*, 366 A.2d 137, 140 (D.C. 1976).  In order to recover punitive damages in an action for fraud, it must be shown by clear and convincing evidence that the tort was "accompanied by outrageous conduct such as maliciousness, wantonness, gross fraud, recklessness and willful disregard of another's rights." *Chatman v. Lawlor*, 831 A.2d 395, 400 (D.C. 2003).  Proof of fraud by itself is insufficient to justify an award of punitive damages.  *Id.* n. 8.   Ellipso has no evidence of the presence of any of the requisite aggravating circumstances to justify an award of punitive damages.

Since Ellipso has not demonstrated with any reasonable degree of certainty any pecuniary losses it suffered as a direct consequence of its execution of the loan agreement with Mann Tech, its fraud claim must fail.

**C.  References to The Registry Solutions Company ("TRSC") and Ellipso's 881-service offerings are admissible as part of the *res gestae* of the transaction.**

Even though this Court has ruled that the dispute over The Registry Solutions Company ("TRSC") and Ellipso's 881-service offerings must be arbitrated rather than decided in this Court, evidence related to the formation of that business and misrepresentations made in connection therewith is admissible, as such matters form part of the *res gestae* of the loan agreement between Ellipso and Mann Tech.  *Res gestae* is defined as "[t]he events at issue, or other events contemporaneous with them." *Blacks Law Dictionary* (8th ed. 2004) (Westlaw). Under this doctrine, "declarations of the parties concerning matters of business, if contemporaneous with the acts they tend to explain or qualify, are admissible as part of the *res gestae*." *Jackson v. Goode*, 49 A.2d 913, 914 (D.C. 1946).

In cases of fraud, contemporaneous statements made by the parties to the transaction are admissible as part of the *res gestae* where they serve to explain the parties' motives and intent. *Greenfield v. First Commercial Bank*, 486 A.2d 1201, 1203 (Md. Ct. Spec. App. 1985) (quoting *Kolb v. Whitely*, 3 G. & J. 188 (Md. 1831).  Mann's investments in and agreements with Ellipso were founded on his belief, based on Ellipso's misrepresentations, in the promise of the allegedly imminent 881 registry service.  The negotiations and problems concerning the registry service venture are part of the *res gestae* of the transaction and should be admissible to offer the jury a complete understanding of the circumstances surrounding the loan agreement between Ellipso and Mann Tech.

7

D. **Evidentiary Issues**

On cross-examination, the Mann Defendants may inquire into the plaintiff's witness' prior misrepresentations and acts of untruthfulness in unrelated transactions, to the extent that they implicate the credibility of the witness.

Under the Federal Rules of Evidence, character evidence relating to a witness' prior bad acts is admissible, at the Court's discretion, when it directly relates to the witness' credibility or veracity. Fed. R. Evid. 608(a), Advisory Committee's notes. Under Fed. R. Evid. 608(a), "the credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation" where the evidence "refer[s] only to character for truthfulness or untruthfulness." "Specific instances of conduct" that have not resulted in criminal conviction "may not be proved by extrinsic evidence. . . . [but] may, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness." Fed. R. Evid. 608(b). *See Murphy v. Bonanno*, 663 A.2d. 505, 509 (D.C. 1995) (finding error in the trial judge's denial of cross-examination about a plaintiff's prior bad acts, including filing false financial information with a bank-creditor and fabricating insurance claims, reasoning that evidence of such conduct, "if accepted by a jury, would certainly be probative of whether her present allegations to which she testified at length were worthy of belief," and citing to Fed. R. Evid. 608(b)); *see also United States v. Leake*, 642 F.2d 715, 717 (4th Cir. 1981); *United States v. Davis*, 183 F.3d 231, 257 (3d Cir. 1999); *Tri-State Hospital Supply, Inc. v. United States*, 471 F. Supp. 2d 170 (D.D.C. 2007).

The Mann Defendants may use Ellipso's prior pleadings to impeach its witnesses under Fed. R. Evid. 613, which permits impeachment by prior inconsistent statements. *Dugan v. EMS Helicopters, Inc,* 915, F.2d 1428, 1431-32 (10th Cir. 1998); *Williams v. Union Carbide Corp.*

8

790 F.2d 552, 555-556 (6th Cir. 1986). This rule was cited in *Athridge v. Rivas,* 421 F. Supp. 2d 140, 151 (D.D.C. 2006), in which a judge of this Court held that it was not erroneous to admit into evidence the defendant's answer to a complaint filed in an earlier proceeding. Although the attorney may have drafted and signed the defendant's answer, "the statements contained therein are considered statements of [the defendant] himself." *Id.*

        Respectfully submitted,

        /s/ Christopher G. Hoge
        Christopher G. Hoge #203257
        Counsel for Defendants/Counter-Plaintiffs
        John B. Mann and Mann Technologies, LLC

        CROWLEY, HOGE & FEIN, P.C.
        1710 Rhode Island Avenue, N.W.
        7th Floor
        Washington, D.C. 20036
        (202) 483-2900

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that true copies of the foregoing Trial Brief were, this 25th day of July, 2008, served electronically upon:

        VANESSA CARPENTER LOURIE, ESQ.
        4400 MacArthur Blvd., N.W.
        Suite #205
        Washington, D.C. 20007-2521
        Co-Counsel for Plaintiff/Counter-Defendant

and via first class mail, postage prepaid, upon:

>LINDA AWKARD, ESQ.
>4201 Cathedral Ave., N.W.
>Suite #1416W
>Washington, D.C. 20016
>Co-Counsel for Plaintiff/Counter-Defendant

>ROBERT B. PATTERSON
>P.O. Box 3106
>Reston, VA 20195
>Defendant/Counter-Plaintiff *Pro Se*

/s/ Christopher G. Hoge
Christopher G. Hoge

cgh/z/wpdirs/civil
manntrialbrief .wpd