EXHIBIT

4

# MAURO LAW OFFICES, P.C.
## ATTORNEYS AT LAW
1020 NINETEENTH STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036

THOMAS A. MAURO

ADMITTED IN THE DISTRICT OF COLUMBIA AND MARYLAND

VOICE:202 452 9865
FACSIMILE:202 452 0092
email: tmauro@tmaurolaw.com

March 2, 2007

**BY FACSIMILE / THEN MAIL**

Matthew H. Goodman, Esq.
Leftwich & Ludaway LLC
1400 K Street, N.W.
Suite 1000
Washington, D.C. 20005

Re:   Ellipso, Inc. v. Mann Technologies, LLC
        Civil Action No. 05ca1186

Dear Matthew:

This follows our January 29, 2007, meeting and responds to the Ellipso's Objections and Responses to the Defendant's Second and Third Requests for Production of Documents. It will constitute our Rule 37 letter requesting Plaintiff to provide complete answers to our discovery requests. We note that your letter of February 23, 2007, while addressing the preliminary matters noted below, does not address Defendants' Document Requests Nos. 51 - 86. We would like to summarize the various agreements we reached or the issues raised by Plaintiff's responses to these requests.

**Preliminary Matters**

A.     We agreed that Plaintiff will specifically identify, by Bates stamp number (i.e., the P-numbers), the subjects (i.e. the Request numbers) covered by the documents already supplied. We are preparing a similar designation and hope to have it completed next week.

B.     We agreed that if there are no documents responsive to a Request, then Plaintiff will state "none". Defendants are still awaiting receipt of this information.

C.     We agreed to send a Joint Subpoena to UBS. In light of the February 23, 2007, Subpoena

Matthew H. Goodman, Esq.
March 2, 2006
Page 2

you have already sent to UBS, we have prepared our own and served it on UBS today. A copy is being sent to you under separate cover. In this regard, we have agreed that the documents produced pursuant to the subpoenas issued to UBS by both parties will be subject to the Protective Order which is discussed below.

D.    Protective Order:  Regarding Request numbers 47, 48, 52 and 58, including the UBS documents subpoenaed by both sides, and perhaps others Plaintiff agreed to produce documents subject to a Protective Order on an "attorneys' eyes only" basis.  Attached hereto is a draft Protective Order.  Please indicate your agreement or suggested changes as soon as possible.

E.    Joint Defense Agreement.  As you indicated in your February 23, 2007, letter, we conditionally agreed to produce the Joint Defense Agreement between the Mann parties and Robert Patterson.  Our agreement was conditioned on our further inquiry into whether such agreements are discoverable. We believe they are not.  Please see *Minebea Co., Ltd. v. Papst,* 228 F.R.D. 13 (D.D.C. 2005).  Accordingly, we respectfully decline to produce the Joint Defense Agreement.

F.    In light of your February 23, 2007, letter, the parties have now agreed that as to electronically stored information, instead of producing computer hard drives, each party will prepare a signed statement to the effect that all discoverable material that may reside on computer hard drives, and/or in computer storage media, has been converted to paper form and produced. We ask that each party preserve whatever electronically stored information they have in its original electronic form pending resolution of this case. We must decide who will draft the statement.

G.    We did not agree on how to address the discovery of any documents Mr. Patterson has, but did agree to leave the issue open pending further developments.

### Deficiencies and Agreed-Upon Modifications

We believe your client's discovery responses were deficient in at least the following respects, subject to the agreed-upon modifications as set forth below:

**I.    Response to the Second and Third Requests for Production, Request Numbers 51-86**

1.    **Request for Production Number 51**:  The articles of incorporation and all corporate Minutes for Ellipso, Inc. for the period January 31, 2003 to the present.

Plaintiff agrees to produce the corporate minutes, limited to those mentioning or referring to "Mann" or to the "Collateral Loan Agreement".   Please provide these documents immediately.

Matthew H. Goodman, Esq.
March 2, 2006
Page 3

2.     **Request for Production Numbers 52 and 58**: Plaintiff will produce these documents subject to the attorneys eyes only provision in the proposed Protective Order discussed at paragraph "D" above.

3.     **Request for Production Number 61**:  Plaintiff agreed to provide identification numbers of documents responsive to this request, as discussed at Paragraph "A".  In this case you agreed to produce any electronic version of the proposals sent to John Mann.

4.     **Request for Production Number 62**:  Electronic data including calendars, diaries, schedules and/or planners that relate or refer to John B. Mann, Robert Patterson, Mann Technologies, LLC, David Castiel, Juan Tomassoni, TRSC, the 881 telephone service, or the Registry.

       Plaintiff agreed to provide calendars responsive to the above.

5.     **Request for Production Numbers 66 and 68**: This is subject to our agreement on handling electronically stored information.

6.     **Request for Production Number 69**: All documents pertaining to any transactions or contracts whereby Ellipso or any subsidiaries of Ellipso (either wholly or partially owned) sold assets to, or acquired assets from ICO Global Holdings.

       **Plaintiff's Response**: Plaintiff objects to the request on the grounds that the documents requested are irrelevant and immaterial to this proceeding.

       We were unable to reach agreement on this Request.  We respectfully disagree with Plaintiff's objection. This request properly seeks documents which shed light on the subject of the dispute as set forth by Plaintiff in the Complaint itself.  Specifically, the ICO stock itself is a subject of this litigation, and the transfer of monies and/or ICO stock may well go to the relationship of the parties as well as to the use of monies and funds obtained from Mann or Mann Technologies which may shed light on matters raised in the Defendants' Counterclaims.  Further, the objection is improper because relevance and materiality are not proper grounds for objection. The scope of discovery under Rule 26 is that it "appears reasonably calculated to lead to the discovery of admissible evidence."  Moreover, there is no basis for the objection asserted or reference to authority in prior Court rulings upon which you rely and the objection does not identify the rulings.  The Request is, indeed, reasonably calculated to lead to admissible evidence.  Please provide a valid, responsive answer immediately.

6.     **Request for Production No. 70**:  Copies of the July 12, 2002 Contract in which Ellipso or any subsidiaries of Ellipso (either wholly or partially owned), Ellipso Private Holdings,

Matthew H. Goodman, Esq.
March 2, 2006
Page 4

Inc.(EPHI), or Mobile Communications Holdings, Inc. (MCHI) sold assets to ICO in exchange for cash, notes or stock. Include copies of all attachments and appendices to such contract including stock certificates, Promissory Notes, checks.

**Plaintiff's Response:** Plaintiff objects to the request on the grounds that the documents requested are irrelevant and immaterial to this proceeding.

We were unable to reach agreement on this Request. This request properly seeks documents which shed light on the subject of the dispute as set forth by Plaintiff in the Complaint itself. Specifically, the ICO stock itself is a subject of this litigation, and the transfer of monies and/or ICO stock may well go to the relationship of the parties as well as to the use of monies and funds obtained from Mann or Mann Technologies which may shed light on matters raised in the Defendants' Counterclaims.

Moreover, this request refers, with specificity, to transactions in which Ellipso, or its subsidiaries, acquired ICO stock and funding. It is relevant because it goes to Ellipso's financial condition at the time of the Mann agreements, Mr. Patterson's and Mr. Castiel's role in such transactions, Ellipso's dealings with other potential sources of funding for its operations, and Ellipso's or its subsidiaries right to pledge the ICO stock to Mann.

Ellipso has also characterized the ICO stock pledged to Mann Tech as "its sole asset of any significant value" (Castiel 8/2005 Affidavit), and has characterized Ellipso's financial situation as "desperate" and "distressed". Ellipso's prior actions to obtain cash and other assets prior to its arrangements with Mann and Mann Tech are clearly relevant.

Further, the objection is improper because relevance and materiality are not proper grounds for objection. The scope of discovery under Rule 26 is that it "appears reasonably calculated to lead to the discovery of admissible evidence." Moreover, the objection provides no basis for the objection asserted or reference to authority in prior Court rulings upon which you rely and does not identify the rulings. The Request is, indeed, reasonably calculated to lead to admissible evidence. Please provide a valid, responsive answer immediately.

7.  **Request for Production No. 71:** Copies of any and all modifications and addenda to the July 12,2002 Contract including any changes, modifications or addenda and any checks, stock certificates and notes issued by ICO to Ellipso and any subsidiaries of Ellipso (either wholly or partially owned) in October, 2002.

**Plaintiff's Response:** Plaintiff objects to the request on the grounds that the documents requested are irrelevant and immaterial to this proceeding

Matthew H. Goodman, Esq.
March 2, 2006
Page 5

This request properly seeks documents which shed light on the subject of the dispute as set forth by Plaintiff in the Complaint itself. Specifically, the ICO stock itself is a subject of this litigation, and the transfer of monies and/or ICO stock may well go to the relationship of the parties as well as to the use of monies and funds obtained from Mann or Mann Technologies which may shed light on matters raised in the Defendants' Counterclaims.

Moreover, this request refers, with specificity, to transactions in which Ellipso, or its subsidiaries, acquired ICO stock and funding. It is relevant because it goes to Ellipso's financial condition at the time of the Mann agreements, Mr. Patterson's and Mr. Castiel's role in such transactions, Ellipso's dealings with other potential sources of funding for its operations, and Ellipso's or its subsidiaries right to pledge the ICO stock to Mann.

Ellipso has also characterized the ICO stock pledged to Mann Tech as "its sole asset of any significant value" (Castiel 8/2005 Affidavit), and has characterized Ellipso's financial situation as "desperate" and "distressed". Ellipso's prior actions to obtain cash and other assets prior to its arrangements with Mann and Mann Tech are clearly relevant.

Further, the objection is improper because relevance and materiality are not proper grounds for objection. The scope of discovery under Rule 26 is that it "appears reasonably calculated to lead to the discovery of admissible evidence." Moreover, the objection provides no basis for the objection asserted or reference to authority in prior Court rulings upon which you rely and does not identify the rulings. The Request is, indeed, reasonably calculated to lead to admissible evidence. Please provide a valid, responsive answer immediately.

8.    **Request for Production No. 72**: All documents pertaining to any negotiations, transactions or contract between You and any potential sources of loans or financing for You that occurred between October, 2002 and August, 2004.

**Plaintiff's Response**: Plaintiff objects to the request on the grounds that the documents requested are irrelevant and immaterial to this proceeding

This request properly seeks documents which shed light on the subject of the dispute as set forth by Plaintiff in the Complaint itself. The documents sought can speak to Ellipso's negative claims with respect to Patterson's and or Consulting Management's roles with Ellipso, Castiel's involvement with potential funding sources, and fairness of the Mann loan terms.

Further, the objection is improper because relevance and materiality are not proper grounds for objection. The scope of discovery under Rule 26 is that it "appears reasonably calculated to lead to the discovery of admissible evidence." Moreover, the objection provides no basis for the objection asserted or reference to authority in prior Court rulings upon which you rely and does not identify the rulings. The Request is, indeed, reasonably calculated to lead to

Matthew H. Goodman, Esq.
March 2, 2006
Page 6

admissible evidence. Please provide a valid, responsive answer immediately.

9.     **Request for Production No. 73**: All documents pertaining to meetings, discussions and correspondence among and between members of the Board of Directors of Ellipso, in which Mann Tech, Mann, or Patterson are referenced, either directly, or indirectly.

**Plaintiff's Response**: Plaintiff objects to the request on the grounds that the documents requested are irrelevant and immaterial to this proceeding.

You agreed to consult Plaintiff for information on this request, presumably to determine if the answer to this request can be stated to be "none". Please respond to this point if the answer is "none" pursuant to the agreement reached.

The materiality of the requested items is clear, inasmuch as the relationships of the parties, as well as the state of knowledge of each of the parties as to the other parties actions and intentions, are at the very heart of this case.

Further, the objection is improper because relevance and materiality are not proper grounds for objection. The scope of discovery under Rule 26 is that it "appears reasonably calculated to lead to the discovery of admissible evidence." Moreover, the objection provides no basis for the objection asserted or reference to authority in prior Court rulings upon which you rely and does not identify the rulings. The Request is, indeed, reasonably calculated to lead to admissible evidence. Please provide a valid, responsive answer immediately.

10.    **Requests for Production Nos. 74-83**: You have previously stated that these documents will be produced. Please provide these documents immediately.

We appreciate your assistance on this and look forward to your prompt response on the matters agreed to.

Sincerely yours,

Thomas A. Mauro

cc:    Robert B. Patterson

Attachment



**MOU Entel Properties**    ? ✕

General | Custom | Summary

MOU Entel

Type of file:    Microsoft Word Document

Opens with:    📝 Microsoft Office Word    Change...

Location:    C:\Documents and Settings\David Castiel\My Docu

Size:    44.0 KB (45,056 bytes)

Size on disk:    44.0 KB (45,056 bytes)

Created:    Saturday, May 13, 2006, 11:58:35 AM

Modified:    Wednesday, December 03, 2003, 12:38:42 PM

Accessed:    Today, June 23, 2008, 10:55:01 AM

Attributes:    ☐ Read-only    ☐ Hidden    Advanced...

OK    Cancel    Apply

**EXHIBIT**

**5**

PLAINTIFF'S
EXHIBIT

20

# MEMORANDUM OF UNDERSTANDING
## Between
## ENTEL-CHILE and ELLIPSO

THIS MEMORANDUM OF UNDERSTANDING (hereinafter "MOU") is made and entered into by Entel Chile ("Entel"), a Chilean corporation, with address at Av. Andres Bello 2687, 13th Floor, Las Condes, Santiago, Chile; Phone: (56-2) 360-3640, Fax: (56-2) 252-6290, and Ellipso, Inc., ("Ellipso") a Delaware corporation with address at 4410 Massachusetts Avenue, NW, #385 Washington, DC 20016 USA; Phone: (202) 466-4488, Fax: (202) 466-4493.

WHEREAS Entel is a communications company that offers a variety of services to its customers on a world-wide basis;

WHEREAS Ellipso is a provider of various communications technologies including satellite systems, and has received authority from the ITU to develop services related a n E.164 code, referred to here as the Ellipso 881-3 Universal Number Series;

WHEREAS, Ellipso and Entel desire to enter into agreement (the "Definitive Agreement") to enable Entel to use Ellipso's Universal Number Series assets to offer its customers a variety of advanced telecommunications services ;

WHEREAS, Entel and Ellipso desire to put forth the general terms of understanding to be incorporated into the Definitive Agreement contemplated herein;

NOW, THEREFORE, Ellipso and Entel hereto agree as follows:

A. Access to Ellipso's 881-3 Series

1. Ellipso will exclusively reserve for Entel's use an 881-3 sub-series (the Entel Numbers) such as 881-3-7-XXXX. This sub series contains initially 10,000 numbers – 88137-0000 through 88137-9999 if 7 is chosen as the leading digit for the sub-series.

2. If additional digits are added by Ellipso to such sub-series, which may contain up to 9 digits (theoretically up to 1 billion numbers), Ellipso reserves the right to ensure that the additional numbers then released are available to Ellipso without however affecting Entel's operations at the time of such action.

3. Upon execution of the Definitive Agreement contemplated herein, or upon the prior execution of a satisfactory Non Disclosure and Non Circumvention Agreement between Entel and Ellipso, Ellipso will authorize Entel to enter in direct discussions with its 881-3 transit carrier, for the purpose of ensuring that all steps necessary to initiate service are properly undertaken consistent with Ellipso's pertinent engagements.

4. Entel will work with Ellipso to ensure that additional countries or areas, not currently covered by the 881-3 Series will be brought on-line by Entel for its customers in conjunction with Ellipso's transit carrier.

**Comment [e1]:** We cannot accept this kind of clause, due the fact we're a telecom company and all our internal & payment processes must we related to "minutes of traffic passing through our networks". Payments in advance, guarantees nor any other kind of preventive mechanism can not be accepted by our company, as strict instructions of our legal department.

**B. Rates and Payments**

5. Entel will provide Ellipso with traffic information on a regular basis to be agreed upon between the parties but not to exceed 30 calendar days.

6. As payment for the exclusive reservation of the Entel Numbers for exclusive use by Entel and their customers, Entel will disburse to Ellipso a percentage, to be defined in the Definitive Agreement, of any and all traffic transiting through the Entel Numbers, and such disbursements will be made monthly based on prior monthly usage.

7. If vanity Number services are offered by Entel to its customers, Entel and Ellipso will mutually agree in the Definitive Agreement, or through a later amendment thereof, to a revenue sharing arrangement, independent of traffic, if the Vanity service is billed on the basis of a fixed fee chargeable on a periodic basis, such as monthly.

**C. Operation and Service Delivery**

8. Ellipso will instruct its transit carrier to deliver all 881-3-7 (if 7 is chosen as the leading digit for the Entel Numbers) traffic to Entel at its New York or Madrid facilities, at the option of Entel, consistent with its engagements.

9. Entel will submit to Ellipso a detailed list of numbers to be put into service, which Ellipso will check against a database and upon Ellipso's approval these numbers will be made live by Ellipso's transit carrier. It is the intent of Ellipso to assign numbers that are adjacent in structure in order to minimize the allocation within a sub-series. After one year of service Ellipso reserves the right to reclaim any part of a Sub-Series (the Entel Numbers) that has not been put into service by Entel.

10. Entel will market to its customers the Entel Numbers worldwide at the rates applicable in each specific market.

11. Entel will offer services within the Entel Numbers sub-series consisting of general telecommunications services, including Vanity Numbers services.

12. Entel will begin by marketing said sub-series to its customers and commence moving existing traffic or generating new traffic over the next 6-months to the Entel Numbers.

**D. Protection of Each Party**

13. The rates above will be guaranteed by Ellipso to Entel for a period of one-year from commencement of service, unless market conditions for these services change significantly

14. Entel will enjoy exclusivity for all services within its sub-series, the Entel Numbers, subject to reclamation of certain unused numbers after one year per the provisions of Article C-9 herein.

15. If Entel offers Vanity services to its customers within the Entel Numbers, Entel will ensure that its rates conform to a mutually agreeable Vanity rate structure in effect in other 881-3 sub-series.

16. If Entel were to define and market specialized services for which it has procured actual customers, usage and billing, upon notification to Ellipso of such business activity, Ellipso will refrain for a period

of one year from offering similar services either directly or through other providers. This protection applies to all areas where 881-3 is offered and available.

17. In exchange for the protections provided in D-16 herein, Entel will provide a guarantee of minimum traffic to Ellipso within is sub-series, the Entel Numbers. This guarantee shall be more precisely defined in the Definitive Agreement and will result in a minimum monthly disbursement to Ellipso, beginning with the second month following the execution of the Definitive Agreement .

### E. General terms

18. Unless and until a Definitive Agreement with respect to the terms of this MOU is entered into, neither party hereto will be under any legal obligation of any kind whatsoever with respect to the same except for the matters specifically agreed upon in this MOU, and the provision of the Non Disclosure and Non Circumvention Agreement if entered into prior to this MOU.

19. This MOU shall become effective upon execution by both Parties and, unless earlier terminated by either party with sixty days prior written notice, shall remain in effect for a period of three (3) months thereafter.

20. This MOU contains the entire understanding between the parties with respect to the intentions of the Parties and supersedes all prior communications and understandings with respect thereto, except for the provisions of the Non Disclosure and Non Circumvention Agreement, if entered into prior to this MOU.  No waiver, alteration, modification, or amendment shall be binding or effective for any purpose whatsoever unless and until reduced to writing and executed by authorized representatives of the parties.

21. All notices, correspondence, and requests required or authorized hereunder shall be given in writing either by personal delivery to the persons identified below, or by commercial courier, certified U.S. or Chilean mail as applicable (return receipt requested), facsimile or other electronic transmission at the addresses and numbers set forth below.  The date upon which any such notice or request is so personally delivered, or if such notice or request is given by commercial courier, certified U.S. or Chilean mail as applicable, facsimile or other electronic transmission, the date upon which sent, shall be deemed to be the effective date of such notice or request.

**IN WITNESS WHEREOF,** the undersigned have caused this MOU to be executed by their respective duly authorized officers or representatives as set forth below:

**ELLIPSO, INC.**

By:      _____

Name:  David Castiel

Title:   President and CEO

Date:   _____

**ENTEL CHILE S.A.**

Proposed Term Sheet

Ellipso and Entel intend to enter into agreement on the following business terms:

18. Ellipso will reserve for Entel's use an 881-3 sub-series (the Entel Numbers) such as 881-3-7-XXXX. This sub series contains initially 10,000 numbers -- 88137-0000 through 88137-9999 if 7 is chosen as the leading digit for the sub-series.

19. If additional digits are added by Ellipso to such sub-series, which may contain up to 9 digits (theoretically up to 1 billion numbers), Ellipso reserves the right to ensure that the additional numbers then released are available to Ellipso without however affecting Entel's operations at the time of such action.

20. Entel will market to its customers the Entel Numbers worldwide at the rates applicable in each specific market.

21. As payment for the exclusive reservation of the Entel Numbers for exclusive use by Entel and their customers, Entel will disburse to Ellipso a percentage of any and all traffic transiting through the Entel Numbers, and such disbursements will be made monthly based on prior monthly usage, and such percentage shall be x% of the end-user rate (Juan or x% of Entel's net receipt etc..., please adjust this sentence, especially if we get KPN to .20 rather than .25).

22. The rates above will be guaranteed by Ellipso to Entel for a period of one-year from commencement of service.

23. Ellipso will instruct its transit carrier to deliver all 881-3-7 traffic to Entel at its New York or Madrid facilities, at the option of Entel.

24. Ellipso will authorize Entel to enter in direct discussions with its transit carrier upon signature of an agreement conforming with this Term Sheet, and an accompanying Non Disclosure and Non Circumvention Agreement that protects the rights of all parties, for the purpose of ensuring that all steps necessary to initiate service are properly undertaken.

25. Entel will begin by marketing said sub-series to its customers and commence moving existing traffic over the next 3-months to the Entel Numbers.

26. Payment to Ellipso by Entel shall be made monthly, within 10 days of receiving traffic figures from Ellipso's transit carrier.

27. Entel will guarantee a minimum of 1 million minutes per month for the period of the agreement contemplated herein, and shall disburse at least $x,000 on the 10th of each month to Ellipso, beginning with the second month after initiation of service by Entel and Ellipso's transit carrier.

28. Entel will work with Ellipso to ensure that additional countries covered by the 881-3 Series will be brought on-line by Entel for its customers.

29. Entel will submit to Ellipso a detailed list of numbers to be put into service, which Ellipso will check against a database and upon Ellipso's approval these numbers will be made live by Ellipso's transit carrier. It is the intent of Ellipso to assign numbers that are adjacent in structure in order to minimize the allocation within a sub-series. After one year of service Ellipso reserves the right to reclaim any part of a Sub-Series that has not been put into service by Entel.

30. Algo mas?