# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELLIPSO, INC.,** ) | |
| ) | |
| **Plaintiff and Counter-Defendant,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 05-1186 (RCL)** |
| ) | |
| **JOHN B. MANN,** *et al.*, ) | |
| ) | |
| **Defendants and Counter-Plaintiffs** ) | |

## PRETRIAL ORDER

Upon consideration of the parties' amended pretrial statement [182] and the

representations of counsel, the Court hereby enters the following Pretrial Order:

1.       Defendants John B. Mann and Mann Technologies, LLC's (collectively, "Mann")

motion [183] *in limine* and defendant Robert Patterson's motion [186] *in limine* are

GRANTED in part and DENIED in part.  The motions are denied with respect to the

request to exclude evidence of plaintiff's lack of knowledge of Mr. Patterson's interest in

Mann Technologies ("Mann Tech.") based on any statements or conduct outside the loan

agreement.[1]  The motions are granted as to the request to exclude evidence of value or

_____

[1] While the loan agreement's integration clause, (*see* Loan Agreement, Ex. 2 to Compl.,
at  ¶ 8.7), generally restricts interpretation of the agreement to the four corners of the document,
such a clause does not bar certain fraud-in-the-inducement claims; to read otherwise "would
leave swindlers free to extinguish their victims' remedies simply by sticking in a bit of
boilerplate."  *See Whelan v. Abell*, 48 F.3d 1247, 1258 (D.C. Cir. 1995) (citation omitted).  An
integration clause serves to prevent the use of prior representations and promises to defeat the
clear words of an agreement.  *See One-O-One Enters., Inc. v. Caruso,* 848 F.2d 1283, 1287
(D.C. Cir. 1988); *see also Hercules & Co., Ltd. v. Shama Rest.*, 613 A.2d 916, 928–29 (D.C.
1992).  That purpose is not thwarted by this Court's decision.  *Cf. Caruso*, 848 F.2d at 1287
(indicating that courts should not undermine the parol evidence rule's policy—favoring the
inherent reliability of a writing as opposed to the memories past).  Today, the Court does not

disposition of ICOHA shares subsequent to October 2004.[2]  The motions are granted with

respect to the request to exclude evidence of plaintiff's lack of knowledge of Mr.

Patterson's interest in Mann Tech after June 2004.[3]

---

permit introduction of prior agreements or terms that are within the scope of the loan agreement, but rather allows for Ellipso's narrow fraudulent inducement claim.  It may be that the jury finds it inconceivable that Ellipso never inquired into the ownership of Mann Tech. prior to signing the loan agreement, but that is not for the Court to decide here.

At the final pretrial conference, counsel for Mann argued that judicial estoppel should prevent Ellipso from arguing both that the loan agreement is an integrated contract, (*see* Am. Pretrial Statement [182] at 10), and that evidence apart from the document's four corners should be allowed to prove fraud.  The Court declines this invitation and does not see Ellipso's positions as contradictory.  It is not inconsistent to argue that the contract is integrated such that verbal promises outside the contract cannot be introduced, but that fraud as to Mr. Patterson's dual role may be introduced.

[2] This Court previously determined that Ellipso affirmed the loan agreement no later than August 2, 2004, thus restricting its relief to suing for damages on the valid contract—rescission was not an available remedy.  (*See* Mem. Op. [168] at 4–7.)  Under the agreement's terms, interest payments were due quarterly beginning on April 15, 2004.   (*See* Loan Agreement ¶ 2.2(c)).  It is undisputed that Ellipso never made any interest payments, which is defined as an "event of default."  (*See id.* ¶¶ 2.2(d), 7.1(a).)  Such an event makes the loan immediately due and payable without notice or demand and entitles Mann to take possession of the collateral and dispose of it as if it were its own property.  (*See id.* ¶ 7.2.)  Another ground for default occurred once the collateral became worth less than eighty percent of the Ellipso's outstanding obligations under the agreement. (*See id.* ¶ 7.1(j).)  While the parties entered into an amendment to the loan agreement on August 2, 2004, (*see* Amendment [1-4]), the amendment's terms do not modify the underlying obligation to pay interest under the agreement.  Thus, by the date at issue in the present motion—October, 2004—when the value of ICOHA shares had declined to as low as $0.04 per share, (*see* Ex. 5 to Mann Mot. Summ. J. at 8), and Ellipso had still not made any interest payments, Mann had authority to treat the stock as its own.  Plaintiff's response unpersuasively contends that a reasonable jury could find that Ellipso did not default on the loan agreement or that the parties' course of dealings could invoke some theory of estoppel wherein Mann had no right to seize the collateral without notice.  (*See* Opp. at [192] at 7.)  This Court disagrees.

Whatever Mann may have done with the collateral once it took possession and whether the price subsequently increased following the loan agreement's termination would be more prejudicial than probative in this matter.  Thus, the Court will not permit introduction of such evidence.

[3] The Court previously found that the only reasonable interpretation of an email sent from Mr. Castiel to Mr. Patterson, (*see* Email (Nov. 16, 2004), Ex. 21 to Mot. for Summ. J.), was "that

2.       Plaintiff's motion [185] to partially quash subpoenas issued to UBS Financial

Services, Inc. ("UBS") and to Ellipso is GRANTED in part and DENIED in part.

As to requests for production of information pertaining to Ellipso's affiliated or

subsidiary entities, disclosure shall be restricted to one affiliated entity, Mobile

Communications Holdings, Inc. ("MCHI").  Mann has demonstrated the possibility that

MCHI may have been involved in ICHOA share transactions related to this case, thus

putting MCHI's information at issue.  (*See* Opp. [188] at 7 (showing that Mr. Castiel

appeared unable to accurately state whether ICHOA shares at issue here came from

MCHI or Ellipso).)  The same cannot be said for other Ellipso affiliates.

As to the subpoena issued to UBS regarding production of financial

information—including, but not limited to, financial statements, loan application

documents, income tax returns, and evidence of liabilities and defaults on liabilities—the

Court finds that plaintiff's complaint and other filings have directly put its financial

condition at issue.[4]  And, given that, according to Mann, UBS has indicated its

---

Ellipso had knowledge of Mr. Patterson's stake in Mann Tech no later than June 2004."  (Mem.
Op. [168] at 5.)  Ellipso will not be permitted to revisit this issue at trial.
     Plaintiff's response to the motions *in limine* seems to assert that Ellipso must have an
opportunity to present evidence on this issue so that the jury can determine whether Ellipso
affirmed the loan agreement.  (*See* Opp. [192] at 6–7.)  In light of this Court's previous Opinion,
that argument is not possible.  Ellipso knew of Mr. Patterson's dual role no later than June 2004
and Ellipso affirmed the loan agreement in August 2004.  (*See* Mem. Op. [168] at 6–7.)

     [4] For example, plaintiff alleges that Mr. Patterson "knew that Ellipso, in 2002, 2003 and
2004, was experiencing severe cash flow problems and desperately needed a cash infusion."
(Compl. ¶ 14.)  Further, plaintiff's motion to partially quash makes clear that Ellipso's theory is
that Mr. Patterson took advantage of his familiarity with the company and "presented the loan as
Ellipso's only realistic option given its precarious financial state."  (*See* Mem. [185] at 1.)
     Additionally, Mann's counterclaim shows the relevance of Ellipso's financial condition
to this dispute.  Mann alleges that Ellipso—contrary to the loan agreement's express

willingness to comply with the subpoena, the Court will deny the motion to quash this

subpoena.[5]   However, production shall be subject to a protective order—the terms of

which shall, if possible, be jointly submitted to the Court.

As to the subpoena issued to Ellipso, the Court grants the motion to quash to the

extent that it requests detailed financial and business records.[6]  In light of the

consideration that discovery in this case closed on October 19, 2007 and trial is

scheduled for July 28, 2008, such a request on the eve of trial is an inappropriate use of

trial subpoenas and would cause Ellipso undue burden.[7]  If the Court were to allow for

_____

warranties—misrepresented that it was not in bankruptcy or on the verge of bankruptcy, did not
owe large debts, and had no serious problems.  (*See* Counterclaim ¶ 43; Loan Agreement
¶¶ 3.1–3.5.)

[5] At the final pretrial conference, Mann stated that it would eliminate requested items 3
and 4 from the UBS subpoena.  (*See* Attach. to UBS Subpoena [185-3] at 3.)  The subpoena shall
thus be modified to reflect Mann's withdrawal of these items.

[6] The Court here refers to items 3 through 8 of the documents and items Mann requests.
(*See* Attach. to Subpoena [185-2] at 3.)

[7] "Trial subpoenas are appropriate in certain circumstances, such as securing an original
document previously disclosed during discovery, or for purposes of memory recollection or trial
preparation.  However, when a [party] is aware of the existence of documents before the
discovery cutoff date and issues discovery requests including subpoenas after the discovery
deadline has passed, then the subpoenas and discovery requests should be denied."
*Revander v. Denman*, No. 00-cv-1810, 2004 WL 97693, at *1 (S.D.N.Y. Jan. 21, 2004) (citations
omitted); *see nSight, Inc. v. PeopleSoft, Inc.*, No. 3:04-cv-3836, 2006 WL 988807, at *3 (N.D.
Cal. Apr. 13, 2006) (noting that the majority of jurisdictions hold that absent a few narrow
exceptions, requests for production under Rule 45 constitute pre-trial discovery and must be
served before discovery closes); *see also Eng. v. Blood*, No. 9:04-cv-1146, 2008 WL 2788894, at
*10 (N.D.N.Y. July 17, 2008) (citing *Dodson v. CBS Broad., Inc.*, No. 02-cv-9270, 2005 WL
3177723, at *1 (S.D.N.Y. Nov. 29, 2005) ("Litigants, however, may not use Rule 45 trial
subpoenas as an end around expired discovery deadlines.")); *DAG Enters., Inc. v. Exxon Mobil
Corp.*, 226 F.RD. 95, 104 (D.D.C. 2005) (quoting *Puritan Inv. Corp. v. ASLL Corp.*, No. 97-cv-
1580, 1997 WL 793569, at *1 (E.D. Pa. Dec. 9, 1997) ("Trial subpoenas may not be used,
however, as a means to engage in discovery after the discovery deadline has passed.")); *Dodson*,
2005 WL 3177723, at *1 (collecting district court cases prohibiting the use of trial subpoenas to

such sweeping use of trial subpoenas—in the absence of good cause—discovery would

be rendered superfluous and chaos would ensue in the days and hours before any trial.

However, the Court, finding that good cause exists for production of Ellipso's laptop

computers and electronic communications between Ellipso and defendants,[8] denies the

motion to quash as to those requests.[9]  Production shall however be subject to the

protective order described above.

_____

engage in discovery).  In this case, Mann's wide-sweeping request for financial and business records are "exactly the kind of 'shotgun' subpoenas that should not be issued on the eve of trial." *Revander*, 2004 WL 97693, at *2 (citing *Pitter v. Am. Express Co.*, No. 82-cv-7451, 1984 WL 1272, at *6 (S.D.N.Y. Nov. 27, 1984)).

        At the final pretrial conference, counsel for Mann represented that the explanation for Mann's failure to previously obtain Ellipso's financial and business records during discovery was due to Mann having had different counsel at that time.  This justification does not constitute good cause for making an exception to the rule discussed above.  Change of counsel simply does not justify allowing extensive discovery by way of trial subpoena mere days before trial.  Mann's desire for this information should have been resolved during discovery.

        [8] These are items 1 and 2 of the documents and items Mann requests.  (*See* Attach. to Subpoena [185-2] at 3.)

        [9] At the final pretrial conference and in its supplemental brief [191], Mann asserts that Ellipso has routinely produced only a fragment of requested electronic communications throughout this dispute.  For example, Mann alleges that during discovery, Ellipso produced several emails from the fall of 2004 but neglected to produce key emails from that time period including an important November 16, 2004 email.  Additionally, Mann noted that Ellipso had represented that its computers crashed sometime in 2004, thus making certain earlier communications irretrievable.  Yet, Mann points to one 2003 communication that Ellipso produced—from before the supposed crash.  At the final pretrial hearing, Ellipso had no response for these allegations.  In the Court's view, Mann has established good cause for subpoenaing this information by way of trial subpoena.

        The Court also notes that Ellipso has subpoenaed Mann's laptop and electronic communications without eliciting the type of blanket objection that Ellipso makes here.  (See Opp. [188] at 8.)

3.    Mann's motion [189] to quash the subpoena issued to John B. Mann is GRANTED.

Mann objects to the portion of the subpoena requiring production of electronic communications related to Coastal Services Group, Inc. ("Coastal"), Dolphin Bay Capital, Inc. ("Dolphin"), and any affiliates.  Mann contends that the requested information is irrelevant because Ellipso's only allegation concerning these entities is that, in December 2004, Mann issued a loan to Dolphin, which was converted into an investment in Coastal—a transaction that in Ellipso's opinion should have been reported to the Court as proceeds from the sale of ICOHA shares pursuant to the Court's November 14, 2005 Order [28].  Mann maintains that this information should not now be produced because (1) the Dolphin/Coastal transaction occurred after Ellipso's October 2004 default under the loan agreement, thus making the information irrelevant to the jury's inquiry into whether Ellipso was defrauded into entering the agreement, and (2) Mann filed an updated report [170] disclosing information about the Dolphin/Coastal transaction.

Ellipso indicated to the Court its dissatisfaction with Mann's updated report on April 25, 2008.  (*See* Pl.'s Resp. [172] to Status Report at 6–7.)  Yet, Ellipso filed no motion seeking relief at that time or any other time until the week before trial.  In light of that fact and this Court's finding that the Dolphin/Coastal transaction has no relevance to the allegation that Mr. Patterson defrauded Ellipso into entering the loan agreement, the Court grants the motion to quash.

4.      Upon request by Mann, and without objection, the Court will defer disposition of Mann's motion [184] for damages suffered as a consequence of Preliminary Injunction until after trial in this matter has concluded.

5.      Counsel shall call witnesses and produce evidence as indicated in their amended pretrial statement.

SO ORDERED.

       Signed by Chief Judge Royce C. Lamberth, July 25, 2008.