UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC., ) | |
| ) | |
|     Plaintiff and ) | |
|     Counter-Defendant ) | |
| ) | |
| v. ) | Civil Action No. 05-1186 (RCL) |
| ) | |
| JOHN B. MANN, *et al.*, ) | |
| ) | |
|     Defendants and ) | |
|     Counter-Plaintiffs ) | |

**MANN DEFENDANTS' REPLY TO PLAINTIFF'S
OPSITION TO MOTION FOR DAMAGES
SUFFERED AS A CONSEQUENCE OF PRELIMINARY INJUNCTION**

Come now John B. Mann and Mann Technologies, LLC, Defendants and Counter-Plaintiffs herein (collectively the "Mann Defendants"), by their undersigned counsel, and respectfully submit their Reply to Plaintiff's Opposition to the Mann Defendants' Motion for Damages Suffered as a Consequence of Preliminary Injunction.

**I. INTRODUCTION**

The Mann Defendants' motion and Plaintiffs' opposition were both filed prior to this Court's ruling, after seven days of trial, granting the Mann Defendants' Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50. This Court has now had the opportunity to hear detailed testimony and review substantial documentation which demonstrate beyond peradventure the factual misrepresentations made by Plaintiff in order to obtain the preliminary injunction. Amazingly, even though the bulk of the Mann Defendants' motion addresses the

numerous misrepresentations made by Plaintiff to sustain this frivolous litigation, Plaintiff does not even dispute that such misrepresentations were made. All it does is argue that the lawsuit was not frivolous, and that the equities are on its side because the Mann Defendants allegedly "sat on" the critical November 16, 2004 e-mail which conclusively demonstrates Plaintiff's perfidy. However, it has now been demonstrated that the lawsuit was indeed frivolous, and, as will be seen, the reason why the 11/16/04 e-mail was not brought to the Court's attention at the time of or shortly after the injunction hearing was that it was *deliberately concealed* by Plaintiff.

In addition to not countering the factual basis for the Mann Defendants' motion, Plaintiff mischaracterizes the leading cases dealing with damages from injunctions. The case law is clear that there is a strong presumption in favor of awarding such damages, and Plaintiff doesn't come close to establishing grounds for overcoming such presumption.

## II. ARGUMENT

### A. Legal Standard for Awarding Injunction Damages

Ellipso asserts that "any presumption that may exist for damages may be overcome by a showing that the lawsuit was not frivolous, and a showing that the plaintiff's lawsuit raised legitimate questions," citing *Nat'l Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1134 (D.C. Cir. 1992). Opposition, at p. 3. This contention misstates the holding of that case. In *Nat'l Kidney*, the U.S. Court of Appeals for the D.C. Circuit held that whether a lawsuit was "brought in good faith" and was "not frivolous" were factors the district court could consider in exercising its discretion whether to enforce an injunction bond, "*none of which (alone or in the aggregate) is enough to overcome the presumption*" in favor of recovery. *Id.* at 1135 (emphasis added).

The Court held that these factors are "merely baseline premises; if the plaintiff flunks either of them the presumption in favor of enforcement congeals virtually into rock." *Id.*

*Nat'l Kidney* in fact stands for the proposition that a defendant is presumptively entitled to damages as a result of a wrongfully issued injunction, and thus supports the Mann Defendants' argument for recovery. *Id.* at 1134. This presumption favoring recovery is designed to "discourage plaintiffs from seeking preliminary injunctions on weak 'though not necessarily frivolous' grounds." *Id.* (citing *Coyne-Delaney Co. v. Capital Dev. Bd.*, 717 F.2d 385, 391-2 (7th Cir. 1983)).

Even applying Ellipso's logic and assuming, *arguendo*, that the factors discussed by the district court in *Nat'l Kidney* were enough to overcome the presumption favoring recovery, Ellipso's complaint neither raises "legitimate legal questions" nor was brought in good faith. After hearing extensive testimony and reviewing the exhibits presented at trial, this Court found the evidence wholly insufficient to support Ellipso's claims of fraud and conspiracy, finding that no reasonable jury could find in plaintiff's favor, and granted the Mann Defendants' Rule 50 motion for judgment. Further, Ellipso has failed to refute evidence, described in detail in the Motion for Damages, of numerous material misrepresentations which Ellipso's CEO, Dr. David Castiel, made both to this Court and the Court of Appeals in obtaining and sustaining the preliminary injunction. Ellipso has totally failed to establish the "baseline premises" needed to overcome the presumptive entitlement to damages, and thus the presumption "congeals into rock."

## B. Ellipso's Concealment of the Critical Evidence

Citing *Page Communications Engineers Inc. v. Froehlke*, 475 F.2d 994 (D.C. Cir. 1973) Ellipso asserts that injunction damages are inappropriate because the defendants failed to timely alert the Court to the critical November 16, 2004 email. In *Page*, the U.S. Court of Appeals for the D.C. Circuit considered the plaintiff's "good faith", and the defendant's failure to produce at the preliminary injunction hearing a critical document which would have likely precluded the imposition of the injunction, in reaching its decision to deny recovery against the bond. Although Ellipso argues that these factors are dispositive in determining whether to award recovery on an injunction bond, the same court in *Nat'l Kidney* clarified its earlier ruling in *Page,* which it stated to be "in accord with the accepted presumption in favor of recovery". The *Nat'l Kidney* court suggested that factors such as these were part of a broader equitable balancing that overcame the presumption in that specific case. *Nat'l Kidney*, 958 F.2d at 1134.

The circumstances in *Page* are distinguishable from those in this case. In *Page* the Defendant was in possession of the decisive document at the injunction hearing and failed to use it. Here, Ellipso deliberately concealed the decisive document. As set forth in the Declarations of John B. Mann and Robert B. Patterson, attached hereto as Ex. 1 and 2 respectively, the 11/16/04 e-mail was not discovered by any of the defendants until March of 2007, when Patterson was engaged in combing through his computer files in order to respond to Plaintiff's discovery requests. By that time the injunction had been in place almost sixteen months, since November of 2005. Significantly, and as was amply demonstrated during the cross-examination

of Dr. Castiel at trial, this critical document was never produced in discovery by Ellipso, even though other, more innocuous e-mails from the same time period had been produced.[1]

It is the height of arrogance that Ellipso now seeks to blame the Mann Defendants' for its own misconduct, but that has been Ellipso's *modus operandi* throughout this case. Ellipso has evidenced a lack of good faith throughout every step of this litigation. Ellipso's claim that the Mann Defendants' knowingly withheld the critical e-mail is simply false, and Ellipso knows it. In fact, Dr. Castiel did not concede authorship of the 11/16/04 e-mail until he was confronted with it at his May, 2007 deposition. Ex. 3. By that time, the preliminary injunction had been in place for eighteen months, and Mann Tech had failed in two attempts to vacate the preliminary injunction, first via a motion for reconsideration and then via an appeal. Once the e-mail was discovered, and having concluded that a third attempt at overturning the injunction was not likely to succeed in light of prevailing case law[2], the Mann Defendants made a strategic decision to wait to file a Motion for Summary Judgment after the close of discovery. That motion was filed in December of 2007, and was granted in part on April 1, 2008.

It is frankly incredible that Plaintiff accuses the Mann Defendants of "sitting" on the 11/16/04 e-mail, which was a private exchange exclusively between Castiel and Patterson, with no copy to the Mann Defendants, and which Ellipso failed to produce in discovery or to explain its absence in its document production. The only explanation is that Ellipso willfully concealed a document that it knew would be dispositive in this case.

---

[1] *See*, Supplemental Memorandum in Opposition to Plaintiff's Motion to Partially Quash Subpoenas, Document #191, Ex. 7 (including e-mails produced by Plaintiff, Bate Nos. P00239-40, P00246-47, P00234, P00238, P00172-3).

[2] *See, Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197 (2nd Cir. 1970); *Centennial Broadcasting, LLC v. Burns*, 433 F. Supp. 2d 730 (W.D.Va. 2006); *Huk-a-Poo Sportswear, Inc.*

### C. The Equities Favor the Mann Defendants

In granting Ellipso's Rule 50 Motion for Judgment as to Mann Tech's counterclaims, the Court ruled that since Mann Tech had made a substantial profit on the ICO stock it owned as a result of Ellipso's forfeiture of the collateral, such profit in effect cancelled out the relatively minor damages Mann Tech had presented at trial. However, unbeknownst to the Court, the Mann Defendants had made a determination that their substantial legal bills in conjunction with this three year litigation should appropriately be presented to the Court *after* the verdict of the jury, based on language in the Collateralized Loan Agreement which calls for fee shifting in the event of a successful enforcement of the contract.

Section 8.14 of the Loan Agreement (Plaintiff's Trial Ex. 6) specifies that "in the event this Loan Agreement shall be successfully enforced by suit or otherwise, Borrower will reimburse the Lender or holder or holders of the Obligations, upon demand, for all reasonable expenses incurred in connection therewith, including, without limitation, reasonable attorneys' fees and expenses". Of course, such a contractual provision takes this case out of the so-called "American Rule". *Urban Masonry Corp. v. N & N Contractors*, 676 A.2d 26, 33 (D.C. 1996).[3]

Even if the Court's rationale in deciding Mann's counterclaims applied here, Mann's Motion for Damages from the Preliminary Injunction is clearly supported by the equities. Mann Tech's loan was a high risk venture, made even higher by Ellipso's breaches of its Loan Agreement and other commitments. Ellipso's own calculation of Mann Tech's expected return

---

*v. Little Lisa, Ltd.*, 74 F.R.D. 621 (S.D.N.Y. 1977).
[3] Because the Court, in granting Ellipso's Rule 50 motion as to the counterclaim, relied on the "American Rule" and had not been alerted to this provision of the contract, and because their extensive legal bills were never presented at trial, the Mann Defendants intend to file a motion for reconsideration of that part of the Court's Order denying any recovery for their legal

on its original $90,000 loan was over $250,000, plus payment of principal and interest. In addition, the Aug. 2, 2004 Amendment provided for additional compensation to Mann Tech of 50,000 ICO shares. Thus, Ellipso has admitted that the benefit of the bargain for Mann Tech, assuming Ellipso did not default on the Loan Agreement, was a return of $340,000 plus 50,000 shares of ICO stock. Instead of receiving this benefit, however, Mann Tech loaned Ellipso $100,000, and spent over $419,000 of additional cash between Oct 2004 and October 2005 to implement the 881 service that Ellipso had falsely promised it could provide. In addition, the Mann Defendant's legal bills from three law firms to defend against Ellipso's claims and the perjury of its CEO David Castiel are currently in excess of $220,000. Ex. 1. Even assuming that Mann Tech's sale of its ICO stock after properly taking ownership of the collateral equitably offsets Mann Tech's losses, the $519,000 it received on the sale, and the 37,611 ICO shares it retained, are outweighed by the money spent by Mann Tech for legal fees and to build the 881 service, and amount to far less than the "benefit of the bargain" which even Ellipso acknowledges should have been received.

## CONCLUSION

The Mann Defendants' Motion for Damages Suffered as a Consequence of Preliminary Injunction should be granted, and they should be granted an award in the amount of $139,569.28, as set forth in the motion.

---

expenses.

Respectfully submitted,

/s/ Christopher G. Hoge
Christopher G. Hoge #203257
Counsel for Defendants/Counter-Plaintiffs
 John B. Mann and Mann Technologies, LLC

CROWLEY, HOGE & FEIN, P.C.
1710 Rhode Island Avenue, N.W.
7th Floor
Washington, D.C.  20036
(202) 483-2900

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true copies of the foregoing Reply were, this 8th day of August, 2008, served electronically upon:

> VANESSA CARPENTER LOURIE, ESQ.
> 4400 MacArthur Blvd., N.W.
> Suite #205
> Washington, D.C.  20007-2521
> Co-Counsel for Plaintiff/Counter-Defendant

and via first class mail, postage prepaid, upon:

> LINDA AWKARD, ESQ.
> 4201 Cathedral Ave., N.W.
> Suite #1416W
> Washington, D.C. 20016
> Co-Counsel for Plaintiff/Counter-Defendant

ROBERT B. PATTERSON
P.O. Box 3106
Reston, VA 20195
Defendant/Counter-Plaintiff *Pro Se*

/s/ Christopher G. Hoge
Christopher G. Hoge

cgh/z/wpdirs/civil
mannreplymtnfordamages .wpd