UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELLIPSO, INC., Plaintiff and Counter-Defendant | ) | |
| v. | ) | Civil Action No. 05-1186 (RCL) |
| JOHN B. MANN, *et al.*, Defendants and Counter-Plaintiffs | ) | |

**MANN DEFENDANTS' MOTION FOR RECONSIDERATION WITH POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Come now John B. Mann and Mann Technologies, LLC, Defendants and Counter-Plaintiffs herein (collectively the "Mann Defendants"), by their undersigned counsel, and respectfully move this Court, pursuant to Fed. R. Civ. P. 59(e) and/or 60(b)(1) and/or 60(b)(6), for reconsideration of that part of the Court's ruling of August 5, 2008 which declined to award attorneys' fees to the Mann Defendants based on application of the so-called "American Rule". As grounds for this motion, the Mann Defendants state as follows:

On August 5, 2008, after a seven day jury trial, the Court orally granted motions for judgment, pursuant to Fed. R. Civ. P. 50(a), as to all the remaining counts of Plaintiff's complaint and all the remaining counts of the counterclaim of Mann Technologies, LLC ("Mann Tech"). In so ruling, this Court found as follows:

> Additionally, the Mann Tech Defendants seem to argue that they're entitled to attorney's fees in conjunction with what they call this frivolous litigation, noting the Joint Amended Pretrial Statement at 23. However, the Mann Defendants did not present evidence on attorney's fees at trial, and most importantly, they've set forth no justification ignoring the general rule commonly known as the American Rule, that each party in a lawsuit bears the cost of its own attorney's fees, ....

> For these reasons, no reasonable jury could find that the Mann Defendants have established damages in their counterclaim.

Transcript of Oral Ruling on Motions for Judgment, 8/5/08, at pp. 11-12 (citations omitted).

However, there is indeed a very valid basis for not following the American Rule in this litigation, namely, the existence of a fee-shifting provision in the Collateralized Loan Agreement, Plaintiff's Ex. 6, which is at the very heart of this litigation. Section 8.14 of the Agreement specifies that "in the event this Loan Agreement shall be successfully enforced by suit or otherwise, Borrower will reimburse the Lender or holder or holders of the Obligations, upon demand, for all reasonable expenses incurred in connection therewith, including, without limitation, reasonable attorneys' fees and expenses". Of course, such a contractual provision takes this case out of the so-called "American Rule". *Urban Masonry Corp. v. N & N Contractors*, 676 A.2d 26, 33 (D.C. 1996).

Under applicable case law, a claim for attorneys' fees under such a contractual provision is properly made to the Court, and not to a jury, and such claim cannot be presented until after the contract has been successfully enforced at trial.

> It is true that when parties contract to abrogate the "American rule," i.e. to place upon the losing party the entire cost of any legal action arising out of their agreement, the amount of the fees thereby shifted is determined by the court.

*Liberty Mut. Ins. Co. v. Lumbermen's Mut. Cas. Co.*, 172 F.3d 919, 335 U.S.App.D.C. 318 (1999) (citation omitted).

> The amount of [legal fees under a contractual fee-shifting provision] is to be determined by the trial judge "on an individual basis.... Although a court charged with the task of enforcing a contract that provides for attorneys' fees does not have the discretion to award no fees at all, it does retain the discretion to determine what constitutes a reasonable amount. *Id.* at 360.

*Federal Deposit Ins. Corp. v. Bender*, 127 F.3d 58, 63-64, 326 U.S.App.D.C. 390 (1997) (citation omitted).

> ... where a contractual agreement expressly provides for the payment of attorney's fees, the trial court's discretion is limited to ascertaining what amount constitutes a "reasonable" fee award. Otherwise put, absent public policy considerations or other unusual circumstances, the duty of the trial court is to give meaning to the full agreement of the parties, as interpreted by controlling case law.

*Central Fidelity Bank v. McLellan*, 563 A.2d 358, 360 (D.C. 1989).

In entering judgment against Ellipso on its remaining claims against the Mann Defendants, the Court found *inter alia* that Ellipso had been in default of the Loan Agreement from the moment it was executed, that Ellipso chose to walk away from the Agreement, and that Mann Tech exercised its contractual right to foreclose on the collateral at a time when "the value of the collateral securing Ellipso's loan had dipped significantly below the outstanding loan amount". 8/5/08 Transcript, at pp. 8-9. Thus, the Mann Defendants, in defending against Ellipso's false claims of fraud, successfully enforced Mann Tech's rights under the Agreement.

The Mann Defendants incurred substantial legal fees in their efforts to defend Mann Tech's rights against Ellipso's groundless claims and attempts to void the Loan Agreement. This federal litigation commenced in the summer of 2005 and did not end (if indeed it has ended) until the summer of 2008. An injunction was entered, an appeal was filed, depositions were taken, much discovery and investigation was conducted, many motions were filed, and despite the Mann Defendants' best efforts to resolve this case without need of a trial, a seven day jury trial ensued. It is not surprising that the Mann Defendants' total legal bills approach $300,000.

Attached to this motion as Ex. 4 are the bills received by John Mann from the Mauro Law Offices for services rendered and costs incurred from August, 2005 through May, 2007. The total

charged by Mauro comes to $104,715. Ex. 5 is comprised of a letter and bills from the firm of Jordan, Coyne & Savits for the appeal from the injunction, indicating a total amount of $15,063.11. Ex. 6 consists of the bills rendered by Crowley, Hoge & Fein, P.C. for services and expenses from May, 2007 through trial, totaling $163,604.17. Thus, the total legal fees and expenses incurred over the three years of this litigation come to $283.382.28. The Court is, of course, invited to scrutinize these invoices for reasonableness, as required by *Central Fidelity Bank v. McLellan*, *supra*.

The Mann Defendants do not believe that the equities of this case are relevant to any determination of the reasonableness of their legal fees and expenses. However, they are mindful that, in entering judgment against Mann Tech on its counterclaim, the Court ruled that it "cannot simply turn a blind eye to Mann Tech's handsome profit [on the sale of the collateral] and award additional damages for its transaction gone awry". 8/5/08 Transcript, at p. 11. In effect the Court held that Mann Tech's "profit" on its sale of the ICO stock cancelled out the relatively minor damages which Mann Tech had presented at trial. The evidence of Mann Tech's damages which was presented at trial did not, as the Court noted, include any of its legal bills.

However, even if they are considered, the equities of this case clearly favor Mann Tech. First, Ellipso has admitted that it anticipated that Mann Tech would reap a "handsome profit"[1]

[1] Trial Ex. 58, attached hereto as Ex. 1, is an e-mail from Dr. Castiel to Robert Patterson dated July 13, 2004, attaching proposed amendments to the contract between The Registry Solutions Company ("TRSC") and Ellipso, and the Loan Agreement. The last page of the exhibit is a computer worksheet prepared by Dr. Castiel indicating that the anticipated return on the Mann Tech loan was contemplated to be 258%. That would mean a pay-out of $358,000 on a $100,000 loan. Trial Ex. 38, attached hereto as Ex. 2, is a draft of a proposed Memorandum of Understanding among Ellipso and its affiliates, Mann Tech and TRSC, which was created in or about April of 2004. Attached to the document is a page of hand-written notes by Dr. Castiel, which apparently indicates a $450,000 payout to Mann Tech.

from this high-risk[2] loan. Second, Mann Tech in fact made no profit[3] on its transaction with Ellipso, and no evidence of any such profit was presented at trial[4] or can be found in the record[5]. Third, it is Ellipso that has benefitted handsomely from its transactions with Mann Tech, and has failed to share with, or even notify the Mann Defendants of, its profits from the 881 service that the Mann Defendants worked so hard to implement.

Dr. Castiel testified that when the 881 service did become operational, Ellipso derived approximately $1,000,000 in revenues from it, none of which was paid to Mann Tech for its efforts. Thus, when one factors in the return on the loan which was originally anticipated, the payment of the ICO proceeds to Mann Tech employees and contractors, and the large amount of

---

At trial Dr. Castiel acknowledged that a handsome pay-out to Mann Tech was always anticipated. In addition, the August 2, 2004 Amendment to the Loan Agreement, Trial Ex. 88, provided for an additional 50,000 shares of ICO stock to go to Mann Tech in return for an additional $10,000 loan. Thus, the anticipated benefit of the bargain for Mann Tech, assuming that Ellipso did not default, was a return of $358,000 to $450,000 plus 50,000 shares of ICO stock.

[2] At trial, UBS's account executive, John Piper, testified that "pink sheet" stocks such as ICO were not recommended by UBS because they were likely to become worthless at any time.

[3] See John Mann Declaration, Ex. 3.

[4] At trial Mr. Mann testified at length on the extensive, uncompensated services he and Patterson rendered in connection with the 881 service, which was different from the work to be performed pursuant to the TRSC contract. Mann testified that the TRSC work could not commence until the 881 service was up and running, which did not occur, according to Dr. Castiel, until at least October of 2004. *See also,* Ex. 3, par. 4 (in excess of 1,088 hours spent by Mann in defense of this lawsuit).

[5]As reported by the Mann Defendants in their April, 2008 Updated Status Report pursuant to this Court's Order of April 1, 2008, Mann Tech received $519,138 from the sale of its ICO stock, and continued to hold 37,611 shares in its UBS account. According to this Report, which has never been challenged or discredited, "[o]f the $519,138 received into the Mann Tech UBS account from the sale of ICOHA shares as of November 2, 2005, a total of $516,558 was paid out of that account to John Mann, Robert Patterson and third parties for expenses, services rendered to Mann Tech and/or Ellipso, or repayment of loans made by Mann to Mann Tech".

uncompensated time devoted by the Mann Defendants to a service which generated $1,000,000 worth of revenue for Ellipso, the "windfall" becomes quite illusory.

Furthermore, in compelling the Mann Defendants to defend Mann Tech's rights under the Loan Agreement, Ellipso has added to the Mann Defendants' losses by causing Mann Tech to incur legal fees approaching $300,000. This Court should compel Ellipso to use its $1,000,000 windfall from the 881 service to honor its contractual commitment to pay Mann Tech's legal fees.

**CONCLUSION**

Because the Court was evidently unaware of the fee-shifting provision of the Loan Agreement when it ruled that the Mann Defendants are not entitled to reimbursement of their legal fees pursuant to the American Rule, the ruling ought to be amended. The so-called "windfall" realized from the forfeiture of the collateral was not really a windfall, and the costs of this lawsuit have been enormous. Accordingly, the Mann Defendants respectfully request an award of their attorneys' fees and costs, totaling $283,382.28 through trial.

Respectfully submitted,

/s/ Christopher G. Hoge
Christopher G. Hoge #203257
Counsel for Defendants/Counter-Plaintiffs
John B. Mann and Mann Technologies, LLC

CROWLEY, HOGE & FEIN, P.C.
1710 Rhode Island Avenue, N.W.
7th Floor
Washington, D.C. 20036
(202) 483-2900

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that true copies of the foregoing Motion were, this 19th day of August, 2008, served electronically upon:

VANESSA CARPENTER LOURIE, ESQ.
4400 MacArthur Blvd., N.W.
Suite #205
Washington, D.C. 20007-2521
Co-Counsel for Plaintiff/Counter-Defendant

and via first class mail, postage prepaid, upon:

LINDA AWKARD, ESQ.
4201 Cathedral Ave., N.W.
Suite #1416W
Washington, D.C. 20016
Co-Counsel for Plaintiff/Counter-Defendant

ROBERT B. PATTERSON
P.O. Box 3106
Reston, VA 20195
Defendant/Counter-Plaintiff *Pro Se*

/s/ Christopher G. Hoge
Christopher G. Hoge

cgh/z/wpdirs/civil
mannreconsidermtn.wpd

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELLIPSO, INC.,<br><br>Plaintiff and<br>Counter-Defendant<br><br>v.<br><br>JOHN B. MANN, *et al.*,<br><br>Defendants and<br>Counter-Plaintiffs | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 05-1186 (RCL) |

**ORDER**

UPON CONSIDERATION of the Motion of John B. Mann and Mann Technologies, LLC, Defendants and Counter-Plaintiffs herein, pursuant to Fed. R. Civ. P. 59(e) and/or 60(b)(1) and/or 60(b)(6), for reconsideration of that part of the Court's ruling of August 5, 2008 which declined to award attorneys' fees to the Mann Defendants based on application of the so-called "American Rule", and of the Plaintiffs' memorandum in opposition thereto, and for good cause shown, it is by the Court, this _____ day of _________________, 2008, hereby

ORDERED, that the Motion be, and it is hereby, GRANTED; and it is further

ORDERED, that John B. Mann and Mann Technologies, LLC, be, and they are hereby, awarded attorneys' fees and expenses in connection with this litigation in the total amount of $_____________________, payable by Plaintiff/Counter-Defendant, Ellipso, Inc., with interest at the judgment rate of ______% from the date of this Order.

_______________________________________
CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies:

VANESSA CARPENTER LOURIE, ESQ.
4400 MacArthur Blvd., N.W.
Suite #205
Washington, D.C. 20007-2521
vlourie@carpenterlourie.com

LINDA AWKARD, ESQ.
4201 Cathedral Ave., N.W.
Suite #1416W
Washington, D.C. 20016
lawkard@earthlink.net

CHRISTOPHER G. HOGE, ESQ.
CROWLEY, HOGE & FEIN, P.C.
1710 Rhode Island Avenue, N.W.
7th Floor
Washington, D.C. 20036
chfcgh@aol.com

ROBERT B. PATTERSON
P.O. Box 3106
Reston, VA 20195