IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELLIPSO, INC.                          )
                                       )
    Plaintiff/Counter-Defendant,       )
                                       )
        v.                             ) CA No.: 05-01186(RCL)

**MOTION OF DEFENDANT, COUNTER CLAIM PLAINTIFF, ROBERT PATTERSON TO REINSTATE HIS COUNTER CLAIMS**
**I. BREACH OF CONTRACT, II. *QUANTUM MERUIT*, and III. UNJUST ENRICHMENT, and**
**TO ENTER JUDGMENT AGAINST ELLIPSO, INC. THEREON IN THE AMOUNT OF THREE HUNDRED TWENTY FIVE THOUSAND FIVE HUNDRED DOLLARS PLUS INTEREST AND COSTS**

COMES NOW DEFENDANT, COUNTER CLAIM PLAINTIFF, ROBERT PATTERSON and moves this Court to reinstate his counter claims I. Breach of Contract, II. *Quantum Meruit,* and III Unjust Enrichment, and to enter judgment thereon for Patterson in the amount of three hundred twenty five thousand five hundred dollars ($325,500.00), plus interest and costs, and to grant such other relief as may be just and proper. The basis for this Motion are set forth in the accompanying Memorandum of Points and Authorities.

Respectfully submitted,

Robert Patterson, pro se
PO 3106
Reston, Virginia 20195
(571) 278-7076

RECEIVED

AUG 1 9 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## CERTIFICATE OF SERVICE.

I certify that a true and correct copy of the forgoing motion and supporting documents was mailed, fist class postage paid, this _18_ day of _August_, 2008, to:

Vanessa Carpenter Lourie, Esq.
4400 MacArthur Blvd., N.W.
Suite #205
Washington, D.C. 20007-2521

Christopher Hoge, Esq.
1717 Rhode Island Ave., N.W.
Seventh Floor
Washington, D.C. 20036

Robert Patterson

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC. | ) |
| | ) |
| Plaintiff/Counter-Defendant, | ) |
| | ) |
| v. | ) CA No.: 05-01186(RCL) |
| | ) |
| JOHN B. MANN, et al. | ) |
| | ) |
| Defendants/Counter-Plaintiffs. | ) |

**DEFENDANT, COUNTER CLAIM PLAINTIFF, ROBERT PATTERSON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO REINSTATE HIS COUNTER CLAIMS ONE, TWO AND THREE**

COMES NOW DEFENDANT, COUNTER CLAIM PLAINTIFF, ROBERT PATTERSON, and submits this Memorandum of Points and Authorities in Support of His Motion to Reinstate His Counter Claims I. Breach of Contract; II. *Quantum Meruit;* and, III. Unjust Enrichment. The proof here is that Robert Patterson ("Patterson"), provided consulting services to Plaintiff, Counter Claim Defendant, Ellipso, Inc. ("Ellipso") for three years, from October 2001 until October 2004, with a six month hiatus from May through October 2003. Patterson filed mandatory counter claims pursuant to Rule 12(b)(6), Fed.R.Civ.P, seeking payment for these services. Ellipso moved to dismiss those counter claims and in an Order and Memorandum Opinion, dated April 26, 2006, this Court granted Ellipso's motion and dismissed all five of Patterson's counter claims. Patterson asks

this Court to reconsider that ruling as to Counter Claims I, II, and III, pursuant to Fed.R.Civ.P. 59(e) and/or 60(b)(1),and/or 60(b)(1).

## THE FACTUAL RECORD

The factual record developed in the pleadings and at trial is that Patterson entered into a consulting agreement with Ellipso dated October 1, 2001, which he executed on behalf of Consulting Management, LLC, ("CM"). CM was never incorporated. [Patterson stipulated to this in his first pleading filed herein.] Dr. David Castiel, ("Castiel"), the owner and CEO of Ellipso testified at trial that Patterson provided consulting services to Ellipso from October 2001 until October 2004, with the six month suspension noted above. Castiel testified that Patterson worked hard, coming in early and staying late. He further testified that he was very satisfied with Patterson's services, describing them in a June 16, 2004, email as "brilliance". [Trial exhibit, RP No. 14]. Ellipso, through Castiel, continued to solicit, accept, and make partial payments to Patterson for his services until October 2004.

As a consequence of Patterson's work on behalf of Ellipso, Ellipso received almost two hundred thousand dollars ($200,000.00) from Defendant John Mann and

2

MannTechnologies, LLC. In excess of two hundred thousand dollars ($200,000.00) was expended on Ellipso's behalf by the Registry Solutions Company ("TRSC") in furtherance of Ellipso's 881 telephone code business. [Castiel testified that Ellipso has made "almost a million dollars" ($1,000,000.00) from that business so far, and has not shared a single dollar of that money with TRSC.]

Ellipso also received approximately twenty six thousand dollars ($26,000.00) from the sale of its unprofitable internet service provider business, which Patterson arranged.

There was undisputed testimony that Patterson arranged a deal whereby Ellipso could have sold its net operating losses for more than twenty million dollars ($20,000,000.00), but that Castiel refused to submit to any oversight of Ellipso's financial transactions and rejected that opportunity. [Patterson' fee (5%) for that transaction would have exceeded one hundred thousand dollars ($100,000.00)]

The testimony was that absent Patterson's efforts, Ellipso would very likely have been forced into bankruptcy in 2004. There is no evidence in this record that Castiel/Ellipso ever complained about Patterson's services, except when Patterson pressed to be paid.

3

Patterson spent three years providing services to Ellipso, and three more years defending against this fallacious and vexatious law suit, for which he has not received remuneration. Patterson deserves to be paid for the services he provided to Ellipso.

COUNT I. BREACH OF CONTRACT SHOULD BE REINSTATED AS TO ROBERT PATTERSON BECAUSE THE PROOF HEREIN PROVES A CONTRACT BOTH EXPLICITLY (IN WRITING) AND IMPLICITLY (BY THE CONDUCT OF THE PARTIES)

A. THE WRITINGS BETWEEN ELLIPSO AND PATTERSON ESTABLISH AN EXPLICIT WRITTEN AGREEMENT.

The counter claims were filed by Patterson, not Consulting Management, LLC. It is Patterson who seeks to enforce his rights, not the rights of CM. While the initial October 1, 2001, contract, and some subsequent correspondence (Trial exhibit, RP No. 20, April 27, 2004, letter agreement) were between Ellipso and CM, thereafter the writings were directly between Ellipso and Patterson, (Trial Exhibit, RP No. 14, June 16, 2004, email) In that email to "Robert Patterson", David Castiel writes:

> "Please don't get angry.. . . I know what you have done, and you know I know. I think I have done my part to help, and I don't want gratitude but just the fact that I recognized brilliance when I saw it." (Trial exhibit, RP No. 14, p. 1)

The second person, "you", is clearly Patterson. This email was in response to one from "Robert Patterson" of June 16, 2004, in which Patterson seeks payment for past services:

4

> "I have revised the promissory Note to delay any payments until November, when Ellipso will have access to the ICO shares and hopefully revenues from 881. I want to separate payment for past services from performance of future services. I only do carrot and stick for so long." (id.)

The first person, "I", is not Consulting Management, LLC, it is Robert Patterson.

Castiel testified that he made payments directly to Patterson, not CM. (See, also, Exhibit 11, attached to Hearing Memorandum of Defendant, Robert B. Patterson In Response to Motion for Preliminary Injunction of Plaintiff, Ellipso, Inc., check from Ellipso, Inc. to Robert Patterson, for $2000.00 dated October 8, 2004.) This was a payment to Patterson for his services, not to CM.

In an email of October 20, 2004 (Trial Exhibit, No. ), "David Castiel" writes to "Robert Patterson":

> "Bob,
>
> Per your request I am reiterating the terms of our agreement, including a going-forward proposal.
>
> 1) In April 2004 you requested a written affirmation of your agreement together with a detailed accounting of deferred compensation. This was memorialized in a letter date April 27, which, in addition to specifying the amounts owed, paid and deferred, stated that:
> *"Ellipso agrees to maintain this current arrangement until May 31, 2004 at which time it expects to repay all deferred compensation, and pay the bonuses for deferred compensation…*

> 2) My understanding was that you were "covered" as you indicated to me starting in June through a variety of sources, including the Ineva customer base sold to LookNet, of which you are a substantial holder and TRSC/Mann Tech (of which you are a substantial holder as well) who had agreed to fund certain "registry" related development activities. In fact, in addition to assisting Ellipso, you have been actively involved with TRSC/Mann Tech for businesses unrelated to Ellipso or 881.
>
> 3) Based on the above, although we never defined any arrangement after May 31, 2004, Ellipso is prepared to compensate you for your efforts in the intervening period. I believe it is only fair that the burden be shared with your other employers/businesses as anticipated earlier. Conversely it would not be fair that Ellipso accrues a liability of $20,000 per month as you suggest, while the benefit of your activities flows to Ellipso perhaps, but at least as well to Mann/Tech and to your ownership of these various entities.
>
> Based on the above we are prepared to 1) disburse to you 10% (as you requested) of all proceeds to Ellipso except for loans and 2) come up, with your assistance, with a specific amount to value your contribution to Ellipso in the past four months and forward. Such amounts will accrue to your credit and be paid as soon as funds are generated and the 10% in point 1) above clears the balance due. I expect this to happen in the next several months, based on the emerging 881 business.

Let me know your thoughts.

David" (Trial Exhibit, No. )

There can be no doubt that this acknowledgement of a contractual agreement was with Patterson. It was Patterson, not CM, who held the interests in the other

6

businesses, and is to Patterson that Ellipso commits to pay for past, present, and future services. Clearly Patterson relied on these written assurances in continuing to provide services to Ellipso.

Taken together, these documents establish an explicit, written, agreement between Ellipso and Patterson. These written agreements establish that contractual relationship between Patterson and Ellipso, without respect to the existence, or non-existence, of Consulting Management, LLC. The granting of Ellipso's Motion to Dismiss Counter Claim Count I, Breach of Contract, is clear error.

B. THE CONDUCT OF THE PARTIES ESTABLISHES AN IMPLICIT CONTRACTUAL OBLIGATION BY ELLIPSO TO PAY PATTERSON FOR HIS CONSULTING SERVICES.

Castiel testified that he hired Patterson in October 2001, and that Patterson continued to provide consulting services until October 2004. "It is fundamental, of course, that . . . one who orders work done impliedly promises to pay for it." (*Dodge's Market, Inc. v. Turner*, D.C.Mun.App., 67 A.2, 526 (1949)(requiring store owner to pay for repairs made at his oral request); See, *Warner Corp. v. Magazine Realty, Co.*, D.C.App. 255 A.2d 479, 480-81,(1969)(requiring property owner to pay for repairs made pursuant to verbal orders by his property manager); *Geier v. Laughlin*, 129 A.2d 401, 402 (D.D.1957)(although there

7

was no written agreement for representation, party knew she had been named as a respondent and accepted counsel's representation).

> "'An implied-in-fact contract is a true contract, containing all necessary elements of a binding agreement; it differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt." *Vereen v. Clayborne*, 623 A.2d 1190, 1193 (D.C. 1993)(quoting *Bloomgarden v. Coyer*, 156 U.S.App.D.C. 109, 116, 479 F.2d 201, 208 (1973). In *Vereen*, we described as follows the requirements for recovery under a contract implied-in-fact:
>
> (1) valuable services being rendered;
> (2) for the person sought to be charged;
> (3) which services were accepted by the person sought to be charged, used and enjoyed by him or her; and
> (4) under such circumstances as reasonably notified the person sought to be charged that the [person rendering the services] expected to be paid by him or her."
> (Jordan Keys & Jessamy v.St. Paul Fire, 670 A.2d 58, 62 (D.C. 2005).

Ellipso's own proof was that it requested services from Patterson; that Patterson had rendered valuable services; that Ellipso accepted, used, and enjoyed these services provided by Patterson; and that Ellipso expected to pay for Patterson's services. This arrangement between Ellipso and Patterson continued for three years, during which Ellipso made periodic payments to Patterson for these services.

8

The conduct of Ellipso and Patterson create an implied contract-in-fact requiring Ellipso to compensate Patterson for the work he performed. The granting of Ellipso's Motion to Dismiss Counter Claim Count I, Breach of Contract is clear error.

> COUNTER CLAIM COUNT II, *QUANTUM MERUIT,* AND COUNT III, UNJUST ENRICHMENT, SHOULD BE REINSTATED BECAUSE
> A. THE DOCTRINE OF UNCLEAN HANDS IS INAPPLICABLE HERE;
> B. *QUANTUM MERIUT* DAMAGES ARE APPROPRIATE; AND
> C. ELLIPSO HAS BEEN UNJUSTLY ENRICHED BY RETAINING THE BENEFITS OF PATTERSON'S LABOR WITHOUT PAYMENT TO PATTERSON

A. THE DOCTRINE OF UNCLEAN HANDS IS INAPPLICABLE IN THESE CIRCUMSTANCES AS THE STATUS OF CONSULTING MANAGEMENT, LLC BEARS NO RELATION TO THE COMPENSATION SOUGHT BY PATTERSON.

This Court dismissed Counter Claim Count II, *Quantum Meruit,* and Counter Claim Count III, Unjust Enrichment, "under the doctrine of unclean hands." (Memorandum Opinion, April 26, 2006, p. 4.) While it is well established that unclean hands can bar prosecution of such equitable claims, it is equally well established that imposition of the doctrine requires a direct link between the unethical behavior and the underlying claims in the law suit which are sought to be barred.

> "The unclean hands doctrine derives from the equitable maxim that 'he who comes into equity must come with clean hands,' and it 'closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief.' *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814, 65 S.C. 993, 89 L.ed. 1381 (1945). Equity does not require

9

> blamelessness with respect to other matters, but it does require that one seeking relief must have acted fairly and without fraud or deceit as to the controversy at issue. *Id.* At 814-815, 65 S.Ct. 993." . . .
>
> Courts have discretion to deny equitable relief where there is a direct link between plaintiffs' unethical behavior and the underlying obligation that formed the basis of the lawsuit. *See Steele v. Isikoff,* 130 F.Supp.2d 23,34, (D.D.C.2000)(denying equitable relief based on the doctrine of unclean hands because plaintiff lied to obtain the underlying promise for which she sought relief); *Ross v. Fierro,* 659 A.2d 234, 240 (D.C.1995)(denying the defense of unclean hands when the alleged wrongful actions were not the cause of the obligation from which defendant sought to be relieved); *Int'l Tours & Travel v. Khalil,* 491 A.2d 1149, 1155 (D.C.1985) ('Unless the amount owed the plaintiff is the direct result of the unethical behavior, . . . , the clean hands doctrine does not bar the plaintiff's recovery." (*Monument Realty, LLC. V. WAMATA,* 540 F.Supp. 66, 82 (D.D.C. 2008).

Here the alleged fraud, the lack of incorporation of CM, simply has no relationship to Patterson's claims for compensation for the services he delivered. Castiel testified that it was Patterson's purported experience and expertise that induced Ellipso to hire him. It is Patterson's delivery of those services, and Ellipso's acceptance of their benefits, that substantiates Patterson's claims for compensation. CM's incorporation, or lack thereof, had and has no link, direct or otherwise to the Counter Claims II and III. The dismissal of Counter

Claims II and III, ". . . under the doctrine of unclean hands. . .", is clear error.

B.   *QUANTUM MERUIT* DAMAGES ARE APPROPRIATE HERE AS ELLIPSO HAS BENEFITED FROM THE VALUE OF PATTERSON'S SERVICES.

*Quantum Meruit* is closely akin to the doctrines of implied contract-in-fact, and unjust enrichment. It arises in the absence of an explicit contract,

> "The right to recover in *quantum meruit* does not grow out of the contract, but it is independent of it. This right is based upon the promise implied by law for beneficial services rendered and knowingly accepted.' *Campbell v. Northwestern National Life Insurance Co.*, 573 S.W.2d 496, 498 (Tex.1978)(citing 1 Williston on Contracts § 3A (other citations omitted)). Thus a party who has incurred a detriment at the request of another, by rendering service to the other with the reasonable expectation of compensation, is as entitled to enforce his claim at law as one who has acted similarly based on an expressed promise. *Welsh v. Woods*, 47 Hawaii 252, 254, 386 P.2d 886, 887 (1963)(citations omitted). (*Chase v Gilbert*, 499 A.2d 1203 (D.C.App. 1985)

Here Patterson provided services of great value to Ellipso. Castiel's testimony emphasized the dire financial straights Ellipso faced in 2003 and 2004, testifying at on point that he only paid sixty dollars on a bill because he did not have a hundred dollars. It certainly appears that Patterson's efforts enabled Ellipso to avoid bankruptcy and loss of all its assets. Patterson is entitled to receive the reasonable value of his services from Ellipso pursuant

11

to the doctrine of *quantum meruit*. Dismissal of Counter Claim II, *Quantum Meruit,* was clear error.

C. ELLIPSO HAS BEEN UNJUSTLY ENRICHED BY RETAINING THE BESNEFITS OF PATTERSON'S SERVICES WITHOUT PAYMENT.

"Unjust enrichment . . . rests on a contract implied in law, that is, on the principle of quasi-contract. This form of recovery is possible in the absence of any contract, actual or implied in fact." *Albrecht v. Committee on Employee Benefits,* 357 F.3d 62, 69 (D.D.Cir. 2004).

> "In order to state a claim for unjust enrichment, the plaintiffs 'must establish that: (1) they conferred a legally cognizable benefit upon [the] [d]efendants; (2) [the] [d]efendants possessed an appreciation or knowledge of the benefit; and (3) [the] [d]efendants accepted or retained the benefit under inequitable ciecumstances.' *Id.* (citing *Int's bhd. Of Teamsters, Chauffeurs, Warehousemen of Am. V. Ass's of Flight Attendants, AFL-CIO,* 864 F.2d 173, 177 (D.C.Cir. 1988). To qualify for an award of restitution under th[e] theory of unjust enrichment], [the plaintiffs] must show that [they] conferred a benefit (usually money) on [the defendants] under circum-stances in which it would be unjust or inequitable for [the defendants] to retain the benefit.' *Id.* At 50-51 (quoting *BCCI Holdings,* 56 F.Supp.2d at 64-65 citations omitted))."*(Holly Sugar Corp. v. Veneman,* 355 F.Supp.2d 181, 190 (D.D.C. 2005).

The law in this jurisdiction is well settled.

> "The modern law of unjust enrichment and restitu-tion has its roots in the common law concept of quasi-contract. At common law there were cases in which the courts, in the absence of an actual contract, nevertheless imposed 'a duty . . . under certain conditions upon one party to requite another in order to avoid the former's unjust enrichment.'*Bloomgarden v. Coyer,* 156 U.S.App.D.C.

12

>   109, 116, 479 F.2d 201, 208 (1973)(footnote omitted).
>   To achieve this result, the courts devised 'a legal
>   obligation closely akin to a duty to make restitu-
>   tion,' *Id.* At 118, 479 F.2d at 210, which they
>   called quasi-contract. From the beginning a quasi-
>   contract has been openly acknowledged to be a
>   '[l]egal fiction invented by common law courts to
>   permit recovery by contractual remedy in cases
>   where, in fact, there is no contract, but where
>   circumstances are such that justice warrants a
>   recovery as though there had been a promise . . .
>   It is . . . founded on considerations of justice
>   and equity, and on [the] doctrine of unjust
>   enrichment.' BLACK'S LAW DICTIONARY 324 (6th ed.
>   1990). **When the essential facts are not in
>   dispute, as in this case, the question of whether
>   a quasi-contract should be recognized is one of
>   law.** *Bloomgarden v. Coyer, supra,* 156 U.S.App. D.C.
>   At 119, 479 F.2d at 211.
>
>   Unjust enrichment occurs when a person retains a
>   benefit (usually money) which in justice and equity
>   belongs to anther. *Hillyard v. Smither & Mayton,
>   Inc.,* 76 A.2d 166, 167,(D.C.1950). . .; see
>   RESTATEMENT OF RESTITUTION § 1 comment a (1937).
>   In such a case, the recipient of the benefit has
>   a duty to make restitution to the other person 'if
>   The circumstances of its receipt or retention are
>   such that, as between the two persons, it is
>   unjust for [the recipient] to retain it.' *Id.* § 1
>   Comment c. (*Jordan Keys & Jessamy v. St Paul Fire,*
>   870 A.2d 58, 63 (D.C. 2005), (emphasis supplied).

Here Castiel testified that Ellipso has retained the benefits of Patterson's services, for which Ellipso has not paid Patterson. Clearly Ellipso has been unjustly enriched thereby. Dismissal of Counter Claim III, Unjust Enrichment, is clear error.

13

## RELIEF SOUGHT

From Ellipso's own proof, it is clear that Ellipso has a contractual obligation to pay Patterson for his consulting services delivered between October 2001 and October 2004. On this record the Court must find that Ellipso owes Patterson for his work. Whether the Court finds 1) an explicit written contract, or 2) a contract implied-in-fact from the parties conduct, or 3) a contract based on the doctrine of *quantum meruit* or unjust enrichment; Ellipso is legally obligated to pay Patterson for his efforts, which Ellipso solicited and accepted.

Which ever basis Ellipso's obligation arises under, the best measure of the amounts owed is the amounts the parties themselves placed on Patterson's services. In the April 27, Letter Agreement executed by both Ellipso and Patterson (Trial Exhibit   ), they agree that as of May 31, 2004, Ellipso owed Patterson two hundred sixty thousand dollars ($260,000.00) in compensation and bonuses. Crediting Ellipso for the thirty thousand five hundred dollars paid on this debt yields a balance due of two hundred twenty nine thousand five hundred dollars ($229,500.00). If the damages are awarded pursuant to the contract language, interest of one percent per month, compounded monthly is due. If the damages are awarded

14

pursuant to some other basis, statutory interest would be due on the unpaid balance. The amounts due are simply a matter of mathematical calculation.

For the period June 1, 2004 through October 30, 2004, the conduct of the parties remained the same. Ellipso continued to elicit Patterson's services, and Patterson continued to provide such services. Ellipso expected to pay, and Patterson expected to be paid, for his work. The value of Patterson's services did not change on June 1, 2004; hence the compensation should not change either. Continuing the fixed agreement between Patterson and Ellipso for the months of June through October 2004, at the agreed level, yields an additional compensation amount due and owing of one hundred thousand dollars ($100,000.00). During this period, Ellipso made two payments to Patterson for his services totaling four thousand dollars ($4,000.00); leaving a balance due and owing of ninety six thousand dollars ($96,000.00). Again interest would be due on the amounts owed.

Ellipso owes Patterson three hundred twenty five thousand five hundred dollars ($325,500.00), plus interest thereon.

Patterson has waited almost six years for payment for his work. Here justice delayed is justice denied to

Patterson. Patterson moves this Court to enter judgment against Counter Claim Defendant, Ellipso, Inc., in the amount of three hundred twenty five thousand five hundred dollars ($325,500.00), plus interest there on, and to grant such other relief as may be just and proper.

Respectfully submitted,

Robert Patterson, pro se
PO 3106
Reston, Virginia  20195
(571) 278-7076

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC. | ) |
| | ) |
|    Plaintiff/Counter-Defendant, | ) |
| | ) |
|               v. | ) CA No.: 05-01186(RCL) |
| | ) |
| JOHN B. MANN, et al. | ) |
| | ) |
|    Defendants/Counter-Plaintiffs. | ) |

## ORDER

Defendant Robert Patterson has moved this Court to reinstate his Counter Claims I, Breach of Contract, II. *Quantum Meruit,* and III. Unjust Enrichment and to enter judgment thereon. Upon consideration of the motion and the responsive pleadings thereto, together with the entire record, it is **ORDERED:**

That Counter Claim Plaintiff Robert Patterson's claims I, II, and III are reinstated and judgment is entered thereon in favor of Counter Claim Plaintiff, Robert Patterson, in the amount of three hundred twenty five thousand five hundred dollars ($325,500.00) against Ellipso, Inc., together with interest thereon at the rate of _____.

**ENTERED** this \_\_\_\_ day of _____, 2008.

_____
Royce C. Lamberth, Chief Judge
United States District Court

Seen:

_____
Vanessa Carpenter Lourie, Esq.
Counsel for Ellipso, Inc.
4400 MacArthur Blvd., N.W.
Suite #205
Washington, D.C. 20007-2521


_____              _____
Christopher Hoge, Esq.               Robert Patterson, pro se
Counsel for MannTechnologies, LLC, and   PO 3106
John Mann                            Reston, VA 20195
1717 Rhode Island Ave., N.W.
Seventh Floor
Washington, D.C. 20036