## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

ELLIPSO, INC.                        )
                                     )
    Plaintiff/Counter-Defendant,  )
                                     )
               v.         ) CA No.: 05-01186(RCL)
                                     )
JOHN B. MANN, et al.                 )
                                     )
    Defendants/Counter-Plaintiffs.)

### REPLY BRIEF OF DEFENDANT, COUNTER-CLAIM PLAINTIFF, ROBERT PATTERSON IN SUPPORT OF HIS MOTION FOR COSTS AND DAMAGES OCCASIONED BY THE PRELIMINARY INJUNDCION ISSUED NOVEMBER 2, 2005

Comes Now, Defendant and Counter-Claim Plaintiff, Robert Patterson ("Patterson"), and files this Reply Brief in Support of His Motion for Costs and Damages Occasioned by the Preliminary Injunction Issued by this Court, November 2, 2005, and lifted April 1, 2008.

The lifting of the Preliminary Injunction is conclusive proof that the granting of the Preliminary Injunction was improvident, and that fact cannot be re-litigated, See, Oelrichs v. Williams, 15 Wall 211,229, 21 L.Ed. 43, ("The appellants cannot go behind the decree in the case in which their bonds were given. The law and the facts of that case, as settled by the court, are conclusive _____ rights in this proceeding. They cannot be

RECEIVED

SEP 1 1 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

permitted to raise any question as to either.")  See, also, Janssen v. Shown, 53 F.2d 608, 609, (9th Cir. 1931).  In these circumstances, the award of damages sustained by the defendant as a consequence of the injunction, is mandatory, See, Public Service Commission v. Brashear Freight Lines, Inc. 312 U.S. 621, 61 S.Ct. 784, 85 L.Ed. 1083; Atomic Oil Co. of Oklahoma, Inc. v. Bardahl Oil Company, 419 F.2d 1097, 1100, n. 6, (10th Cir. 1969).  The question presented is, what compensable damages have been sustained by Patterson as a consequence of the Preliminary Injunction?

**PRELIMINARY STATEMENT:**

Before proceeding with the analysis of this question, it is useful to review the history of this litigation.  In the summer of 2005, Plaintiff, Counter-Claim Defendant, Ellipso, Inc. ("Ellipso"), brought this action seeking both injunctive and monetary relief.  The gravamen of the action was the assertion that the Defendants, Patterson, John Mann, ("Mann") and MannTechnologhis, L.L.C., ("MannTech") conspired to conceal from Ellipso, and its owner and CEO, David Castiel, ("Castiel") the fact that Patterson was a partial owner of MannTech.  Ellipso, through Castiel, asserted this allegation repeatedly, as set forth more fully *supra*.  It has now been determined that these allegations were, and are, materially false.  On this

2

record there can be no doubt that Ellipso, through Castiel, repeatedly committed perjury in their attempts to wrongfully prosecute this action.

However, to date Ellipso and Castiel have been rewarded for their perjury. Ellipso/Castiel have avoided paying Patterson for three years of personal services in an amount of three hundred twenty-five thousand dollars ($325,000.00). John Mann and MannTechnologies have incurred litigation costs in defending against this spurious action, in excess of two hundred fifty thousand dollars ($250,000.00). The defendants have been unable to proceed against Ellipso/Castiel to collect payments due to them from Ellipso/Castiel's theft of the 881 telephone business in which they invested more than two hundred thousand dollars ($200,000.00); and out of which Ellipso has reaped "almost one million dollars ($1,000,000.00), as testified to by Castiel at trial. Ellipso retains one hundred ninety thousand dollars ($190,000.00), which the defendants paid directly to Ellipso, and for which they were rewarded with this fraudulent law suit. Patterson has been forced to expend hundreds of hours of professional time and thousands of dollars in defending against this totally facetious law suit.

It is clear that for Ellipso/Castiel, at least to date; perjury pays, and pays very handsomely.

**ELLIPSO'S PATTERN OF BAD FAITH AND DECEPTION OF THIS COURT:**

Ellipso's claims of fraud alleged Defendant's failure to disclose to Ellipso the material fact that Patterson had an interest in MannTech, "before, during and after"[1] executing a January 30, 2004 Loan Contract. Prior to the Preliminary Injunction Hearing of October 28, 2005, Patterson provided a Memorandum to the Court asserting that Castiel knew of his involvement with MannTech prior to executing the Loan Contract. In that Memorandum, Patterson provided an Oct 20, 2004 email from Castiel to Patterson, interpreting it as demonstrating Castiel's knowledge of Patterson's interest in MannTech at least as early as June 2004. Patterson further asserted that Castiel's execution of an August 2, 2004 Amendment constituted Ellipso's ratification, with knowledge, of its Loan Contract. Ellipso argued to this Court (in 2005[2] and 2007[3]) and to the

---

[1] **8/12/2005 Affidavit of David Castiel:** @¶5. "Although Patterson owed Ellipso, as its business consultant, fiduciary duties of loyalty and to act in Ellipso's best interests and not engage in self-dealing, Patterson failed to disclose to Ellipso that Patterson was himself a member of Mann Tech. *At no time prior to, during, or after the negotiations* did Patterson, Mann or Mann Tech disclose to Ellipso the material fact that Patterson was a member of Mann Tech...." (Ex.1, emphasis supplied).

[2] "...at the time of the negotiation and execution of the loan agreement *and thereafter while Patterson continued to provide advice and counsel to Ellipso*, Ellipso was unaware that Patterson was an owner of Mann Technologies..." **(10/7/2005 Reply in Further Support of its Motion for Preliminary Injunction, at pg.3)** (Ex. 2, emphasis supplied).

[3] **11/26/07 Opposition to Motion to Quash Preliminary Injunction, at pg 3:** "...Ellipso did not learn of Patterson's disloyalty and deception until **after** the August 2004 partial sale of ICOHA stock." (Emphasis

Appellate Court[4] (in 2006) that the Oct 20, 2004 email evidenced its knowledge of Patterson's role only as of October 20, 2004, the date the email was written, well after the August 2, 2004, modification to the original Loan Agreement, and that therefore no ratification had occurred.

In Ellipso/Castiel's Answer to the First Set of Interrogatories, dated March 27, 2007, Castiel swore that the first time he knew of "any role or interest" of Patterson in MannTech was on August 12, 2004, at Starbucks. Since such a date followed the last Amendment of the Loan Agreement on August 2, 2004; this answer again avoided for Ellipso the issue of ratification that Patterson had raised at the earliest stages of this litigation. Thus, Ellipso and Castiel claimed throughout 2005, 2006 and early 2007 that Ellipso had no knowledge of Patterson's interest prior to any Amendment that ratified the original Loan Agreement.

In April 2007 Patterson produced in discovery the Nov. 16, 2004 email that eliminated the ambiguity of the October 20, 2004 email and, as this Court has found, establishes that Castiel knew at least as early as June 2004 of Patterson's interest in MannTech. This, of course, proved that Ellipso/Castiel had ratified the original Loan

---

in original).

[4] **Ellipso Brief on Preliminary Injunction Appeal, 11/1/2006, at pg. 16:** "Ellipso's execution of the Sale Order in September 2004 did not constitute a ratification of the fraudulently induced Loan Agreement since the Sale Order did not fully apprise Ellipso of Patterson's ownership interest in Mann Tech ..." (Ex. 3).

Agreement on August 2, 2004, the date the Amendment was executed. There can be no doubt that Ellipso/Castiel have continually and consistently misled and deceived this Court concerning their knowledge of Patterson's interest in MannTech and their ratification of the Loan Agreement. As this Court found, the plain language of the November 16, 2004 email, unequivocally establishes Ellipso/Castiel's knowledge of Patterson's role in MannTech prior to ratification of the Loan Agreement by Amendment on August 2, 2004.

It is equally clear that Castiel failed to provide either the November 16, 2004, or October 20, 2004, incriminating emails in discovery. The oft-repeated general excuse of multiple "computer failures" does not explain the selective absence of the Nov 16, 2004 or October 20, 2004 emails. As the Defendants presented to the Court, Castiel <u>did</u> provide multiple emails for dates just prior to and after each of these missing emails[5], and no explanation of computer failure[6] can account for the absence of these dispositive documents[7].

---

[5] Several of these are presented in Exhibit ___, bearing the stamp of Plaintiff's Bates numbers.

[6] The Microsoft Outlook program that Castiel admits using maintains a single file (.pst) for all emails. Any corruption of that single file affects all emails contained in the file, generally rendering <u>all</u> of them unreadable.

[7] When the Court asked Plaintiff's counsel to examine Ellipso's computer to determine that all requisite electronic documents had been provided, counsel reported that she could only examine a file folder that had

On this record it is clear that Ellipso/Castiel have prosecuted this action in bad faith; and have committed repeated acts of perjury and destruction of evidence; in an attempt to falsely create a cause of action where none exists. Had Ellipso/Castiel been honest and truthful, this case could never have been brought, and the Preliminary Injunction could never have issued.

## ELLIPSO/CASTIEL HAVE ACTED IN BAD FAITH:

The legal standard applicable to a finding of bad faith in this jurisdiction is set forth in *Synanon Foundation, Inc. v. Berstein*, 517 A.2d 28,36-39, (D.C. App 1968), where after discussing the American rule on the award of attorneys' fees and costs, the court states:

> To relieve the American rule of its potential rigor, courts and legislatures have fashioned certain exceptions in which the prevailing party is allowed to recoup reasonable attorneys' fees from the loser. [citations omitted] One of these permits an award of attorneys' fees against a party who has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons" connected to the litigation. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765-66, 100 S.Ct. 2455, 2463-64, 65 L.Ed.2d 488 (1980); *Alyeska Pipeline Service Co. v. The Wilderness Society*, 421 U.S. 240, 259, 95 S.Ct. 1612,1622, 44 L.Ed.2d 141, (1975); *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,*417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2 703 (1974); *Hall v. Cole,* 412

---

been specifically created by Castiel for this litigation, and she was not able to make any other representations to the Court as to the computer's contents.

U.S. 1, 5, 93 U.Ct. 1943,1946; 36 L.Ed.2d 702 (1973).

In the District of Columbia,. . . we have adopted the so-called bad faith exception. e.g., id.; *Andrews v. District of Columbia,* 443 A.2d 566, 568-70 (D.C.), cert. denied, 459 U.S. 909, 103 S.Ct. 216, 74 L.Ed.2d 172 (1982); *American Federation of State, County & Municipal Employees v. Ball,* 439 A.2d 514, 514-15 (D.C. 1981); *F.W. Berens Sales Co. v. McKinney,* 310 A.2d 601, 602 (D.C. 1973).

Unlike the other exceptions to the American rule, which are primarily designed to encourage or to compensate worthy litigants, the bad faith exception is intended to punish those who have abused the judicial process and to deter those who would do so in the future. See *Kasachkoff v. Ross H. Finn, Co.,* 408 A.2d 993, 995 (D.C. 1979)(per curium). As explained by the Supreme Court, "[i]n this class of cases, the underlying rationale of 'fee shifting' is, of course, punitive, and the essential element in triggering the award of fees is therefore the existence of 'bad faith' on the part of the unsuccessful litigant." *Hall v. Cole, supra,* 412 U.S. at 5, 93 S.Ct. at 1946. Although recovery of fees incidentally compensates the prevailing party for costs which should not have been incurred, its primary function is "that the assessment of fees in such cases will deter abusive litigation in the future, thereby avoiding harassment and protecting the integrity of the judicial process." *Copeland v. Martinez,* 195 U.S.App.D.C. 399, 402, 603 F.2d 981, 984 (1979), cert. denied, 444 U.S. 1044, 100 S.Ct. 730, 62 L.Ed.2d 729 (1980).

There were two ways in which Synanon displayed bad faith warranting an award of attorney's fees. First, it perpetrated a fraud upon the court, conduct which we condemned in *Synanon I.* This warranted the sanction of an attorney's fee award. See *Universal Oil Products Co. v. Root Refining Co.,* 328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447 (1946); *Toledo Scale Co. v.*

8

*Computing Scale Co.,* 261 U.S. 399, 426-28, 43 S.ct. 458, 465-66, 67 L.Ed. 719 (1928).    "No fraud is more odious than an attempt to subvert the administration of justice." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 251, 64 S.Ct. 997, 1004, 88 L.Ed. 1250 (1944) (Roberts, J., dissenting).    As the Supreme Court has observed,

> Tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. *Hazel-Atlas Glass Co. v. Hartford-Empire Col, supra,* 322 U.S. at 246, 64 S.Ct. at 1001.

> The fee award is also justified on the ground that, aside from its deception of the trial court, Synanon engaged in groundless, bad faith litigation manoeuvres by cynically attempting to foil the discovery process.. . . "An equity court has the unquestioned power to award attorney's fees against a party who shows bad faith by delaying or disrupting the litigation . . ." *Hutto v. Finney,* 437 U.S. 678, 689 n.14, 98 S.Ct. 2565, 2573, 1457 L.Ed.2d 522 (1978).    As one court has remarked, "[w]e are all too aware of the harvest of exacerbation which hoary litigation reaps." *In re Boston & P.R.R.,* 501 F.2d 545, 549 (1st Cir. 1974).

Here, this Court has found that Castiel/Ellipso had knowledge of Patterson's interest in MannTech, "at least as early as June 2004", and thereafter reaffirmed the Loan Agreement on August 2, 2004. As was held by the trial court in Synanon,

> Indeed, the court finds that not only has plaintiff litigated the case in bad faith, but,

9

> in addition, the case was initiated in bad faith.
> <u>The conclusion is irrestible that when this suit</u>
> <u>was brought, the officers of Synanon knew full</u>
> <u>well that within Synanon's archives there were</u>
> <u>materials which would defeat its claim . . . They</u>
> <u>then set about,. . . to destroy evidence</u>. *Supra.*
> *at 39 (emphasis supplied)*

This Court has found that when Castiel/Ellipso filed the instant suit, <u>Castiel</u> <u>knew</u> <u>that</u> <u>his</u> <u>representations</u> that he had no knowledge of Patterson's role in MannTech, "either before, during, or after . . ." the transaction, <u>were</u> <u>false.</u> The conclusion is irresistible that when this suit was brought, Castiel/Ellipso knew full well that they possessed information and materials which would defeat their claim. Ellipso/Castiel then set about to conceal or destroy that evidence. **However, Castiel's knowledge of Patterson's role could not be erased.** "Where a suit has been filed in bad faith, the court has discretion to award the entire legal expenses incurred by the defendant. *Synanon, supra. at 38.* The similarity to *Synanon* is striking. All that is missing are the rattle snakes, See, *Synanon, at 42, n 8.*

Patterson asks this Court to find that Ellipso has prosecuted this case in bad faith, and to award as damages the entire expenses incurred by the defendant. Such a finding is certainly warranted here where the perpetrator is a highly intelligent and well educated (Ph.D) individual

who is also a seasoned litigant having been involved in dozens of law suits in the past ten years (most involving avoidance of payment to employees or others who have worked for Ellipso). Castiel's actions were knowing, cunning, dishonest, and taken for a wrongful purpose. Such ". . . fraud cannot complacently be tolerated consistent with the good order of society." *Hazel-Atlas Glass Co. v. Hartford-Empire Col, supra,* 322 U.S. at 246, 64 S.Ct. at 1001.

## PATTERSON IS ENTITLED TO RECOVER THE COSTS INCURRED IN DISOLVING THE PRELIMINARY INJUNCTION:

Even in the absence of a finding of bad faith, Patterson is entitled to recover the costs incurred in dissolving the Preliminary Injunction. In a federal diversity action such as this, "…the question of what damages are recoverable on a surty bond that is ancillary to a diversity action is governed by state law. *See, 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure §2974* (1973) and cases cited therein. Furthermore, "in a diversity case, explicit state statutory authority for an award of costs would control" over federal law. *Smith v. Frazzini,* 139 F.R.D. 677, 678 (D. Colo. 1991); *see also, Agnew v. Alicanto,* 125 F.R.D. 355 (E.D.N.Y. 1989)." *Federal Beef Processors, Inc. v. DBS, Inc.* 864 F.Supp 127, 130 (D.S.D. 1994); *See also, Cohen v.*

*Beneficial Industrial Loan Corp.* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1948).

> Under the rule of the Tompkins case, the federal courts, at least in all cases in which their jurisdiction is invoked merely upon grounds of diversity of citizenship, will be bound by the decisions of the state courts upon the question of recoverability of attorney's fees in actions on injunction bonds. *Boulova Watch Company v. Rogers-Kent, Incorporated,* 181 F.Supp. 340, 345 (D.C.S.C. 1938)(citing 28 Am.Jur. 522, Section 346).

The applicable District of Columbia statute provides:

> In a proceeding . . . to recover damages upon a bond or undertaking given to obtain a restraining order or preliminary or pendent elite injunction, the Court, in assessing damages to be recovered thereunder, may include such reasonable counsel fees as the party damaged by the restraining order or injunction may have incurred in obtaining a dissolution thereof. *D.C.Code § 15-111(1981).*

Pursuant to D.C. law, Patterson is entitled to recover all reasonable costs associated with his securing dissolution of the Preliminary Injunction, including reasonable attorney's fees. *See, Local Union No. 368, ETC v. Barker Painting Co.,* 24 F.2d 879, 880 (D.C. Cir. 1928); *Taylor v. Frenkel,* 499 A.2d 1213,1214 (D.C.App. 1985).

**ELLIPSO MUST REIMBURSE PATTERSON FOR EMPLOYMENT LOST AS A CONSEQUENCE OF THE WRONGFUL IMPOSITION OF THE PRELIMINARY INJUNCTION:**

As a direct consequence of the wrongful filing and imposition of the Preliminary Injunction, Patterson has been deprived of income and livelihood. The loss of

employment and income has long been recognized as a
compensable damage recoverable in an injunctive action,
*Josephson v. Fremont Industries, Inc.,* 163 N.W.2d 207,302
(Supreme Ct. Minn. 1968), rehearing denied ("A person
deprived of employment by reason of an improper injunction
is entitled to recover for the loss suffered by being out
of employment.")

> Contrary to defendants' contention, a
> person who, because of another's wrong, loses
> time from work is entitled to be compensated even
> though he was not working for a fixed wage or was
> unemployed at the time of the wrong. *Blacktin v.
> McCarthy,* 231 Minn. 303, 42 N.W.2d 818. Evidence
> of past earnings is relevant in assessing the
> amount of wages lost due to the defendant's
> wrong. *Blacktin v. McCarthy, supra; Flaugh v.
> Egan Chevorlet, Inc.,* 202 Minn. 615, 279 N.W.
> 582. *Josephson, supra.* at 302. (Awarding lost
> income to employee who lost his job due to an
> improper injunction closing his employer's
> business).

In *Corpus Christi Linen Service v. Wright*, 255
S.W. 324, 325, (Ct of Civil App., Texas, 1953), the
court awarded lost wages to an employee who had lost
wages due to a wrongful injunction. *See, Ryan Bros.
et al. v. Rate et al.,*213 N.W.218, 219 (Sup. Ct. Iowa
1927) (". . . [A]ppellee's own testimony shows that
the two brothers each lost two days in relation to the
hearing on the motion to dissolve the temporary
injunction, and that their time was worth $10 a day,

making $40 in all." The court awarded $150 in attorney's fees and the $40 in lost time.); *Three Rivers Oil Co. v. Laurence,* 95 So.652, 654 (Sup. Ct. La. 1923)(Awarding damages "for annoyance, loss of time, and interference with business caused by the injunction.")

As set forth specifically in Exhibit I, attached, as a direct result of the wrongful prosecution of this matter, and the necessity of obtaining dissolution of the Preliminary Injunction, Patterson was forced to devote hundreds of hours of time and thousands of dollars of expenses, in defending against this action. Patterson works as an independent consultant. To the extent that Patterson was required to devote his time to this matter, he was deprived of the income he would otherwise have earned from his consulting business. This loss of income was a direct result of Ellipso's wrongful and tortous acts in prosecuting this injunctive action.

Patterson was forced to defend himself against this wrongful action, in large measure due to Ellipso's refusal to pay Patterson for three years of services in the amount of three hundred twenty five thousand dollars ($325,000.00). The fact that

14

Patterson was forced to defend himself does not relieve Ellipso of the obligation to reimburse Patterson for those damages (lost time) caused by Ellipso's wrongful injunctive action. Both the law and equity dictate that Patterson should be reimbursed.

**ALTERNATIVELY, ELLIPSO SHOULD REIMBURSE PATTESON AS AN ATTORNEY FOR THE TIME HE WAS FORCED TO DEVOTE TO DEFENDING AGAINST THIS INJUNCTION AND PROCURING ITS DISSOLUTION:**

Ellipso, citing a case pertaining to civil rights issues (*Kay v. Ehrler,* 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991), interpreting *42 U.S.C. 1988*), asserts that a *pro se* lawyer is not entitled to legal fees. The argument is inapposite. Patterson is a licensed attorney in another jurisdiction. There is no proscription that we have found prohibiting awarding compensation to out of state counsel. In fact every major law firm employees out of state counsel, and/or counsel who are not practicing members before this court, in preparing matters before this court. Their fees and expenses are routinely included in attorney's fees matters before this court. Why is Patterson any different? He performed legal work, and could have submitted his time through any member of this bar, and it would have been accepted and paid.

Given Ellipso's wrongful conduct, it is particularly inequitable to deny Patterson compensation for the time and efforts he was forced to devote to defending against the injunctive portion of this matter. [n.b. Of course, there are hundreds of hours of time and thousands of dollars of expenses which Patterson expended in defending the case in chief for which he will never receive any remuneration.]

**WHEREFORE, PATTERSON MOVES THIS COURT TO AWARD THE FOLLOWING COMPENSATION AND COSTS IN THIS MATTER:**

For dissolution of the Preliminary Injunction:

| | |
|---|---|
| 253.50 hours time @ $250 | $63,375.00 |
| Costs and expenses | 3,476.00 |
| Total: | $66,851.00 |

For opposition to the issuance of the Preliminary Injunction:

| | |
|---|---|
| 187.675 hours time @ $250.00 | $46,918.75 |
| Costs and expenses | 446.00 |
| | $47,364.75 |

[In each instance all time or expenses that could be attributed to both the Preliminary Injunction and the case in chief have been divided equally between the two.]

Detailed statements of each are attached hereto.

**RELIEF REQUESTED:**

For the reasons set forth herein, Defendant, Counter-Claim Plaintiff, Robert Patterson, moves this honorable Court to enter an Order finding that Plaintiff, Counter-Claim Defendant, Ellipso, Inc. has prosecuted this action in bad faith and to award Patterson those costs and damages as specified herein, and to grant such other relief as may be just and proper.

Respectfully submitted,

Robert Patterson, *pro se*
P.O. 3106
Reston, Virginia 20195
(571) 278-7076

## CERTIFICATE OF SERVICE.

I certify that a true and correct copy of the forgoing was mailed; fist class postage paid, this *10th* day of *Sept*, 2008, to:

Vanessa Carpenter Lourie, Esq.
4400 MacArthur Blvd., N.W.
Suite #205
Washington, D.C. 20007-2521

Christopher Hoge, Esq.
1717 Rhode Island Ave., N.W.
Seventh Floor
Washington, D.C. 20036

Robert Patterson

COSTS AND EXPENSES FOR QUASHING OF PRILIMINARY INJUNCTION

TIME:  Robert Patterson

2007:

| | | |
|---|---|---|
| Jan. 9 | 1.00hrs. | Review Order re: discovery. |
| Jan. 19 | 3.00hrs. | Conf. D.Durbin, J.Mann re: appeal. |
| Jan. 22 | 0.75hrs. | tc-T.Mauro, J.Mann. M.Goodman re: scheduling and discovery. |
| Jan. 23 | 3.00hrs. | Attend oral argument on PI appeal. |
| Jan.27 | 3.75hrs. | Document review and prep. discovery responses. |
| Jan. 28 | 4.50hrs. | Document review and prep. discovery responses. |
| Jan. 29 | 10.00hrs. | Conf. J.Mann, T.Mauro, M.Goodman, M.Foycik, re: discovery, depositions, and scheduling; file review. |
| Jan. 30 | 0,50hrs. | Review scheduling order, tc-M.Goodman, J.Mann. |
| Feb. 3 | 2.25hrs. | File review and prep. of discovery responses. |
| Feb. 4 | 0.25hrs. | tc-J.Mann re: discovery. |
| Feb. 5 | 0.50hrs. | tc-J.Mann re: discovery responses. |
| Feb. 10 | 5.00hrs. | File review and prep. of discovery responses. |
| Feb. 11 | 4.00hrs. | File review and prep. of discovery responses. |
| Feb. 17 | 4.50hrs. | Review of emails. |
| March  4 | 2.00hrs. | Prep. of discovery responses. |
| March 9 | 4.25hrs. | Conf. T.Mauro, J.Mann, re: discovery issues. |
| March 10 | 3.00hrs. | Review discovery from Ellipso & MannTech. |
| March 11 | 5.50hrs. | Review discovery of Ellipso & MannTech. |

| | | |
|---|---|---|
| March 15 | 1.75hrs. | tc-T.Mauro, J.Mann re: discovery timing and issues. |
| March 17 | 4.50hrs. | Prep. of Discovery Responses, Review docs of Ellipso. |
| March 22 | 2.25hrs. | tc-T.Mauro, J.Mann re: my response to discovery, file review re: Ellipso discovery. |
| March 23 | 5.75hrs. | Review of Appellate Decision re: PI, conf. J.Mann, T.Mauro, M.Foycik re: appellate decision. |
| March 24 | 2.00hrs. | Prep. of discovery responses. |
| March 26 | 0.50hrs. | tc-T.Mauro re: discovery. |
| March 27 | 2.50hrs. | Conf. J.Mann, T.Mauro re: Castiel depo. |
| March 28 | 3.00hrs. | Attend Castiel non-depo; Conf. T.Mauro and tc-J.Mann re: same. |
| March 29 | 0.75hrs. | tc-J.Mann re: Castiel depo and other matters. |
| March 30 | 2.50hrs. | tc-T.Mauro re: discovery responses; file review re: same. |
| March 31 | 3.75hrs. | Review discovery  responses and requests. |
| April 5 | 1.50hrs. | Conf. T.Mauro, J.Mann re: RBP doc production. |
| April 7 | 3.75hrs. | Review documents and file in prep. for RBP depo. |
| April 8 | 2.00hrs. | Review documents and file in prep. for RBP depo. |
| April 14 | 6.00hrs. | Prep. of RBP responses to discovery and for depo. |
| April 15 | 5.50hrs. | Prep. of RBP responses to discovery and for depo. |
| April 16 | 4.50hrs. | Prep. for depo. |
| April 17 | 10.25hrs. | Prep. for depo.; attend depo. |
| April 18 | 3.00hrs. | tc-J.Mann re: case, depo, Castiel, Mauro, docs; file review for discovery. |
| April 21 | 3.00hrs. | Prep. RBP discovery responses; prep. for Castiel depo. |

| April 22 | 3.50hrs. | Prep. discovery responses; prep for Castiel depo. |
| April 25 | 2.00hrs. | Prep. for Castiel depo. |
| April 26 | 4.00hrs | Prep. for Castiel depo. |
| April 28 | 2.75hrs. | Review file and docs for Castiel depo. |
| April 29 | 1.50hrs. | Prep. for Castiel depo. |
| | | |
| May 1 | 2.00hrs. | Prep. for Castiel depo. |
| May 2 | 5.50hrs. | Prep. for Castiel depo. |
| May 3 | 12.75hrs. | Castiel depo. |
| May 4 | 2.25hrs. | Review of Castiel depo responses and notes; file reorg. |
| May 5 | 0.50hrs. | tc-J.Mann re: Castiel depo and case. |

158 hrs. ÷ 2 = 79.0 hrs.

June –

July –

Aug. –

| Sept. 12 | 2.50hrs. | File review for PI Quash Motion. |
| Sept. 13 | 2.50hrs. | File review for PI Quash Motion; tc-J.Mann re: same. |
| Sept. 14 | 2.00hrs. | Review of Castiel Depo; re: Quash Motion (PIQ) |
| Sept. 15 | 4.75hrs. | Review of Castiel Depo & docs re: PIQ. |
| Sept 22 | 10.00hrs. | File review, depos, docs re: PIQ. |
| Sept. 23 | 3.75hrs. | Legal research re: PIQ. |
| Sept. 28 | 3.50hrs. | Legal research re: PIQ. |

3

| | | |
|---|---|---|
| Sept 29 | 5.75hrs. | Research re: PIQ. |
| Sept. 30 | 3.50hrs. | Research and review re: PIQ. |
| Oct. 1 | 4.00hrs. | Research legal issues re:PIQ. |
| Oct. 2 | 3.50hrs. | Research issues re: PIQ. |
| Oct. 5 | 3.25hrs. | Research PIQ issues. |
| Oct. 12 | 5.00hrs. | Legal research and drafting re: PIQ. |
| Oct. 13 | 10.25hrs. | Research PIQ. |
| Oct. 14 | 11.00hrs. | Legal research and drafting re: PIQ. |
| Oct. 15 | 2.75hrs. | Drafting PIQ. |
| Oct. 16 | 2.00hrs. | Doc search re: PIQ. |
| Oct. 17 | 3.25hrs. | Doc search and review re: PIQ. |
| Oct. 20 | 8.50hrs. | Research and document analysis and drafting of PIQ. |
| Oct. 21 | 9.50hrs. | Drafting, research, file search re: PIQ. |
| Oct. 22 | 6.50hrs. | Drafting, research, review re: PIQ. |
| Oct. 23 | 2.00hrs. | Review of document productions re: PIQ. |
| Oct. 25 | 5.00hrs. | Prep. of PIQ. |
| Oct. 27 | 8.00hrs. | Legal research, drafting, review, revision PIQ. |
| Oct. 28 | 8.00hrs. | Prep. of PIQ. |
| Oct. 29 | 9.25hrs. | Finalize PIQ. |
| Oct 30 | 5.50hrs. | Finalize, copy, file serve PIQ. |
| Nov. 14 | 2.25hrs. | Review Motion for Extension of Time re:PIQ. |
| Nov. 15 | 2.50hrs. | Research, doc rev re: Motion for Extension of Time. |

| Nov. 17 | 3.00hrs. | Draft response to Motion for Extension of Time re: PIQ. |
| Nov. 18 | 3.25hrs. | Draft response to Motion for Extension of Time re: PIQ. |
| Nov. 19 | 2.25hrs. | Finalize, copy, file, serve Opposition to Motion for Extension of Time re: PIQ. |
| Nov. 27 | 3.50hrs. | Review Opposition to PIQ, and prepare response. |
| Nov. 28 | 6.75hrs. | Research, Draft, Copy, Response to Opposition to PIQ. |
| Nov. 29 | 3.50hrs. | Finalize, file, serve Response to Opposition to PIQ. |
| April 2 | 1.00hrs. | Review of Order Quashing PI. |

174.5 hrs.

TOTAL HOURS FOR QUASHING PRELIMINARY INJUNCTION: 253.50

253.50 hours @ $250.00 =                                    $63,375.00

EXPENSES INCURRED FOR QUASHING PRELIMINARY INJUNCTION:

| Jan. 19 | 42.00 | travel and parking for conference with D.Durbin, re: PI A. |
| 23 | 48,00 | travel and parking for appellate argument re: PI. |
| 28 | 48.00 | travel & parking, conf. M.Goodman, T.Mauro. |
| Feb. – | | |
| March  9 | 48.00 | travel & park, conf. J.Mann, T.Mauro. |
| 23 | 48.00 | travel & park, conf. T.Mauro, J.Mann, M.Foycik, re: PI appeal decision. |
| 27 | 50.00 | travel & park, conf. T.Mauro re: Castiel deposition. |
| 28 | 45.00 | travel & park, Castiel non-depo. |
| April  5 | 48.00 | travel & park, conf. T.Mauro. |
| 10 | 2500.00 | forensic expert Sensei Enterprises, Inc. |
| 17 | 82.00 | travel, park, & lunch, RBP depo. |
| May  2 | 2,256.00 | Castiel deposition transcript. |
| | 225.00 | copies for Castiel depo. |

| | | |
|---|---|---|
| Telephone | 250.00 | five months @ $50.00/mo. |

$5638.00 ÷ 2 = $2,819.00

June –

July –

Aug. –

| | | |
|---|---|---|
| Sept. 23 | 26.00 | travel to law library and park. |
| 28 | 27.00 | travel & park law library. |
| 29 | 32.00 | travel & park & copies, law library. |
| 30 | 38.00 | travel & park, law library, copies. |
| | | |
| Oct. 1 | 24.00 | travel to library. |
| 2 | 30.00 | travel to library, copies. |
| 5 | 26.00 | travel to law library. |
| 12 | 36.00 | copies, travel to library. |
| 13 | 40.00 | travel to library, copies. |
| 14 | 26.00 | travel to library. |
| 20 | 31.00 | copies, travel to library. |
| 22 | 22.00 | travel to law library. |
| 27 | 33.00 | travel to law library, copies. |
| 28 | 24.00 | travel to law library. |
| 30 | 46.00 | copies, postage, travel to USDC. |
| | | |
| Nov. 15 | 26.00 | travel to law library. |
| 28 | 33.00 | travel to library, copies. |
| 29 | 57.00 | travel to USDC, postage, copies. |
| | | |
| Telephone | 100.00 | two months @ $50.00 |

Total:                          $ 657.00

TOTAL EXPENSES FOR QUASHING
PRELIMINARY INJUNCTION:              $3,476.00

**TIME SHEET: ROBERT B. PATTERSON**
**MATTER: ELLIPSO, INC. V. JOHN MANN, ET.AL., USDC, DC.**

**SUBJECT: TIME AND EXPENSES INCURRED IN OPPOSING THE**
**ISSUANCE OF THE PRELIMINARY INJUNCTION:**

| DATE | TIME | SERVICE |
|------|------|---------|
| Aug. 15 | 0.5 hrs. | tc-J.Mann re: law suit. |
| Aug. 23 | 0.75 hrs. | tc-J.Mann re: law suit. |
| Aug. 24 | 0.5 hrs. | tc-J.Mann re: law suit. |
| Aug. 26 | 0.5 hrs. | tc-J.Mann re: law suit. |
| Aug. 31 | 1.75 hrs. | tc-J.Mann re: law suit, document review. |
| Sept. 1 | 2.5 hrs. | file review, tc-J.Mann re: law suit. |
| Sept. 2 | 3.0 hrs. | file review, tc-J.Mann re: law suit, review of Complaint. |
| Sept. 6 | 0.25 hrs. | tc-J.Mann re: law suit. |
| Sept. 7 | 4.75 hrs. | tc-J.Mann re: law suit, file review, review of Complaint and Motion for Preliminary Injunction. |
| Sept 8 | 4.75 hrs. | file review, review of Castiel Affidavit and exhibits, tc-J.Mann re: law suit, legal research. |
| Sept. 9 | 3.0 hrs. | legal research, file review, document review. |
| Sept. 12 | 6.0 hrs. | file review, document review, review of Plaintiff's filing, legal counsel search, tc-J.Mann re: law suit, strategy analysis, settlement analysis. |
| Sept. 13 | 4.75 hrs. | valuation analysis, procedural analysis, settlement assessment, contract review, tc-J.Mann re: same. |
| Sept. 14 | 6.5 hrs. | draft legal memoranda, tc-J.Mann re:same, document review, legal counsel search. |
| Sept. 15 | 6.75 hrs. | draft legal memoranda, document review, tc-J.Mann re: same. |
| Sept. 16 | 7.25 hrs. | tc-J.Mann re: law suit, draft legal memoranda, file and |

1

|          |            | document review, legal counsel search. |
|----------|------------|-----------------------------------------|
| Sept. 17 | 3.0 hrs.   | draft legal memoranda, research. |
| Sept. 19 | 4.75 hrs.  | draft legal memoranda, legal research, document review. tc-J.Mann re: same. |
| Sept 20  | 4.25 hrs.  | tc-J.Mann re: case, draft legal memoranda, research. |
| Sept 21  | 5.0 hrs.   | review of correspondence, file searches, contract review, tc-J.Mann re: same, draft legal memoranda. |
| Sept. 22 | 2.25 hrs.  | tc-J.Mann re: case, document review. |
| Sept 23  | 7.0 hrs.   | draft legal memoranda, tc-J.Mann re: same, document review, legal research. |
| Sept. 26 | 1.75 hrs.  | tc-J.Mann re: case, revise legal memoranda. |
| Sept. 27 | 8.75 hrs.  | tc-J.Mann re: case, legal research, draft memoranda, document review. |
| Sept. 28 | 5.0 hrs.   | document review, draft memoranda, review of pleadings, tc-J.Mann re: same. |
| Sept. 29 | 6.0 hrs.   | review of pleadings, legal research, draft memoranda, tc-J.Mann re: same. |
| Sept. 30 | 3.5 hrs.   | tc-J.Mann re: case, draft documents, document review. |
| Oct. 3   | 6.5 hrs.   | draft legal documents, document review, file search, legal research, tc-J.Mann re: same. |
| Oct. 4   | 8.25 hrs.  | review legal documents for filing, research, tc-J.Mann, re: same. |
| Oct. 5   | 7.0 hrs.   | review and draft legal documents, file and document review, outline Motion for Summary Judgment, damages calculations, expert witness search, tc-J.Mann re: same. |
| Oct. 7   | 0.5 hrs.   | tc-J.Mann re: case. |
| Oct. 10  | 0.25 hrs.  | tc-J.Mann re: case. |
| Oct. 12  | 5.5 hrs.   | review additional pleadings, legal research, prepare potential witness list and discovery outline, tc-J.Mann |

2

re: same.

| | | |
|---|---|---|
| Oct. 13 | 1.5 hrs. | tc-J.Mann re:case, document review. |
| Oct. 14 | 6.0 hrs. | draft Motion for Summary Judgment, tc-J.Mann re: case. |
| Oct 15 | 4.5. hrs. | legal research, expert witness search, draft legal documents. |
| Oct. 16 | 5.5 hrs. | legal research, expert witness search. |
| Oct. 17 | 5.0 hrs. | conference J.Mann re:case, document review. |
| Oct. 18 | 4.0 hrs. | conference R.Hyler re:testimony, tc-J.Mann re:case, document research. |

$$174.75 \text{ hrs.} \div 2 = 87.675 \text{ hrs.}$$

| | | |
|---|---|---|
| Oct. 19 | 2.25 hrs. | tc-J.Mann re:case, document research. |
| Oct. 20 | 3.25 hrs. | tc-J.Mann re:case, hearing preparation. |
| Oct. 21 | 6.75 hrs. | prepare for court hearing, tc-J.Mann re:same. |
| Oct. 22 | 4.5 hrs. | prepare for court hearing, tc-J.Mann re: case. |
| Oct. 23 | 6.75 hrs. | prepare for meeting with counsel, research damages and sanctions issues. |
| Oct. 24 | 8.0 hrs. | conference with T.Moro, Esq. and J.Mann, prep for same. |
| Oct. 25 | 5.5 hrs. | file search, exhibit preparation, tc-J.Mann re: same. |
| Oct. 26 | 5.0 hrs. | prep. For hearing, draft Trial Memorandum, tc-J.Mann. |
| Oct. 27 | 9.75 hrs. | write and finalize Trial Memo & Exhibits, hearing prep., Tc-J.Mann re: same. |
| Oct. 28 | 8.75 hrs. | file trial memorandum; conference D.Page, J.Mann, T.Mauro re: hearing; appearance at hearing. |
| Oct. 30 | 3.50 hrs. | file organization; research case and motions strategy.. |
| Nov. 2 | 2.00 hrs. | research re: PI; tc-J.Mann. |
| Nov. 3 | 2.25 hrs. | tc-M.Gubberman re: address; review PI Order; file |

3

research.

| | | |
|---|---|---|
| Nov. 4 | 1.75 hrs. | tc-J.Mann re case; file research. |
| Nov. 7 | 2.50 hrs. | conf. J.Mann. |
| Nov. 8 | 1.00 hrs. | tc-J.Mann, review e-mails. |
| Nov. 9 | 6.25 hrs. | draft, revise, file Motion to Modify Injunction. |
| Nov. 10 | 1.00 hrs. | tc-J.Mann, re: injunction. |
| Nov. 11 | .50 hrs. | tc-J.Mann, re: case. |
| Nov. 14 | 5.00 hrs. | draft Summary Judgment Motion; tc-J.Mann. |
| Nov. 15 | .75 hrs. | tc-J.Mann re: injunction. |
| Dec 12 | 1.50hrs. | review and research re: bond. |
| Dec 13 | 2.50hrs. | research bonding issues. |

100 hrs.

Total hours opposing
 Preliminary Injunction:     187.675@ $250.00 = $46,918.75

EXPENSES INCURRED IN OPPOSING THE PRELIMINARY INJUNCTION:

| | | | |
|---|---|---|---|
| Sept. | 8 | $ 23.00 | travel and parking to law library. |
| | 9 | 22.00 | travel to law library and park. |
| | 23 | 24.00 | travel and park, law library. |
| | 27 | 37.00 | copies, travel law library. |
| Oct. | 3 | 26.00 | travel to law library. |
| | 12 | 38.00 | travel to library, copies. |
| | 15 | 30.00 | travel to library, copies. |

$200.00 ÷ 2 = $100.00

| | | | |
|---|---|---|---|
| Oct. | 24 | 42.00 | travel to conf. J.Mann, T.Mauro. |
| | 28 | 76.00 | travel to USDC, copies, postage |
| Nov. | 2 | 22.00 | travel to library. |
| | 7 | 56.00 | travel to conf. J.Mann. |
| Telephone | | 150.00 | three months @ $50.00 |

$346.00

TOTAL EXPENSES FOR OPPOSING
PRELIMINARY INJUNCTION            $446.00