UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC., | ) |
|     Plaintiff and Counter-Defendant | ) ) ) |
| v. | )   Civil Action No. 05-1186 (RCL) |
| JOHN B. MANN, *et al.*, | ) ) |
|     Defendants and Counter-Plaintiffs | ) ) |

**MANN DEFENDANTS' REPLY TO OPPOSITION TO
MOTION FOR RECONSIDERATION**

Come now John B. Mann and Mann Technologies, LLC, Defendants and Counter-Plaintiffs herein (collectively the "Mann Defendants"), by their undersigned counsel, and hereby submit their Reply to Ellipso's Opposition to the Mann Defendants' Motion for Reconsideration on the issue of attorneys' fees.

**I. The Mann Defendants Successfully Enforced
the Collateralized Loan Agreement.**

The terms of the fee-shifting provision in the Collateralized Loan Agreement clearly require Ellipso to pay all reasonable attorneys' fees and expenses "in the event this Loan Agreement shall be successfully enforced by suit *or otherwise*…" (Plaintiff's Trial Exhibit #6 at par. 8.14) ( Emphasis supplied).   The three year litigation initiated by Ellipso was an attempt, in the form of various guises and claims, to undo the terms of the Loan Agreement.  However, the Mann Defendants successfully enforced the Agreement, thereby preventing, among other things, contract rescission based on alleged fraud, unconscionability and duress.  This Court has found that none of Ellipso's claims warranted submission to the jury, and further found that Ellipso

ratified the Loan Agreement prior to filing the instant lawsuit.

Ellipso incorrectly asserts that the Mann Defendants' costs of defending this suit are not covered by the broad language of par. 8.14 of the Loan Agreement. Pl. Opp. at 2-3. This claim is contrary to settled law in this jurisdiction which permits a party to a contract to recover attorneys' fees incurred in defending against a tort claim which is, in effect, an attack upon the contract. *Kudon v. f.m.e. Corp.*, 547 A.2d 976 (D.C. 1988).

In *Kudon*, a law firm and lessee of postal meters sued the lessor for tortious interference with its contractual relations with the U.S. Postal Service when the lessor attempted to repossess the meters upon the law firm's failure to pay rent. The trial court dismissed the law firm's complaint and awarded the lessor attorneys' fees in connection with its defense of the suit and the prosecution of its counterclaim for breach of the lease agreement. *Id.* at 977. As in the instant case, the contract in *Kudon* had a fee shifting position which applied to efforts by the lessor to repossess the meter and collect the overdue rent, but made no mention of defense of tort claims related to the contract. On appeal, the District of Columbia Court of Appeals held that the lessor was entitled to its attorneys' fees incurred in defending against the law firm's tort claim. *Id.* at 980-81.

The *Kudon* court went on to discuss four factors to apply in determining whether a party claiming attorneys' fees pursuant to a contract provision is entitled to recovery for defending against the opposing party's complaint:

"(1) [W]hether the party requesting the fees was responsible for precipitating the litigation; (2) whether the litigation for which the party relying on the contract provision recovers the fees was bona fide and made necessary by the party opposing payment of such fees, (3) whether the claim asserted by the party opposing payment of such fees was raised by way of offset in an attempt to reduce or extinguish the debt owed to the party requesting the fees, and (4) whether it was necessary for the party requesting the fees to defend against the claim of the party opposing the

fees in order to collect the underlying debt or enforce the underlying contractual obligation." *Id.* at 980 (citations omitted).

Applying these factors to the instant case fully supports recovery by the Mann Defendants of the substantial legal fees and expenses incurred in the course of this litigation. The Mann Defendants were not responsible for precipitating this litigation. Ellipso initiated this dispute in order to evade the consequences of its failure to fulfill its obligations under the Loan Agreement and the numerous material misrepresentations it made to the Mann Defendants. The Mann Defendants were forced to defend against Ellipso's false claims of fraud and other allegations in order to enforce the provisions of the Agreement, which allowed the Mann Defendants, among other things, to foreclose on the collateral in the event of Ellipso's default.

Ellipso cites two cases as support for its position that costs of defense of a contract are not awardable under a contractual fee-shifting provision. *Estate of Raleigh v. Mitchell*, 947 A.2d 464 (2008); *Pellerin v. 1915 16th Street, N.W., Coop. Ass'n, Inc.*, 900 A.2d 683 (2006). However, these cases involved circumstances where the claimed attorneys' fees and expenses did not come within the narrow language of the fee-shifting provision of the particular contracts involved. In *Raleigh*, the Court distinguished *Kudon*, saying:

> In *Pellerin*, this court distinguished *Kudon v. f.m.e. Corp.*, 547 A.2d 976 (D.C. 1998), where the broad scope of a fee-shifting provision was held to encompass fees for the defense of a lessee's complaint for tortious interference with contract relations and compulsory counterclaim for breach of the lease agreement. *Estate of Raleigh v. Mitchell*, 947 A.2d 464 n.15 (D.C. 2008) (citing *Pellerin*, 900 A.2d at 689 n.15)).

It is the *Kudon* decision, and not *Raleigh or Pellerin*, that controls the instant case.

Finally, even though it is true that the Mann Defendants did not prevail on their counterclaim, based on the Court's finding that any damages incurred by Ellipso's breach of contract were outweighed by profits the Mann Defendants realized upon the sale of the forfeited

collateral, that is not to say that the Mann Defendants' rights under the contract were not successfully enforced. The fact is that the Mann Defendants have been permitted by the Court to retain the proceeds of the collateral, which was sold pursuant to the terms of the Agreement. While the Mann Defendants contend that any profits made from the sale were illusory, based on the expenses they have incurred and payments to others they have made, the relevant point is that they enforced their rights by selling the collateral, and Ellipso's challenge to that enforcement was successfully repelled.

### II. The Language of the Loan Agreement is Unambiguous that the Parties Intended to Abrogate the "American Rule", and Therefore the Issue of Attorneys' Fees is for the Court and not the Jury.

Courts of this jurisdiction have recognized the traditional view that "a claim for attorneys' fees arising from a private contract is equitable in nature" and therefore a question for the court, rather than the jury. *Kudon v. f.m.e. Corp.*, 547 A.2d at 978-79. *See also* Mann Def.'s Mot. for Reconsideration at 2-3. Contrary to this clear authority, in its Opposition Ellipso asserts that "it is a jury question as to whether the fee-shifting provision applies." Pl. Opp. at 3.

Where a contract includes a fee-shifting provision, there is only a question for the jury insofar as there is *ambiguity* in the contract as to the parties' intentions to abrogate the so-called "American Rule." *Urban Masonry Corp. v. N&N Contractors*, 676 A.2d 26, 35 (D.C. 1996). It is for the judge to decide whether the fees claimed are reasonable and the amount the party may ultimately recover. *Id.*

The contract at issue in *Urban Masonry* had two conflicting provisions on attorneys' fees, one calling for fee-shifting in favor of the prevailing party and the other calling for each

party to bear its own expenses.  This ambiguity led the Court to conclude that it was reasonable to allow the jury to determine the parties' intent.  Here, the language of par. 8.14 of the Loan Agreement is not susceptible to two different interpretations; rather, it is clear and unambiguous as to the parties' intent to compensate the Mann Defendants for any expenses incurred in enforcing the terms of their agreement, "by suit or otherwise."

      Further, contrary to Ellipso's argument that the Mann Defendants' have failed to demonstrate that their legal fees were reasonable, under the established rule that such a determination is for the Court and not the jury, the Mann Defendants' election not to submit evidence of its legal fees to the jury was entirely appropriate.  *Urban Masonry*, 676 A.2d at 35.  Finally, the Mann Defendants' expenses, as set out in the exhibits attached to the Motion for Reconsideration, are clearly reasonable in light of prevailing market rates and traditional considerations used to assess the reasonableness of such fees.  *See, e.g., Griffin v. Washington Convention Ctr.*, 172 F. Supp. 2d 193 (D.D.C. 2001) (analyzing the reasonableness of attorneys' fees in a sex discrimination case using the *Laffey* matrix and applying the factors articulated by the Fifth Circuit Court of Appeals in *Johnson v. Georgia Highway Exp., Inc.* 488 F.2d 714, 717-720 (5th Cir. 1974)).

### III. Even If the Fee-Shifting Provision Were Inapplicable, the Mann Defendants Should be Entitled to Fees and Costs under the "Bad Faith" Exception to the American Rule.

This jurisdiction has adopted the "bad faith" exception to the American Rule, which permits recovery of attorneys' fees "against a party who has acted in bad faith, vexaciously, wantonly, or for oppressive reasons connected to the litigation." *Synanon Foundation, Inc. v. Bernstein*, 517 A.2d 28, 37 (D.C. 1986). This exception is aimed at punishing and deterring against abuses of the judicial process. *Id.* However, "[t]he court must scrupulously avoid penalizing a party for a legitimate exercise of the right of access to the courts." *Id.* An award of attorneys fees under the bad faith exception should only be granted under "extraordinary circumstance or when dominating reasons of fairness so demand," and the requirements for such an award are "necessarily stringent." *Id.* (quoting *Adams v. Carlson,* 521 F.2d 168, 170 (7th Cir. 1975)). "A party is not to be penalized for maintaining an aggressive litigation posture, nor are good faith assertions of colorable claims or defenses to be discouraged. But advocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrant recompense for the extra outlays attributable thereto." *Lipsig v. Nat'l Student Marketing Corp.*, 663 F.2d 178, 180-81 (D.C. Cir. 1980). A party can exhibit bad faith either in filing a frivolous claim or by litigating a properly filed claim in a bad faith manner. *Jung v. Jung*, 844 A.2d 1099, 1108 (D.C. 2004).

Ellipso's filing of the instant lawsuit, seeking to deprive Mann Tech of the rights it had lawfully exercised pursuant to the terms of the Loan Agreement, was in quintessentially bad faith. (Ellipso's misrepresentations in this case are chronicled in the Mann Defendants' Motion for Damages due to the Preliminary Injunction (Docket 184) and will not be repeated in full

here.) This Court has found that David Castiel knew, "at least as early as June 2004", of Patterson's interest in Mann Tech, and thereafter reaffirmed the Loan Agreement on August 2, 2004, with full knowledge and explicit acceptance of Patterson's dual-role with Mann Tech and Ellipso. Despite such knowledge held by its CEO and sole employee, Ellipso filed this action in June 2005 on the basis of a false affidavit[1] by David Castiel. It maintained its lawsuit[2] with false answers to interrogatories[3] and false responses to requests for admissions[4].

---

[1] **8/12/2005 Affidavit of David Castiel:** @¶5. "Although Patterson owed Ellipso, as its business consultant, fiduciary duties of loyalty and to act in Ellipso's best interests and not engage in self-dealing, Patterson failed to disclose to Ellipso that Patterson was himself a member of Mann Tech. *At no time prior to, during, or after the negotiations* did Patterson, Mann or Mann Tech disclose to Ellipso the material fact that Patterson was a member of Mann Tech...." (Emphasis supplied).

[2] "...at the time of the negotiation and execution of the loan agreement *and thereafter while Patterson continued to provide advice and counsel to Ellipso*, Ellipso was unaware that Patterson was an owner of Mann Technologies..." **(10/7/2005 Reply in Further Support of its Motion for Preliminary Injunction, at pg.3)** (Emphasis supplied).

[3] **Interrogatory No.1:** Please describe each instance (oral, written or otherwise) in which You first learned of any aspect or element of Defendant Robert Patterson's role or interest in Mann Technologies, L.L.C. Include in Your answer all details including the circumstances, date, location, identity of documents, and person or persons involved in or present at each such instance or disclosure and describe, in detail, the information learned.
ANSWER: I first learned of Robert Patterson's interest in Mann Technologies, L.L.C., following the parties' execution of the Joint Sale Order on or about August 12, 2004. Mann, Patterson and I had met at a Starbucks coffee shop for a meeting. Following the meeting, Patterson confessed his financial interest in Mann Technologies. I asked him if that did not create a conflict of interest. He responded "yes" and something to the effect that he "hoped it didn't come down to that." No other persons were involved or present during these discussions.

[4] **Ellipso Responses to Mann Defendants' Request for Admissions:**

   5. Prior to Your signing a document entitled Amendment to Collateralized Loan Document dated August 2,2004, You knew of Robert Patterson's participation in Mann Technologies.
   Response: Denied.

   6. Prior to Your signing a document entitled Amendment to Collateralized Loan Document dated August 2,2004, You knew of Robert Patterson's financial interest in Mann Technologies.
   Response: Denied.

   8. Prior to receiving funds from the Mann Technologies' UBS account pursuant to the terms of the Amendment to Collateralized Loan Document dated August 2, 2004, You knew of Robert Patterson's participation or financial interest in Mann Technologies.
   Response: Denied.

   34. Your statement in Paragraph 5 of David Castiel's Declaration dated August 12, 2005. that "(a)t no time prior to, during or after the negotiations did Patterson, Mann or Mann Tech disclose to Ellipso the

As the evidence presented at trial amply demonstrated, when Mann Tech took possession of the collateral stock in Oct 2004, it was essentially worthless.  At the time Ellipso filed its lawsuit, the stock had increased in value, and Ellipso sought, through this lawsuit supported by its false assertions, to intimidate the Mann Defendants into relinquishing their assets and their claims.

At the outset of this litigation, on or about Oct. 28, 2005, Robert Patterson presented a damaging Oct 20, 2004 email in which Dr. Castiel states that "[M]y understanding was that you were 'covered' as you indicated to me starting in June through a variety of sources, including …TRSC/Mann Tech (of which you are a substantial holder as well) …".  Patterson asserted that this wording demonstrated that Castiel knew of Patterson's ownership interest in Mann Tech as of June 2004, and that the subsequent August 2, 2004 Amendment constituted a ratification of the Loan Agreement with knowledge of the alleged fraud.  Recognizing that such a conclusion would be fatal to its case, Ellipso asserted that the ambiguous wording of the email did <u>not</u> mean that Dr. Castiel knew in June of Patterson's interest, but only that he knew no later than the date of the email, well after any act of ratification had occurred.  Ellipso argued this interpretation both to this Court and to the District of Columbia Court of Appeals, and has falsely maintained its position throughout the nearly three years of this litigation.  In March 2007, Mr. Patterson produced in discovery the November 16, 2004 email in which Dr. Castiel stated, "I never knew until May/June 2004 that you were 50% owner of Mann Tech and you had a stake in the 'upside' of the ICO stock."  This resolved the ambiguity of the Oct. 20, 2004 email, and clearly rebutted

---

material fact that Patterson was a member of Mann Tech" is not factually correct.
Response: Denied.

Ellipso's false representations to this Court and the appellate court. Yet Ellipso maintained its position that it was not aware of Mr. Patterson's dual role up to and including the trial.

## CONCLUSION

For the foregoing reasons, the Mann Defendants' Motion for Reconsideration should be granted, and they should be awarded their reasonable attorneys' fees and costs in connection with this litigation.

Respectfully submitted,

/s/ Christopher G. Hoge
Christopher G. Hoge #203257
Counsel for Defendants/Counter-Plaintiffs
John B. Mann and Mann Technologies, LLC

CROWLEY, HOGE & FEIN, P.C.
1710 Rhode Island Avenue, N.W.
7th Floor
Washington, D.C. 20036
(202) 483-2900

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true copies of the foregoing Reply were, this 12th day of September, 2008, served electronically upon:

VANESSA CARPENTER LOURIE, ESQ.
4400 MacArthur Blvd., N.W.
Suite #205
Washington, D.C. 20007-2521
Co-Counsel for Plaintiff/Counter-Defendant

and via first class mail, postage prepaid, upon:

>LINDA AWKARD, ESQ.
>4201 Cathedral Ave., N.W.
>Suite #1416W
>Washington, D.C. 20016
>Co-Counsel for Plaintiff/Counter-Defendant

>ROBERT B. PATTERSON
>P.O. Box 3106
>Reston, VA 20195
>Defendant/Counter-Plaintiff *Pro Se*

/s/ Christopher G. Hoge
Christopher G. Hoge

cgh/z/wpdirs/civil
mannreconsider2reply.wpd