UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIPSO, INC., ) | |
| ) | |
| Plaintiff and Counter-Defendant, ) | |
| ) | |
| v. ) | Civil Action No. 05-1186 (RCL) |
| ) | |
| JOHN B. MANN, *et al.*, ) | |
| ) | |
| Defendants and Counter-Plaintiffs ) | |

## MEMORANDUM AND ORDER

Now before the Court comes John B. Mann and Mann Technologies, LLC's (collectively, "Mann Defendants") motion [184] for damages suffered as a result of preliminary injunction. Upon full consideration of the motion, opposition and reply briefs, the entire record herein, and applicable law, the Court finds, for the reasons set forth below, that the motion will be GRANTED in part and DENIED in part.

I.     **BACKGROUND**

On August 16, 2005, plaintiff filed its motion [4] for preliminary injunction. The Court granted that motion on November 2, 2005 thereby prohibiting defendants from selling, transferring, or removing from this jurisdiction the remaining ICOHA shares that had served as collateral for the party's loan agreement that was the basis for this lawsuit. (*See* Mem. & Order [23].) On November 14, 2005, the Court entered an additional Order [28] clarifying the injunction's terms and ordering plaintiff to post a $100,000 injunction bond pursuant to Federal Rule of Civil Procedure 65(c).

On April 1, 2008, the Court—having considered a newly presented email dated November 16, 2004 from Ellipso president and chief executive officer David Castiel to defendant Robert Patterson—determined that Ellipso could longer assert that it had an equitable claim to the collateral. (*See* Mem. Op. [168] at 15–16 (citing *Ellipso, Inc. v. Mann*, 480 F.3d 1153, 1160 (D.C. Cir. 2007)). Accordingly, the Court dissolved the preliminary injunction as to all defendants. (*See id.*) Mann Defendants now seek damages as a result of the Court's preliminary injunction.

## II.   ANALYSIS

### A.   Applicable Law

This Circuit recognizes that "a defendant injured by a wrongfully issued preliminary injunction is presumptively entitled to recovery on the injunction bond." *Nat'l Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1134 (D.C. Cir. 1992). Such a presumption is "virtually required by the text of [Federal] Rule [of Civil Procedure] 65(c)" because the requirement of security is for the "precise purpose of assuring compensation of the defendant for the resulting losses if the injunction proves to have been wrongfully granted." *Id.* (citing *Coyne-Delany Co. v. Capital Dev. Bd.*, 717 F.2d 385, 390–91 (7th Cir. 1983) (Posner, J.)). The presumption also serves to "accomplish an important goal, that of forcing the plaintiff to consider the injury to be inflicted on its adversary in deciding whether to press ahead in its quest for a preliminary injunction." *Id.*

While district courts maintain some discretion as to enforcement of an injunction bond, they may not disregard the presumption in favor of recovery and may only disallow damages for

"good reason." *See id.* In fact, the presumption is strong enough that a plaintiff's demonstration (1) that it brought the case in good faith and (2) that its claim was not frivolous is insufficient to overcome the presumption. *See id.* at 1135 (describing these factors as "merely baseline premises" while suggesting that a plaintiff failing either of them would find it virtually impossible to defeat the presumption). However, defendants are not entitled to recovery "regardless of the equities of the case." *See id.* (citing *Page Commc'ns Eng'rs, Inc. v. Froehlke*, 475 F.2d 994, 997 (D.C. Cir. 1973)). One such equity that a court may consider is a defendant's failure to mitigate damages. *See id.* (citing *Coyne-Delany*, 717 F.2d at 392); *Page Commc'ns*, 475 F.2d at 997 (upholding denial of recovery where one factor that the district court recognized was that the injunction may never have been granted if the defendant had brought a specific study to the court's attention in a timely fashion).

    B.    **Application of Legal Standard**

        1.    **Mann Defendants Are Entitled to Damages**

Ellipso argues it did not bring the case in bad faith because the defendants had an opportunity to present the crucial November 16, 2004 email, (Mann Trial Ex. 138), when the motion for preliminary injunction was first filed. (*See* Pl.'s Opp. [197] at 5.) Based on the facts in this case, the Court finds this contention is insufficient to overcome the presumption in favor of damages. First, the email in question was a private communication between Mr. Castiel and Mr. Patterson, a communication that John Mann was presumably unaware of until sometime in 2007. Second, the Court will not reward Ellipso for its own delay in disclosing the email, which contradicted Mr. Castiel's previous assertions as to what he knew when, and that ultimately

resulted in the preliminary injunction's dissolution.[1]  For these reasons, the presumption in favor of recovery on an injunction bond withstands Ellipso's attack, and Mann Defendants shall receive damages.

### 2. Amount of Damages

Mann Defendants seek damages of $139,569.28. (*See* Defs.' Mot. [184] at 9.)  This amount consists of $55,664.28 for damages related to the change in the collateral's stock price and $83,905.00 in legal costs and attorneys' fees directly attributable to the preliminary injunction. (*See id.* at 8–9.)  Ellipso's opposition brief fails to submit any alternative measure of damages or to specifically object to any component of the Mann Defendants' proposal. (*See generally* Pl.'s Opp. [197].)  The Court assesses both of Mann Defendants' alleged damages components in turn.

### i. Damages Related to Change in Stock Price

When a party is enjoined from selling securities, "the measure of damages is the difference between the value of the stock on the date the injunction issued and the value of the

---

[1] *Page Communications*—this Circuit's precedent upholding a district court's denial of damages based on a defendant's delay in submitting significant information to the court—is readily distinguishable from the current case.  There, defendant had access to the comparative cost study in question at the time of the court's evidentiary hearing on the motion for preliminary injunction.  *See* 475 F.2d at 996.  Further, in that case, defendant agreed in open court to produce all records relating to the evaluation of submitted proposals and all documents setting forth the basis for the contract award at issue.  *See id.*  The "significant" comparative cost study was among the requested documents but was not produced at the hearing.  *See id.*  Consequently, the district court, recognizing the plaintiff's good faith, had discretion to consider the cost study's untimely disclosure in ultimately deciding to deny recovery on the injunction bond.  *See id.* at 997.  The facts surrounding the November 16, 2004 email in this case are not analogous.

stock on the date the injunction is dissolved."[2]  *Sionix Corp. v. Moorehead*, 299 F. Supp. 2d 1082, 1089 (S.D. Cal. 2003) (quoting *deCastro v. deCastro*, 616 N.E.2d 52, 58 (Mass. 1993) (reviewing cases applying this standard)).

In this case, as of the Court's November 2, 2005 injunction, Mann Defendants possessed 37,611 ICOHA shares.  (*See* Mann Decl. ¶ 4, Ex. 8 to Defs.' Mot. [184].)  On that date, the "Fair Market Value" of the ICOHA shares—as defined by the parties' loan agreement, (*see* Loan Agreement § 1.4, Ex. 2 to Compl.)—was $3.98 per share.[3]  (*See* Ex. 7 to Defs.' Mot. [184].)  When the Court dissolved the preliminary injunction on April 1, 2008, the "Fair Market Value" of ICOHA shares was $3.275 per share.[4]  (*See id.*)  Based on these figures, Mann Defendants are entitled to damages of $26,515.76.[5]

---

[2] The Court notes that this measure of damages is somewhat difficult to determine; it is impossible to know exactly how many shares Mann Defendants would have sold but for this Court's injunction.  However, plaintiff does not raise this point, and the Court views the collateral's price change during the injunction period as an acceptable assessment of Mann Defendants' likely damages.  If the Court were to disallow damages based on the fact that they are difficult to determine, plaintiffs would be able to avoid liability on injunction bonds in every case.

[3] Mann Defendants ask the Court to instead use the price of $4.97 per share, which was the closing price of ICOHA shares on August 19, 2005, the date Ellipso served Mann Defendants with its motion for preliminary injunction.  (*See* Defs.' Mot. [184] at 8.)  The rationale for using the earlier date is that Mann Defendants voluntarily refrained from selling collateral as soon as it was confronted with the motion.  (*See id.*)  Because Mann Defendants were not legally prohibited from selling ICOHA shares until the Court's entry of preliminary injunction, the Court declines to use the earlier date.

[4] Mann Defendants propose using the price of $3.49, which was the closing price on that date; it was not the "Fair Market Value" as defined by the parties' contract. "Fair Market Value" is the average of the highest and lowest sales prices per share for the date in question.  (*See* Loan Agreement § 1.4, Ex. 2 to Compl.)

[5] $3.98 per share minus $3.275 per share yields a difference of $0.705 per share.  And, $0.705 times 37,611 shares produces total damages of $26,515.76.

### ii.     Attorneys' Fees and Legal Costs

Federal Rule of Civil Procedure 65(c) dictates that Mann Defendants will receive the payment of such "*costs and damages* sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c) (emphasis added). Under this Rule,

> . . . an award of attorney's fees is proper only where the losing party has been guilty of bad faith, as by bringing a frivolous suit—frivolousness connoting not just a lack of merit but so great a lack as to suggest that the suit must have been brought to harass rather than to win. *See Alyeska Pipeline Svc. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975).

*Coyne-Delany Co. v. Capital Dev. Bd.*, 717 F.2d 385, 390 (7th Cir. 1983) (Posner, J.); *see also Matek v. Murat*, 862 F.2d 720, 734 (9th Cir. 1988) ("Attorney's fees are not recoverable as damages in an action on an injunction bond.") (citation omitted).

However, Congress has enacted a different rule that governs cases in this District:

> In a proceeding in the United States District Court for the District of Columbia or the Superior Court of the District of Columbia to recover damages upon a bond or undertaking given to obtain a restraining order or preliminary . . . injunction, the Court, in assessing damages to be recovered thereunder, may include such reasonable counsel fees as the party damaged by the restraining order or injunction may have incurred in obtaining a dissolution thereof.[6]

D.C. CODE § 15-111 (1981).

While federal law generally controls a conflict between Federal Rule of Civil Procedure 65(c) and state law,[7] the uniqueness of the D.C. Code persuades this Court that it is bound to

---

[6] Congress first enacted this statute on August 30, 1964. *See* Pub. L. No. 88-509, § 3(b)(1), 78 Stat. 678 (1964). To this Court's knowledge, no federal court has ever cited to section 15-111.

[7] *See Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055–56 (9th Cir. 2000) (citing *Fireman's Fund Ins. Co. v. S.E.K. Constr. Co.*, 436 F.2d 1345, 1351–52 & n.11 (10th Cir. 1971)) (indicating that when an "injunction bond was issued pursuant to the Federal Rules, . . . only a federal question [is] involved," federal—rather than state—law applies, and attorneys' fees are

follow the clear congressional mandate of section 15-111 even in the face of Federal Rule 65(c). The rationale for the general rule that federal law supercedes decisions of state legislatures dissolves when the "state legislature" in question is Congress. In 1964, Congress, not a local law-making body, decided that attorneys' fees would be recoverable in this District. For that reason, Mann Defendants may receive attorneys' fees and costs under Rule 65(c).

Upon review of Mann Defendants' $83,905 request for fees and costs, (*See* Mann Errata [187]), to which Ellipso does not make any specific objections, the Court finds that an award of the full $83,905 is proper.

### 3. Award Limited to Amount of Bond

Mann Defendants' total damages come to $110,420.76. However, "[i]t is well established that damages caused by an injunction erroneously granted can be assessed on the injunction bond, but that in such event the damages may not exceed the amount of the injunction bond." *Ala. Mills v. Mitchell*, 159 F. Supp. 637, 639 (D.D.C. 1958) (citing *United Motors Serv. v. Tropic-Aire, Inc.*, 57 F.2d 479, 482–83 (8th Cir. 1932)); *see Nat'l Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1136 (D.C. Cir. 1992) (noting the government's acceptance of the

---

not recoverable); 13 MOORE'S FEDERAL PRACTICE § 65.53 (3d ed.) ("Federal, not state, law determines what 'costs and damages' are recoverable under bonds given to secure a . . . preliminary injunction."); *see also Minn. Power & Light Co. v. Hockett*, 14 Fed. App'x 703, 706–07 (7th Cir. 2001) (indicating that when a state rule would "knock out" Federal Rule of Civil Procedure 65(c), federal law should apply and that determination of the phrase "costs and damages" is a federal question); *Heiser v. Woodruff*, 128 F.2d 178, 180 (10th Cir. 1942) ("But this bond was executed under the federal statute and rule of civil procedure, and therefore the law of the state has no application.") (citations omitted); *Salvage Process Corp. v. Acme Tank Cleaning Process Corp.*, 104 F.2d 105, 107 (2d Cir. 1939) (denying attorneys' fees damages and finding that "[t]he fact that the law of New York permits recovery of attorney's fees under a state court injunction bond is irrelevant, since we are construing a bond exacted under a federal statute").

proposition that in the absence of bad faith or frivolousness, it could not recover *damages* in excess of the bond amount); *Continuum Co. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989) (describing the bond amount as "the maximum extent of [plaintiff's] potential liability"); *Factors Etc., Inc. v. Pro Arts, Inc.*, 562 F. Supp. 304, 308 (S.D.N.Y. 1983) (quoting *Commerce Tankers, Corp. v. Nat'l Mar. Union*, 553 F.2d 793, 800 (2d Cir. 1977)) ("[T]he theory of the injunction bond rule is that '[t]he plaintiff, in effect, consent[s] to liability up to the amount of the bond, as the price for it.'"). If a defendant is dissatisfied with the amount of a district court's injunction bond, the defendant's proper course of action is to—on appeal from the preliminary injunction—ask the Court of Appeals to increase the bond amount.[8] *Coyne-Delany*, 717 F.2d at 394. Thus, in the current case, the Court will limit Mann Defendants recovery to the amount of

---

[8] The Court recognizes that in limited circumstances it may issue an award that is greater than the amount of an injunction bond. For example, this Circuit has held that a defendant was entitled to the "amount by which the plaintiffs were unjustly enriched," that is "the amount plaintiffs saved, and employees lost, by reason of [an] erroneous injunction." *Mitchell v. Riegel Textile, Inc.*, 259 F.2d 954, 955 (D.C. Cir. 1958); *see Coyne-Delany*, 717 F.2d at 393 (citing *Riegel Textile*, 259 F.2d at 955) (describing *Riegel Textile* as standing for the suggestion that restitution may be an exception to the general rule limiting recovery to the bond amount); *Ala. Mills* 159 F. Supp. at 639 (citing *Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.*, 249 U.S. 134 (1919)) (distinguishing the limitation of damages on an injunction bond from restitution of overcharges). The Court of Appeals' award was nothing more than an extension of traditional restitution principles—the court allowed for recovery where a plaintiff *saved* money at defendant's expense during the injunction period; traditional restitution involves recovery of unjust *gain*, rather than unjust *savings*. *See Riegel Textile*, 259 F.2d at 955–56.
   Mann Defendants rely exclusively on *Riegel Textile* for the proposition that Ellipso's liability is not limited to the amount of the injunction bond. (*See* Defs.' Mot. [184] at 4.) However, as discussed above, this Court does not read *Riegel Textile* so broadly. Without Mann Defendants' assertion of a theory of recovery based on unjust enrichment, or some other exception that would permit excess liability, the Court finds no support for an award greater than the $100,000 bond amount.

the $100,000 injunction bond.[9]

## III.   CONCLUSION AND ORDER

For the reasons set forth above, it is hereby

ORDERED that Mann Defendants' motion [184] for damages suffered as a result of preliminary injunction is GRANTED in part and DENIED in part; it is further hereby

ORDERED that Mann Defendants are awarded damages against plaintiff Ellipso in the amount of $100,000.00.

SO ORDERED.

Signed by Chief Judge Royce C. Lamberth, on September 30, 2008.

---

[9]The Court will decide whether or not the Mann Defendants are entitled to all of their attorneys' fees in the case in a collateral proceeding. Upon a finding of bad faith on the part of Ellipso or a finding that a contractual provision entitled the Mann defendants to these fees, the Mann Defendants may still be able to recover the excess $10,420.76.