UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELLIPSO, INC., | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | |
| v. | | Civil Action No. 05-1186 (RCL) |
| JOHN B. MANN, *et al.*, | | |
| Defendants. | | |

## MEMORANDUM OPINION

Pending before the Court are defendant Robert Patterson's motion [204] to reinstate his counterclaims against Ellipso, Inc. and his motion [201] for costs and damages arising out of the preliminary injunction. Upon full consideration of the motions, the oppositions, the replies, the entire record herein, and applicable law, the Court finds, for the reasons set forth below, that the defendant's motions are DENIED.

I. **The Court Will not Reinstate Patterson's Counterclaims**

   A. **Background**

Robert Patterson filed counterclaims against Ellipso, Inc., alleging that he was entitled to compensation for consulting services provided between 2001 and 2004. This Court dismissed his counter claims in an April 26, 2006 order [56]. This Court held that Patterson was acting on behalf of an invalidly formed corporation, and therefore was individually liable for liabilities incurred, but that other parties to the contracts did not have liabilities to Patterson because the

1

contracts were void for lack of valid incorporation.  This Court also held that Patterson's unjust enrichment and quantum meruit claims should be dismissed because of the doctrine of "unclean hands." Since Patterson was deceitful in purporting to contract on behalf of a non-existent corporation, this Court held he could not institute an action to recover for the services he provided.  Over two years later, on September 19, 2008, Patterson filed a motion asking the Court to reinstate his claims.  The Court declines to do so.

    B.    <u>**Analysis**</u>

Patterson once represented to the Court that he entered into a contract with Ellipso as an agent for Consulting Management. (*See* Answer [43] at 2 (admitting ¶ 12 of the complaint which stated "Ellipso and Consulting Management, Ltd., an entity owned and controlled by Patterson, executed a Consulting Agreement . . ."); Answer at Ex. 1 (document entitled "Agreement for Services" indicating that the contract is between Ellipso, Inc., and Consulting Management Ltd., and signed by Patterson as a director of Consulting Management); Resp. to Mot. to Dismiss at 2, filed March 24, 2006 (Patterson arguing that he is entitled to recover because he is a "third-party beneficiary" of the contract between Ellipso and Consulting Management).)  Patterson now claims that despite the initial contract stating that the contract was between Ellipso and Consulting Management, the contract was actually meant to benefit him personally. (Mot. to Reinstate Counterclaims 4,7.)  Patterson bases this theory on two "new" e-mails (sent in June and October of 2004) that refer to "you." (Mot. to Reinstate Counterclaims 4–7.)  Patterson claims that the use of the word "you" shows that the contract was intended to benefit him personally and not Consulting Management. (*Id*.)

The general rule is that a party is bound by the admissions of his pleadings. *Rann v. Chao,*

209 F. Supp. 2d 75, 82 (D.D.C. 2002). Patterson has not offered a compelling reason to depart from his earlier representations to the Court indicating that he was an agent for Consulting Management, particularly because these "new" e-mails were entirely within his control at the time of his 2006 filings. Moreover, allowing Patterson to benefit personally from the purported contract with Ellipso, merely because Patterson deceitfully entered into a contract on behalf of an invalid corporation, would not discourage deceitful behavior in the future. An individual cannot use misrepresentation to enter into a contract on behalf of a non-existent corporation, and when a court finds that corporation invalid, attempt to personally enforce the contract. That is precisely Patterson's strategy in this case, and it will not be accepted. *See* 2A C.J.S. Agency § 369 (in general if "a person signs a contract on behalf of a nonexistent principal, the contract is void, and the purported agent renders himself or herself individually liable").

      Federal Rules of Civil Procedure 59(e) and 60(b)(1), the rules that Patterson asserts give rise to his motion (Mot. to Reconsider 2), also do not contemplate that action that Patterson is trying to take in this case. "The general rule is that a motion for reconsideration is treated as a F.R.C.P. 59(e) motion if filed within 10 days of entry of the challenged order and as a Rule 60(b) motion if filed thereafter." *Lightfoot v. District of Columbia*, 355 F. Supp. 2d 414, 420–421 (D.D.C. 2005) (citations omitted). Here, Patterson is asking the Court to reinstate his claims over two years after they were dismissed; therefore Rule 60, not Rule 59(e), is applicable.

      Rule 60(b)(1) may relieve a party from an order for "mistake, inadvertence, surprise, or excusable neglect." Although Patterson says his motion arises under Rule 60(b)(1), he does not specifically point to the "mistake, inadvertence, surprise, or excusable neglect" that he believes forms a basis to reinstate his counterclaims, but he does argue that "new" evidence (e-mails sent

3

to Patterson in 2004) that was unavailable to the Court in its 2006 ruling should now be evaluated as a basis for reinstating his claims.  Since the 2004 e-mails were sent to Patterson himself, he is apparently arguing that the Court should reconsider its previous ruling on the basis of his excusable neglect in not producing the e-mails earlier.  The determination of excusable neglect is an equitable matter that should be evaluated using several relevant factors: (1) the risk of prejudice to the non-movant; (2) the length of the delay; (3) the reason for the delay; and (4) whether the movant acted in good faith.  *FG Hemisphere Assocs. v. Democratic Republic of Congo*, 447 F.3d 835, 838 (D.C. Cir. 2006) (citing *Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380 (1993)).  Here, the risk of prejudice to the non-movant is severe because Patterson is essentially asking to amend his complaint, and Ellipso would have to defend against facts that were not previously disclosed.  The length of the delay is long—Patterson waited for over two years to ask the Court to reinstate the claims based on evidence entirely within his control.  Patterson has not pointed to the reason for his delay.  And the fact that Patterson is changing his earlier representations to the Court does not indicate that he has acted in good faith.  None of the factors weigh in favor of reconsidering Patterson's claim under F.R.C.P. 60(b)(1).[1]

     Alternatively, Patterson cites F.R.C.P. 54(b) for the proposition that because the case involves multiple claims and multiple parties, the order as to his claims can still be modified.  While this may be true procedurally, Patterson has presented no compelling reasons to modify his

---

[1] Patterson's motion would also not be granted under F.R.C.P. 60(b)(2) because he has failed to show that he was diligent in discovering new evidence.  *See Manhattan Ctr. Studios, Inc. v. N.L.R.B.*, 452 F.3d 813, n.6 (D.C. Cir. 2006).  Nor has he shown that relief is appropriate under 60(b)(6) because of "extraordinary circumstances."  *See Kramer v. Gates*, 481 F.3d 788, 790 (D.C. Cir. 2007).

claims. In fact, as discussed above, the equitable considerations weigh against reinstating Patterson's claims.

**II.     Patterson is not Entitled to Damages as a Result of the Preliminary Injunction**

    **A.     Background**

On November 2, 2005, this Court issued a preliminary injunction prohibiting defendants from selling, transferring, or removing from this jurisdiction shares of stock that had served as collateral for the parties' loan agreement that was the basis for this lawsuit. Although the stock was owned by Mann Tech, Patterson also opposed the preliminary injunction—presumably because he has an interest in Mann Tech. On April 1, 2008, after considering newly presented evidence, the Court determined that Ellipso did not have a claim to the collateral and therefore should not have been entitled to the injunction. (*See* Mem. Op. [168] at 15–16 (citing *Ellipso, Inc. v. Mann.*, 480 F.3d 1153, 1160 (D.C. Cir. 2007)). Accordingly, the Court dissolved the preliminary injunction. (*See id.*)

    **B.     Analysis**

In the present motion, Patterson asks for costs and damages resulting from the preliminary injunction [201]. Patterson argues that Ellipso pursued the injunction in bad faith and that he suffered damages because of the attorneys' fees that he incurred representing himself *pro se* in the matter. He argues that D.C. Code § 15-111 (1981) specifically allows for attorneys' fees in the event of a wrongfully issued injunction in the United States District Court for the District of Columbia. (Patterson's Reply 12.)

The Court concludes that Patterson is not entitled to attorneys' fees in this case because he represented himself *pro se*. "The Circuits are in agreement . . . on the proposition that a *pro se*

litigant who is *not* a lawyer is *not* entitled to attorney's fees." *Kay v. Ehrler*, 499 U.S. 432, 435 (1991). As a unanimous Supreme Court stated in *Kay*, *pro se* litigants should not be awarded attorneys' fees because "furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case." Patterson has been disbarred in Virginia and is not admitted to practice law in this jurisdiction. Therefore, by the plain language of *Kay*, he is not entitled to attorneys' fees.

Patterson argues that because he is a member of the bar in another jurisdiction, he should be treated like an "out of state" lawyer who is entitled to attorneys' fees. (Patterson's Reply Br. 15.) This argument is spurious, as the policy considerations that underlie *Kay* demonstrate that someone who has been disbarred should be treated as someone who is not an attorney for purposes of attorneys' fees. As noted above, the reason *pro se* litigants are not awarded attorneys' fees is to encourage litigants to retain competent counsel. *Kay*, 499 U.S. at 438. Those who have been disbarred have been adjudged to be unfit to practice law; therefore, these litigants should be particularly encouraged to retain counsel. The old adage cited in *Kay*—that "a lawyer who represents himself has a fool for a client," *id.*,—rings especially true when that lawyer has been disbarred.

Even if Patterson were treated as a "*pro se* attorney-litigant," however, he would not be entitled to fees. *Kay* noted that even skilled lawyers who represent themselves in litigation are deprived of the judgment of an independent third party, evaluating alternative methods of presenting evidence, and "in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom." *Id*. at 437. As a result, *Kay* held that even *pro se* litigants who are attorneys are not entitled to fees in the civil rights context.

*Kay*, 499 U.S. at 437.  See also *Burka v. United States Dep't of Health and Human Servs.*, 142 F.3d 1286, 1288 (D.C. Cir. 1998) (declining to allow *pro se* attorney-litigants to recover attorneys' fees in FOIA cases).  The Court finds that the reasoning of *Kay* is equally applicable to this case and therefore even if Patterson is an "attorney" for purposes of obtaining fees, the Court will deny his request.

### III.   CONCLUSION

For the reasons set forth in this Opinion, defendant Robert Patterson's motion [204] to reinstate his counterclaims will be DENIED.  Patterson's motion [201] for damages resulting from the preliminary injunction will also be DENIED.

A separate order shall issue this date.

SO ORDERED.


Signed by Royce C. Lamberth, Chief Judge, on September 30, 2008.