**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ————————————————— | ) |
| **ELLIPSO, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Civil Action No. 05-1186 (RCL)** |
| | ) |
| **JOHN B. MANN,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| ————————————————— | ) |

<u>**MEMORANDUM OPINION**</u>

On September 30, 2008, the Court entered final judgment in this case.  (Docket entry [220]).  Now before the Court comes defendants John B. Mann and Mann Technologies' motion [221] for attorneys' fees and expenses.  Upon consideration of the motion [221], the opposition [228], the reply [231], applicable law, and the entire record herein, the defendants' motion will be GRANTED.

**I.**   <u>**BACKGROUND**</u>

In October 2002, plaintiff Ellipso was a struggling telecommunications company. *Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365, 369 (D.D.C. 2008) (Lamberth, J.).  At that time, David Castiel, in his capacity as Ellipso president and chief executive officer, hired defendant Robert Patterson to secure financing from investors.  *Id.*  Patterson structured a deal wherein defendant Mann Technologies, L.L.C. ("Mann Tech") loaned Ellipso $90,000, secured by 492,611 shares of ICO Global Communications Holding Ltd. Stock ("ICOHA Shares") that

Ellipso held.  *Id*. Patterson, however, the Harvard-trained lawyer who was securing financing for Ellipso, also had an interest in Mann Technologies.  *Id*.  Accordingly, he stood to benefit from the loan.

The loan agreement was executed on January 30, 2004, at which time the ICOHA shares were valued at $180,000.  *Id*.  The loan agreement provided that in the event of a default by Ellipso, Mann Tech could take possession of the collateral.  *See id*.  The loan agreement was also "non-recourse," meaning that Ellipso could stop performing on the loan contract, walk away, and owe Mann Tech nothing more than the ICOHA Shares securing the loan.

Ellipso was in default from the very beginning and never made loan payments to Mann Tech.  As a result, Mann Tech foreclosed on the collateral.  Ellipso filed suit against Mann Tech on June 14, 2005.  Ellipso argued that because Patterson allegedly concealed his dual role as both an Ellipso consultant and a part owner of Mann Tech, the loan documents contained terms and conditions extremely favorable to Mann Tech, and onerous and unconscionable to Ellipso.  Mann Tech, on the other hand, contended that Castiel, the Ellipso president and chief executive officer, learned of Patterson's role in Mann Tech and ratified the loan agreement anyway.

This Court granted Ellipso's motion for preliminary injunction on November 2, 2005, which prohibited Mann Tech from selling the shares of stock that it was holding as collateral. *Ellipso, Inc.*, *v. Mann*, No. 05-cv-1186, at *3, 2005 WL 5298646 (D.D.C. Nov. 2, 2005).  The Court determined that Ellipso had shown a likelihood of success on the merits of its fraud claim because Patterson had not disclosed his dual role to Ellipso.  *Id*.  The Court of Appeals affirmed this Court's preliminary injunction on March 23, 2007.  *Ellipso, Inc. v. Mann,* 480 F.3d 1153 (D.C. Cir. 2007).

On April 1, 2008, the Court considered a newly presented email dated November 16, 2004 from Ellipso president and chief executive officer David Castiel to defendant Robert Patterson. The Court concluded, on the basis of the newly presented e-mail,[1] that Ellipso had knowledge of Mr. Patterson's stake in Mann Tech no later than June 2004. *Ellipso,* 541 F. Supp. 2d at 371. Subsequent to that date, Ellipso performed several acts in affirmation of the loan agreement, including negotiating and executing an amendment to the loan agreement, accepting a check pursuant to the loan agreement amendment, and transferring collateral to Mann Tech. *Id*. at 371–72. Accordingly, the Court determined that Ellipso could no longer assert that it had an equitable claim to the collateral and granted summary judgment to Mann Tech on many of Ellipso's claims. *Id*. at 372. The Court also dissolved the preliminary injunction as to all defendants. The Court later awarded the Mann Defendants' damages suffered as a result of the preliminary injunction. (Mem. Op. [215] at 9.)

As for Ellipso's claims that remained following the summary judgment stage, the Court held a seven day jury trial. Ultimately, the Court granted both parties' motions for judgment as a

---

[1]The e-mail by Castiel states: "In particular I never knew until May/June 2004 that you were the 50% owner of Mann Tech and you had a stake in the upside of the [ICOHA] stock." (*See* Email from Castiel to Patterson (Nov. 16, 2004, Ex. 21 to Mot. [144] for Summ. J.)).

matter law and dismissed all claims and counterclaims.[2]  Final judgment was entered on

September 30, 2008.  (Docket entry [220]).

The Mann Defendants now request attorneys' fees.


II.   **APPLICABLE LAW**

Absent a statute to the contrary, federal courts in this country operate under the

'American rule' that the prevailing party may not recover attorneys' fees as costs or otherwise.

*Alyeska Pipeline Servs. Co. v. Wilderness Society*, 421 U.S. 240, 245 (1975).  However, there are

a couple of exceptions to this general rule.  First, a court may assess attorneys' fees "when the

losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Id*. at 258;

*See also American Hosp. Ass'n v. Sullivan*, 938 F.2d 216, 220 (D.C. Cir 1991) (stating that bad

faith may be found where a "party is forced to undertake otherwise unnecessary litigation to

vindicate plain legal rights").  Second, of course, parties can contract around the American rule

through an attorney fee-shifting provision in a contract.  *See Liberty Mut. Ins. Co. v.*

*Lumbermen's Mut. Cas. Co.*, 172 F.3d 919, slip op. at *1 (D.C. Cir. Jan. 20, 1999)

(unpublished).

---

[2]In the Court's August 5, 2008 oral rulings granting the parties' motions for judgment as a matter of law, the Court stated several key facts that emerged from the trial: (1) the loan agreement generated over $100,000 for Ellipso; (2) Ellipso knew of Patterson's Mann Tech participation no later than June 2004 and subsequently affirmed the loan agreement; (3) at the time of forfeiture, the value of the collateral securing Ellipso's loan had dipped significantly below the outstanding loan amount; (4) the loan was "non-recourse," meaning that Ellipso could stop performing on the loan contract, walk away, and owe Mann Tech nothing more than the ICOHA shares securing the loan; (5) Ellipso was in default from the moment Mr. Castiel signed the agreement; (6) Ellipso chose to walk away from the loan agreement; and (7) Mann Tech exercised its right to foreclose on the collateral.

If attorneys' fees are to be awarded, the court must multiply the "number of hours reasonably expended on the litigation" by a "reasonable hourly rate." *Harrison Music Corp. v. Tesfaye*, 293 F. Supp. 2d 80, 85 (D.D.C. 2003) (Leon, J.).  In this Circuit, "an attorney's usual billing rate is presumptively the reasonable rate, provided that this rate is in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993).

## III.   ANALYSIS

### A.    Mann Tech is Entitled to Attorneys' Fees

The central allegation that gave rise to the plaintiff's claims was that Castiel did not know of Patterson's dual role while negotiating and reaffirming the loan agreement.  Ellipso repeatedly made this allegation in pleadings and during discovery.[3]  However, as a result of an e-mail that was produced well into the litigation,[4] the Court learned that this allegation was untrue.  Ellipso did know of Patterson's role in Mann Tech in June 2004 at the latest, yet still ratified the loan agreement.  In other words, the key "fact" that Ellipso used to instigate this litigation was patently false.  Ellipso repeatedly made this false allegation and it was the critical fact upon

---

[3]*See e.g.*, Ellipso's Responses to Mann Defendants' Request for Admissions (Mann Def.'s Mot. [221] for Atty.'s fees, Ex. 7, at ¶ 5, 6, 8, 34) (Ellipso repeatedly denying that it knew of Robert Patterson's interest in Mann Tech as of August 2, 2004); (Mot. [4] for Preliminary Inj. 7) (stating that Ellipso would still have the ICOHA stock if it knew of Patterson's dual-role).

[4]The critical e-mail was produced by Robert Patterson, not by Ellipso.  Ellipso states that it did not produce the critical e-mail, and many other e-mails that were relevant to the case, because of computer failures.  (Pl.'s Opp'n to Mot. for Atty.'s Fees at 5.)

which the litigation turned;[5] this leads the Court to conclude that Ellipso intentionally made this false allegation.

_____Ellipso argues that even if Castiel did know of Patterson's interest in Mann Tech in June of 2004, there is no evidence that he knew of Patterson's interest from January to June of 2004. Therefore, Ellipso argues, Castiel did not know of Patterson's interest when the original loan agreement was executed and was not operating in bad faith by filing a lawsuit.  (Def.'s Opp'n at 4–5.)

Indeed, with respect to the claims that survived summary judgment, the Court originally agreed with the plaintiff.  "[W]here a party to an executed contract discovers a material misrepresentation made in the execution of a contract, that party may elect one of two mutually exclusive remedies.  He may either affirm the contract and sue for damages, or repudiate the contract and recover that with which he or she has parted."  *Ellipso*, *Inc. v. Mann,* 480 F.3d 1153, 1158 (D.C. Cir. 2007).  Accordingly, it appeared that some of Ellipso's claims may have had merit even though it ratified the contract after it learned of Patterson's dual-role.  After conducting the seven day jury trial, however, it became apparent that when Mann Tech foreclosed on the collateral the shares were worth considerably less than the $100,000 that Ellipso obtained from the loan. Accordingly, Ellipso suffered no provable damages and appears to have pursued the lawsuit merely to harass Mann Tech.

Regardless, Ellipso's argument is a red herring.  It fails to explain its conduct with regard to the claims that did not survive summary judgment, in which Ellipso stated that it was entitled

---

[5]*See e.g.*, *Ellipso, Inc. v. Mann*, 480 F.3d 1153, 1159 (D.C. Cir. 2007) (affirming this Court's preliminary injunction because Mann Tech had not shown that Ellipso knew of Patterson's dual-roles before Ellipso affirmed the loan agreement).

to a rescission of the contract because it was unaware of Patterson's interest in Mann Tech prior

to August of 2004.  After examining the November 16, 2004 e-mail from Castiel, the Court

determined that Ellipso's prior submissions about when Castiel possessed the relevant

knowledge of Patterson's role in Mann Tech was false.  In other words, Castiel misrepresented

the critical fact upon which the litigation turned.  This misrepresentation alone constitutes bad

faith.  *See Scott-Blanton v. Universal City Studios Productions LLLP*, No. 07-0098, 2009 WL

97254 at *3 (D.D.C. January 15, 2009) (Urbina, J.) (stating that attorneys' fees can be awarded

when a plaintiff persists in pursuing a claim that it knows from the outset is false and wastes

counsel and the court's resources).  This false and misleading argument not only occurred in

discovery, but also before this court and in the Court of Appeals.[6]

_____Mann Tech is also entitled to attorneys' fees on the independent ground that a fee-shifting

provision was included in the loan contract between Ellipso and Mann Tech.  The Collateralized

Loan Agreement, signed on January 30th 2004, states that:

> "[I]n the event this Loan Agreement shall be successfully enforced by suit or
> otherwise, Borrower will reimburse the Lender or holder or holders of the
> Obligations, upon demand, for all reasonable expenses incurred in connection
> therewith, including, without limitation, reasonable attorneys' fees and expenses."

(Compl. Ex. 2, Collateralized Loan Agreement, ¶ 8.14.)

_____Of course, there is some question as to whether Mann Tech "successfully enforced" the

Loan Agreement since it did not file suit on the basis of the loan agreement (it was the defendant

---

[6]*See, e.g.*, Brief of Appellee, 2006 WL 3146834 (D.C. Cir. 2006) (stating that the District
Court's factual finding that  "Patterson acted as an undisclosed dual agent when he negotiated the
Loan Agreement on behalf of Ellipso and later advised Ellipso to transfer title to and possession
of the ICOHA shares to Mann Tech" should be affirmed).  Of course, Ellipso did not transfer title
and possession of the ICOHA shares to Mann Tech until August of 2004, which we now know
was after Castiel knew about Patterson's dual-role.

in this case), and it did not prevail on its counterclaims.  However, because the language in the

loan agreement states "successfully enforced by suit *or otherwise*" (emphasis added), the Court

concludes that the contract contemplated Mann Tech enforcing the Loan Agreement by

defending its right to foreclose on the collateral.  Since the Court concluded, following the trial,

that the terms of the loan allowed Mann Tech to foreclose on the collateral, which it did, and then

Mann Tech successfully defended itself in a lawsuit by Ellipso disputing that right, the fee-

shifting provision applies.

Ellipso also argues that Mann Tech's motion for attorneys' fees was untimely because it

did not raise the claim that it was entitled to attorneys' fees on the basis of bad faith or the

Collateralized Loan Agreement at trial.  As this Court stated when it granted Mann Tech's

motion for reconsideration, it could not have ruled on whether or not Mann Tech was entitled to

attorneys' fees at trial because it was unclear which party would prevail.  (Docket entry [218] at

2.)  As a result, it is no surprise that Mann Tech presented argument in support of its request for

attorneys' fees following trial, after it was clear that it was the prevailing party.  Mann Tech's

motion for reconsideration of the attorneys' fees issue on the basis that it was the prevailing party

was made within 10 days of the entry of judgment and therefore was timely.


### B.     Award Amount

#### 1.     Attorneys' Fees

Mann Tech requests $283,382.28 in attorneys' fees.  Of that request, $8,584 are

attributable to the preparation, filing, and defense of the counterclaims.  Mann Tech cannot

recover the amount of fees attributable to its counterclaims because it was not successful on

those claims. *See Copeland v. Marshall*, 641 F.2d 880, 891–92 (D.C. Cir. 1980) ("[N]o compensation should be paid for time spent litigating claims upon which the party seeking the fee did not ultimately prevail."). That amount also includes the attorneys' fees incurred in conjunction with the preliminary injunction that was issued in this case. The Court has already awarded $73,484.24 worth of attorneys' fees that were billed in conjunction with the preliminary injunction.[7] Therefore, the plaintiffs cannot get double recovery for that amount. Taking the $283,382.28 and subtracting the $8,584 (fees related to counterclaim) and 73,484.24 (fees already awarded), leaves $201,314.04.

The Court has also scrutinized that figure for reasonableness. Most of the legal work in this case was billed at $250 or $300 an hour. For example, Christopher Hoge, who has been in practice since 1975, was billing Mann Tech at $300 an hour during trial. The Court finds that this is a reasonable rate for an attorney with his experience and competence in the Washington, D.C. area. The other legal bills in the case appear to be similarly reasonable. The total figure of $201,314.04 is reasonable and appropriate in this case.

Ellipso makes no specific objections to the attorneys' fees, but merely argues that Mann Tech did not meet its burden of showing: (1) the attorneys' billing practices; (2) the attorneys' skill, experience, and reputation; and (3) the prevailing market rates in the relevant community.

---

[7] Mann Tech actually sustained $110,420.76 in damages as a result of the preliminary injunction. However, the Court felt that it was limited in awarding damages to the amount of the injunction bond, which was $100,000. The Court stated at the time that it was awarding the $26,515.76 in monetary damages and the remainder of the $100,000 in attorneys' fees. The Court also stated that with regard to the preliminary injunction it was obligated to cap the damages award at $100,000, but that in the event that Mann Tech was entitled to attorneys' fees in the case as a whole, it could recover the remaining $10,420.76. (Docket entry [215] at 5, 9 n.9.) That amount is included in the $201,314.04 award.

*Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).  To the contrary, Mann

Tech has met its burden.  It has attached its legal bills as exhibits to its motion, reflecting its

attorneys' billing practices.  The Court has observed the attorneys' performances in pleadings

and during trial, and the bulk of the trial work was billed by Christoper Hoge, who has over 30

years of legal experience. Finally, the Court can take judicial notice that $300 an hour is indeed a

fair rate for legal work according to the prevailing market rates in the Washington D.C. area.

Ellipso makes no specific objections to the amount of hours billed or the hours calculation, the

number of employees that were working on the case, or the amount that Mann Tech spent on the

counterclaim compared to the amount it spent defending itself against the primary claim.

### 2.     Other Costs

Mann Tech also requests $75,862 in expenses for the time John Mann spent at

depositions, trial, and consulting his attorneys. He also requests an additional $72,000 because

John Mann could have spent that time billing clients as a consultant. Mann Tech cites no case

law for the proposition that a party is entitled to fees for his time spent participating in litigation

as part of an attorneys' fee award, nor is the Court aware of any.[8]  In addition, Mann Tech does

not list these expenses with the specificity required, stating only that his presence was "necessary

to assist in the defense against Ellipso's lawsuit."  Accordingly, Mann Tech will not be awarded

the additional costs it requests.

---

[8]The Collateralized Loan Agreement likewise does not provide relief for these costs.
That agreement limits the amount of recovery to "reasonable expenses."  Because time spent by a
party at trial is generally not awarded by courts as a part of the "reasonable expenses" of
litigation, the Court will not do so in this case.  There is no indication that the parties' fee-
shifting agreement was intended to expand the ordinary meaning of attorneys' fees and expenses
in the way that Mann Tech argues.

IV.     **CONCLUSION**

Mann Tech is entitled to attorneys' fees of $201,314.04 on two independent grounds: (1) Ellipso instituted its lawsuit in bad faith, misrepresented the critical fact upon which the litigation turned, and continued to pursue vexatious claims even in the absence of any damages; and (2) Mann Tech successfully enforced the loan agreement and therefore is entitled to attorneys' fees pursuant to the parties' fee-shifting agreement.  Mann Tech's motion for attorneys' fees will be GRANTED.

A separate order shall issue this date.

SO ORDERED.


Signed by Chief Judge Royce C. Lamberth on January 29, 2009.